**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **In the Matter of the Extradition of MARIA del ROSARIO MORENO-VAZQUEZ, a/k/a MARIA COONLEY** | **) CV. NO. 3:06cv761-MEF-CSC** |

## Notice of Filing of Formal Extradition Papers and Second Request for Extradition

The United States of America gives notice through this pleading that it is filing the attached formal extradition papers and the Mexican Government's additional request for extradition. In support of this filing the United States further submits:

1. The fugitive, Maria del Rosario Moreno-Vazquez, a/k/a Maria Coonley, was arrested pursuant to an arrest warrant issued on December 16, 2005, by United States Magistrate Judge Delores R. Boyd. She was then brought before Chief United States Magistrate Judge Charles S. Coody for an initial appearance to be extradicted on a charge of trafficking of children.

2. On August 18, 2006, both parties to this proceeding appeared before Judge Coody for a status conference. At that hearing, the United States informed the Court that the United States would soon receive a second extradition request. This second extradition request concerns a new Mexican charge – forgery of a public document.

3. The United States has received the second request and hereby (1) files a redacted and reduced electronic copy of the formal extradition papers (with seals and ribbons) in this matter, and (2) renews its request for the extradition of the fugitive to

Mexico.  The originals of these materials will be hand filed with the Clerk's office today.

A copy of these amended charges without redaction has been provided to defense counsel

via regular U.S. mail.

      4.     Ms. Moreno-Vazquez is now entitled to a second initial appearance on these

new charges.  In lieu of the issuance of an arrest warrant, the United States has conferred

with Mr. Bruner and has no objection to Ms. Moreno-Vazquez's voluntary appearance at this

hearing.

      5.     Additionally, it is both parties' desire to have a scheduling order set for this

case.  The parties suggest that an extradition hearing be set for no later than sixty days from

the date of Ms. Moreno-Vazquez's second initial appearance.

      Respectfully submitted this 25th day of September, 2006.

                           LEURA G. CANARY
                           UNITED STATES ATTORNEY

                           /s/ Christopher A. Snyder
                           CHRISTOPHER A. SNYDER
                           Assistant United States Attorney
                           One Court Square, Suite 201
                           Montgomery, AL 36104
                           Phone: (334)223-7280
                           Fax: (334)223-7135
                           E-mail: christopher.a.snyder@usdoj.gov

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **In the Matter of the Extradition of MARIA del ROSARIO MORENO-VAZQUEZ, a/k/a MARIA COONLEY** | **) CV. NO. 3:06cv761-MEF-CSC** |

---

**Certificate of Service**

---

I hereby certify that on September 25, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Ben Elton Bruner.

/s/ Christopher A. Snyder
CHRISTOPHER A. SNYDER

DISTRICT OF COLUMBIA, ss:

DECLARATION OF ANDREW N. KELLER

I, Andrew N. Keller, declare and say as follows:

1. I am an Attorney-Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. This office has responsibility for extradition requests, and I am charged with the extradition case of Maria del Rosario Moreno Vazquez. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. In accordance with the provisions of the extradition treaty in full force and effect between the United States and Mexico, the Embassy of Mexico has submitted Diplomatic Note No. 05046, dated July 20, 2006, formally requesting the extradition of Maria del Rosario Moreno Vazquez. The Embassy of Mexico also submitted Diplomatic Note No. 06376, dated August 25, 2006, which provided additional information related to the Government of Mexico's extradition request in this case. Copies of both diplomatic notes are attached to this declaration.

3. The relevant and applicable treaty provisions in full force and effect between the United States and Mexico are found in the Extradition Treaty between the United States of America and Mexico of May 4, 1978 (TIAS 9656) (the "Treaty"). A copy of the Treaty is attached to this declaration.

# United States of America

## DEPARTMENT OF STATE

***To all to whom these presents shall come, Greetings:***

rtify That Andrew N. Keller, whose name is subscribed to the document hereunto annexed, he time of subscribing the same Attorney Adviser, Office of the Legal Adviser, Department of nited States of America, and that full faith and credit are due to his acts as such.

In testimony whereof, I, Condoleezza Rice, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this first day of September, 2006.

Secretary of State

By

Assistant Authentication Officer,
Department of State

*Iss suant t V, State of Sep 1789, 68-69; 22 US ; 22US a; 5 USC 301 SE 173 q.; 8 USC 144 ULE 44 Rules of Civ dure.*

*certificate is not valid if it is removed or altered in any way whatsoever*

4. In accordance with Article 13(3) of the 1978 Treaty, the Government of the United States of America provides legal representation in U.S. courts for the Government of Mexico in its extradition requests, and the Government of Mexico provides legal representation in its courts for extradition requests made by the United States.

5. The acts for which extradition is sought are punishable in accordance with the laws of both contracting parties by deprivation of liberty for a period of at least one year, and are covered under Article 2 of the 1978 Treaty and by the Appendix to the Treaty.

6. The documents submitted by the Government of Mexico in support of its extradition request were certified on July 5, 2006, by David T. Donohue, Minister Counselor for Consular Affairs, for the United States, in accordance with Title 18, United States Code, Section 3190. Mr. Donohue, at the time he certified the documents, was the principal consular officer of the United States in Mexico.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2006.

[signature]
Andrew N. Keller

Attachments:
1. Copy of Diplomatic Notes 05046 and 06376
2. Copy of Treaty.

Doc No. 120239-V2D

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 9656

# EXTRADITION

Treaty Between the
UNITED STATES OF AMERICA
and MEXICO

English Only

Signed at Mexico City May 4, 1978



## NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89–497, approved July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)—

"... the Treaties and Other International Acts Series issued under the authority of the Secretary of State shall be competent evidence ... of the treaties, international agreements other than treaties, and proclamations by the President of such treaties and international agreements other than treaties, as the case may be, therein contained, in all the courts of law and equity and of maritime jurisdiction, and in all the tribunals and public offices of the United States, and of the several States, without any further proof or authentication thereof."

*For sale by the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402. Subscription Price: $110; $27.50 additional for foreign mailing. Single copies vary in price. This issue $2.*

# MEXICO

## Extradition

***Treaty signed at Mexico City May 4, 1978;***
***Ratification advised by the Senate of the United States of America November 30, 1979;***
***Ratified by the President of the United States of America December 13, 1979;***
***Ratified by Mexico January 31, 1979;***
***Ratifications exchanged at Washington January 25, 1980;***
***Proclaimed by the President of the United States of America February 6, 1980;***
***Entered into force January 25, 1980.***

---

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Extradition Treaty between the United States of America and the United Mexican States was signed at Mexico City on May 4, 1978, the text of which, in the English and Spanish languages, is hereto annexed;

The Senate of the United States of America by its resolution of November 30, 1979, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty;

The Treaty was ratified by the President of the United States of America on December 13, 1979, in pursuance of the advice and consent of the Senate, and was duly ratified on the part of the United Mexican States;

It is provided in Article 23 of the Treaty that the Treaty shall enter into force on the date of exchange of the instruments of ratification;

The instruments of ratification of the Treaty were exchanged at Washington on January 25, 1980; and accordingly the Treaty entered into force on that date;

NOW, THEREFORE, I, Jimmy Carter, President of the United States of America, proclaim and make public the Treaty, to the end that it be observed and fulfilled with good faith on and after January 25,

1980, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of February in the year of our Lord one thousand nine hundred eighty and [SEAL] of the Independence of the United States of America the two hundred fourth.

JIMMY CARTER

By the President:
CYRUS VANCE
*Secretary of State*

EXTRADITION TREATY BETWEEN
THE UNITED STATES OF AMERICA AND
THE UNITED MEXICAN STATES

The Government of the United States of America and the Government of the United Mexican States;

Desiring to cooperate more closely in the fight against crime and, to this end, to mutually render better assistance in matters of extradition;

Have agreed as follows:

ARTICLE 1

Obligation to Extradite

1.- The Contracting Parties agree to mutually extradite, subject to the provisions of this Treaty, persons who the competent authorities of the requesting Party have charged with an offense or have found guilty of committing an offense, or are wanted by said authorities to complete a judicially pronounced penalty of deprivation of liberty for an offense committed within the territory of the requesting Party.

2.- For an offense committed outside the territory of the requesting Party, the requested Party shall grant extradition if:

a) its laws would provide for the punishment of such an offense committed in similar circumstances, or

b) the person sought is a national of the requesting Party, and that Party has jurisdiction under its own laws to try that person.

ARTICLE 2

Extraditable Offenses

1.- Extradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year.

2.- If extradition is requested for the execution of a sentence, there shall be the additional requirement that the part of the sentence remaining to be served shall not be less than six months.

3.- Extradition shall also be granted for wilful acts which, although not being included in the Appendix, are punishable, in accordance with the federal laws of both Contracting Parties, by a deprivation of liberty the maximum of which shall not be less than one year.

4.- Subject to the conditions established in paragraphs 1, 2 and 3, extradition shall also be granted:

a) For the attempt to commit an offense; conspiracy to commit an offense; or the participation in the execution of an offense; or

b) When, for the purpose of granting jurisdiction to the Unit

ed States government, transportation of persons or property, the use of the mail or other means of carrying out interstate or foreign commerce, is also an element of the offense.

ARTICLE 3

Evidence Required

Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place or to prove that he is the person convicted by the courts of the requesting Party.

ARTICLE 4

Territorial Application

1.- For the purposes of this Treaty, the territory of a Contracting Party shall include all the territory under the jurisdiction of that Contracting Party, including airspace and territorial waters and vessels and aircraft registered in that Contracting Party if any such aircraft is in flight when the offense is committed.

2.- For the purposes of this Treaty, an aircraft shall be considered to be in flight at any time from the moment when all its external doors are closed following the embarkation until the moment when any such door is opened for disembarkation.

ARTICLE 5

Politicial and Military Offenses

1.- Extradition shall not be granted when the offense for which

it is requested is political or of a political character.

If any question arises as to the application of the foregoing paragraph, the Executive authority of the requested Party shall decide.

2.- For the purpose of this Treaty, the following offenses shall not be considered to be offenses included in paragraph 1:

a) The murder or other wilful crime against the life or physical integrity of a Head of State or Head of Government or of his family, including attempts to commit such an offense.

b) An offense which the Contracting Parties may have the obligation to prosecute by reason of a multilateral international agreement.

3.- Extradition shall not be granted when the offense for which extradition is requested is a purely military offense.

ARTICLE 6

Non bis in idem

Extradition shall not be granted when the person sought has been prosecuted or has been tried and convicted or acquitted by the requested Party for the offense for which extradition is requested.

ARTICLE 7

Lapse of Time

Extradition shall not be granted when the prosecution or the en-

forcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party.

ARTICLE 8

Capital Punishment

When the offense for which extradition is requested is punishable by death under the laws of the requesting Party and the laws of the requested Party do not permit such punishment for that offense, extradition may be refused unless the requesting Party furnishes such assurances as the requested Party considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

ARTICLE 9

Extradition of Nationals

1.- Neither Contracting Party shall be bound to deliver up its own nationals, but the executive authority of the requested Party shall, if not prevented by the laws of that Party, have the power to deliver them up if, in its discretion, it be deemed proper to do so.

2.- If extradition is not granted pursuant to paragraph 1 of this Article, the requested Party shall submit the case to its competent authorities for the purpose of prosecution, provided that Party has jurisdiction over the offense.

65-773 O - 80 - 2 : QL 3

S

ARTICLE 10

Extradition Procedures and Required Documents

1.- The request for extradition shall be made through the diplomatic channel.

2.- The request for extradition shall contain the description of the offense for which extradition is requested and shall be accompanied by:

a) A statement of the facts of the case;

b) The text of the legal provisions describing the essential elements of the offense;

c) The text of the legal provisions describing the punishment for the offense;

d) The text of the legal provisions relating to the time limit on the prosecution or the execution of the punishment of the offense;

e) The facts and personal information of the person sought which will permit his identification and, where possible, information concerning his location.

3.- In addition, when the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by:

a) A certified copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party;

b) Evidence which, in accordance with the laws of the requested Party, would justify the apprehension and commitment for trial of the person sought if the offense had been committed there.

4.- When the request for extradition relates to a convicted person, it shall be accompanied by a certified copy of the judgment of conviction imposed by a court of the requesting Party.

If the person was found guilty but not sentenced, the extradition request shall be accompanied by a certification to that effect and a certified copy of the warrant of arrest.

If such person has already been sentenced, the request for extradition shall be accompanied by a certification of the sentence imposed and a statement indicating which part of the sentence has not been carried out.

5.- All the documents that must be presented by the requesting Party in accordance with the provisions of this Treaty shall be accompanied by a translation in the language of the requested Party.

6.- The documents which, according to this Article, shall accompany the request for extradition, shall be received in evidence when:

a) In the case of a request emanating from the United States, they are authenticated by the official seal of the Department of State and legalized by the manner prescribed by the Mexican law;

b) In the case of a request emanating from the United Mexican States, they are certified by the principle diplomatic or consular officer of the United States in Mexico.

## ARTICLE 11

### Provisional Arrest

1.- In the case of urgency, either Contracting Party may request, through the diplomatic channel, the provisional arrest of an accused or convicted person. The application shall contain a description of the offense for which the extradition is requested, a description of the person sought and his whereabouts, an undertaking to formalize the request for extradition, and a declaration of the existence of a warrant of arrest issued by a competent judicial authority or a judgment of conviction issued against the person sought.

2.- On receipt of such a request, the requested Party shall take the necessary steps to secure the arrest of the person claimed.

3.- Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person claimed, the executive authority of the reque. ed Party has not received the formal request for extradition and the doc uments mentioned in Article 10.

4.- The fact that the provisional arrest is terminated pursuant to paragraph 3 shall not prejudice the extradition of the person sought if the request for extradition and the necessary documents mentioned in Article 10 are delivered at a later date.

ARTICLE 12

Additional Evidence

If the Executive authority of the requested Party considers that the evidence furnished in support of the request for extradition is not sufficient in order to fulfill the requirements of this Treaty, that Party shall request the presentation of the necessary additional evidence.

ARTICLE 13

Procedure

1.- The request for extradition shall be processed in accordance with the legislation of the requested Party.

2.- The requested Party shall make all arrangements necessary for internal procedures arising out of the request for extradition.

3.- The competent legal authorities of the requested Party shall be authorized to employ all legal means within their power to obtain from the judicial authorities the decisions necessary for the resolution of the request for extradition.

ARTICLE 14

Decision and Surrender

1.- The requested Party shall promptly communicate to the requesting Party its decision on the request for extradition.

2.- In the case of complete or partial rejection of a request for extradition, the requested Party shall give the reasons on which it was based.

3.- If the extradition is granted, the surrender of the person sought shall take place within such time as may be prescribed by the laws of the requested Party. The competent authorities of the Contracting Parties shall agree on the date and place of the surrender of the person sought.

4.- If the competent authority has issued the warrant or order for the extradition of the person sought and he is not removed from the territory of the requested Party within the prescribed period, he shall be set at liberty and the requested Party may subsequently refuse to extradite him for the same offense.

ARTICLE 15

Delayed Surrender

The requested Party, after granting the extradition, may defer the surrender of the person sought when that person is being proceeded against or is serving a sentence in the territory of the requested Party for a different offense, until the conclusion of the proceeding or the full execution of the punishment that has been imposed.

ARTICLE 16

Requests for extradition made by Third States

The requested Party, in the case of receiving requests from the other Contracting Party and from one or more third States for the extradition of the same person, be it for the same offense or for different offenses, shall decide to which requesting State it shall grant the ex

tradition of that person.

ARTICLE 17

Rule of Speciality

1.- A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State unless:

a) He has left the territory of the requesting Party after his extradition and has voluntarily returned to it;

b) He has not left the territory of the requesting Party within 60 days after being free to do so; or

c) The requested Party has given its consent to his detention, trial, punishment or extradition to a third State for an offense other than that for which the extradition was granted.

These stipulations shall not apply to offenses committed after the extradition.

2.- If, in the course of the procedure, the classification of the offense is changed for which the person requested was extradited, he shall be tried and sentenced on the condition that the offense, in its new legal form:

a) Is based on the same group of facts established in the request for extradition and in the documents presented in its support; and

b) Is punishable with the same maximum sentence as the crime for which he was extradited or with a lesser sentence.

## ARTICLE 18

### Summary Extradition

If the person sought informs the competent authorities of the requested Party that he agrees to be extradited, that Party may grant his extradition without further proceedings, and shall take all measures permitted under its laws to expedite the extradition. In such cases Article 17 shall not be applicable.

## ARTICLE 19

### Surrender of Property

1.- To the extent permitted under the law of the requested Party and subject to the rights of third parties, which shall be duly respected, all articles, instruments, objects of value or documents relating to the offense, whether or not used for its execution, or which in any other manner may be material evidence for the prosecution, shall be surrendered upon the granting of the extradition even when extradition cannot be effected due to the death, disappearance, or escape of the accused.

2.- The requested Party may condition the surrender of articles upon a satisfactory assurance from the requesting Party that the articles will be returned to the requested Party as soon as possible.

ARTICLE 20

Transit

1.- The right to transport through the territory of one of the Contracting Parties a person who is not a national of that Contracting Party surrendered to the other Contracting Party by a third State shall be granted on presentation made through the diplomatic channel of a certified copy of the decision on extradition, provided that reasons of public order are not opposed to the transit.

2.- The authorities of the transit State shall be in charge of the custody of the extradited person while that person is in its territory.

3.- The Party to which the person has been extradited shall re- imburse the State through whose territory such person is transported for any expenses incurred by the latter in connection with such transporta- tion.

ARTICLE 21

Expenses

The requested Party shall bear the expenses of the arrangements referred to in Article 13, with the exception that the expenses incurred for the translation of documents and, if applicable, for the transporta- tion of the person ordered extradited shall be paid by the requesting Par ty.

ARTICLE 22

Scope of Application

1.- This Treaty shall apply to offenses specified in Article 2 com

mitted before and after this Treaty enters into force.

2.- Requests for extradition that are under process on the date of the entry into force of this Treaty, shall be resolved in accordance with the provisions of the Treaty of 22 February, 1899,[1] and the Additional Conventions on Extradition of 25 June 1902,[2] 23 December 1925,[3] and 16 August 1939.[4]

ARTICLE 23

Ratification, Entry into Force, Denunciation

1.- This Treaty shall be subject to ratification; the exchange of instruments of ratification shall take place in Washington as soon as possible.

2.- This Treaty shall enter into force on the date of exchange of the instruments of ratification.

3.- On entry into force of this Treaty, the Treaty of Extradition of 22 February 1899 and the Additional Conventions on Extradition of 25 June 1902, 23 December 1925 and 16 August 1939 between the United States of America and the United Mexican States, shall cease to have effect without prejudice to the provisions of Article 22.

4.- Either Contracting Party may terminate this Treaty by giving notice to the other Party. The termination shall take effect six months after the receipt of such notice.

[1] TS 242; 31 Stat. 1818.
[2] TS 421; 9 Bevans 918.
[3] TS 741; 44 Stat. 2409.
[4] TS 967; 55 Stat. 1133.

Done in two originals, in the English and Spanish languages, both equally authentic, at Mexico City this fourth day of May, one thousand nine hundred seventy-eight.

[1]
For the Government of the United States of America

[2]
For the Government of the United Mexican States

[1] Cyrus Vance.
[2] S. Roel.

APPENDIX

1. Murder or manslaughter; abortion.
2. Malicious wounding or injury.
3. Abandonment of minors or other dependents when there is danger of injury or death.
4. Kidnapping; child stealing; abduction; false imprisonment.
5. Rape; statutory rape; indecent assault; corruption of minors, including unlawful sexual acts with or upon children under the age of consent.
6. Procuration; promoting or facilitating prostitution.
7. Robbery; burglary; larceny.
8. Fraud.
9. Embezzlement.
10. An offense against the laws relating to counterfeiting and forgery.
11. Extortion.
12. Receiving or transporting any money, valuable securities, or other property knowing the same to have been unlawfully obtained.
13. Arson; malicious injury to property.
14. Offenses against the laws relating to the traffic in, possession, production, manufacture, importation or exportation of dangerous drugs and chemicals, including narcotic drugs, cannabis, psychotropic drugs, opium, cocaine, or their derivatives.
15. Offenses against the laws relating to the control of poisonous chemicals or substances injurious to health.

16. Piracy.

17. Offenses against the safety of means of transportation including any act that would endanger a person in a means of transportation.

18. An offense relating to unlawful seizure or exercise of control of trains, aircraft, vessels, or other means of transportation.

19. Offenses against the laws relating to prohibited weapons, and the control of firearms, ammunition, explosives, incendiary devices or nuclear materials.

20. An offense against the laws relating to international trade and transfers of funds or valuable metals.

21. An offense against the laws relating to the importation, exportation, or international transit of goods, articles, or merchandise, including historical or archeological items.

22. Violations of the customs laws.

23. Offenses against the laws relating to the control of companies, banking institutions, or other corporations.

24. Offenses against the laws relating to the sale of securities, including stocks, bonds and instruments of credit.

25. Offenses against the laws relating to bankruptcy or rehabilitation of a corporation.

26. Offenses against the laws relating to prohibition of monopoly or unfair transactions.

27. Offenses against the laws relating to protection of industrial property or copyright.

28. Offenses against the laws relating to abuse of official authority.



**05046**

Washington, D.C., a 20 de julio de 2006

Señora Secretaria:

En nombre de mi Gobierno, tengo a honra referirme al Tratado de Extradición suscrito entre los Estados Unidos Mexicanos y los Estados Unidos de América, para solicitar al Gobierno de Vuestra Excelencia, con base en el Artículo 2, y en particular, con fundamento en el Artículo 10 del citado Tratado, la solicitud **FORMAL** de extradición de **MARIA DEL ROSARIO MORENO VAZQUEZ** a quien las autoridades mexicanas reclaman por su probable responsabilidad en la comisión del delito de **FALSIFICACION DE DOCUMENTO PUBLICO,** ilícito del cual resultó orden de aprehensión en contra de la reclamada según la causa penal número 66/2005, dictada por el Juez Tercero de Distrito de Procesos Penales Federales en el Distrito Federal.

El gobierno de México tiene conocimiento que **MARIA DEL ROSARIO MORENO VAZQUEZ** puede ser localizada en la ciudad de Salem, Alabama, y se teme que se traslade a otro sitio y se pierda su ubicación.

(ORDEN DE APREHENSION...)

A la Excelentísima Señora
Condoleezza Rice
Secretaria de Estado
Washington, D.C.



**ORDEN DE APREHENSION**

El 8 de junio de 2005, el Juez Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, libró orden de aprehensión en contra de **MARIA DEL ROSARIO MORENO VAZQUEZ,** dentro de la causa penal número 66/2005, por su probable responsabilidad en la comisión del delito de **FALSIFICACION DE DOCUMENTO PÚBLICO,** previsto en el artículo 244, fracción I, y sancionado en el artículo 243, primer párrafo, ambos del Código Penal Federal, vigente en la época en que sucedieron los hechos.

La conducta que se le atribuye a la reclamada y por la que se libró orden de aprehensión en su contra, es punible conforme a la legislación de ambos países con pena privativa de la libertad, cuyo máximo no es menor de un año, tal y como lo establece el artículo 2, numerales 1 y 3, del Tratado de Extradición entre los Estados Unidos Mexicanos y los Estados Unidos de América, y se encuentra comprendida en el numeral 10 de su apéndice.

Los elementos constitutivos del delito que motivaron al Juez Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, a librar la orden de aprehensión en contra de la reclamada, son los siguientes:

**HECHOS**

**MARIA DEL ROSARIO MORENO VAZQUEZ** estuvo casada con José Fernando Castillo Tapia, con quien procreó a sus menores hijos [redacted] Los menores de edad vivían con su madre después que ésta se divorció de su padre, en el domicilio ubicado [redacted] Naucalpan, Estado de México, [redacted]

**MARIA DEL ROSARIO MORENO VAZQUEZ** y José Fernando Castillo Tapia convinieron judicialmente en que ambos ejercerían la patria potestad de los menores de edad y la custodia correspondería a **MARIA DEL ROSARIO MORENO VAZQUEZ,** teniendo José Fernando Castillo Tapia el derecho de convivir y visitar a los menores.

Dicho convenio fue incumplido por **MARIA DEL ROSARIO MORENO VAZQUEZ,**



toda vez que el 28 de febrero de 2004, al acudir José Fernando Castillo Tapia a visitar a sus hijos al domicilio antes precisado y no encontrarlos, le preguntó a su exsuegra María Elena Vázquez Saucedo por ellos, quien le manifestó que no se encontraban, ya que se habían ido con su mamá, sin decirle a donde. Al efecto, la señora Vázquez Saucedo únicamente le entregó una carta, en la cual **MARIA DEL ROSARIO MORENO VAZQUEZ** le decía que había sustraído a sus menores hijos de ese domicilio para salir de la ciudad, sin mencionar el destino.

En consecuencia, a José Fernando Castillo Tapia le surgió la sospecha de que sus hijos habían sido trasladados a los Estados Unidos de América, ya que la señora **MARIA DEL ROSARIO MORENO VAZQUEZ** alguna vez le comentó que en octubre de 2003, se casó con una persona estadounidense que conoció por internet, solicitándole permiso para sacar a sus hijos del país, a lo cual Castillo Tapia se negó, indicándole que era mejor que primero se estabilizaran como pareja y luego convendrían en el permiso y las visitas recíprocas, situación que ella no aceptó.

Posteriormente, el 1° de marzo de 2004, José Fernando Castillo Tapia comenzó a investigar con compañeros de la escuela de sus hijos sobre el paradero de éstos, logrando conocer que el 27 de febrero de 2004 salieron del país, vía aérea, con destino a los Estados Unidos de América.

De las investigaciones realizadas por el agente del Ministerio Público de la Federación y los dictámenes periciales rendidos en el desarrollo de la averiguación previa, se conoció que en las solicitudes de pasaporte ordinario mexicano (OP-5), [redacted] a nombre de los menores [redacted] consta el nombre de José Fernando Castillo Tapia. Sin embargo, su firma y huella digital fueron falsificadas, confirmándose de esta manera que él nunca dio su autorización ni consentimiento para que sus hijos salieran del país.

De las conductas antes narradas se desprenden los indicios suficientes para acreditar la probable responsabilidad de **MARIA DEL ROSARIO MORENO VAZQUEZ,** en la comisión del delito de **FALSIFICACION DE DOCUMENTO PUBLICO.**

Los hechos relatados y los elementos de prueba aportados dentro de la investigación de los mismos, motivaron al Juez Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, a decretar la orden de aprehensión en contra de la reclamada, en los términos ya señalados.




De conformidad con lo dispuesto por los artículos 3 y 10 del Tratado de Extradición entre los Estados Unidos Mexicanos y los Estados Unidos de América, se ofrecen y acompañan las siguientes:

**PRUEBAS**

1. Declaración ministerial del 2 de marzo de 2004, a cargo de José Fernando Castillo Tapia, ante el agente del Ministerio Público de la Federación adscrito a la Dirección General de Asuntos Policiales Internacionales e Interpol.
2. Informe rendido el 21 de julio de 2004, por el Director de Normatividad de la Secretaría de Relaciones Exteriores, ante el agente del Ministerio Público de la Federación Titular de la Mesa Segunda Investigadora, al cual se adjuntan los documentos que sustentaron la expedición de los pasaportes a nombre de [redacted] y **MARIA DEL ROSARIO MORENO VAZQUEZ.**
3. Ficha de identificación con la fotografía de [redacted]
4. Ficha de identificación con la fotografía de **MARIA DEL ROSARIO MORENO VAZQUEZ.**
5. Ficha de identificación con la fotografía de [redacted]
6. Dictamen en materia de grafoscopía, rendido el 17 de marzo de 2004, por el perito L. Aldo Crisanto Molina, ante el agente del Ministerio Público de la Federación adscrito a la Dirección General de Asuntos Policiales Internacionales e Interpol.
7. Dictamen en materia de identificación de huellas dactilares rendido el 17 de marzo de 2004, por la perito C.D. Carmen Farfán Rodríguez, ante el agente del Ministerio Público de la Federación adscrito a la Dirección General de Asuntos Policiales Internacionales e Interpol.
8. Resolución del 3 de junio de 2005, emitida por el Juez Segundo de Distrito en el Estado de México, en virtud de la cual declina su competencia a favor del Juez Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal.
9. Oficio 1859 del 3 de junio de 2005, suscrito por la Juez Segundo de Distrito en el Estado de México, a través del cual remite los autos de la causa penal 42/2005, seguida en contra de **MARIA DEL ROSARIO MORENO VAZQUEZ,** por su probable responsabilidad en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO**

9



**PUBLICO,** al Juez Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal.

10.   Acuerdo del 7 de junio de 2005, dictado por el Juez Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, a través del cual se da por recibido de la causa penal 42/2005, instruida en contra de **MARIA DEL ROSARIO MORENO VAZQUEZ,** por su probable responsabilidad en la comisión del delito de **FALSIFICACION DE DOCUMENTO PUBLICO** que le envió el Juez Segundo de Distrito en el Estado de México y ordena la apertura de la causa penal 66/2005, únicamente para efectos de resolver respecto de la orden de aprehensión solicitada por el agente del Ministerio Público de la Federación.

11.   Resolución del 8 de junio de 2005, emitida por el Juez Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, dentro de la causa penal 66/2005, en virtud de la cual libró orden de aprehensión en contra de **MARIA DEL ROSARIO MORENO VAZQUEZ,** por su probable responsabilidad en la comisión del delito de **FALSIFICACION DE DOCUMENTO PUBLICO.**

12.   Texto de las disposiciones legales que determinan los elementos constitutivos del delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO,** la pena correspondiente al ilícito, así como las reglas de prescripción, vigentes en la época de comisión del delito que se le imputa a la reclamada.

Los elementos de prueba antes relacionados, así como las disposiciones legales y constancias procesales aludidas, se acompañan a este escrito, debidamente legalizadas y con su correspondiente traducción al idioma inglés, en cumplimiento a lo establecido en los numerales 5 y 6 del artículo 10 del Tratado en comento.

**MEDIA FILIACION**

De conformidad con lo dispuesto por el artículo 10 numeral 2 inciso e) del Tratado de Extradición celebrado entre los Estados Unidos Mexicanos y los Estados Unidos de América, que fundamenta la presente solicitud, a continuación se proporcionan los datos que se han logrado obtener de la media filiación de la reclamada:



| Nombre | **MARIA DEL ROSARIO MORENO VÁZQUEZ.** |
|---|---|
| Nombre del padre | Enrique Moreno Rubiales. |
| Nombre de la madre | María Elena Vázquez Saucedo. |
| Lugar de nacimiento | México, Distrito Federal. |
| Fecha de nacimiento | [redacted] 1961. |
| Edad | 44 años. |
| Estatura | 1.57 metros aproximadamente. |
| Tez | Blanca. |
| Cabello | Castaño obscuro. |
| Ojos | Café claro. |
| Señas particulares | Pecas. |

Con fundamento en el artículo 19 del Tratado de Extradición entre los Estados Unidos Mexicanos y los Estados Unidos de América, el gobierno de México solicita el aseguramiento y entrega de los artículos, instrumentos, objetos de valor o documentos relacionados con el delito, aún cuando no hayan sido utilizados para su ejecución o que de cualquier manera puedan servir de prueba en el proceso instruido en su contra, que se encuentren en posesión de la reclamada **MARIA DEL ROSARIO MORENO VAZQUEZ** al momento de su detención o sean detectados posteriormente.

Por lo anterior, en un volumen debidamente legalizado, acompañados de su traducción al inglés, me permito adjuntar los documentos que indican el delito que se imputa al reclamado, los elementos que constituyen aquél, lugar, tiempo y circunstancias de ejecución, así como los datos que arrojan los procedimientos penales por las autoridades mexicanas para comprobar el cuerpo del delito y hacer probable la responsabilidad de **MARIA DEL ROSARIO MORENO VAZQUEZ,** incluyendo la resolución que ordena su aprehensión, mismos que presento como verídicos que son ante Vuestra Excelencia.

Por lo arriba señalado Señora Secretaria, al encontrarse la petición que hago dentro de los supuestos descritos por el Tratado de Extradición vigente entre nuestros dos países, al tiempo que, en mi opinión, se satisfacen tanto los procedimientos internos del Estado mexicano como los requisitos del Tratado invocado para dar curso a esta solicitud

9

de **EXTRADICION**, ruego a Vuestra Excelencia su amable intervención para obtener de las autoridades estadounidenses competentes, incluso de las judiciales, la extradición de los Estados Unidos de América a México del reclamado.

Al agradecer a Vuestra Excelencia anticipadamente su valiosa cooperación en la extradición solicitada, hago propicia la ocasión para renovarle las seguridades de mi más alta y distinguida consideración.

EMBAJADA DE MEXICO WASHINGTON

ESTADOS UNIDOS MEXICANOS

Carlos de Icaza
Embajador

C9

**05046**

Washington, DC, July 20, 2006

Madam Secretary:

On behalf of my Government, I have the honor to refer to the Extradition Treaty signed between the United Mexican States and the United States of America, to request from Your Excellency's Government on the basis of Article 2 and, in particular, Article 10 of the Extradition Treaty, the **FORMAL** extradition of **MARIA DEL ROSARIO MORENO VAZQUEZ.** This person is wanted by Mexican authorities for allegedly committing the crime of **FALSIFICACION DE DOCUMENTO PUBLICO *(FORGERY OF A PUBLIC DOCUMENT).*** As a result, an arrest warrant was issued for the accused as part of criminal case number 66/2005 by the Third District Judge in Federal Criminal Proceedings of the Federal District.

The Mexican government has learned that **MARIA DEL ROSARIO MORENO VAZQUEZ** may be located at [redacted] Salem, Alabama, and it is feared that the accused will move to another location and no longer be found.

(ARREST WARRANT...)

To Her Excellency
Condoleezza Rice
Secretary of State
Washington, D.C.

## ARREST WARRANT

On June 8, 2005, the Third District Judge in Federal Criminal Proceedings of the Federal District, issued an arrest warrant in criminal case number 66/2005 for **MARIA DEL ROSARIO MORENO VAZQUEZ** due to her alleged perpetration of the crime of **FALSIFICACION DE DOCUMENTO PUBLICO *(FORGERY OF A PUBLIC DOCUMENT)*** set forth under Articles 244 Section I and punishable under the first paragraph of Article 243 of the Federal Penal Code, in force at the time the crime was committed.

The conduct attributed to the accused, upon which the arrest warrant was issued, is punishable by the laws of both countries by maximum prison sentence of no less than one year, as established in Article 2, paragraph 1 and 3 of the Extradition Treaty signed by the United Mexican States and the United States of America, in relation to paragraph 10 of the Treaty's appendix.

The elements constituting the crime, which led the Third District Judge in Federal Criminal Proceedings of the Federal District to issue an arrest warrant for the accused, are based on the following:

## FACTS

**MARIA DEL ROSARIO MORENO VAZQUEZ** was married to Jose Fernando Castillo Tapia. They had two children, and respectively. The children lived with their mother after she divorced the children's father at the home located at *Naucalpan,* State of Mexico,

**MARIA DEL ROSARIO MORENO VAZQUEZ** and Jose Fernando Castillo Tapia formed a legal agreement that they would both have parental authority over the children, with **MARIA DEL ROSARIO MORENO VAZQUEZ** having full custody and Jose Fernando Castillo Tapia having the right to be with the children and visit them.

This agreement was violated by **MARIA DEL ROSARIO MORENO VAZQUEZ** on February 28, 2004, when Jose Fernando Castillo Tapia went to visit the children at the aforementioned home and they were not there. He asked his former mother-in-law, Maria Elena Vazquez Saucedo, where they were and she told him that they were not there because they had left with their mother, but she did not mention where they had gone. Mrs. Vazquez Saucedo only gave him a letter, in which **MARIA DEL ROSARIO MORENO VAZQUEZ** told him that she had taken the children from the home and left the city. She did not mention where they were going.

As a result, Jose Fernando Castillo Tapia became suspicious that his children had been taken to the United States, given that **MARIA DEL ROSARIO MORENO VAZQUEZ** had mentioned that in October 2003, she married an American that she had met on the Internet and asked Castillo Tapia if she could take the children out of the country. Castillo Tapia did not grant her permission, stating that it would be best if she stabilized the relationship first and later come

to an agreement over granting permission and reciprocal visits. She did not accept this offer, however.

Later, on March 1, 2004, Jose Fernando Castillo Tapia began asking his children's schoolmates about the whereabouts of his children. He learned that on February 27, 2004, they had left the country on a plane to the United States.

According to the investigation carried out by the federal attorney, and according to the expert reports issued on the preliminary investigation, the regular Mexican passport applications (OP-5) numbered [redacted] and [redacted] filed for the minors [redacted] and [redacted] included the name of Jose Fernando Castillo Tapia. However, his signature and digital fingerprint were forged, which confirms that he never gave his authorization or consent so that his children could leave the country.

Given the conduct described above, there is enough evidence to prove that **MARIA DEL ROSARIO MORENO VAZQUEZ** committed the crime of **FORGERY OF A PUBLIC DOCUMENT.**

The aforementioned facts and the evidence gathered during the investigation led the Third District Judge in Federal Criminal Procedures of the Federal District, to issue an arrest warrant for the accused, under the aforementioned terms.

In compliance with Articles 3 and 10 of the Extradition Treaty signed between the United Mexican States and the United States of America, the Mexican government attaches the following:

**EVIDENCE**

1. Statement given on March 2, 2004 by Jose Fernando Castillo Tapia before the federal attorney assigned to the General Directorate on International Police Affairs and Interpol.
2. Report submitted on July 21, 2004 by the Policy Director of the Secretariat of Foreign Affairs to the federal attorney, who is the head of the second investigating working group. The report includes documents that support the issuance of the passports to [redacted] and **MARIA DEL ROSARIO MORENO VAZQUEZ.**
3. Identification card with the photograph of [redacted]
4. Identification card with the photograph of **MARIA DEL ROSARIO MORENO VAZQUEZ.**
5. Identification card with the photograph of [redacted].
6. Handwriting report submitted on March 17, 2004 by the expert L. Aldo Crisanto Molina to the federal attorney assigned to the General Directorate on International Police Affairs and Interpol.
7. Fingerprint report submitted on March 17, 2004 by the expert C.D. Carmen Farfan Rodriguez to the federal attorney assigned to the General Directorate on International Police Affairs and Interpol.

8. Decision issued on June 3, 2005 by the Second District Judge of the State of Mexico, through which the judge remits the case to the Third District Judge in Federal Criminal Procedures of the Federal District.
9. Official document 1859 dated June 3, 2005 signed by the Second District Judge of the State of Mexico with which the judge remits criminal case number 42/2005 against **MARIA DEL ROSARIO MORENO VAZQUEZ**, for her alleged perpetration of the crime of **FORGERY OF A PUBLIC DOCUMENT**, to the Third District Judge in Federal Criminal Procedures of the Federal District.
10. Writ dated June 7, 2005 issued by the Third District Judge in Federal Criminal Procedures of the Federal District, through which he receives criminal case number 42/2005 against **MARIA DEL ROSARIO MORENO VAZQUEZ**, for her alleged perpetration of the crime of **FORGERY OF A PUBLIC DOCUMENT**, which was remitted by the Second District judge of the State of Mexico. The judge then orders the opening of criminal case number 66/2005 to issue the arrest warrant requested by the federal attorney.
11. Decision issued on June 8, 2005 by the Third District Judge in Federal Criminal Procedures of the Federal District, as part of criminal case number 66/2005, through which he issued an arrest warrant for **MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged perpetration of the crime of **FORGERY OF A PUBLIC DOCUMENT**.
12. Text of the legal provisions that define the elements that constitute the crime of **FORGERY OF A PUBLIC DOCUMENT**, the corresponding sentence, and the statute of limitations, in force at the time the crime the accused is charged with was committed.

The elements of proof, as well as the legal provisions and procedures mentioned above, are hereby attached with their corresponding translation into the English language, in accordance with Article 10, paragraphs 5 and 6 of the Extradition Treaty between the United Mexican States and the United States of America.

**GENERAL PERSONAL DATA**

In compliance with Article 10(2)(e) of the Extradition Treaty signed between the United Mexican States and the United States of America, upon which the present request is based, the following are the available general personal data of the accused:

| | |
|---|---|
| **NAME** | **MARIA DEL ROSARIO MORENO VAZQUEZ** |
| **FATHER'S NAME** | **ENRIQUE MORENO RUBIALES** |
| **MOTHER'S NAME** | **MARIA ELENA VAZQUEZ SAUCEDO** |
| **PLACE OF BIRTH** | **MEXICO CITY, FEDERAL DISTRICT** |
| **DATE OF BIRTH** | [redacted] **1961** |
| **AGE** | **44 YEARS OLD** |
| **HEIGHT** | **APPROXIMATELY 1.57 METERS (5'3")** |
| **COMPLEXION** | **FAIR** |
| **HAIR** | **DARK BROWN** |
| **EYES** | **LIGHT BROWN** |
| **ADDITIONAL INFORMATION** | **FRECKLES** |

In compliance with Article 19 of the Extradition Treaty signed between the United Mexican States and the United States of America, the Mexican government requests the confiscation and surrender of all items, instruments, and objects of value, or any documents related to the crime, even if they were not used to carry out said crime, that were in the possession of the accused, **MARIA DEL ROSARIO MORENO VAZQUEZ**, at the time of his arrest, or at a later date, which could be used as evidence within the criminal investigation being carried out against him.

Based on the above, I am enclosing in a duly legalized package, along with translations into English, the documents that indicate, apart from the crime with which the accused is charged, the elements of said crime, the place, time and circumstances in which the crime was committed, and the information resulting from the criminal proceedings instituted by Mexican authorities to prove the crime and to determine the alleged culpability of **MARIA DEL ROSARIO MORENO VAZQUEZ.** The package, which also includes the arrest warrant for this person, is submitted to Your Excellency as the true information that it is.

In light of the above, Madam Secretary, and since this petition satisfies the conditions described in the Extradition Treaty currently in force between our two countries and, to the best of my knowledge, also satisfies the internal procedures of the Mexican State as well as the procedures established by the Extradition Treaty to process this petition of **EXTRADITION**, I hereby request Your Excellency's kind mediation so as to secure from the competent U.S. authorities, including the judicial authorities, the extradition of **MARIA DEL ROSARIO MORENO VAZQUEZ** from the United States to Mexico.

We thank you in advance for Your Excellency's valuable assistance concerning this matter. I avail myself of this opportunity to renew to Your Excellency the assurances of my highest and most distinguished consideration.

Carlos de Icaza
Ambassador



06376

Washington, D.C., a 25 de agosto de 2006

La Embajada de México saluda atentamente al Departamento de Estado y se refiere a la solicitud formal de extradición internacional de **MARIA DEL ROSARIO MORENO VAZQUEZ,** contenida en la nota número 05046 del 17 de julio de 2006, por su probable responsabilidad en la comisión del delito de **FALSIFICACION DE DOCUMENTO PUBLICO**.

Al respecto, la Embajada de México desea solicitar al Departamento de Estado sea el amable conducto para presentar a la Oficina de Asuntos Internacionales del Departamento de Justicia la transcripción del artículo 244, fracción I, del Código Penal Federal, relativo a la descripción del delito imputado a la reclamada y que a la letra establece lo siguiente:

**CODIGO PENAL FEDERAL VIGENTE**

**(vigente)**

Título Décimotercero "Falsedad"

Capítulo IV "Falsificación de documentos en general"

Artículo 244. El delito de falsificación de documentos se comete por alguno de los medios siguientes:

"I. Poniendo una firma o rúbrica falsa, aunque sea imaginaria, o alterando una verdadera. "

"... "

EMBAJADA DE MEXICO WASHINGTON, D.C.

La Embajada de México aprovecha la oportunidad para reiterar al Departamento de Estado las seguridades de su atenta y distinguida consideración.

Al Departamento de Estado
Washington, D.C.

TRANSLATION

06376

The Embassy of Mexico presents its compliments to the Department of State and makes reference to the formal request for the international extradition of **MARIA DEL ROSARIO MORENO VAZQUEZ,** contained in note number 05046 dated July 17, 2006, for his alleged perpetration of the crime of **FORGERY OF A PUBLIC DOCUMENT**.

In this regard, the Embassy of Mexico requests that the Department of State act as the proper channel by which to deliver to the Office of International Affairs of the Department of Justice the text of Article 244 Section 1 of the Federal Penal Code, which defines the crime the accused is charged with. The article reads:

**FEDERAL PENAL CODE CURRENTLY IN FORCE**

**(in force)**

Thirteenth Title "Forgery"

Chapter IV "Forgery of documents in general"

Article 244. The crime of forging documents is committed through one of the following means:

"I. Placing a false signature, even if it is invented, or altering a real signature."

"…"

The Embassy of Mexico would like to avail itself of this opportunity to renew to the Department of State the assurances of its high and distinguished consideration.

Washington, DC, August 25, 2006

To the Department of State
Washington, DC

U.S. Department of State

**CERTIFICATE TO BE ATTACHED TO DOCUMENTARY EVIDENCE ACCOMPANYING REQUISITIONS IN THE UNITED STATES FOR EXTRADITION**

**AMERICAN FOREIGN SERVICE**

Mexico, D.F., Mexico, July 5, 2006
Place and Date *(mm-dd-yyyy)*

vid T. Donahue, Minister Counselor for Consular Affairs
Name — Title

of th of America at Mexico, D.F., Mexico

here e annexed papers, being supporting documentation

prop pon an application for the extradition from the United States of America

del Rosario Moreno Vazquez

cha of Forgery of Public Document

alleg mitted in the United Mexican States

a e uthenticated so as to entitle them to be received in evidence for similar purposes by

the t the United Mexican States,

as re T ited States Code, Section 3190.

es I hereunto sign my name and cause my seal of office to be affixed

day of July, 2006.
Month and Year

[signature]
Signature

David T. Donahue
Minister Counselor for Consular Affairs
Type Name and Title

in Stat ca.

DS-36
09-2005

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA )

DANIEL L. McMANUS
VICE CONSUL

Before me, ______________, Consul of the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified, personally appeared Pamela Marino Ruiz who, being duly sworn deposes and says as follows:

1. My name is Pamela Marino Ruiz and I reside at Mexico City

2. I have been familiar with the English and Spanish languages for the past 20 years, I made the annexed translation from Spanish to English. The said translation is to the best of my knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

[signature]

Subscribed and sworn to before me this ______ day of JUL - 5 2006 2____.

[signature]
Consul of the United States of America

DANIEL L. McMANUS
VICE CONSUL

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA )

**DANIEL L. McMANUS**
VICE CONSUL

Before me, ______________________, Consul of the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified, personally appeared María Concepción Torrijos Pérez who, being duly sworn deposes and says as follows:

1. My name is María Concepción Torrijos Pérez and I reside at Mexico City
2. I have been familiar with the English and Spanish languages for the past 10 years, I made the annexed translation from Spanish to English. The said translation is to the best of my knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

Ma. Concepción Torrijos

Subscribed and sworn to before me this _______ day of JUL - 5 2006 2____.

Consul of the United States of America

**DANIEL L. McMANUS**
VICE CONSUL

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) ss:
EMBASSY OF THE UNITED )
STATES OF AMERICA )

I, DANIEL L. McMANUS VICE CONSUL Consul of the United States of America, duly commissioned and qualified, certify that the signature and official seal of:

**MYRNA GRANADOS HERNANDEZ**
(Name of Foreign Official)

an official empowered to act in the capacity designated in the annexed document, to which faith and credit are due, are true and correct.

For the contents of the annexed document I assume no responsibility.

(Signature of Consular Officer)

DANIEL L. McMANUS
VICE CONSUL
(Type Name of Consular Officer)

JUL - 5 2006
(Date)

# EXHIBIT 1



FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE]

## MINISTERIAL STATEMENT

In Mexico City, on March, 02, 2004, before the undersigned, Lic. Mariano Martinez Garcia, Federal Public Prosecutor in the service of the International Police Affairs Department and INTERPOL, who legally acts along with the attesting witnesses and who at the end sign and attest for the legal attestation -

------------------------------ **HE CERTIFIES**: -----------------

---------- ---That in this legal act, in this Office with address at Avenida de la Moneda, number 333, Colonia Lomas de Sotelo, Delegacion Miguel Hidalgo in Mexico City, Mr. **JOSE FERNANDO CASTILLO TAPIA** voluntarily appears before this Federal Attorney General's Office and he identifies himself with a document issued by the Universidad Nacional Autonoma de Mexico with number [redacted] which has a color photograph in the top right-hand corner of it that coincides with the features of the appearing party. This is attached in a copy according to what Article 208 of the Federal Code of Criminal Procedure stipulates. The appearing party is notified about the penalties that committing perjury before an authority different from a judicial one entails, so he is urged to say the truth in this statement, and having said this, the deponent states that his name is as it has been written, that he is forty-five years old, he was born on [redacted] 1958 in [redacted] Fraccionamiento Jardines de San Mateo, Naucalpan, Estado de Mexico, zipcode [redacted] his telephone number is [redacted] he is divorced, hi has a postgraduate degree, he doesn't like to drink alcohol, to do drugs and to smoke cigarette; he is a federal employee who voluntarily appears before this Federal Attorney General's Office in order to state the following: -------------------------------------

-------------------------------- **HE STATES** ----------------

-------- -- That about 1984 he married a woman, Maria del Rosario Moreno Vazquez, she was born on [redacted] 1961 in Mexico City. They had two kids: [redacted] who is [redacted] and [redacted] (illegible) the deponent states that on 1992 he got divorced from Maria del Rosario Moreno Vazquez (illegible) who was in charge of taking care of the minors. On Saturday, February 28 he went as usual to visit the minors in [redacted] Fraccionamiento Lomas Verdes, Naucalpan, Estado de Mexico, where Maria Elena Vazquez Saucedo told him that Maria del Rosario Moreno and his two kinds had gone away from the country and she gave him a letter where she tells the reasons that made her to take that decision; the deponent states that he knew that Maria del Rosario Moreno has gotten married again with an American man, so he assumed that his kids might be in the United States of America because according to Enrique A. E. Ahrens Jahp, Principal of the Colegio "La



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

Salle" of Estado de Mexico, where the minor [redacted] attends and told the principal that he was going to leave school because he was going to live in the United States of America. Therefore, the telephone numbers where the minors might be are given to the deponent: [redacted] derived from this documents, the deponent reported to a Public Prosecutor in Naucalpan, Estado de Mexico, who began the complaint of the facts number [redacted] likewise, the deponent says that the only suspicion he has is that they might be in the Western Coast of that country and he gives the following telephone numbers: [redacted] which is Maria Elena Vazquez Saucedo's number, who is the minors' maternal grandmother and the numbers of the Parish Church near to their address: [redacted] or [redacted] or [redacted] this last telephone number is from its last employment because he states that he is sure that Maria del Rosario is going to call their relatives. Without no further to state, this legal action is prepared and filed signing at the bottom all the ones who took part in this legal certify. Lic. Mariano Martinez Garcia, Federal Public Prosecutor assigned to the International Police Affairs Bureau and INTERPOL, solved and signs ------------------------------------------------------
------------------------ **I ATTEST** ----------------------------

[SIGNATURE]
JOSE FERNANDO CASTILLO TAPIA
DEPONENT

[SIGNATURE]
LIC. MARIANO MARTINEZ GARCIA

[ILLEGIBLE]

[SIGNATURE]
LIC. DAVID JOAQUIN CORTES

[SIGNATURE]
LIC. MIGUEL ANGEL CORTAZAR LARA

# EXHIBIT 2



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

[SEAL: MEXICAN COAT OF ARMS
UNTED MEXICAN STATES
MINISTRY OF FOREIGN AFFAIRS]

**OFFICE OF STAFF**
**DELEGATE'S OFFICE**
**REGULATIONS OFFICE**

**Ref.: DGD – A DN02971**

**CONFIDENTIAL DOCUMENT**

Mexico City on July 21, 2004

**IN RE: FILE: A.P. PGR/NAU/87/2004 – II**

**LIC. VICTOR MARTINEZ CABRERA**
Federal Public Prosecutor
Head of the Investigating Second Desk
Deputy Attorney General's Office of Criminal Procedure "B"
Desk Two
Mexican Attorney General's Office
By hand.-

Regarding your official letter number 1705/2004, on July 13, 2004, received in this Office on July 15, 2004, I send a certified copy of the documents that hold the issuing of the passport made out to the following persons:

[redacted] with passport number [redacted] with date of issue **February 17, 2004.**
[redacted] with passport number [redacted] with date of issue **February 17, 2004.**
**MARIA DEL ROSARIO MORENO VAZQUEZ** with passport number [redacted] with date of issue **Septembeer 22, 2003.**

Regarding the second point of your official letter, I inform that they were issued through the passport regulations currently in force.

Without further information, I send you my best regards.

RESPECTFULLY,

HEAD OF REGULATIONS OFFICE

FORMA CG - 1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

[SIGNATURE]

LIC. HUMBERTO LUGO GUERRERO

Paseo de la Reforma 255, Piso 13, Col. Cuauhtemoc, C.P. 06500, Mexico City
Tels. 50633000, fax: 91574304, Ext. 4008 E-mail dgdelegaciones@sre.gob.mx



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA [EMBLEM : MINISTRY OF FOREIGN AFFAIRS]

# MEXICAN ORDINARY PASSPORT APPLICATION

SECRETARIA DE RELACIONES EXTERIORES

TRÁMITE: Primera Vez ☐ Canje ☑ Vigencia: 1 año ☒ 5 Años ☐ 10 años ☐

DATOS GENERALES DEL SOLICITANTE

3. APELLIDO PATERNO: MORENO

4. APELLIDO MATERNO: VAZQUEZ

NOMBRE(S): MARIA DEL ROSARIO

FECHA DE NACIMIENTO: 1961 SEXO: X

LUGAR DE NACIMIENTO: MEXICO, D. F. — D. F.

DOMICILIO: ALTEÑA II, LOMAS VERDES — NAUCALPAN — ESTADO DE MÉXICO

DATOS DE LOS PADRES DEL SOLICITANTE

Padre: MORENO RUBIALES ENRIQUE MEXICANA

Madre: VAZQUEZ SAUCEDO MARIA ELENA MEXICANA

TEZ: BLANCA ☒ OJOS: CAFE CLARO ☒ CABELLO: CASTAÑO OSCURO ☒

OTRA: LENTES

SEÑAS PARTICULARES: PECAS

PERSONA A QUIEN NOTIFICAR EN CASO DE ACCIDENTE: MARIA ELENA VAZQUEZ SAUCEDO

DOMICILIO: SAN JORGE 15, ALTEÑA II TELEFONO: 53...38

TLALNEPANTLA DE BAZ, EDO. MEX, 19 DE SEPTIEMBRE

Manifiesto bajo protesta de decir verdad y considerando las penas en que incurren quienes faltan a ella en los términos de las disposiciones penales aplicables, que los datos asentados en esta solicitud son verídicos y que los documentos presentados son auténticos y legítimos.

FIRMA DEL TITULAR DEL PASAPORTE — FIRMA DEL SOLICITANTE

HUELLAS DIGITALES: PULGAR DERECHO, INDICE DERECHO, INDICE IZQUIERDO, INDICE DERECHO, INDICE DERECHO





FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

000021

[EMBLEM : MINISTRY OF FOREIGN AFFAIRS]

MEXICAN ORDINARY PASSPORT APPLICATION (OP-5)

Primera Vez [ ] Canje [X] Vigencia: 1 año [ ] 5 años [X] 10 años [ ]

OBSERVACIONES

NUMERO DE SOLICITUD 289

Antes de llenar la presente solicitud de pasaporte lea detenidamente su contenido.
Anote los datos solicitados o cruce en cada caso el cuadro correspondiente, respetando los espacios destinados sobre todo los campos destinados a firma.
Nota: La presente solicitud deberá ser llenada con tinta negra y letra de molde.

LUGAR Y FECHA: Naucalpan, Estado de México, Febrero 16, 2004

1. No. DE PASAPORTE ANTERIOR (EN CASO DE CANJE) 2. CURP

APELLIDO PATERNO 4. APELLIDO MATERNO

NOMBRE(S) 6. FECHA DE NACIMIENTO 1984 7. SEXO Masculino Femenino

8. NACIDO EN: a) Entidad Federativa México b) Municipio Distrito Federal

IDENTIFICACION QUE PRESENTA Pasaporte

CAMPOS DE CONTROL

10. DOMICILIO

Calle y Número Exterior | Núm. Interior | Colonia y Código Postal Lomas Verdes

Población Naucalpan | Estado o País México

Teléfonos: Domicilio: Trabajo:

11. EN CASO DE ACCIDENTE O FALLECIMIENTO AVISAR A: Maria del Rosario Moreno Vázquez

CON DOMICILIO EN: San ... Lomas Verdes TELEFONO 5...238

Manifiesto bajo protesta de decir verdad, conociendo las penas en que incurren quienes faltan a ella en los términos de las disposiciones penales aplicables, que soy mexicano, que los datos asentados en esta solicitud son verídicos y que los documentos presentados son auténticos y válidos.

DE CONFORMIDAD CON LOS DATOS CONSIGNADOS EN EL PASAPORTE AL REQUERIDO

FIRMA DEL SOLICITANTE

Ma. de Fatima Castillo ...

FORMA C G - 1 A



UNITED MEXICAN STATES

### UNITED MEXICAN STATES
### FREE AND SOVEREING ESTADO DE MEXICO

## DIVISION OF THE REGISTRY OFFICE IN CHARGE OF CIVIL STATUS

PROCURADURIA GENERAL
DE LA
REPUBLICA

### 8522156
### CONTROL NUMBER

---

### BIRTH CERTIFICATE

NAMES: ▮▮▮▮▮▮▮▮

DATE OF BIRTH: OCTOBER 10 1994                                        20:30

PRESENTED:        ALIVE (X)    DEAD ( )    GENDER ( )    MALE ( )    FEMALE (X)

BIRTHPLACE: ▒░LOMAS VERDES  MIGUEL HIDALGO FEDERAL DISTRICT.

APPEARANCE:  THE FATHER ( )   THE MOTHER ( )   BOTH (X)   OTHER ( )   REGISTERED ( )

#### PARENTS

NAME:    JOSE FERNANDO CASTILLO TAPIA              AGE  36    NACIONALITY    MEXICAN    .
NAME:    MARIA DEL ROSARIO MORENO VAZQUEZ          AGE  33    NACIONALITY    MEXICAN    .

#### GRANDPARENTS

PATERNAL GRANDFATHER FERNANDO CASTILLO                  NACIONALITY    MEXICAN    .
PATERNAL GRANDMOTHER  ESTELA TAPIA                      NACIONALITY    MEXICAN    .
MATERNAL GRANDFATHER ENRIQUE MORENO                     NACIONALITY    MEXICAN    .
MATERNAL GRANDMOTHER MARIA ELENA VAZQUEZ               NACIONALITY    MEXICAN    .

#### ATTESTORS OF IDENTITY

NAME   MARIA ISABEL GOMEZ DE LA MADRID          AGE    28      NATIONALITY MEXICAN
NAME   NORA VALENZUELA SUMANO                    AGE    25      NATIONALITY MEXICAN

. BIRTH CERTIFICATE No ▮▮▮▮                        C.U.R.P. ▮▮▮▮▮▮▮

|  |  |
|---|---|
| ILLEGIBLE TEXT | [ILLEGIBLE SEAL] |
| LIC. MARGARITA MARISCAL DE OLVERA          (SIGNED) |  |
| NAME                        SIGNATURE |  |



FORMA CG - 1A

ESTADOS UNIDOS MEXICANOS

PROCURADURIA GENERAL
DE LA
REPUBLICA

000024

En caso de que el titular de este pasaporte requiera de asistencia o protección del gobierno mexicano, se recomienda acudir a la representación diplomática o consular más cercana. Para su protección escriba [illegible] y dirección de una persona a quien se pueda avisar en caso de emergencia.

Nombre: María del Rosario Moreno

Dirección: [redacted] Altena II

Entidad Federativa: Estado de México

C.P. [redacted] Teléfono: [redacted]

DOMICILIO DEL TITULAR / HOLDER'S ADDRESS / ADRESSE DU TITULAIRE

Dirección: [redacted] Altena II

Entidad Federativa: Estado de México

C.P. [redacted] Teléfono: [redacted]

Firma del titular / Holder's signature / Signature du titulaire

ESTE PASAPORTE ES VALIDO PARA TODOS LOS PAISES
THIS PASSPORT IS VALID FOR ALL COUNTRIES
CE PASSEPORT EST VALABLE POUR TOUS PAYS

ESTADOS UNIDOS MEXICANOS

MEX

[redacted]

MEXICANA

1994

[redacted]

MEXICO, D.F.

F

17 DIC 1997

17 DIC 2002

NAUCALPAN, MEX.

[redacted]

F<MEXCASTILLO<MCRENO<<MAPIA<DE<FATIMA<<<<<<<

38035311114MEX9410109F0212171<<<<<<<<<<<<<<6

025

ASUNTOS POLICIALES
ESPECIAL

NCIA HUMANITARIA





FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

000026

NTOS POLICIALES
INTERPOL

FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

64 9

000005

PASAPORTE

Estados Unidos Mexicanos

P<MEXMORENO<VAZQUEZ<<MARIA<DEL<ROSARIO<<<<<

La Secretaría de Relaciones Exteriores de los Estados Unidos Mexicanos solicita a las autoridades competentes que permitan al titular de este pasaporte de nacionalidad mexicana el libre paso sin retraso u obstáculo alguno y, dado el caso, le otorguen toda la asistencia y protección posibles.

The Ministry of Foreign Affairs of the United Mexican States kindly requests all competent authorities to permit the holder of this passport, a Mexican national, free transit without delay or hindrance and in case of need to give him all lawful aid and protection.





FORMA CG-1A
ESTADOS UNIDOS MEXICANOS
PROCURADURIA GENERAL DE LA REPUBLICA
10
000028
020
PASAPORTE
Estados Unidos Mexicanos
MEXICANA
P<MEXCASTILLO<TAPIA<<JOSE<FERNANDO<<<<<<<<<

FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

OP-7
PERMISSION GRANTED BY THE PARENTS OR PERSONS THAT HAVE THE CUSTODY OF GUARDIANSHIP IN ORDER TO ISSUE THE PASSPORT

OBSERVATIONS

PLACE AND DATE

WE THE UNDERSIGNED, PARENTS AND/OR GUARDIAN OF THE MINOR_________________STATE THAT ACCORDING TO ARTICLE 14 OF THE PASSPORT REGULATION AND 215 OF THE GENERAL IMMIGRATION LAW IN EFFECT, THE CONSENT SO THAT OUR SON OR DAUGHTER CAN BE ABLE TO GET OUT OF THE MEXICAN TERRITORY SO WE ASKED FOR THE ORDINARY PASSPORT ISSUING UNDER THE NAME OF THE PERSON THAT APPEARS IN THE OP-5 FORM OF THIS REQUEST WITH A VALIDITY OF _______ BEING UNDERSTOOD THAT FOR THE MINORS UNDER THREE YEARS OLD SAID DOCUMENT SHALL BE ISSUE FOR AT LEAST 12 MONTHS.

(FATHER OR GUARDIAN) (MOTHER OR GUARDIAN)

DATOS DEL PADRE O TUTOR

Como Padre [X] Como Tutor [ ]

Para realizar el trámite me identifico con el siguiente documento: Pasaporte

No: [redacted]

Expedido (a) por: Secretaría de Relaciones Exteriores

De fecha: 06 | 11 | 2003 (día / mes / año)

DATOS DE LA MADRE O TUTORA

Como Madre [X] Como Tutora [ ]

Para realizar el trámite me identifico con el siguiente documento: Pasaporte

No: [redacted]

Expedido (a) por: Secretaría de Relaciones Exteriores

De fecha: 22 | 09 | 2003 (día / mes / año)



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

000030

[EMBLEM : MINISTRY OF FOREIGN AFFAIRS]

MEXICAN ORDINARY PASSPORT APPLICATION (OP-5)

Primera Vez [ ] Canje [X] Vigencia: 1 año [ ] 5 años [X] 10 años [ ]

OBSERVACIONES

NÚMERO DE SOLICITUD N 6290

Antes de llenar la presente solicitud de pasaporte lea detenidamente su contenido.

Anote los datos solicitados o cruce aspada en el cuadro correspondiente, respetando los espacios destinados sobre todo los campos destinados a firma.

Nota: La presente solicitud deberá ser llenada con tinta negra y letra de molde

LUGAR Y FECHA: Naucalpan Estado de México Febrero 16 2004

No. DE PASAPORTE ANTERIOR (EN CASO DE CANJE) 2. CURP

APELLIDO PATERNO

4. APELLIDO MATERNO

5. NOMBRE(S)

6. FECHA DE NACIMIENTO 1989

7. SEXO Masculino Femenino

4. NACIDO EN:

Entidad Federativa: MEXICO

Municipio: DISTRITO FEDERAL

IDENTIFICACIÓN QUE PRESENTA: PASAPORTE

10. DOMICILIO

Calle, Número Exterior

Número Interior

Colonia y Código Postal: LOMAS VERDES

Población: NAUCALPAN

Estado o País: MEXICO

Teléfono Domicilio / Trabajo

CAMPOS DE CONTROL

11. EN CASO DE ACCIDENTE O FALLECIMIENTO AVISAR A: MARIA DEL ROSARIO MORENO VAZQUEZ

CON DOMICILIO EN: SAN JORGE 15, LOMAS VERDES TELÉFONO 53447238

Manifiesto bajo protesta de decir verdad y conociendo las penas en que incurren quienes faltan a ella en los términos de las disposiciones penales aplicables, que soy mexicano, que los datos asentados en esta solicitud son verídicos y que los documentos presentados son auténticos y legales.

FIRMA DE CONFORMIDAD CON LOS DATOS CONTENIDOS EN EL PASAPORTE AL RECIBIRLO

FIRMA DEL SOLICITANTE

Luis Fernando Castillo Moreno

HUELLAS DIGITALES

ÍNDICE IZQUIERDO | ÍNDICE IZQUIERDO | ... | ÍNDICE DERECHO | ÍNDICE DERECHO | ÍNDICE DERECHO

ESTA FORMA ES DE LIBRE REPRODUCCIÓN



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

N° 593462

000031

033

GOBIERNO DEL DISTRITO FEDERAL

ACTA DE NACIMIENTO

CURP

| ENTIDAD | DELEGACION | JUZGADO | ACTA | AÑO | CLASE | FECHA DE REGISTRO |
|---|---|---|---|---|---|---|
| 09 | 06 | 0C | 01411 | [illegible] | [illegible] | [illegible] |

REGISTRADO

NOMBRE [illegible]

FECHA DE NACIMIENTO 31 DE AGOSTO DE 1988 — HORA 17.39

LUGAR DE NACIMIENTO LOMAS VIRREYES M. HIDALGO D.F.

FUE PRESENTADO: VIVO X MUERTO — SEXO: MASCULINO X FEMENINO

COMPARECIO: EL PADRE — LA MADRE — AMBOS — EL PROPIO REGISTRADO — PERSONA DISTINTA

PADRES

NOMBRE DEL PADRE: JOSE FERNANDO CASTILLO TAPIA

NACIONALIDAD: MEXICANA — OCUPACION [illegible] FEDERAL — EDAD 30 AÑOS

NOMBRE DE LA MADRE: MARIA DEL ROSARIO MORENO [illegible]

NACIONALIDAD: MEXICANA — OCUPACION AMA DE CASA — EDAD 27 AÑOS

DOMICILIO(S): CUAUHTEMOC 170 DOCTORES CUAUHTEMOC D.F.

ABUELOS

ABUELO PATERNO: FERNANDO CASTILLO FERNANDEZ

NACIONALIDAD: MEXICANA

ABUELA PATERNA: ESTELA TAPIA CORDERO

NACIONALIDAD: MEXICANA

DOMICILIO(S): AGRICULTORES 155-29 [illegible] IZTAPALAPA D.F.

ABUELO MATERNO: ENRIQUE MORENO MORIANO

NACIONALIDAD: MEXICANA

ABUELA MATERNA: MARIA ELENA VAZQUEZ [illegible]

NACIONALIDAD: MEXICANA

DOMICILIO(S): SAN JORGE 11 [illegible] VERDES NAUCALPAN, MEXICO

TESTIGOS

NOMBRE: JOSE ALFREDO AGUILAR FLORES

NACIONALIDAD: MEXICANA — EDAD 23 AÑOS

DOMICILIO: DR. GARCIA DIEGO [illegible] DOCTORES CUAUHTEMOC D.F.

NOMBRE: RODOLFO FLORES [illegible]

NACIONALIDAD: MEXICANA — EDAD 30 AÑOS

DOMICILIO: DR. GARCIA DIEGO [illegible] DOCTORES CUAUHTEMOC D.F.

SE DIO POR TERMINADO EL ACTO Y FIRMAN [illegible], PARA CONSTANCIA, LOS QUE EN ELLA INTERVINIERON Y SABEN HACERLO Y LOS QUE NO, IMPRIMEN SU HUELLA DIGITAL. DE CIERRA EL ACTA QUE EL ACTUARIO, DOY FE. LIC. [illegible]

CUATRO FIRMAS ILEGIBLES RUBRICAS.

HUELLA DIGITAL DEL REGISTRADO

ES COPIA FIEL DE SU ORIGINAL Y SE EXPIDE EN LA CIUDAD DE MEXICO [illegible] DE 2000

EL JUEZ [illegible] DEL REGISTRO CIVIL DE LA CIUDAD DE MEXICO

LIC. [illegible] MORAN

UNTOS POLICIALES E INTERPOL

HUMANITARIA

[illegible] DE LA REPUBLICA ... MEXICANOS

MINISTERIO PUBLICO

C (o+)



FORMA C G - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

000032

034



FORMA CG-1 A

PROCURADURIA GENERAL DE LA REPUBLICA

000033

035

FORMA C G - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

000034

036

C67



FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

OP-7
PERMISSION GRANTED BY THE PARENTS OR PERSONS THAT HAVE THE CUSTODY OF GUARDIANSHIP IN ORDER TO ISSUE THE PASSPORT

OBSERVATIONS

PLACE AND DATE

WE THE UNDERSIGNED, PARENTS AND/OR GUARDIAN OF THE MINOR________________ STATE THAT ACCORDING TO ARTICLE 14 OF THE PASSPORT REGULATION AND 215 OF THE GENERAL IMMIGRATION LAW IN EFFECT, THE CONSENT SO THAT OUR SON OR DAUGHTER CAN BE ABLE TO GET OUT OF THE MEXICAN TERRITORY SO WE ASKED FOR THE ORDINARY PASSPORT ISSUING UNDER THE NAME OF THE PERSON THAT APPEARS IN THE OP-5 FORM OF THIS REQUEST WITH A VALIDITY OF ______ BEING UNDERSTOOD THAT FOR THE MINORS UNDER THREE YEARS OLD SAID DOCUMENT SHALL BE ISSUE FOR AT LEAST 12 MONTHS.

(FATHER OR GUARDIAN) (MOTHER OF GUARDIAN)

DATOS DEL PADRE O TUTOR

Como Padre [X] Como Tutor [ ]

Para realizar el trámite me identifico con el siguiente documento Pasaporte

No. [redacted]

Expedido (a) por Secretaría de Relaciones Exteriores

De fecha 06 | 11 | 2003
día mes año

DATOS DE LA MADRE O TUTORA

Como Madre [X] Como Tutora [ ]

Para realizar el trámite me identifico con el siguiente Documento Pasaporte

No. [redacted]

Expedido (a) por Secretaría de Relaciones Exteriores

De fecha 22 | 04 | 2003
día mes año



# EXHIBIT 3

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

000039

CA Database Portal - Microsoft Internet Explorer

File Edit View Favorites Tools Help

Back Stop Refresh Home Search Favorites History Mail Print Edit

Address https://cadatabase.state.gov/index_ssl.html Go Links

Database Portal

Home ACS CST DV/DVIS INK IV/IVIS NIV Passport Public Admin

Issuing Post Name: MEXICO CITY

Control Number

Surname

Given Name

| Passport Number | Gender | Date of Birth | Nationality |
|---|---|---|---|
| Regular | Male | | MEX |

Place of Birth: Distrito Federal (DF)

City of Birth

| Fingerprint 1 | Fingerprint 2 |
|---|---|
| Finger # 2 | Finger # 7 |

Adjudication Data

Adjudication 1:

Interviewed by:

Decision: issued

Adjudicated by: FALLSE

Adjudication Date: 11-JUN-2001 08 57

Done Internet

Start Inbox - Microsoft Outlook CA Database Portal - ... 8:43 AM

041

...NTOS POLICIALES E INTERPOL

...IA HUMANITARIA

# EXHIBIT 4



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

000040

042

CA Database Portal - Microsoft Internet Explorer

File Edit View Favorites Tools Help

Back Stop Refresh Home Search Favorites History Mail Print Edit

Address https://cadata.ca.state.gov/index_ssl.html Go Links

Database Portal

Home ACS CST DV/DVIS INK IV/IVIS NIV Passport Public Admin

Issuing Post Name display ink report links

MEXICO CITY

Surname

MORENO VAZQUEZ

Given Name

MARIA DEL ROSARIO

| Passport Number | Gender | Date of Birth | Nationality |
|---|---|---|---|
| Regular | Female | 961 | MEX |

Control Number

Place of Birth

Distrito Federal (DF)

City of Birth

Fingerprint 1 Fingerprint 2

Finger # 2 Finger # 7

## Adjudication Data

| Adjudication 1: | Interviewed by: | | Decision: | Issued |
|---|---|---|---|---|
| | Adjudicated by: | FALLSE | Adjudication Date: | 11-JUN-2001 08 58 |

javascript display_ink() Internet

Start Inbox - Microsoft Outlook CA Database Portal - ... 8:41 AM

TOS JUDICIALES INTERPOL

# EXHIBIT 5

FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

20

000041

CA Database Portal - Microsoft Internet Explorer

File Edit View Favorites Tools Help

Back Stop Refresh Home Search Favorites History Mail Print Edit

Address https://cadata.ca.state.gov/index_ssl.html Go Links

NIV

Issuing Post Name: MEXICO CITY

Control Number

Surname

Given Name

| Passport Number | Gender | Date of Birth | Nationality |
|---|---|---|---|
| Regular | Female | 1994 | MEX |

Place of Birth: Distrito Federal (DF)

City of Birth

Fingerprint 1: Fingerprint Waived

Fingerprint 2: Fingerprint Waived

## Adjudication Data

Adjudication 1: Interviewed by: Decision: Issued

Adjudicated by: FALLSE Adjudication Date: 11-JUN-2001 08:57

Done Internet

Start Inbox - Microsoft Outlook CA Database Portal 8:44 AM

043

NERAL DE ASUNTOS POLICIALES
NACIONALES E INTERPOL

HUMANITARIA

# EXHIBIT 6



FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

[ILLEGIBLE SEAL]

PLANNING, DEVELOPMENT AND INNOVATION
INSTITUTIONAL COORDINATION
COORDINATION GENERAL DIVISION OF
EXPERT SERVICES
DOCUMENTARY SPECIALTIES
DEPARTMENT : DOCUMENTOLOGY
FOLIO : 13611
OFFICIAL LETTER : DGAPII/2638/0550/04-AAH
**IN RE: A GRAPHOSCOPY REPORT IS SENT**

Mexico City, on March 17, 2004.

**LIC. MARIANO MARTINEZ GARCIA**
**FEDERAL PUBLIC PROSECUTOR**
**IN THE SERVICE OF THE FEDERAL INVESTIGATING OFFICE**
**INTERNATIONAL POLICE AFFAIRS**
**DEPARTMENT AND INTERPOL.**
**BY HAND**

The undersigned Graphoscopy and Documentoscopy expert appointed to take part regarding his said trade, before you I state the following:

My intervention was required in order to deal with your request addressed to the COORDINATION GENERAL DIVISION OF EXPERTS SERVICES, which in its leading part reports that:

"...I want to let you know that in order to get the original document printing where the signature was appended, I ask the Ministry of Foreign Affairs the original document and it was denied; nevertheless, we have been allowed to carry out the direct comparison in the installations of the Regional Office of Naucalpan Ministry, Estado de Mexico.

In virtue of the aforementioned, I will appreciate your collaboration in order to appoint the suitable personnel for the signature comparison in the form OP7, which made possible to issue the passport made out to the minors, [redacted] both with the surname [redacted]".





PROCURADURIA GENERAL
DE LA
REPUBLICA

Once the request is read, made the entrusted errands and observed the documents that have to be studied, I can infer that the problem to be solved is the following:

**SET OUT PROBLEM.**

Determining if the signatures that are in the following described documents belong or not to JOSE FERNANDO CASTILLO TAPIA.

**DOCUMENTOLOGY DESCRIPTION**

In this intervention, it is questioned if JOSE FERNANDO CASTILLO TAPIA'S signatures are the ones that appear in the following documents:

1.- Mexican Ordinary Passport application (OP-5) made out to [redacted] with application number [redacted] place and date Naucalpan, Estado de Mexico, on February 16, 2004, which presents in the top right margin the abbreviations of the Ministry of Foreign Affairs (SRE, by its Spanish abbreviations); likewise, the form OP-7, PERMISSION GIVEN BY THE PARENTS OR PERSONS THAT HAVE THE CUSTODY OR GUARDIANSHIP FOR THE PASSPORT ISSUING, is on the back of this.

2.- Mexican Ordinary Passport application (OP-5) made out to [redacted] with application number [redacted] place and date Naucalpan, Estado de Mexico, on February 16, 2004, which presents in the top right margin the abbreviation of the Ministry of Foreign Affairs (SRE, by its Spanish abbreviations); likewise, the form OP-7, PERMISSION GIVEN BY THE PARENTS OR PERSONS THAT HAVE THE CUSTODY OR GUARDIANSHIP FOR THE PASSPORT ISSUING, is on the back of this.

Documents that I can see in its original for its study, comparison and Photographic printings in the Ministry of Foreign Affairs of Naucalpan, Estado de Mexico.

**ORIGINAL DOCUMENT DESCRIPTION**

As original documents I was given a Sample of the writing and JOSE FERNANDO CASTILLO TAPIA'S signatures, which consists of two pages with date of March 17, 2004, which was made before the undersigned, which was presented in original for its study and comparison.



FORMA C G - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

**STUDY METHOD**

**1.- ANALITYCAL**

I.- THOROUGH AND DETAILED ANALISYS OF THE QUESTIONED SIGNATURES

II.- THOROUGH AND DETAILED ANALISYS OF THE QUESTIONED SIGNATURES

**2.- COMPARATIVE**

I.- COMPARISON AND ASSESSMENT OF THE OBTAINED RESULTS

**3.- DEDUCTIVE**

I.- CONCLUSION.

**4.- ILLUSTRATIVE**

I.- GRAPHIC ENCLOSURE

**STUDY**

First of all, I analyzed the QUESTIONED SIGNATURES in order to know and assess its general traits and its graphic special features, getting the following:

| GENERAL TRAITS | BASE OF COMPARISON |
|---|---|
| **WRITING SKILL** | GOOD |
| **SPEED SKILL** | FAST |
| **LINE TENSION** | FIRM |
| **LINE PRESSURE** | MIXED |
| **SLANT** | SLIGHTLY TO THE LEFT |

| TRAITS | BASE OF COMPARISON |
|---|---|
| **1.- INITIAL FEATURE OF THE SIGNATURE** | BUD |
| **2.- POSITIONING OF THE** | IT COMES FROM THE UPPER PART |



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

| BEGINNING OF THE SIGNATURE | FROM THE TOP TO THE BOTTOM |
|---|---|
| 3.- LOOP BELOW THE LOWER LINE | IT PRESENTS |
| 4.- INK DISCHARGE ABOVE THE UPPER LINE | IT PRESENTS |
| 5.- LINKS | LARGE AND CURVED |
| 6.- FINAL STROKE | LARGE AND CURVED |
| 7.- FINAL FEATURE | BLURRED |

Regarding the questioned signatures I made a similar study to the previous one, which characteristics are mentioned below:

| GENERAL TRAITS | QUESTIONED SIGNATURES |
|---|---|
| WRITING SKILL | REGULAR |
| SPEED SKILL | MEDIUM |
| LINE TENSION | WEAK |
| LINE PRESSURE | HEAVY |
| SLANT | MARKED TO THE LEFT |

| TRAITS | BASE OF COMPARISON |
|---|---|
| 1.- INITIAL FEATURE OF THE SIGNATURE | HOOK OR ROUND |
| 2.- POSITIONING OF THE BEGINNING OF THE SIGNATURE | IT COMES FROM THE LOWER PART FROM THE BOTTOM TO THE TOP |
| 3.- LOOP BELOW THE LOWER LINE | IT DOES NOT PRESENTS |
| 4.- INK DISCHARGE ABOVE THE UPPER LINE | IT DOES NOT PRESENTS |
| 5.- LINKS | SHORT AND ANGULAR |
| 6.- FINAL STROKE | SHORT AND STRAIGHT |
| 7.- FINAL FEATURE | ABRUPT |

Once the previous has been done, I compared the obtained traits of the QUESTIONED SIGNATURES and the questioned signatures and the results were the following:

| QUESTIONED SIGNATURES | GENERAL TRAITS | QUESTIONED SIGNATURES |
|---|---|---|
| GOOD | WRITING SKILL | REGULAR |
| FAST | SPEED SKILL | MEDIUM |

FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

| FIRM | **TENSION LINE** | WEAK |
|---|---|---|
| MIXED | **PRESSURE LINE** | HEAVY |
| SLIGHTLY TO THE LEFT | **SLANT** | MARKED TO THE LEFT |

| QUESTIONED SIGNATURES | TRAITS | QUESTIONED SIGNATURES |
|---|---|---|
| BUD | **1.- SIGNATURE INITIAL FEATURE** | IN A HOOK OR ROUND |
| IT COMES FROM THE UPPER PART, FROM THE TOP TO THE BOTTOM | **2.- POSITIONING OF THE BEGINNING OF THE SIGNATURE** | IT COMES FROM THE LOWER PART, FROM THE BOTTOM TO THE TOP |
| IT PRESENTS | **3.- LOOP BELOW THE LOWER LINE** | IT DOES NOT PRESENTS |
| IT PRESENTS | **4.- INK DISCHARGE IN ABOVE THE UPPER LINE** | IT DOES NOT PRESENTS |
| LARGE AND CURVED | **5.- LINKS** | SHORT AND ANGLED |
| LARGE AND CURVED | **6.- FINAL STROKE** | SHORT AND STRAIGHT |
| BLURRED | **7.- FINAL FEATURE** | ABRUPT |

From the study emerges that the questioned signatures have differences among the QUESTIONED SIGNATURES that will help me to elaborate a categorical conclusion in this respect.

From the previous technical Graphoscopic result along with my knowledge of this matter, I formulate the following:

**CONCLUSION**

**ONLY ONE.-** THE SIGNATURES THAT APPEAR IN THIS DOCUMENT AS WELL AS IN OTHER DESCRIBED QUESTIONED DOCUMENTS IN THIS REPORT REGARDING THE GIVEN SIGNATURES AS BASE OF COMPARISON **DO NOT BELONG TO JOSE FERNANDO CASTILLO TAPIA.**

NOTE: A two-page Writing Sample of JOSE FERNANDO CASTILLO TAPIA is attached.



FORMA CG - 1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

**RESPECTFULLY,**
**THE EXPERT**
**[SIGNATURE]**
**L. ALDO CRISANTO MOLINA**

[ILLEGIBLE SEAL]





FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

[ILLEGIBLE SEAL]

(THERE IS A HAND-WRITTEN TEXT THAT SAYS:
Mexico City, on March 17, 2004
Jose Fernando Castillo Tapia

I voluntarily make this sample of my writing before the Federal Public Prosecutor in order to be an element of comparison; likewise, for the purposes that might come up.)



FORMA CG-1

000104

(THERE IS A HAND-WRITTEN TEXT THAT SAYS:
Mexico City, on March 17, 2004
Jose Fernando Castillo Tapia.)

PROCURADURIA GENERAL DE LA REPUBLICA

105

D DE DISTRITO DE MEX N DE JUAREZ

GENERAL

ERIO PUBLICO N MESA DOS DE JUAREZ DE MEXICO



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

| [EMBLEM: MEXICAN ATTORNEY GENERAL'S OFFICE] | QUESTIONED SIGNATURES | DGAPII/2638/0550/04AAH OFFICIAL LETTER: 13611 |
|---|---|---|



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

| [EMBLEM: MEXICAN ATTORNEY GENERAL'S OFFICE] | QUESTIONED SIGNATURES | DGAPII/2638/0550/04AAH<br>OFFICIAL LETTER: 13611 |
|---|---|---|

107





FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

| [EMBLEM: MEXICAN ATTORNEY GENERAL'S OFFICE] | BASE OF COMPARISON SIGNATURES | DGAPII/2638/0550/04AAH OFFICIAL LETTER: 13611 |
|---|---|---|



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

| [EMBLEM: MEXICAN ATTORNEY GENERAL'S OFFICE] | **BASE OF COMPARISON DOCUMENT** | DGAPII/2638/0550/04AAH OFFICIAL LETTER: 13611 |
|---|---|---|



FORMA CG-1A

DE LA REPUBLICA

| [EMBLEM: MEXICAN ATTORNEY GENERAL'S OFFICE] | QUESTIONED DOCUMENTS | DGAPII/2638/0550/04AAH OFFICIAL LETTER: 13611 |
|---|---|---|

SRE

OP-7

PERMISO QUE OTORGAN LOS PADRES O PERSONAS QUE EJERCEN LA PATRIA POTESTAD O TUTELA, PARA LA EXPEDICIÓN DE PASAPORTE

OBSERVACIONES

LUGAR Y FECHA

LOS QUE SUSCRIBIMOS PADRES Y/O TUTORES DEL MENOR MANIFESTAMOS, PARA LOS EFECTOS DEL ARTICULO 14 DEL REGLAMENTO DE PASAPORTES Y 215 DEL REGLAMENTO DE LA LEY GENERAL DE POBLACION EN VIGOR, EL CONSENTIMIENTO PARA QUE NUESTRO (A) HIJO (A) PUEDA SALIR DEL TERRITORIO DE LA REPUBLICA MEXICANA POR LO QUE SOLICITAMOS SE LE EXPIDA PASAPORTE ORDINARIO BAJO EL NOMBRE QUE APARECE EN EL FORMATO OP-5 DE LA PRESENTE SOLICITUD Y CON UNA VIGENCIA DE QUEDANDO EN EL ENTENDIDO QUE A MENORES DE TRES AÑOS DE EDAD SOLO SE LES EXPEDIRA DICHO DOCUMENTO POR UN PERIODO MAXIMO DE 12 MESES

(PADRE O TUTOR) Y (MADRE O TUTORA)

DATOS DEL PADRE O TUTOR

DATOS DE LA MADRE O TUTORA

FECHA: 16-03-04 PERITO: H. C. CH.

A.P. DGAPII/2551/04/0550/04-AAH





# EXHIBIT 7



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

[ILLEGIBLE SEAL]

PLANNING, DEVELOPMENT AND INNOVATION INSTITUTIONAL COORDINATION
COORDINATION GENERAL DIVISION OF EXPERT SERVICES
GENERAL DIVISION ATTACHED TO THE LABORATORIES
DEPARTMENT OF FEDERAL INVESTIGATION AGENTS IDENTIFICATION

Official Letter number: DGAPII/2551/0550/04-AAH
FOLIO : 13390-13425

**IN RE: A FEDERAL INVESTIGATION AGENTS IDENTIFICATION REPORT IS GIVEN**

Mexico City, on March 17, 2004.

**LIC. MARIANO MARTINEZ GARCIA**
Federal Public Prosecutor
In the service of the International Police Affairs
and Interpol
By hand.

The undersigned, Identification expert (FEDERAL INVESTIGATION AGENTS), appointed to take part regarding the Official Letter Number, DGAPII/2551/04/0550/04-AAH, presents the following.

R E P O R T

1.- SET OUT PROBLEM

Attaching the expressed lophoscopical printings in the form OP-7, which allowed the minors' passport issuing, [REDACTED] both with the surname [REDACTED] and carrying out the possible candidate qualifying comparison of the Data Base of the Fingerprint Automated System (Federal Investigation Agents), determining if there are or not Registral Data.





FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

2.- STUDY MATERIAL OR DOCUMENTS

A) In the Ministry of Foreign Affairs at Calle Mexicas number 63, Col. Santa Cruz Acatlan, Naucalpan, Estado de Mexico, two OP-7 forms were shown, which in the back have the father's or guardian's data, who identifies himself with passport number [redacted] issued by the said Ministry on November 6, 2003; each one with two lophoscopical fragments: one as LEFT FOREFINGER and the other one as RIGHT FOREFINGER, which are taken as a base in order to carry out said study.

3.- STUDY METHOD

This report is based on the morphology of the dactilograms that are going to be identified, such as delta, principal type, subtype, nuclear center, characteristic points situation, etc. within the data base of the Public Security National System, which has as a purpose to determine in an indubitable way the identity of the alive or death persons through the finger prints.

- The lophoscopical fragments that are in the back of the OP-7 forms were photographically fixed in the marked boxes as **LEFT FOREFINGER** and **RIGHT FOREFINGER.**
- The four lophoscopical fragments printed in the back of the OP-7 forms of the minors, [redacted] both with the surname [redacted] the Father's or Guardian's Data box, by their morphology and position of characteristic points, belong only to two dactilograms, so just two fragments are placed in: one of the left forefinger and the other one of the right forefinger.
- A case appointment was given, 34-07-0000142004, to the lophoscopical fragments obtained in the photographic reproduction study.
- The obtained lophoscopical fragments in the photographic reproduction are entered and are marked as No. 1 to the LEFT FOREFINGER and as No. 2 to the RIGHT FOREFINGER to the Federal Investigation Agents System in order to compare against the Data Base of the Public Security National System.

4.- RESULTS

Once the comparison of the lophoscopical fragments against the data base of the Public Security National System is made, the result was POSITIVE. The lophoscopical fragment number 1 against the dactilogram printed in the box of the left middle finger and the lophoscopical fragment number 2 against the





FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

printed dactilogram in the box of the right middle finger of the fingerprints record made out to:

ARTEMIO BARRERA HERNANDEZ, MALE with birth date of [REDACTED], 1955 with address at [REDACTED] SANTA CRUZ XOCHINTEPEC, Delegacion XOCHIMILCO, Mexico City. With Proceeding Control Number (N.C.P. by its Spanish abbreviation): [REDACTED] which belongs to the MEXICAN ATTORNEY GENERAL'S OFFICE, with identification key: Criminal Investigation 9545/D/94, for FORGERY OF DOCUMENTS, Kind of Record C (Criminal). The fingerprint record was taken on December 30, 1994.

After this dactiloscopic technical study, the following is formulated:

5.- CONCLUSION

ONLY ONE.- When the dactiloscopic comparison against the Data Base of the Federal Investigation Agents System is made, correspondence WAS found between the lophoscopical fragment number 1 against the left middle finger and the lophoscopical fragment number 2 against the right middle finger respectively of the fingerprint record made to: ARTEMIO BARRERA HERNANDEZ in the Data Base of the Public Security National System.

This record is given for the pertinent legal effects.

Note: seven photographic illustrations are attached hereto.

RESPECTFULLY,

THE FEDERAL INVESTIGATION AGENTS IDENTIFICATION EXPERT

[SIGNATURE]
REVIEWED BY

[SIGNATURE]
CARMEN FARFAN RODRIGUEZ

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF
EXPERT SERVICES]



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

#37

MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES
FEDERAL INVESTIGATION AGENTS IDENTIFICATION DEPARTMENT
Official Letter No. DGAPII/2551/04/055/04-AAH

(PADRE O TUTOR)

DATOS DEL PADRE O TUTOR

Como Padre ☒ Como Tutor ☐

Para realizar el trámite me identifico con el siguiente documento Pasaporte

No.

Expedido (a) por Secretaría de Relaciones Exteriores

De fecha 06 | 11 | 2003
dia mes año

INDICE IZQUIERDO

INDICE DERECHO

114

PROCURADURIA GENERAL DE LA REPUBLICA
DIRECCION GENERAL DE COORDINACION DE SERVICIOS PERICIALES

ILLUSTRATION Number 1.-
Lophoscopical printings that are in the box of the Father's or Guardian's Data of OP-7 form made out to the minor Luis Fernando Castillo Moreno.

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES]

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

000116

MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES
FEDERAL INVESTIGATION AGENTS IDENTIFICATION DEPARTMENT
Official Letter No. DGAPII/2551/04/055/04-AAH

115

PROCURADURIA GENERAL DE LA REPUBLICA
DIRECCION GENERAL DE COORDINACION DE SERVICIOS PERICIALES

ILLUSTRATION Number 2.-
Lophoscopical printings that are in the box of the Father's or Guardian's Data of the OP-7 form made out to the minor Maria Fatima Castillo Moreno.

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES]

FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

000117

39

MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES
FEDERAL INVESTIGATION AGENTS IDENTIFICATION DEPARTMENT
Official Letter No. DGAPII/2551/04/055/04-AAH

116

URADURIA GENERAL
DE LA REPUBLICA
N GENERAL DE COORDINACION
SERVICIOS PERICIALES

ILLUSTRATION Number 3.-
Left side: lophoscopical fragment of the left forefinger being studied.
Right side: left middle finger dactilogram made out to ARTEMIO BARRERA HERNANDEZ with Proceeding Control Number 3407000051089-T

Rev: I

Ref.:IT-IA-01

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF
EXPERT SERVICES]



FORMA C G - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

000118

MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES
FEDERAL INVESTIGATION AGENTS IDENTIFICATION DEPARTMENT
Official Letter No. DGAPII/2551/04/055/04-AAH

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF
EXPERT SERVICES]

ILLUSTRATION Number 4.-
Left side: lophoscopical fragment of the right forefinger being studied.
Right side: right middle finger dactilogram made out to ARTEMIO BARRERA HERNANDEZ with Proceeding Control Number 3407000051089-T



FORMA CG-1A

ESTADOS UNIDOS MEXICANOS

PROCURADURIA GENERAL
DE LA
REPUBLICA

000119

41

MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES
FEDERAL INVESTIGATION AGENTS IDENTIFICATION DEPARTMENT
Official Letter No. DGAPII/2551/04/055/04-AAH

**MEXICAN ATTORNEY GENERAL'S OFFICE**
**GENERAL DIVISION OF EXPERT SERVICES**

**NAME** BARRERA HERNANDEZ Artemio **FILE**
**SEX F**___ **M** X **ALIAS** **RECORD PGR**
**SIGNATURE (SIGNED)** **296/95**
**EXPERT** JLCL-ESC [SEAL: TEACHER] **DATE** DECEMBER 30, 94 **PHOTO 3657**

SERIE
THUMB
FOREFINGER
MIDDLE
RING FINGER
LITTLE FINGER
SECTION
SIMULTANEOUS LEFT PRINTING
SIMULTANEOUS RIGHT PRINTING

ILLUSTRATION Number 5.-
Photographic reproduction of the fingerprint record made out to ARTEMIO BARRERA HERNANDEZ with Proceeding Control Number 3407000051089-T

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE

Ref.:IT-IA-01

FO-IA-05

FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES
FEDERAL INVESTIGATION AGENTS IDENTIFICATION DEPARTMENT
Official Letter No. DGAPII/2551/04/055/04-AAH

PERSONAL DETAILS

WEIGHT 70 KILOS
HEIGHT 95 CM.
CONSTITUTION ROBUST

| HAIR COLOR | SKIN COLOR | CHIN |
|---|---|---|
| ( ) black | ( ) fair | ( ) acute |
| ( ) fair brown | ( ) fair dark | ( ) oval |
| (X) dark brown | ( ) dark | ( ) square |
| ( ) blond | ( ) black | (X) round |
| ( ) reddish | ( ) yellow | ( ) bilobed |
| ( ) albino | ( ) reddish | ( ) fossette |
| ( ) gray | DARK SKIN | ( ) profiles |
| **TYPE HAIR** | **EYES** | **NOSE** |
| ( ) wavy | (X) fair brown | (X) straight |
| (X) curly | ( ) dark brown | ( ) concave |
| ( ) straight | ( ) blue | ( ) convex |
| ( ) frizzy | ( ) green | ( ) turned up |
| ( ) wooly | ( ) dun | ( ) sinuous |
| **EYEBROWS** | **MOUTH** | **FOREHEAD** |
| ( ) thick | ( ) small | ( ) small |
| ( ) thin | (X) medium | ( ) medium |
| (X) semi-thick | ( ) big | (X) big |

ADDRESS [redacted] SANTA CRUZ XOCHINTEPEC.
TOWN XOCHIMILCO
STATE D.F. COUNTRY MEXICO

BIOGRAPHIC DATA

AGE 39 YEARS OLD [redacted] 1955
MARITAL STATUS MARRIED
SPOUSE HORTENCIA ARRIAGA CHAVEZ
NACIONALITY MEXICAN
BORN IN MORELIA, MICH.
SON OF DELFINO BARRERA (D)
AND GUADALUPE HERNANDEZ CALLEJAS
PROFESSION OR TRADE PHOTOGRAPHER
WORKS AT TRAVELING

PROFILE FRON NASAL BROKEN
PARTICULAR FEATURES BOTH LEGS FRONT PROFILE
TOTAL AMPUTATION
SPECIAL DATA
CRIME FORGERY OF OFFICIAL DOCUMENTS PRELIMINARY INVESTIGATION 9545/D/94
PAID INTO COURT FED. PUB. DESK IX -D

ILLUSTRATION Number 6.-
Photographic reproduction of the physical characteristics made out to ARTEMIO BARRERA HERNANDEZ with Proceeding Control Number 3407000051089-T

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF
EXPERT SERVICES]

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

MEXICAN ATTORNEY GENERAL'S OFFICE
COORDINATION GENERAL DIVISION OF EXPERT SERVICES
FEDERAL INVESTIGATION AGENTS IDENTIFICATION DEPARTMENT
Official Letter No. DGAPII/2551/04/055/04-AAH

ILLUSTRATION Number 7.-
Photographic reproduction in profile and in front made out to ARTEMIO BARRERA HERNANDEZ with Proceeding Control Number 3407000051089-T

[SEAL: MEXICAN COAT OF ARMS
UNITED MEXICAN STATES
MEXICAN ATTORNEY GENERAL'S OFFICE

Ref.:IT-IA-01

FO-IA-05

# EXHIBITS 8 & 9



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

**NAUCALPAN DE JUAREZ, ESTADO DE MEXICO, ON JUNE 3, 2005.**

**ONCE SEEN** the criminal case proceedings **42/2005**, in order to decide, within the law term, about the origin of the arrest warrant issuance requested by the Federal Prosecutor's Office against **MARIA DEL ROSARIO MORENO VAZAQUEZ** for her alleged responsibility of committing **FORGERY OF PUBLIC DOCUMENTS AND USE OF FALSE DOCUMENT** provided for Article 244 (II) related with Article 246 (VII) and sanctioned by Article 243, first paragraph, all of them within the Federal Criminal Code, as well as **VIOLATION GENERAL IMMIGRATION LAW** provided and sanctioned by Article 138 of the General Immigration Law against **ARTEMIO BARRERA HERNANDEZ** for his alleged responsibility of committing **FORGERY OF DOCUMENT** provided by Article 244 (I and V) and sanctioned by Article 243, first paragraph of the Federal Criminal Code and against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility of committing **FORGERY OF DOCUMENT AND USE OF FALSE DOCUMENT** provided by Article 244 (V and X) and sanctioned by another 243, first paragraph of the Federal Criminal Code, and

**RESULTING:**

**FIRST.-** By the official letter, 2383/2005 of May 30, 2005, received at the Common Correspondence Office of the District Court in Estado de Mexico, at Naucalpan de Juarez on the following June 2 and in the Clerk's Office of this Court for shift reasons at thirteen hours, fifteen minutes of that day, the Federal



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

Public Prosecutor, holder of the Desk Two in Naucalpan de Juarez, Estado de Mexico, brought the criminal investigation, **PGR/MEX/NAU-II/87/2005,** without an arrested person before the authorities in which he exercised criminal action against **MARIA DEL ROSARIO MORENO VAZQUEZ, ARTEMIO BARRERA HERNANDEZ and FRANCISCO JAVIER TOVAR MARTINEZ** for their alleged responsibility of committing the crimes aforementioned in the preface of this decision, asking for the issuance of the arrest warrant against the defendant.

**SECOND.-** On June two, two thousand and five, the preliminary investigation was brought with and registered as criminal action **42/2005** and giving the beginning date to the superiority, the intervention that is legal responsibility of the Federal Public Prosecutor of the ascription and providing separately all relating to the requested arrest warrant was reserved, and

**LEGAL REASONS**

**FIRST.-** This Second District Court in Estado de Mexico warns that in this cause it is possible to solve on the Court's own authority and in ancillary proceedings the joinder of remedies established in the criminal action 42/200 against **MARIA DEL ROSARIO MORENO VAZQUEZ, ARTEMIO BARRERA HERNANDEZ AND FRANCISCO JAVIER TOVAR MARTINEZ** for their alleged responsibility committing the aforementioned crimes with the criminal action opened in the Third District Court in Federal Criminal Procedure in the Federal District for the crime of Child Trafficking provided and sanctioned in the Article



FORMA C G - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

366 quater, second paragraph, related with the Article 366 ter (III) of the Federal Criminal Code; the previous in view of the following considerations.

**SECOND.-** Regarding what is important, they provide the Articles 479, 480, and 481 of the Federal Code of Criminal Procedure:

***"Article 479.*** *If the proceedings are followed in different Courts, the Court that knows about the oldest proceedings shall be competent to know about all that must be accumulated, and if these were begun in the same date, the Attorney General's Office shall designate.*

***"Article 480.*** *The accumulation shall be brought before the Court that, according to the previous Article, is able and the arouse incident shall be processed in the established way for the abilities by motion for charge of venue.*

***"Article 481.*** *The accumulation incidents shall be processed separately without suspending the procedure."*

**THIRD.-** Within the records that are in the prosecuted criminal action according to its significance the following stands out:

**1.-** Jose Fernando Castillo Tapia's statement, on March 2, 2004, where he reports possible acts which constitute a crime, that gave rise to the record number NJ/II/816/04-02 for taking his minor kids away from the country by his wife Maria del Rosario Moreno.

**2.-** Official letter number 1060/2004-SPP-B, subscribed by the attorney at law ELVIA ROCHA PATIÑO, Federal Public Prosecutor in charge of the Criminal Procedure Auxiliary Deputy Office "B" at Naucalpan de Juarez,



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

Estado de Mexico, through which it sends the original of the Preliminary Criminal Investigation number 0550/04-AAH by lack of competent jurisdiction which is tried against **MARIA DEL ROSARIO VAZQUEZ MORENO** for her alleged responsibility in committing **FORGERY AND USE OF FALSO DOCUMENT** in order to continue the integration of this until its total clarification.

**3.-** Original of the Preliminary Criminal Investigation number 0550/04-AAH.

**4.-** Graphoscopic Report on March 17, 2004, by the expert L. ALDO CRISANTO MOLINA, and concludes ONLY ONE: THE SIGNATURES IN THE DESCRIBED DOCUMENTS AS QUESTIONED IN THIS REPORT, DO NOT BELONG TO JOSE FERNANDO CASTILLO TAPIA FOR ITS EXECUTION REGARDING THE GIVEN SIGNATURES AS BASE OF COMPARISON.

**5.-** FEDERAL INVESTIGATION AGENTS IDENTIFICATION report on March 17, 2004 by the FEDERAL INVESTIGATION AGENTS IDENTIFICATION expert, CARMEN FARFAN RODRIGUEZ, which concludes that ONLY ONE: CARRYING OUT THE FINGERPRINT COMPARISON AGAINST THE DATA BASE OF THE FEDERAL INVESTIGATION AGENTS SYSTEM, CORRESPONDANCE WAS FOUND BETWEEN THE LOPHOSCOPICAL FRAGMENT NUMBER 1 AGAINST THE LEFT MIDDLE FINGER AND LOPHOSCOPICAL



PROCURADURIA GENERAL DE LA REPUBLICA

FRAGMENT NUMBER 2 AGAINST THE RIGHT MIDDLE FINGER RESPECTIVELY OF THE TEN-FINGER RECORD MADE OUT TO ARTEMIO BARRERA HERNANDEZ WITHIN THE DATA BASE OF THE PUBLIC SECURITY NATIONAL SYSTEM AND THEY ARE NOT JOSE FENANDO CASTILLO TAPIA'S.

**6.**- Official letter number DGD-A DN02971 on July 21, 2004 by the attorney at law HUMBERTO LUGO GUERRERO, Regulations Director, through whom the Federal Investigator Public Prosecutor is been sent a certified copy of the documents that hold the issuing of passports made out to [redacted] with passport number [redacted] with date of Februrary 17, 2004, [redacted] with passport number [redacted] of Februray 17, 2004, MARIA DEL ROSARIO MORENO VAZQUEZ with passport number [redacted] with date of September 22, 2003, as well as the previous documents that were issued through the Passport Regulations currently in force.

**7.**- Original Preliminary Criminal Investigation number A.P.PGR/NAU/148/2004-I, which is tried against ARTEMIO BARRERA HERNANDEZ AND/OR WHO TURN TO BE RESPOSIBLE for the alleged committing of FORGERY. This Preliminary Criminal Investigation was accumulated to this statement because it refers to the same acts



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

and it stands out mainly for what makes the facts being investigated within this statement.

**8.-** DACTILOSCOPIC IDENTIFICATION report with date of June 10, 2004 by the experts on dactiloscopic identification, PRAXEDIS IRMA GARCIA GUERRERO AND ROSA FLORES VAZQUEZ and by which it is concluded that "FIRST.- The printed DACTILOGRAMS in the finger card made out to CASTILLO TAPIA JOSE FERNANDO DO NOT match with the fingerprints printed in the OP7 forms with the caption right and left forefingers of the minors [redacted] SECOND.- the printed dactilograms in the OP7 form with the caption right and left forefingers of the minors [redacted] DO MATCH with the fingerprints of the right and left middle fingers of the finger card made out to BARRERA HERNANDEZ ARTEMIO.

**9.-** Breakdown of the Preliminary Criminal Investigation number A.P.SIEDO/UETMIO/13/2004 against MARIA DEL ROSARIO MORENO VAZQUEZ for her alleged commission of the crime of CHILD TRAFFICKING in which is already asked and passed the respective arrest warrant against MARIA DEL ROSARIO MORENO VAZQUEZ.

**10.-** Agreement of legal assistance request to the Extraditions General Division and Legal Assistance, International Legal Assistance General Division so as to through it and in view of the Circular C/005/99 sent by



FORMA CG-1 A

PROCURADURIA GENERAL DE LA REPUBLICA

the Mexican Attorney General as well as regarding the established by the Article 48: "The requests of legal assistance that may draw up in other countries and the requests of extradition that the Federal Public Prosecutors need, regarding their duties, shall be formulated to the Extraditions and Legal Assistance General Division, International Legal Assistance General Division, and according to the competence, shall be signed by the holders of the administrative units"; (II) "Criminal Procedure Deputy Attorney General's Office "A", "B", and "C" of said circular, the instructions are given by whom it may concern so that the request goes to the Extraditions General Division and Legal Assistance, the International Legal Assistance General Division, and in this way and with all the legal formalities, the presentation of Ministerial proceedings needed for the due integration of this statement, which has as an aim gathering the statement rendered before the Public Prosecutor regarding the acts of MARIA DE [sic] ROSARIO VAZQUEZ MORENO and the appearance in Court as witness of mister RONALD COONLEY, who currently live at [redacted] CEYLAN, ALABAMA, UNITED STATES OF AMERICA. (THE DATE OF THE OFFICIAL LETTER HAS TO BE WRITTEN DOWN AND MENTIONED WHERE IT IS INFORMED TO THE FEDERAL PUBLIC PROSECUTOR OF THE DESK 2 OF NAUCALPAN THAT HIS REQUEST OF LEGAL ASSISTANCE IS IN PROCESS OF BEING RELIEVED.)



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

**11.-** JOSE FERNANDO CASTILLO TAPIA'S appearance in Court, who, among the most outstanding, states that he has known the address where his kids are, [redacted], both [redacted] as well as their mother MARIA DEL ROSARIO MORENO VAZQUEZ and his current husband RONALD COONLEY, who live at [redacted] CEYLAN, ALABAMA in the United States of America, since a kids' classmate came into their house and gave them an envelope with their data, he also knows through their kids' friends that MARIA DEL ROSARIO MORENO VAZQUEZ met her current husband, RONALD COONLEY, by internet, and then they got married and RONALD COONLEY paid the expenses to obtain the passports of her minor kids, as well as the airplane tickets to go to the United States of America, that is why this Authority asked to gather the Ministerial Statement of MARIA DEL ROSARIO MORENO VAZQUEZ and RONALD COONLEY regarding the way they got the passports and the way the expenses of the passports and trip to the United States of America were defrayed, considering that MARIA DEL ROSARIO MORENO VAZQUEZ and her current husband, RONALD COONLEY, plotted to commit the crimes of FORGERY AND USE OF FALSE DOCUMENT, and PERJURY by MARIA DEL ROSARIO MORENO VAZQUEZ specifically when she lied regarding the OP5 and OP7 request for permission forms that are in this statement in pages 67 and 68, since in the entitled page



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

"PERMISSION GRANTED BY THE PARENTS THAT HAVE THE CUSTODY OR GUARDIANSHIP FOR THE PASSPORTS ISSUING" in force for said effects by the Article 14 of the Passports Regulations and the Article 215 of the currently in force Regulations of the Population General Law as it is expressly pointed out and where her signature and the deponent's forged are recorded. These are printed in the same statement and before the Responsible Authority of the Foreign Affairs Department and it has been shown that the deponent did not sign and did not appear before the Foreign Affairs Department, and admits that there is a signature alike to the one of MARIA DEL ROSARIO MORENO VAZQUEZ who signs in accordance with the data in the passport and says: I DULY SWORN IN KNOWING THE PENALTIES THAT MIGHT BE COMMITTED, AND IN THE TERMS OF THE LEGAL REGULATIONS, I STATE THAT I AM MEXICAN AND THE DATA IN THIS APPLICATION ARE TRUE AND THAT THE PRESENTED DOCUMENTS ARE AUTHENTIC AND LEGAL as it is recorded in the page number 126 of this investigation.

**12.-** Ministerial Statement of the accused FRANCISCO JAVIER TOVAR MARTINEZ, who among the most relevant, states that he is employee of the Foreign Affairs Department of the Municipality of Naucalpan de Juarez. He receives the documents for passport issuing and his function is mainly receiving the original documents and copies from the users and





FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

he has to check if the documents are original and tally with the data stated by the petitioners. As well as checking that the identifications of the petitioners match with physiognomic features of the ones who present them. Once integrated within the file with copies they are asked to sign the request and to print their fingerprints in order to be checked by the Delegate or Deputy delegate of the Foreign Affairs Department. Due to the aforementioned, and specifically regarding the minors' passports that are attached to the file, he makes clear that the same procedure was made because on February 16, 2004, he attended JOSE FERNANDO CASTILLO TAPIA AND MARIA DEL ROSARIO MORENO VAZQUEZ making clear that she said that they would issue the minors' passports, and he attended asking the following documents: birth certificate, minors' identification and parents' identification, a document checking is made so as they are correct and at the same time they check if the identifications accurately match with the physiognomic features of whom presents it, as well as the signature that appears in the identification, realizing in that moment that the minors were playing with their father. Once the files were incorporated, the parents were asked to sign and to print their finger prints, and once they signed they were asked to sit down because he was going to give the documents to the Delegate for its checking and continuing with the passports issuing in the different stages of it where different office employees take part in, and



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

what previously happened was told regarding the minors' issuing, [redacted] That is all regarding its function in the Foreign Affairs Department, and to the questions asked by this Authority, THE FIRST ONE, so the deponent states if he recognizes the photo that appears in the passport number [redacted] issued in favor of JOSE FERNANDO CASTILLO TAPIA, which is attached to this investigation and that said person was the same that appeared along with MARIA DEL ROSARIO MORENO VAZQUEZ for the passports issuing in the local office of the Foreign Affairs Department in the Municipality of Naucalpan de Juarez, Estado de Mexico, ANSWER: It is the same person that introduced himself with me, because in the line for the attention and reception of documents were FERNANDO CASTILLO TAPIA AND MARIA DEL ROSARIO MORENO VAZQUEZ, who I completely recognize as the same persons that attended. TO THE SECOND ONE. So the deponent states how is JOSE FERNANDO CASTILLO TAPIA physically, ANSWER.- he's almost 1.70 m tall, he has a medium constitution and wears a suit and he has good physical shape, TO THE THIRD ONE.- So the deponent states how is MARIA DEL ROSARIO MORENO VAZQUEZ physically. ANSWER. I don't remember well her physical shape. In respect of it, the Federal Public Prosecutor attests that the accuser, JOSE FERNANDO CASTILLO TAPIA has physical features



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

outstandingly different to the established as true by FRANCISCO JAVIER TOVAR MARTINEZ.

**13.-** Document by fax with page number 04226 from the General Division of International Police Affairs and INTERPOL through which the Ministerial Statement of JOSE FERNANDO CASTILLO TAPIA is sent and requests the location of his minor kids, [redacted] who were taken away by their mother MARIA DEL ROSARIO MORENO VAZQUEZ.

**14.-** Document by fax with page number 11971 from the Extraditions General Division and Legal Assistance through which the official letter number DGEAJ/7726/04 is sent with date of November 17, 2004 through which Legal Assistance of the Justice Department of the United States of America, Washington D.C. is required undersigned by the Director-General, LIC. MIGUEL NAVA ALVARADO, and directed by MRS. MERY ELLEN WARLOW, Director of the International Affairs of the Justice Department of the United States of America, Washington D.C. LINKING THE MOST RECENT DOCUMENT IS MISSING WHERE THE FEDERAL PUBLIC PROSECUTOR IS INFORMED THAT THE REQUESTED PRESENTATION OF THE LEGAL ASSISTANCE HASN'T BEEN PRESENTED.



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

**15.-** Appearance in court of JOSE FERNANDO CASTILLO TAPIA, who among the most relevant of this, states that he shows a written copy of February 2, 2004 to the Doctor LUIS ERNESTO DERBEZ BAUTISTA, Foreign Affairs Department, Doctor Santiago Creel Miranda, Government Department, and the Doctor Magdalena Carral, holder of the Migration National Institution, through which he requested that, according to the Article 8 and 117 of the Code of Criminal Procedure, they have to be aware of this Preliminary Investigation for the alleged committed crimes against legal interests protected by law in charge of the Federal Institutions, as well as the document addressed to this Authority through which I incorporate copies and I want to know if MARIA DEL ROSARIO MORENO VAZQUEZ'ES mother, MARIA ELENA VAZQUEZ SAUCEDO, appeared in court. Her address is [redacted] Colonia Lomas Verdes, Municipality of Naucalpan de Juarez, Estado de Mexico. As well as ARTEMIO BARRERA HERNANDEZ, I don't know his address. Their appearances are of Legal interest for the legal procedure that I am carrying out before the Family Courts, and with these documents, I ask that the Preliminary Investigation turns to the active procedure and in this way it can be solved according to the Law.

**FOURTH.-** The Articles 473 of the Federal Code of Criminal Procedures and the Article 18 of the Federal Criminal Code stipulate in which interests herein:



PROCURADURIA GENERAL DE LA REPUBLICA

*"**Article 473.** The accumulation shall take place:*

***I.*** *In the proceeding against the same person in terms of the Article 18 of the Criminal Code..."*

*"**Article 18.** There are concurred crimes, that is that with a plurality of conducts several crimes are committed."*

Of the previous transcriptions, comes out that that legal conditions of the incidence of accumulation of orders are:

**a).** The existence of different proceeding against a same person, in this case the defendant MARIA DEL ROSARIO MORENO VAZQUEZ.

**b).** Let the concurred crime operate.

The first legal condition of the incidence of accumulation, in kind, is authorized with the certified copy of the order number 964/04 with record date on Monday, June 19, 2204 issued by the Central Filing Office to the District Courts in Federal Criminal Procedure matter in the Federal District **(pages 392)** from which having received the official letter number **SIEDO/2216/2004** is emerged, through which the Federal Public Prosecutor attached to the Specialized Unit on Child Trafficking, Illegal Aliens, and Organs of the Mexican Attorney General's Office charged the preliminary investigations **SIEDO/UETMIO/13/2004** against **MARIA DEL ROSARIO MORENO VAZQUEZ** for Child Trafficking, which filing of charges was sent, for shift reasons, to the Third District Court of Federal Criminal Procedure; besides, the consignor



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

Federal District Attorney, in this legal action in its consignor page of May 30 of this year, exactly in point number six, subsection b) of the called chapter **"EVIDENTIARY ELEMENTS"** in pages 733 of proceedings where he refers: *"with the breakdown of the preliminary investigation number A.P. SIEDO/UETMIO/13/2004 against MARIA DEL ROSARIO MORENO VAZQUEZ for her alleged commission of CHILD TRAFFICKING in which is already asked and passed the arrest warrant against MARIA DEL ROSARIO MORENO VAZQUEZ."*

The second legal condition of the set out accumulation becomes effective, that is that the recorded written evidence shows the conducts of the defendant **MARIA DEL ROSARIO VAZQUEZ** constitute instantaneous crimes regarding that the carrying out of each one of them run out in the same moment in which all its constituent elements were carried out.

Regarding the crime of **CHILD TRAFFICKING** related with the others of **FORGERY OF DOCUMENTS, USE OF FALSE DOCUMENT and VIOLATION TO THE POPULATION GENERAL LAW** provided and sanctioned each of them by the Articles 366, quarter, second paragraph and 366 ter, (III), 244 (I, II, V, and X), 243 first paragraph, 246 (VII),all of them in the Federal Criminal Code and Article 138 of the Population General Law, its consummation runs out in the same moment in which all its constituent elements are carried out due to its instantaneous nature.

FORMA CO - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

In this frame of mind, in opinion of the person who solves this, it is about a plurality of conducts, that is, from two, the first of them that the active subject did according to the formulated report by **JOSE FERNANDO CASTILLO TAPIA** on March 22, 2004, which made the investigation number **PGR/SIEDO/UETMIO/013/2004** began related with **CHILD TRAFFICKING** committed against the minors [redacted] **and** [redacted] through which, along with different documents that later on turned out to be false according to the expert report in this determination that they left the country without authorization of the accuser, and then before the breakdown that the Public Prosecutor, attached to the Specialized Unit of Child Trafficking, Illegal Aliens, and Organs of the Mexican Attorney General's Office, ordered in its determination of the filing of charges of July 19, 2004 in its ruling FOURTH determined *"regarding the crimes of FORGERY AND USE OF FALSE DOCUMENT against ARTEMIO BARRERA HERNANDEZ and against the one or ones who turn out to be responsible, as well as other derived crimes, this Specialized Unit doesn't have authority, so leave it open sending to the local office of this Attorney General Office a properly certified copy for the legal pursuit and improving, gathering the respective acknowledgment.";* therefore, the procedural figure of the concurred crime is brought up to date, and it is provided in the second part of the Article 18 of the Federal Criminal Code.



FORMA CG - 1A

PROCURADURIA GENERAL DE LA REPUBLICA

In this respect, it is applicable by legal entity the isolated thesis visible on page 179 of volume XII, July 1993 of the Weekly Federal Court Report, authority Collegiate Circuit Court, Eighth Period which heading and text says:

> ***"CONCURRED CRIMES.- INTERPRETATION OF THE ARTICLE 24 OF THE CRIMINAL CODE FOR THE STATE.- (LEGISLATION OF VERACRUZ).*** *A right interpretation of the Article 24 of the Criminal Code for the State allows to consider that a concurred crime exists even in the event of repeating the antisocial conducts with the offense of the same criminal regulation, whenever it occurs through a plurality of crimes, these understood as a plurality of conducts or criminal actions, which essentially generates the existence of said concurrence."*

In said conditions, it is allowed to decree that this accumulation in terms of the Article 473 (I) of the Federal Code of Criminal Procedure related to the Federal Criminal Code.

Without being an obstacle to come to the previous determination, the fact that criminal action has just been brought against of the defendant **MARIA DEL ROSARIO MORENO VAZQUEZ** for the crime of **CHILD TRAFFICKING** before the referred Third District Court in Federal Criminal Procedure Matter in the Federal District, and not against the missing defendants pointed out in this legal action because it turned out to be incompetent regarding the jurisdiction declined by the Federal Public Prosecutor attached to the Specialized Unit of the Child Trafficking, Illegal Aliens and Organs of the Mexican Attorney General's Office, Child Trafficking Agency in the Federal District in its respective resolution of July 19, 2004 in favor of the Federal Prosecutor consignor in this legal action, since said competence referred in favor of the Federal Public



PROCURADURIA GENERAL DE LA REPUBLICA

Prosecutor in this city was declined, and also it is true that there is a record derived from the same reported facts by the offended party Jose Fernando Castillo Tapia, on February 22, 2004 before the mentioned Federal Prosecutor of the Federal District, in which he said that never had he given his permission for the minors [redacted] and [redacted] to live the country, and he didn't ask for a document for the issuing of the passports in favor of the kids, denying the signature in the passports he saw, par excellence, he should carried out the diligences that allow him to reach the searched historical truth around the reported facts by the offended party in question, which are in the preliminary investigation in this criminal case.

In this frame of mind, it is not possible to divide the criminal case initiated as consequence of the reported facts known by a trial judge, as in this case, it would be the Third District Judge in Federal Criminal Procedure Matter at the Federal District even if later evidence, or different probable responsible persons from the first charged would appear, because that is precisely the consequence of the persons already charged, this is, derived from the breakdowns made from the first respective investigation; despite the first charge in favor of the Court which its competence is declined, made based on the Article 10 of the Federal Code of Criminal Procedure according to the reform of December 23, 1993, in which a way of territorial competence was established that allows the Public Prosecutor's Office "Ad Limitum" to choose the Jurisdictional Organ that should know about a procedure even if it is not the place where the criminal facts



PROCURADURIA GENERAL DE LA REPUBLICA

occurred, the reason why the competence came to fruition by exception proceedings set forth in the third paragraph of the referred legal precept.

Besides, it can't be overlooked that the criminal case **42/2005** of the index of this Court was initiated because of the ordered breakdown by the Federal Consignor Prosecutor of the investigation number SIEDO/UETMIO/13/2004, in which criminal case was exerted against **MARIA DEL ROSARIO MORENO VAZQUEZ** for the crime of **CHILD TRAFFICKING,** this is due to the same facts and derived consequences of the taking away of the minors [redacted] from whom, as it was mentioned, the Third District Judge in Federal Criminal Procedure Matter at the Federal District knew about, he is the judicial organ that currently knows the most ancient actions, therefore, the competent Court to know about the criminal case that start the filing of charges of the preliminary investigation number **SIEDO/UETMIO/13/2004** as well as the one that start this criminal case is precisely the mentioned Third District Court.

**FIFTH.-** In view of the accumulation being legitimate in the criminal case **42/2205** of the index of this Court, to the initiated criminal case because of the filing of charges made in the investigation number **SIEDO/UETMIO/13/2004** received according to the order number **964/2004** issued by the filing office to the District Courts in Federal Criminal Procedure Matter at the Federal District sent, due to the shift, to the Third District Court of this Federal Entity based on the stipulated on the Articles 478, first paragraph, 479, and 480 of the Federal



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

Code of Criminal Procedure. Please, send the original to this criminal case as well as the certified copy of this decision to the Third District Court on Federal Criminal Procedure Matter at the Federal District in order to, with the knowledge of the aforementioned, proceed to send the respective decision regarding the joint incident explained by this Court.

**SIXTH.-** Transcribe this decision to the Federal Public Prosecutor to notify and for the leading legal effects.

For the aforementioned and well founded it is

**DECIDED**

**FIRST.-** The accumulation of the incident set out by this Court regarding the criminal case number 42/2005 against **MARIA DEL ROSARIO MORENO VAZQUEZ** for its alleged responsibility for committing the crimes of **FORGERY OF PUBLIC DOCUMENT AND USE OF FALSE DOCUMENT,** is legally warranted and it is provided by the Article 244 (II) related to the Article 246 (VII) and sanctioned by the Article 243, first paragraph, all of them in the Federal Criminal Code, as well as the crime of **VIOLATION OF THE GENERAL IMMIGRATION LAW** provided and sanctioned by the Article 138 of the GENERAL IMMIGRATION LAW against **ARTEMIO BARRERA HERNANDEZ** for its alleged responsibility for the committing the crime of **FORGERY OF DOCUMENT,** provided by the Article 244 (I) and (V), and sanctioned by the Article 243, first paragraph of the Federal Criminal Code against **FRANCISCO JAVIER TOVAR MARTINEZ** for its alleged responsibility for committing the



FORMA CG - 1A

PROCURADURIA GENERAL DE LA REPUBLICA

crimes of **FORGERY OF DOCUMENT AND USE OF FALSE PUBLIC DOCUMENT** provided by the Articles 244 (V) and (X), and sanctioned by the diverse 243, first paragraph of the Federal Criminal Code to the diverse criminal case settled because of the filing of charges made to the Third District Court on Federal Criminal Procedure Matter at the Federal District of the preliminary investigation number SIEDO/UETMIO/13/2004 according to the number of order 964/2004 of the District Courts Filing Office in Federal Criminal Procedure Matter at the Federal District followed against MARIA DEL ROSARIO MORENO VAZQUEZ, for committing the crime of Child Trafficking, provided and sanctioned by the Article 366 quarter, second paragraph related to the diverse 366 Ter (III) of the Federal Criminal Code.

**SECOND.-** The Holder of this Court considers that the competent Judge who should continue knowing about this action by accumulation via is the Third District Court on Federal Criminal Procedure Matter at the Federal District.

**THIRD.-** Send the original of this action to the aforementioned Court in terms of the ordered in the fifth legal reason of this decision.

**FOURTH.-** As it is ordered in the sixth legal reason of this decision, please transcribe to the Federal Public Prosecutor for his knowledge and the pertinent legal effects.

**PLEASE NOTIFY ONLY TO THE ASSIGNED FEDERAL PROSECUTOR.**



PROCURADURIA GENERAL
DE LA
REPUBLICA

This is the way it was provided and it is signed by attorney at law Lourder Minerva Cifuentes Bazan, Second Judge of the District of the Estado de Mexico, assisted of Juan Jose Orozco Martinez, Secretary whom he acts and attests with. I ATTEST.

[SIGNATURE]

THE JUDGE [SIGNATURE]                    THE SECRETARY

CONTINUATION AND CULMINATION OF THE ACCUMULATION OF DOCUMENTS INCIDENT DECISION OF JUNE 3, 2005, DICTATED WITHIN THE DOCUMENTS OF THE CRIMINAL CASE 42/05 STARTED AGAINST **MARIA DEL ROSARIO MORENO VAZQUEZ, ARTEMIO BARRERA HERNANDEZ AND FRANCISCO JAVIER TOVAR MARTINEZ** FOR COMMITTING THE CRIMES OF FORGERY OF DOCUMENT, USE OF FALSE DOCUMENT AND VIOLATION OF THE GENERAL IMMIGRATION LAW, SO BE IT.

ON JUNE 6, 2005, AT NINE HOURS [UNINTELLIGIBLE] PERSONALLY TO THE FEDERAL PUBLIC PROSECUTOR OF THE ATTACHMENT [UNINTELLIGIBLE] WHO STATES THAT [UNINTELLIGIBLE] [SIGNATURE] THIRD DISTRICT JUDGE IN FEDERAL CRIMINAL PROCEDURE MATTER AT THE FEDERAL DISTRICT.

BY HAND.

OF:       1859
SECC:    CRIMINAL.
FILE:     42/2005

In the course of resolution today pronounced, I send you the original of the criminal case 42/2005 followed against **MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility for committing the crimes of **FORGERY OF PUBLIC DOCUMENT AND USE OF FALSE DOCUMENT** provided by the



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

Article 244 (II) related with the Article 246 (VII) and sanctioned by the Article 243, first paragraph, all of them in the Federal Criminal Code, as well as **VIOLATION TO THE GENERAL IMMIGRATION LAW** provided and sanctioned by the Article 138 of the General Immigration Law against **ARTEMIO BARRERA HERNANDEZ** for his alleged responsibility for committing the crime of **FORGERY OF DOCUMENT** provided by the Article 244 (I and V) and sanctioned by the Article 243, first paragraph of the Federal Criminal Code and against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility for committing the crimes of **FORGERY OF DOCUMENT AND USE OF FALSE PUBLIC DOCUMENT,** provided by the Article 244 (V and X) and sanctioned by the diverse 243, first paragraph of the Federal Criminal Law for the acceptance of accumulation stated in the official letter by this Court to the diverse criminal case settled due to the payment made for the Third District Court in Federal Criminal Procedure Matter at the Federal District of the preliminary investigation number SIEDO/UETMIO/13/2004 according to the order number 964/2004 of the Filing Office of the District Courts in Federal Criminal Procedure Matter at the Federal District followed against MARIA DEL ROSARIO MORENO VAZQUEZ for committing the crime of Child Trafficking, provided and sanctioned by the Article 366 quater, second paragraph regarding the diverse 366 Ter, (III) of the Federal Criminal Code.

Please, send the acknowledgment of receipt.

Respectfully,

Naucalpan de Juarez, Estado de Mexico,

June 8, 2005.

The Second District Judge

at the Estado de Mexico.

[SIGNATURE]

Lic. Lourdes Minerva Cifuentes Bazan.



# EXHIBIT 10



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

[ILLEGIBLE SEAL]

[SEAL : UNITED MEXICAN STATES
COAT OF ARMS
JUDICIARY POWER
SECTION__________________
DESK_____________________
NUMBER__________________]

ON JUNE 7, 2005, THE MINISTER OF THE THIRD DISTRICT COURT OF THE FEDERAL CRIMINAL PROCEDURE AT THE FEDERAL DISTRICT, **CERTIFIES:** THAT AT FOURTEEN HOURS, TWENTY SEVEN MINUTES, THROUGHT THE FILING OFFICE OF THIS COURT, THE OFFICIAL LETTER 1859 WAS RECEIVED; IT CAME FROM THE SECOND DISTRICT COURT AT THE ESTADO DE MEXICO WITH RESIDENCE AT NAUCALPAN DE JUAREZ THROUGH WICH THE ORIGINAL OF THE CRIMINAL CASE NUMBER **42/2005** IS SENT FOLLOWED BY THIS COURT AGAINST **ARTEMIO BARRERA HERNANDEZ, FRANCISCO JAVIER TOVAR MARTINEZ,** AND **MARIA DEL ROSARIO MORENO VAZQUEZ** FOR THE CRIMES OF **FORGERY OF FALSE DOCUMENT AND OTHERS** FROM WHICH IT IS SEEN THAT WITH DATE OF JUNE 3, 2005, IT WAS DECIDED, THROUGH INCIDENT OF ACCUMULATION, TO BE SENT TO THIS COURT. THIS IS CERTIFIED FOR THE PERTINENT LEGAL EFFECTS.- **I TESTIFY.**

On the same date, the Ministry gives account to the Judge with the preceding certification in order to provide what according to the law is appropriate.- **So that this may be officially recorded.**

**MEXICO, FEDERAL DISTRICT, ON JUNE SEVEN, TWO THOUSAND AND FIVE.**

Once the certification is seen, at fourteen hours, twenty seven minutes, through the Filing Office of this Court, the official letter 1859 was received; it came from the Second District Court at Estado de Mexico with residence at Naucalpan de Juarez, through which the fulfillment of the resolution of June 3, 2005, only the original of the criminal case number **42/2005** is sent, followed in this court against **MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility for committing the crimes of **FORGERY OF PUBLIC DOCUMENT** and **USE OF FALSE DOCUMENT** provided in the Article 244 (II) related with



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

Article 246 (VII) and sanctioned by the Article 243, first paragraph all of them in the Federal Criminal Code, as well as the crime of **VIOLATION OF THE GENERAL IMMIGRATION LAW** provided and sanctioned by the Article 138 of the General Immigration Law against **ARTEMIO BARRERA HERNANDEZ** for his alleged responsibility for committing the crime of **FORGERY OF DOCUMENT** provided by the Article 244 (I and V) and sanctioned by the Article 243, first paragraph of the Federal Criminal Code and against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility for committing the crimes of **FORGERY OF DOCUMENT** and **USE OF FALSE PUBLIC DOCUMENT,** provided by the Article 244 (V and X) and sanctioned by the diverse 243, first paragraph of the Federal Criminal Code for considering the joint of the aforementioned criminal case to the case **108/2004** of the index of this Court against the aforementioned accused; however, one of the crimes by which the consignor Federal Public Prosecutor asked for the arrest warrant against the aforementioned accused, it is considered as serious crime by the Article 194 of the Federal Code of Criminal Procedure violating what it is established by the 142, third paragraph of the aforementioned statute, this is, to give according to the arrest warrant within the terms of twenty four hours from its ruling declaring jurisdiction.

Indeed, the ordinal 142, third paragraph establishes:

***"(...)***

***(...)***

***Regarding the crimes that the Article 194 considers as serious ones, the ruling declaring jurisdiction shall be made immediately and the presiding judge shall order or deny the arrest or search warrant requested by the Public Prosecutor within the twenty four hours as of the moment of the ruling declaring jurisdiction was resolved."***

Likewise, the Article 432 idem provides: ***"the competence motion of improper venue shall not being solved until the proceedings that do not***

FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

***allow delay are made*, and in case of having stopped to order the committal of the defendant or liberation due to the lacking of elements to prosecute."**

For the aforementioned, without prejudging the competence of this Jurisdictional Organ so as this Judging party does not fell into responsibility, every time the crime of **VIOLATION OF THE GENERAL IMMIGRATION LAW** provided and sanctioned by the Article 138 of the same law, it is provided as **serious** by (V) of 194 of the Federal Code of Criminal Procedure (as it is warned of the slip of paper of June 2, 2005 with register number 00178/2005, which the Common Filing Office of the District Courts at Estado de Mexico with residence at Naucalpan, the preliminary investigation PGR/MEX/NAU-II/87/2005 is sent to the declining jurisdictional organ); that is, that it is about an urgent measure based on the aforementioned transcribed numerals. Please register this criminal case number **66/2005** and notify to the Judge of the Unitary Court in Criminal Matter of the First Circuit of the moment about the intervention that is the legal responsibility of the attached Federal Public Prosecutor, and solve immediately what according to the law belongs to the requested arrest warrants; likewise, please notify the aforementioned to the Responsible of the Common Filing Office, to the District Courts of Federal Criminal Procedure at the Federal District in order to register this matter in the load of work of this Court, since as it is noticed, the official letter improperly is addressed to this Jurisdictional Organ; in spite of the work schedule of the common filing since it was the Court of the moment responsibility to know about it (due to its urgent quality) according to Article 8 of the General Agreement 23/2002 that regulates the Filing Offices of this nature of the Circuit Courts and Federal District Courts performance.

Due to the exposed reasons, this jurisdictional organ is able to pronounce the joint incident that set by the holder of the Second District Court at Estado de Mexico at Naucalpan de Juarez; however, as it is requested here,



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

please acknowledge of receipt the original of the criminal case number 42/2005 of your index.

**NOTIFY ONLY TO THE ATTACHED FEDERAL PUBLIC PROSECUTOR.**

In this way, the attorney at law, **ARTURO CESAR MORALES RAMIREZ,** agreed and signed who is Third District Judge of Federal Criminal Procedure at the Federal District before the Ministry who authorizes and testifies the attorney at law **Marco Antonio Ortiz Mejia.- I TESTIFY.**

[SIGNATURE]



# EXHIBIT 11



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

[SEAL : UNITED MEXICAN STATES
COAT OF ARMS
JUDICIARY POWER
SECTION__________________
DESK__________________
NUMBER__________________]

**MEXICO, FEDERAL DISTRICT, ON JUNE EIGHT, TWO THOUSAND AND FIVE.**

Once seen the court resolutions of the criminal case number **66/2005** to solve the legitimacy of the **arrest warrant** requested by the Federal Public Prosecutor of the Mexican Attorney General's Office to the District Judge of the moment at Estado de Mexico with residence at Naucalpan de Juarez that for that reason the Second knew about against **MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility for committing the crimes of **FORGERY OF PUBLIC DOCUMENT and USE OF FALSE DOCUMENT,** provided by Article 244 (II) related to the Article 246 (VII) and sanctioned by the Article 243, first paragraph, all in the Federal Criminal Code as well as the crime of **VIOLATION TO THE GENERAL IMMIGRATION LAW** provided and sanctioned by Article 138 of the General Immigration Law against **ARTEMIO BARRERA HERNANDEZ** for his alleged responsibility for committing the crime of **FORGERY OF DOCUMENT** provided by the Article 244 (I and V) and sanctioned by the Article 243, first paragraph of the Federal Criminal Code, and against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility for committing the crimes of **FORGERY OF DOCUMENT and USE OF FALSE DOCUMENT** provided by Article 244 (V and X) and sanctioned by 243, first paragraph of the Federal Criminal Code (sic), and



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

## FINDINGS

**FIRST.-** By official letter number 1859 with date of June 3, 2005 received at the filing office of this jurisdictional organ, the holder of the Second District Court at Estado de Mexico with residence at Naucalpan de Juarez in compliance with the resolution of June 3, 2005, only sent the original of the criminal case number **42/2005** followed in this Court against **MARIA DEL ROSARIO MORENO VAZQUEZ, ARTEMIO BARRERA HERNANDEZ and FRANCISCO JAVIER TOVAR MARTINEZ** for their alleged responsibility for committing the aforementioned crimes; for considering the joint of the aforementioned criminal case to another **108/2004** of the index of this Court against the aforementioned accused; in spite of one of the crimes for which the consignor Federal Public Prosecutor requested an arrest warrant against the aforementioned accused it is considered as serious by the Article 194 of the Federal Code of Criminal Procedure, violating the other numeral 142, third paragraph of the previous legal statute, this is in order to provide over the arrest warrant petition within twenty four hours form its ruling.

**SECOND.-** Once the preliminary investigation number **66/2005** is settled through the provided on June 7, 2005, the respective legal procedure was made notifying to the Judge of the Unitary Court in Criminal Matter of the First Circuit in the moment, and to the attached Federal Public Prosecutor about the intervention that is its legal responsibility.





PROCURADURIA GENERAL
DE LA
REPUBLICA

**WHEREAS**

**FIRST.-** This Third District Court of Federal Criminal Procedure at the Federal District, shall know until this proceeding stage about this case because it is a filing of charges that does not allow delay, according to the Article 432 related to the numeral 142, third paragraph of the Federal Code of Criminal Procedure.

The first of the numerals stipulates:

***"The questions of jurisdiction for improper venue shall not be solved until the proceedings that do not allow delay are made, and in case of being arrested, pronounced an order for the committal of the defendant, or liberation because of the lack of elements to prosecute."***

From the reading of said numeral, it is warned that the question of jurisdiction shall not be declined until those proceedings that do not allow delay are solved, and in the instant case, the request of the Order of committal of the defendant in which it shall be determined what is legally pertinent.

For the aforementioned, it is evident that this resolution is placed within that hypothesis, from the provisional question of jurisdiction lies for the effects of this Jurisdictional Organ; this, without prejudice of, within this resolution, in terms of what the Chapter 1 (II) of the Eleventh Title of the Federal Code of Criminal Procedure the question of jurisdiction is analyzed.

**SECOND.-** The Article 16 of the United Mexican States Constitution, in its relevant part establishes:

PROCURADURIA GENERAL DE LA REPUBLICA

***"Nobody can be bothered individually, in its family, at its address, in its papers or possessions, but by virtue of a written order from the competent authority who grounds and motivates the legal action of the proceeding. An arrest warrant shall not be passed, but through the judicial authority and without preceding a report or complaint of a fact that the law considers as a crime, sanctioned at least with a prison sentence and exist data that prove the corpus delicti and that make provable the responsibility of the defendant."***

According to the Constitutional precept, it comes out that in order to pronounce the arrest warrant it is necessary that the following requirements come together: **a).-** That a report or complaint exists, **b).-** That they refer to a fact that the law sanctions at least with incarceration, **c).-** That exist data that prove the corpus delicti, and **d).-** That the alleged responsibility of the defendant is provable.

For its part, the numeral 195 of the Federal Code of Criminal Procedure establishes:

***"When the requirements of Article 16 of the Constitution, the Court will issue an arrest warrant, rearrest or subpoena, according to the case in question, for the offender, by means of a request of the Public Prosecutor. The corresponding decision shall contain a brief list of the facts that cause it, their legal grounds and the provisional definition of the crime(s)***



PROCURADURIA GENERAL
DE LA
REPUBLICA

***and, it shall be immediately sent to the Public Prosecutor so that he orders its execution to the police."***

Finally, the Article 168 of the Federal Code of Criminal Procedure provides:

***"The Public Prosecutor shall prove the corpus delicti and the probable responsibility of the defendant, as a ground for exercising criminal action; and the judicial authority shall verify if both requirements are met in the court records. Corpus delicti is the series of physical or external components constituting the perpetration of the conduct that the Law defines as a crime, as well as regulatory, in case the crime description requires it. Probable responsibility of the defendant shall be proven when from existent evidentiary elements; involvement in the crime is deducted, as well as the negligence or intentional conduct, and when there is no proven any legality cause favoring the accused or any cause that excludes the defendant's responsibility. Corpus delicti in question and the probable responsibility shall be proven by means of any evidentiary element admitted according to law".***

According to the text of the transcribed articles, the following is the analysis of each of the evidence attached in the statement in order to determine the existence of the data that prove the elements of the corpus delicti as well as



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

the alleged responsibility of the defendants in their committing and decree what legally proceeds.

**THIRD.-** In the file exist, among others, the following evidence:

**1.-** Statement of the plaintiff **JOSE FERNANDO CASTILLO TAPIA** before the Federal Public Prosecutor on March 22, 2004, where he stated that he had two children named [redacted] with **MARIA DEL ROSARIO MORENO VAZQUEZ;** they are [redacted] and [redacted] respectively and lived with their mother after getting divorced, according to the definitive sentence pronounced by the Tenth Family Judge, but on February 28, 2004, about seventeen hours, he went to pick up his kids at the house of MRS. **MORENO VAZQUEZ** at [redacted] fraccionamiento Lomas Verdes, Naucalpan, Estado de Mexico Zipcode [redacted] getting from Maria Elena Vazquez Saucedo, ROSARIO'S mother, a letter from **MARIA DEL ROSARIO MORENO VAZQUEZ** where it said that she had taken her kids away from that address to go away from the city without telling him where, **having the suspicion that she has gone to another country, maybe the United States of America, since Mrs. MORENO VAZQUEZ had told him that on October, 2003, she got married with an American person who she met by Internet,** asking his permission to take her kids away from the country and he denied and told her that it was better to settle as a couple and then they would established the permission and visits and she didn´t accept, so on February 29, 2004 he appeared before the





PROCURADURIA GENERAL
DE LA
REPUBLICA

State Jurisdiction Public Prosecutor at Naucalpan, Estado de Mexico begining the document NJ/II/816/04-02 where he said the previous indicating before this authority that he did not give his permission or consent for his kids, [redacted] to get away from the country and neither did he issue any instrument or approval to get their passport from the Foreign Affairs Ministry.

Likewise, on March 1of last year, he went to his kids' school, Colegio La Salle at Estado de Mexico where he talked to their classmates and he noticed that Mrs. **MARIA DEL ROSARIO MORENO VAZQUEZ** and his kids **had left the country by airplane on February 27, 2004 through Aereomexico in the 636 flight with destiny to Atlanta Georgia and their kids told them that their last destiny was Ciudad de Salem Alabama at [redacted] registered under RONALD COONLEY** whom Mrs. **ROSARIO MORENO VAZQUEZ** got married with and they could probably live at [redacted] Smiths, AL and [redacted] Phenix City AL, [redacted] Columbus GA [redacted] as well as Berrien Springs Michigan besides the located at [redacted] Albano, NY, [redacted] all of them at the United States of America; in this way, through talking with his son's classmates, who comunicates with his friends by Internet, told them that they would probably go to the United States of America, but they didn't know the destiny and when would they travel.





FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

Later on, he told us that he appeared before the Tenth Family Judge at the Federal District where he asked for the custody of his children [redacted] [redacted] and [redacted] and regarding his doubts about his kids going away from the country, he presented himself at the window of information of the Local office of Naucalpan, Estado de Mexico of the Foreing Affairs Department in order to know if a passport was issued in favor of them, and a person of this office told him that on February 27, 2004, said documents were issued in favor of [redacted] and [redacted] [redacted] and the legal documents that kept the permission was in that address, that is the reason why he asked to verify the aforementioned indicating the appearing party that he didn't give the oral permission or written and neither through any documents, and for that reason he didn't acknowledge any signatures or authorization in the files of that department.

Finally, in said action, que presented a complaint for the crime of Children Trafficking against Maria del Rosario Moreno Vazquez en agravio of his kids and he himself (pages 178 to 181.)

**2.- Inspection** made by the Federal Public Prosecutor on March 22, 2004 where he testified seeing:

a).- Simple copies of the accusation presented before the Tenth Family Judge where FERNANDO CASTILLO TAPIA reported Mrs. MARIA DEL ROSARIO MORENO VAZQUEZ the **change of custody of person to take**

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

**care of** the minor [redacted] and the total custody of [redacted] it is testified within six pages.

b).- Simple copy of the **report of the facts** that presented JOSE FERNANDO TAPIA at Estado de Mexico before the Public Prosecutor at Naucalpan, Estado de Mexico, testified within two pages.

c).- Page of the letter addressed to "Fernando" asigned by "Rosario".

d).- Simple copy of the **agreement** made among **JOSE FERNANDO CASTILLO TAPIA** and **MARIA DEL ROSARIO MORENO VAZQUEZ** presented according to the Family Judge in the Voluntary Divorce Judgement **regarding the custody related to the minor son** [redacted] **testified within two pages.**

e).- Simple copy of the letter of March 16, 2004 issued by the Colegio La Salle Principal undersigned by Ana Cecilia Esquivel Hernandez, where it is mentioned that [redacted] was registered at that school during 2003-2003 course in second grade and in 2003 and 2004 in third grade until February 26, 2004 appearing in the official registers as his father JOSE FERNANDO CASTILLO TAPIA.

f).- Simple copy of the **divorce sentence** of January 29, 1992 in favor of Mrs. **MARIA DE [SIC] ROSARIO MORENO VAZQUEZ** and the complaint party issued by the Tenth Family Judge at the Federal District.



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

g).- **Birth Certificate** in original number [redacted] in favor of [redacted] issued by the Central Judge of the Bureau of Vital Statistics at the Federal District.

h).- **Birth Certificate** in original number [redacted] of March 12, 2003 in favor of [redacted] issued by the official number zero two at the Registro Civil, attorney at law Margarita Mariscal De Olvera of the Government of Estado de Mexico.

i).- Three laser coloured photos of [redacted]

j).- Two coloured photos of [redacted]

k).- Three laser coloured photos of [redacted]

**3.-** Statement made by **MARIA ELENA VAZQUEZ SAUCEDO** on April 7, 2004, who before the Federal Public Prosecutor, she stated that she is mother of **MARIA DEL ROSARIO MORENO VAZQUEZ** who was married with Mr. JOSE FERNANDO CASTILLO TAPIA having two children named [redacted] and who in that time were divorced, and **that on February 28, 2004 about seventeen or eighteen hours** arrived to the address of Mr. FERNANDO CASTILLO TAPIA since that day he was going to see his kids [redacted] and [redacted] because every fifteen days he visited them. **When he arrived, he asked for them and he was told that they were not there, and gave him a letter in a closed envelope of her daughter's work, it aparently had the**



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

**logotype of the company where she worked at, and she didn't know what it said, which her daugther, MARIA DEL ROSARIO, gave to her on February 26, 2004 without telling her where she was going to, and she understood that she was taking her kids and asked him to give it to FERNANDO. Besides, on March 27, 2004, about seven hours, she went away taking her kids and she said that she never told her where she was going to and when she asked her, she answered in a bad way "that is my business" and she went and didn't return.** After that moment, she had communication in two or three ocassions on March, 2004 only to know how was she, but she didn't say the place where they were at (pages 218 to 220).

**4.- Official Letter DGAPII/3818/04/0550/04-AAH** with date of April 12, 2004 undersigned by the Federal Public Prosecutor attached to the INTERPOL dependent of the Mexican Attorney General´s Office in which indicates among other things the following: *"In regard of this, I notify that this Administrative Unit has an administrative file related with the location of the minors* [redacted] *which began on March 2, of this year because of the request made to this office by FERNANDO CASTILLO TAPIA, who is the minors' father, and stated that he suspected that his kids had been taken to the United States of America by their mother **MARIA DEL ROSARIO MORENO VAZQUEZ.** Regarding the aforementioned, this office began the pertinent investigations, and he could know that his kids and their mother were at Atlanta, Georgia, United States of America on February 27, 2004 in the 630 flight of Aeromexico, reason why he*



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

*could communicate with the Interpol – Washigton(sic) in order to ask for its colaboration to locate Mrs.* ***MARIA DEL ROSARIO MORENO*** *and his minors* ███ *On March 26, the Interpol- Washigton (sic) informed to this Administrative Unit that the State police of Alabama send an investigating agent to interview Mrs.* ***MARIA DEL ROSARIO MORENO*** *who stated that she had the custody of the minors; likewise, she stated that their father had called her to threatened her so she decided to change her address and telephone number, and the American authorities state that for security and wellcare of the family they are not authorized to say where are they"* (page 224).

**5.-** Through the official letter without number of April 14, 2004, the Regulation Director of the Ministry of Foreign Affairssend a certified copy of the following documents:

a).- **Certified copy** of the request of ordinary Mexican passport made to **MORENO VAZQUEZ MARIA DEL ROSARIO** where an illegible copy appears (page 231).

b).- Certified copy of the illegible passport number ███ made to MARIA DEL ROSARIO MORENO VAZQUEZ (page 232).

c).- Two **ordinary Mexican passport requests (OP-5)** number ███ and ███ made to the minors ███ and ███ **where in the first of it says SIGNATURE OF THE APPLICANT and appears the name of** ███





FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

[redacted] **where it says: CONSENT SIGNATURE WITH THE DATA IN THE PASSPORT WHEN IT IS RECEIVED, an illegible signature,** with date of February 16, 2004 indicating as place Naucalpan, Estado de Mexico; **in the following page appear the data of the Father or Guardian and it is marked with an "x" in the box where it says "As Father". To make the procedure, it was identified as the passport [redacted] issued by the Ministry of Foreign Affairson November 6, 2003,** appearing an illegible signature as well as the fingerprints of the left and right forefingers and regarding the mother's data, appears in an indicated box as Mother an "x". In order to make the procedure, she was identified with the passport number [redacted] issued by the Ministry of Foreign Affairson September 22, 2003, an illegible signature and a fingerprint of the left and right forefinger (pages 234 to 240).

d).- Certified copy of the birth certificate number [redacted] of [redacted] (page 236).

e).- Certified copy of the passport number [redacted] of CASTILLO TAPIA JOSE FERNANDO issued by the Ministry of Foreign Affairs(page 237).

f).- Certified copy of the passport number [redacted] of MORENO VAZQUEZ MARIA DEL ROSARIO (page 238).

g).- Certified copy of the birth certificate number [redacted] of [redacted] (page 241).



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

h).- Certified copy of the **passport** number [redacted] of [redacted] issued on December 17, 1997 and with expiring date of December 17, 2002 at Naucalpan, Estado de Mexico (pages 242).

**6.-** Ministerial Statement of **FERNANDO CASTILLO TAPIA** on April 26, 2004 where he said that in the way he showed in the appearance of March 22, 2004, he didn't give his permission for issuing the passports in favor of the minors; having at his sight the documents that he sent to the Foreign Affairs Ministry, **where it can be seen the name and signing of the person that requested the passports issuing in favor of the minors [redacted] and [redacted] as well as the copy of the passport where it is read the name of JOSE FERNANDO CASTILLO TAPIA, who suposedely authorized the issuing of said document when checking the documents that are in the file. He says that he didn't sign and he didn't know who is the signature of and the fingerprint that appears in both requests of the minors, he wasn't there fisically to present the request or sign, or authorize the passports issuing of his kids, making clear that he only recognizes that the passport copy in favor of his daughter [redacted] with date of December 16, 1997, was issued by him and Mrs. MARIA DEL ROSARIO MORENO VAZQUEZ;** so he doesn't recognize any permissions signed by him, in the same way, he states that the letter in the applications is of Mrs. MARIA DEL ROSARIO MORENO VAZQUEZ, and he stated that he remembered that days before his kids were





FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

taken away by their mother, he had his passport kept in his room at his house and that he found it in other place and he didn't paid much attention to it, but his son [redacted] had the keys copy so he thought that his daughter or son could probably take it away and return it because they could enter his house and because he was working, he wasn't at home and he didn't know that they used it to issue the passports in favor of the minors; likewise, regarding the aforementioned in the document of INTERPOL on April 12, 2004, he only partially accepts, since he presented himself to ask for help because he suspected that Mrs. MARIA DEL ROSARIO MORENO VAZQUEZ had taken away his kids, as he stated before the Public Prosecutor's Office of Estado de Mexico **the day he knew that his kids weren't living in the house of [redacted] of Lomas Verdes considering that months ago, MARIA DEL ROSARIO MORENO told him that she married a person named RONALD COONLEY, he was an American and that she was thinking about taking her kids to the United States of America, so he told her that he didn't agree with that, so he wouldn't give his permission because Mrs. MARIA DEL ROSARIO MORENO told him that she met Mr. COONLEY by Internet; besides, this was the second marriage after theirs that she had with people met by Internet** (pages 247 to 249).

**7.-** Official letter without number on April 22, 2004 received at the Filing Office of the Deputy Prosecutor's Office of Specialized Investigation on Organized Crime on the day 26 of the same month and year suscribed by the



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

attorney at law Antonio Jauregui Quintana, Manager of Litigious Affairs and Air Fleet of Mexico through which are attached **the simple copies of travel cupons in favor of "MORENO/MARIA"; [redacted] and [redacted] used in the Mexico-Atlanta route, 636 flight on February 27, 2004 (pages 274 and 275).**

**8.-** Results in **identification in Graphoscopy** matter on June 10, 2004 undersigned by the experts Praxedis Irma Garcia Guerrero and Rosa Flores Vazquez attached to the General Division of Coordination of Experts Services dependant of the Mexican Attorney General's Office where the following results were gotten:

**I).-** Making the respective study of the ten-finger card of Castillo Tapia Jose Fernando, which presents the following dactiloscopy E-3343 I-2222 in the right hand, thumb forefinger middle finger, middle finger (sic), and little finger belong to the third basic type of the internal loop. For its morphology, the right ring finger belongs to the fourth basic type WHORL, CONCENTRIC SUBTYPE, and only this was compared due to its correspondence to the same basic type of the dactylograms printed in the OP7 forms;

**II).-** Making the study of the printed dactylograms in the OP7 forms belonging to the father of guardian with the caption left forefinger belongs to the fourth basic type WHORL, SPIRAL DEXTROGYRATION SUBTYPE. The dacylograms with the caption right forefinger belong to the fourth basic WHORL SPIRAL LEVOGYRATE SUBTYPE. **Comparing the dactylogram of the right**



PROCURADURIA GENERAL DE LA REPUBLICA

**ring finger of the ten-finger card of CASTILLO TAPIA JOSE FERNANDO with the inserted dactylograms in the OP7 forms do not belong to the subtype and therefore, in characteristic points. The photos of the FINGERPRINTs, the OP7 forms were sent to the AFIS system in order to make a qualifying round comparison against the data base of said system giving positive results with the following data:**

**"BARRERA HERNANDEZ ARTMEIO" crime of forgery of official documents.** Preliminary investigation 9545/D/94, authority Federal Public Prosecutor holder of the Desk IX-D, 39 years old, he was born on [redacted] 1955, lives at [redacted] Santa Cruz Xochintepec, Xochimilco, Federal District, whose ten-finger register is in the files of this institution so they proceed to make the comparative study taking as a comparison base the right and left middle fingers based on the basic type, subtype and location of the characteristic points, the photo shoot of the ten-FINGERPRINT was made as well as the photographic amplifications of the aforementioned in order to make a comparison with the ten-fingerprints printed on the OP7 forms of the minors [redacted]

From all of these it was concluded that: **First.- the printed dactylograms on the ten-finger card of CASTILLO TAPIA JOSE FERNANDO, DO NOT BELONG to the FINGERPRINTs in the OP-7 forms, with the caption right and left forefingers of the minors** [redacted] **SECOND; The printed**





FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

**dactylograms on the OP-7 form with the caption right and left finger of the minors** [redacted] **BELONG to the FINGERPRINTs of the right and left middle fingers of Barrera Hernandez Artemio** (pages 311 to 323).

**9.-** Report in **Graphoscopy matter** of June 15, 2004 undersigned by the expert L.Aldo Chisanto Molina, attached to the General Division of Coordination of Expert Services dependant to the Mexican Attorney General's Office, in which he concluded:

**"FIRST.-** FOR ITS EXECUTION, **THE FINGERPRINTS DO NOT BELONG** TO **JOSE FERNANDO CASTILLO TAPIA** IN THE QUESTIONED DOCUMENTS IN THIS REPORT REGARDING THE GIVEN SIGNATURES AS BASE OF COMPARISON; **SECOND.-** FOR ITS EXECUTION, THE WRITING IN THE QUESTIONED DOCUMENTS IN THIS REPORT DOES NOT BELONG TO **JOSE FERNANDO CASTILLO TAPIA** AS BASE OF COMPARISON"; attaching photographic images in color, the Writing Sample of Jose Fernando Castillo Tapia in two pages (pages 327 to 334).

**10.-** Appearance in court of **JOSE FERNANDO CASTILLO TAPIA** before the investigating authority on June 18, 2004 where he stated that once he saw the result of the reports of Graphoscopy and identification, where he concluded that the signatures, writing, and fingerprints on the OP-7 forms do not belong to the appearing party and however, they belonged to Artemio

FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

Barrera Hernandez so in said document, he presented the formal report for the crime of forgery of document in his grievance against that (page 342).

**11.-** Ministerial Statement of the accused **FRANCISCO JAVIER TOVAR MARTINEZ** who among the most relevant he states that he was employee in the Ministry of Foreign Affairsof the Municipality of Naucalpan de Juarez receiving the documents for the issuing of passports and his function was mainly to receive the original documents and copies from the users and he had to verify and check that the documents were original and fit with the settled data with the stated by the petitioners. As well as verifying that the identifications of the petitioners agree with the physical features of the persons that presented them and once integrated the file with copies, they were asked to sign the request and the fingerprint gathering in order to verify it with the Delegate or Deputy Delegate of the Foreign Affairs Ministry. For the aforementioned, and specifically with the passports of the minors that are attached to this file, he makes clear that the same procedure was made because on February 16, 2004, he saw JOSE FERNANDO CASTILLO TAPIA AND MARIA DEL ROSARIO MORENO VAZQUEZ making clear that the lady stated that they would issue the passports of the minors, and he gave them the following documents: birth certificate, identification of the minors and identification of the parents in which a checking of the documents is made so that they are correct and the same time, checking that the identifications exactly coincides with the physical features from whom presents them, as well as the signature that



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

appears in the identification realizing in that moment that the minors were playing with their father, then the files were gathered and **the parents were asked to sign and print their fingerprints, and once they did it, the children came close so that the deponent took the fingerprints and sign the request and told them to sit down,** because he would pass the documents to the Delegate for its verification and continuing the process of issuing the passports in the different stages of it, in which different government employees took place in the procedure of the minors [redacted] This is all the responsibility related to the function within the Ministry of Foreign Affairsand to questions made by said Authority, TO THE FIRST ONE, that the deponent states if he recognizes the photo that appears in the passport number [redacted] issued in favor of JOSE FERNANDO CASTILLO TAPIA which is attached to this investigation and that said person was the same that came with MARIA DEL ROSARIO MORENO VAZQUEZ to issue the passports for her kids at the Ministry of Foreign AffairsOffice at Naucalpan de Juarez, Estado de Mexico, ANSWER: It is the same person that appeared before me because in the customer service line there were FERNANDO CASTILLO TAPIA AND MARIA DEL ROSARIO MORENO VAZQUEZ, and he fully recognizes as the persons that he attended to. TO THE SECOND ONE. So that the deponent states how is JOSE FERNANDO CASTILLO TAPIA physically, ANSWER.- he is a person of one meter and seventy centimeters tall, medium constitution and he



PROCURADURIA GENERAL DE LA REPUBLICA

wears a suit and he has good physical shape, TO THE THIRD ONE.- So the deponent states how is MARIA DEL ROSARIO MORENO VAZQUEZ physically. ANSWER.- I don't remember well her features. In respect of it, the Federal Public Prosecutor testified that the accuser JOSE FERNANDO CASTILLO TAPIA has physical features outstandingly different from the mentioned as true by FRANCISCO JAVIER TOVAR MARTINEZ (pages 603 to 606).

**12.-** Ministerial Statement made by **JUAN ARAMONI BURGETE** rendered on November 12, 2004 where interests, among other things, he stated that he was delegate at the Ministry of Foreign Affairsat Naucalpan, Estado de Mexico; besides, he stated that regarding the documents that supported the issuing of the passports of [redacted] was correct gathering the ends of the established regulations by said Ministry and in the Regulations of Passports in force having added that their participation within the issuing consisted in verifying the correct incorporation of the file base of the issuing of the passports, that he didn't remember that he had seen the minors' parents. (pages 609 611).

**13.-** Ministerial statement made by **ANA LUISA LOZANO GUTIERREZ** rendered on November 12, 2004 where she mainly stated that she was typist in the office of the Ministry of Foreign Affairsat Naucalpan, Estado de Mexico; besides having stated that regarding that the facts being investigated consisted in the capture of the data in the system of files previously incorporated and





FORMA CG - 1A

PROCURADURIA GENERAL DE LA REPUBLICA

checked, which didn't allow her to be in contact with the costumers (pages 613 to 615).

**14.-** Ministerial statement made y **VIRIDIANA MOLINA OLVERA,** rendered the same November 12, 2004 where she stated that she was digitalizer of files in the Ministry of Foreign Affairsat Naucalpan, Estado de Mexico that consisted in verifying the file data previously incorporated and verified after its capture; she also stated that due to her work, she stayed out of the customers (pages 617 to 619).

**15.-** Appearance in court of **NATIVIDAD CARRERA SANTIAGO** on May 16, 2005 before the investigating authority in her Deputy Director of Regulation and Migratory Control of the Ministry of the Interior where in said action, she presented an official letter of May 16, 2005 **where she brought a complaint against Maria Rosario Vazquez Moreno for her alleged responsibility for committing the crime of Violation of the General Immigration Law provided by the numeral 138 of said regulation; official letter duly ratified** (pages 720 and 723).

**VERIFICATION OF THE CRIME.**

**FOURTH.-** The investigating authority filed an indictment against **MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility for committing the crime of **VIOLATION OF THE GENERAL IMMIGRATION LAW** provided and sanctioned by the Article 138 of the General Immigration Law,



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

crime over which the first analysis shall be about without caring about if it affects the order in which the consigner authority paid this facts into court.

Before beginning the study of the evidence means, it is necessary to verify that the requirement of procedure have been carried out due to the fact of being an indispensable and preferential study as it is established by the Article 143 of the General Immigration Law which text says:

*"The exercise of the criminal action by the Federal Public Prosecutor which this Law refers to, shall be subjected to the complaint that in each case the Ministry of the Interior formulates."*

From the transcribed rule, it is deduced that the crime, exercise of the criminal action matter shall only be able to pursue ***as a request*** of the Ministry of the Interior.

Regarding the complaint and the equivalent requirements of procedure; Article 113 of the Federal Code of Criminal Procedure, it stipulates:

***"Article 113.*** *The Public Prosecutor's Office and its assistants according to the orders received by those, are obliged to officially investigate the known crimes. The preliminary investigation could not be officially initiated in the following cases:*

***"I. When it is about crimes in which only can be proceeded by needed complaint if it hasn't been presented.***

***"II. When the law demands some previous requirement if it hasn't been fulfilled.***

PROCURADURIA GENERAL DE LA REPUBLICA

*"If the person who begins an investigation isn't responsible of prosecute it, he/she shall immediately notify to the legally respective person.*

*"When a complaint or other equivalent action is needed for the prosecution of a crime, the Federal Public Prosecutor shall act according to what it is provided by the Organic Law of the Mexican Attorney General's Office in order to know if the complaint is filed or it satisfies the equivalent procedure requirement."*

However, it is obvious that the request that the Ministry of the Interior has to be presented before the Federal Public Prosecutor in order to begin the preliminary investigation is a previous requirement of the criminal action without which it couldn't be exerted; consequently, said request is a true requirement of procedure equivalent to the authenticated complaint.

In this way, from the written evidence that are in the proceedings it can be seen that the requirement is fulfilled with the appearance of **NATIVIDAD CARRERA SANTIAGO** on May 16, 2005 before the investigating authority in its character of Deputy Director of Regulation and Migratory Control of the Ministry of the Interior where in said action, an official letter of May 16, 2005 was presented, where a complaint against Maria del Rosario Moreno Vazquez was made for her alleged responsibility for committing the crime of Violation of the General Immigration Law provided by the numeral 138 of said code; official letter in question that was duly ratified.



PROCURADURIA GENERAL
DE LA
REPUBLICA

According to the public servant who presented the complaint, she is duly able to do it as Deputy Director of Regulation and Migratory Control of the Ministry of the Interior, quality authorized with certified copy of the appointment of April 15, 2002.

It is applicable to the aforementioned, the Jurisprudence 48/2003 of the First Chamber of Mexico's Supreme Court of Justice that it was announced solving the contradiction of Theory 143/2002-PS which can be consulted on page 225, Volume XVIII of September, 2003, Ninth Epoch of the Weekly Federal Court Report and its Gazette entitled:

***"COMPLAINT PRESENTED IN WRITING. IT'S NECESSARY ITS RATIFICATION WHEN IT IS MADE BEFORE THE REPRESENTATIVE OF THE MINISTRY OF THE INTERIOR.***

*When the complaint is made in writing in the cases of crimes that the General Immigration Law refers to, it has to be ratified by the government employee who subscribe it in representation of he Ministry of the Interior: The aforementioned is like this, because when it is orally presented, according to the provided in the Articles 118 and 119 of the Federal Code of Criminal Procedure related with the Article 143 of said law, the Public Prosecutor should make certain of the government employee being the representative of the Ministry of the Interior and that has the abilities to present it on his behalf, to state that it was orally made in the report being filed and gather the signature and fingerprint of whom it presents it, so makes the ratification pointless. Whereas, when the complaint*



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

*is presented before the Public Prosecutor in writing, he should make certain of the legitimacy of the government employee who subscribes it, gather the signature and fingerprint of who is presenting it and above all, to make sure of the identity of the plaintiff as well as the authenticity of the instruments in which it is formulated and require the signing party in order to duly sworn in knowing about the penalties that could be committed if perjury before the authorities is committed, which could only be possible to carry out through the ratification of the written before the investigating organ with the presence of the plaintiff, and with it, it would be certain the responsible person in the supposition of the stated facts in the writing of the complaint that turn to be false.*

Stated the aforementioned, the study of the corpus delicti provided and sanctioned by the first paragraph of the Article 138 of the General Immigration Law, making the necessary for its effect, the transcription of the aforementioned regulation:

***"Article 138.-** A penalty of six to twelve years of prison and a multa to 100 to 10,000 days of minimum salary in force in the Federal District in the moment of committing the fault, to whom by himself or through a third party with a trafficking purpose pretends to take or takes away Mexican people or foreigners to another country without the corresponding documents.*

*The same penalty shall be imposed over whom by himself or by other or others introduces, without the corresponding documents issued by the*

PROCURADURIA GENERAL DE LA REPUBLICA

*competent authority to one or many foreigners to Mexican territory or with a trafficking purpose, to shelter them or take them through national territory with the purpose of hidding them in order to avoid the migratory review.*

*To whom knowing the means, presents or serves to carry out the described conducts of the previous paragraphs, a penalty of one or five years of prison shall be imposed and a equivalent fine of five thousand days of minimum salary according to what is in force at the Federal District.*

*The penalties provided in the precedent paragraph shall be increased when the described conducts are carried out regarding the minors, or in conditons, or by means that jeopardize health, integrity or life of the indocumentados, or when the author of the crime is a government employee."*

From the textual quote, the diverse normative documents fall into the following, such as: **"third party", "take away", "trafficking", "foreigners", "penetrate into other country",** and **"without the corresponding documents"** which in particular, are capable of being value legally as well as culturally.

In this way, regarding the first elements of reference "third party", becomes a simple interpretation of the other 13 (IV) of the Federal Criminal Code; this is regarding the participation degree carrying it out through another (mediate author).

For its part, the expression "trafficking" its constitued by the subjective specific element that makes the carrying out of the action and its context comes





PROCURADURIA GENERAL DE LA REPUBLICA

from the cultural assessment that refers to the general trade (to negotiate and to trade), clandestine crime that the active subject makes regarding those persons that want to introduce to another country without taking into account the corresponding documents.

It is applicable thesis XIX. 1o. J/11 supported by the First Collegiate Circuit Court of the Nineteenth Circuit on page 941, Volume XI of March 2000 Ninth Epoch of the Weekly Federal Court Report and its Gazette titled:

***"TRAFFICKING OF PEOPLE WITHOUT IDENTITY PAPERS. FOR THE CONFIGURACION OF CRIMINAL TYPE OF REPEATED CONDUCT IS NOT REQUIRED.*** *From the analysis of the Article 138 of the General Immigration Law it is warned that even though reference to the "trafficking" of people without identity papers is made, it is not demanded as typical element of said legal figure a repeated conduct, because grammatically that expression is not a synonim of usual, on the contrary, according to the Dictionary of Law of Rafael de Pina Vara such term means "to negotiate or to trade" so it is obvious that the crime* ***just implies the illegal transfer of persons from one country to another with the purpose of charging or trying to charge money;*** *maxime that the exposicion of reasons presented by the Chamber of Deputies of the Federal Congress on September 19, 1996 published in the Federal Official Gazette on November of the same year, it is not noticed that the purpose of the legislator had been precisely to demand a repeated conduct in order to make up the criminal type we are talking about (if it were, it would have been expressed in a precise way) but to fight with greater rigor the conducts linked to the illegal transfer of human beings."*

In regard to the term *"taking away"* belongs to the nuclear verb of the criminal type and its conceptualization comes from an assessment of cultural



FORMA CG - 1A

PROCURADURIA GENERAL DE LA REPUBLICA

type, being that as giving an enough cause for its transfer without the corresponding documents.

For its part, the semantic content of the word *"foreigners"* is made up for an specific quality of the subjects that are the action reason and its context comes from a legal valoracion derived from what the Article 2 (IV) of the Nationality Law and it is conceive as the person who does not has the Mexican nationality.

Now, regarding *"penetrating into another country"* refers to a special circumstance derived from the traffic from our Republic to another; it is about itself, of a regulation element of cultural assessment which conceptualization is to cross our territroy limits to another Nation.

In accordance to the last regulation element *"without the corresponding documents"* its context comes from the legal type assessment derived from the content of the General Immigration Law and its Regulation from which emerges as a generic concept the series of procedure and migratory requirements that have to fulfill in order to come in, or in its case, come out the country.

Now, in the case of a study in terms of Articles 168 and 180 of the Federal Code of Crimina Procedure and the written evidence that form the case in the legal reason that precedes, it can be noticed that the requirements and conditions that refer to said rules are not duly accredited.

In this way, the elements that make the corpus delicti a study are:

*The conduct made by the different activities:*

a) *That somebody or by itself, or by another person wants to take or takes Mexicans or foreigners to live in another country with a trafficking purpose;*
b) *That by itself or by other or others, introduces one or many foreigners into Mexican territory;*

*That the estipulated in two points, is carry out without those that have the corresponding documents issued the the competent authority.*



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

*Or*

c) *That the persons are sheltered or transported into national territory in order to hide them to avoid the migratory revision with the trafficking purpose;*

From the previous description, it is seen that it has semantic expressions; in this way, regarding the regulation element *"Mexican territory"* a cultural type valoracions corresponds and it is similar to the term *"Republic"* understood not only as the members of the Federation, but also the insular territory, the territorial ocean, the continental platform, submarine bases, the waters of the territorial oceans and also the space over the national territory itself.

Now, the regulation element *"transport"* and *"shelter"* that belongs to the alternative verbs that made the criminal type aforementioned, its context comes from the cultural assessment which the first is understood as transfering or taking from one geographic area to another to one or many foreigners, specifically, within the national territory whereas the second one, means to put up or to shelter a person in a place.

The term *"to hide"* is made by the specific subjective element that characterizes the fulfillment of the action and its context comes from a cultural assessment that translates itself as a person being seen.

The expression *"to avoid the migratory inspection"* refers to the action purpose and it translates itself into a legal assessment based on the Article 7(II) of the Geneal Immigration Law that establishes the hability of the Ministry of the Interior of watching the entrance or exit of the locals and foreigners and check the documents of them according to the Law and its Regulations in accordance with the Article 11 that refers to the international traffic of people through harbors, airports, and boundaries, it just can be made through the set places with the intervention of the migratory authorities.



FORMA CG - 1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

The referred objective and regulative elements were accredited in the proceedings; in regard of the first one, that is ***that the active for itself wants to take or takes Mexican people or foreigners to another country,*** it is demonstrated with the statement made by **JOSE FERNANDO CASTILLO TAPIA** who before the Federal Public Prosecutor on March 22, 2004 regarding the stated on February 28, 2004, about 17 hours, went to Mrs. **MORENO VAZQUEZ'es** and her kids' address at [redacted] fraccionamiento Lomas Verdes, Naucalpan, Estado de Mexico, Zip code [redacted] to pick them up, Mrs. Maria Elena Vazquez Saucedo, ROSARIO's mother, gave him the letter from **MARIA DEL ROSARIO MORENO VAZQUEZ** where she said that she had taken her kids away from that address to get out of the city without saying their destiny, **having the suspision that she had taken them to another country, maybe to the United States of America since Mrs. MORENO VAZQUEZ had told him that on October, 2003 she married an American person who knew in Internet,** and she asked his permission to take her kids away to another country, so he denied telling her that it was better to establish with her partner and then they would talk about the permission and the visits, thing that she didn't accept it. Likewise, on March 1 of last year, he presented himself at his childrens' school, Colegio La Salle in the Estado de Mexico, where he talked to their classmates, noticing that Mrs. **MARIA DEL ROSARIO MORENO VAZQUEZ** and his minors, **had left the country by airplane on February 27, 2004 using the services of Aereomexico (sic) in 636 flight with destiny Atlanta Georgia, to Salem Alabama City at [redacted] registered under RONALD COONLEY, ROSARIO MORENO VAZQUEZ'es** partner who could probably live at [redacted] Smiths, AL and [redacted] Phenix City AL, [redacted] Columbus GA [redacted] as well as Berrien Springs Michigan also





PROCURADURIA GENERAL
DE LA
REPUBLICA

in [redacted] Albano, NY, [redacted] all of them in the United States of America. Likewise, through some conversations he had with his son's friends, and he was in touch with them through the Internet, and told them that they might travel to a place outside from the United States, but without specifying a destiny or a date for the trip.

Then, he indicated he had appeared before the Tenth Family Court in the Federal District, where he requested the custody of his children [redacted] and [redacted] and about the doubts he had about his children leaving the country, he went to the information window in Naucalpan Local Offices, in the Ministry of Foreign Affairs area in the State of Mexico, to find out if that office had issued passports for them, and one person in that office told him that on February twenty seven, two thousand and four, such documents were issued for [redacted]; that person also said that the legal documents supporting the passports were there, and he requested their verification because he stated he hadn't given his verbal or written consent for those matters and he did not sign any documents for such purpose.

The above is linked to the statement given by **MARIA ELENA VAZQUEZ SAUCEDO**, on April seven, two thousand and four, who stated before the Federal Public Prosecutor she was the mother of **MARIA DEL ROSARIO MORENO VAZQUEZ**, and **it was confirmed that on February twenty eight, two thousand and four, at approximately seventeen or eighteen hours,** FERNANDO CASTILLO TAPIA went to her house because he was going to see his children [redacted], he visited every fortnight. **When he arrived and asked her where they were, she said they weren't there and gave him a letter in a closed envelope, the envelope was from her daughter's workplace, apparently it had the company's logo, and this letter had been given to her by her daughter MARIA DEL ROSARIO on**



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

**February twenty six two thousand and four, but she didn't tell her where she was going, it was understood that she was taking her children with her, and asked her mother to give the letter to FERNANDO; on the other hand, on March twenty seven two thousand and four, around seven, he left with her children and I repeat she never said where she was going, she said that when she asked her where she was going she answered rudely "that is not of your business" and she left and never came back,** they talked to each other two or three times, on March two thousand and four, and she only talked about how she was but she never said where she was.

During his statement, **FRANCISCO JAVIER TOVAR MARTINEZ** said, among other things, that he works for the Ministry of Foreign Relations in the Municipality of Naucalpan de Juarez and his job is to receive all the documents requested to obtain a passport; what he mainly does is receiving the original documents and their copies. So, among other things he said that on February sixteen two thousand and four, he received JOSE FERNANDO CASTILLO TAPIA and MARIA DEL ROSARIO MORENO VAZQUEZ, and he said that lady told him they wanted to obtain their children's passports and he helped them.

These statements have legal weight as a piece of evidence, in compliance with the provisions set forth in Article 285 of the Federal Code of Criminal Procedure, since they fulfill the requirements contained in rule 289 of such body of law, which regulates testimonies, for the deponents' age, probity, capacity and education, which makes them capable to judge impartially; that they directly knew the facts and not through inductions or third parties; their statements are clear and precise, without doubts or reluctance, they express the essence of the facts and the circumstances, they don't seem to have been driven by mistake, deception or bribery and therefore they reveal impartiality.

With all the information above, it may be deduced that **MARIA DEL ROSARIO MORENO VAZQUEZ** took her children to another country, specifically to Atlanta City in the United States of America.





PROCURADURIA GENERAL DE LA REPUBLICA

The legal precedent number 376 can be applied to this case, published in pages 376 and 377 of the compilation and quoted parts, and it states:

***"WITNESSES. APPRECIATION OF THEIR STATEMENTS".*** *The statements rendered by witnesses during a criminal process shall be assessed by jurisdictional authenticity having in mind the valuation elements specified in the positive standards of the applicable Law as well as all the objective and subjective circumstances which determine the mendacity or veracity of the testimony subject to litigation".*

This is linked to the official letter without registration number but dated April twenty two, two thousand and four, received in the Filing Office of the Deputy Attorney General's Office for Organized Crime on the twenty sixth day of the same month and year, signed by Antonio Jauregui Quintana, Manager of Administrative Affairs for Flota de Aerovias de Mexico, accompanied by **simple copies of travel coupons in the name of "MORENO/ MARIA"; [redacted] and [redacted]", used from Mexico to Atlanta for the flight six hundred and thirty six on February twenty seven, two thousand and four.**

These documents are recorded in simple copies, which reduces their evidentiary weight because they are obtained through technical and scientific methods, easy to manipulate or change its composition; however, the possibility of having a real or authentic value of the exact contents of the copied document or documents cannot be discarded, that is why they will be considered as evidence since they are linked to other evidentiary elements like the official letter dated April fourteen, two thousand and four. The Director of Regulation Matters of the Ministry of Foreign Relations submitted a certified copy of the following documents:





FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

a).- **Certified copy** of the application for Mexican ordinary passport, in the name of **MORENO VAZQUEZ MARIA DEL ROSARIO,** with an illegible photograph;

b).- Certified copy of an illegible passport, number [redacted] in the name of **MORENO VAZQUEZ MARIA DEL ROSARIO;**

c).- Two **applications for Mexican ordinary passport (OP-5),** number [redacted] and [redacted] in the name of the minors [redacted] and [redacted];

d).- Certified copy of the birth certificate number [redacted], in the name of [redacted]

e) Certified copy of the passport number [redacted], in the name of CASTILLO TAPIA JOSE FERNANDO, issued by the Ministry of Foreign Relations;

f).- Certified copy of the passport number [redacted], in the name of MORENO VAZQUEZ MARIA DEL ROSARIO;

g).- Certified copy of the birth certificate number [redacted], in the name of [redacted];

h).- Certified copy of the **passport** number [redacted] in the name of [redacted], issued on December seventeen, nineteen ninety seven, with expiration date December two thousand and two, in Naucalpan, Mexico.

Due to their quality, these documents acquire the degree of documentary public evidence since by law they are included in the competence of government employees and certifying public officers; therefore, in compliance with articles 280 and 281 of the Federal Code of Criminal Procedure, the aforementioned documents receive full evidentiary weight.

In this matter it is important to mention the following legal precedent, on page 227, Volume XV-January, of the Weekly Federal Court Report, supported by the Collegiate Court of the Twentieth Circuit, with the following text:



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

***"PUBLIC DOCUMENT. WHAT TO CONSIDER AS SO."*** *A public document is the statement given by a government employee while performing his duties, which has weight of evidence and fully proves the act contained in it".*

Despite the fact that these elements are considered as evidence in compliance with the provisions set forth in Article 285 of the Federal Code of Criminal Procedure, they can only be useful to prove that on February twenty seven two thousand and four, **MARIA DEL ROSARIO MORENO VAZQUEZ** took her children to the United States of America, specifically to Atlanta City, on the flight six hundred and thirty six of the airline Flota de Aerovias de Mexico.

However, in relation to the ***mens rea*** regarding **trafficking**, performed illegally and clandestinely, specifically with regard to those who try to introduce Mexicans to another country without the corresponding documents with the intention of charging a certain amount of money, it is not acknowledged, **since there are no elements in the records which prove that MARIA DEL ROSARIO MORENO VAZQUEZ obtained a profit for introducing her children [redacted] and [redacted] into the United States of America.** In this case, there is no evidence of commercialization or exploitation of the human or economic condition of immigrants which merits the severe sanctions applied to those who commit such crime and there is no evidence that the aforementioned person worked as an immigrant trafficker or that she exploited the human or economic condition of her children subjecting them to outrageous conditions by taking them to the United States of America.

In this matter, there is an applicable legal precedent supported by the Third Collegiate Court of the Fifth Circuit, page 583, Volume VIII, of November 1998, Ninth Period, visible in the Weekly Federal Court Report and its Gazette, that says:

11



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

***"TRAFFICKING, PURPOSE. SCOPE OF THE CRIME FORESEEN IN ARTICLE 138 OF THE GENERAL IMMIGRATION LAW.*** *Article 138 of the General Immigration Law establishes: "Upon whomever or by means of a third party, for the purpose of trafficking, attempts to take or takes Mexican or foreigners into another country, without the corresponding documentation there shall be imposed an imprisonment penalty from six to twelve years and a fine from one hundred to ten thousand days of minimum daily general wage in force in the Federal District at the time when the conduct is perpetrated..." Until November eight, nineteen ninety six, when it was reformed by the decree published in the Official Gazette of the Federation, such precept said in its first paragraph: "Upon whomever or by means of a third party, for the purpose of trafficking, attempts to take or takes Mexican or foreigners into another country, without the corresponding documentation there shall be imposed an imprisonment penalty from two to ten years and a fine up to ten thousand days of minimum daily general wage in force in the Federal District at the time when the conduct is perpetrated..." The reasons that gave rise to the decree that reforms, adds and repeals several provisions of the General Immigration Law, considered in this regard that it was necessary to apply a greater and more severe punishment for offenders who commit the crime of "illegal alien trafficking"; therefore, the new precept was included as the mens rea of the aforementioned crime, the "trafficking purpose"* ***of the offender; the semantic connotation of the word "trafficking", as described in the Dictionary of the Royal Academy of Spanish, is to "traffic"; "traffic": to trade, negotiate with money and merchandise;*** *on the other hand, Larrouse Encyclopedic Dictionary defines the word "trafficking" as: illegal and clandestine commerce; and the verb "traffic", to negotiate, carry our commercial operations, usually illegal and clandestine. So, the term "purpose of trafficking" used by the General Immigration Law refers to illegal and clandestine commerce, in general, carried out by the offender while introducing people into another country, without the*



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

*corresponding documentation, **whoever performs such action obtaining a profit".***

Therefore, if that element is missing and its function is to understand the objective description of a conduct, then one of the constituting elements of the crime will be missing as described in Article 138, second paragraph, of the General Immigration Law and the behavior shown would not give rise to the criminal hypothesis of transporting one or several Mexican or foreign people with the purpose of trafficking and hiding them to avoid a migratory revision.

Regarding the different hypothesis of the crime, included in Article 138 of the aforementioned Law, saying that if the offender ***in person or by means of a third party enters, without the corresponding documentation issued by the jurisdictional authority, one or several foreigners into Mexican territory or, for the purpose of trafficking, lodges or transports them within Mexican territory*** is not proven since [redacted] both with the last names [redacted] are not foreigners and, on the contrary, it is duly recorded that in compliance with Article 30 of the Political Constitution of the Mexican United States, they are Mexican citizens by birth since they were born in Mexican territory and their parents are also Mexican, so this hypothesis cannot be acknowledged.

This element receives full evidentiary weight, in compliance with Article 280 of the Federal Code of Criminal Procedure, since it is a public document issued by a public officer in the fulfillment of his duties.

The above is supported by the legal precedent of the Collegiate Court of the Twentieth Circuit published in the Weekly Federal Court Report, Volume XV, January 1995, Eight Period, page 227, in the following section:

***"PUBLIC DOCUMENT. WHAT TO CONSIDER AS SO."***

Consequently, since the behavior attributed to the suspect in the aforementioned hypothesis is not acknowledged, it is not important to study the



PROCURADURIA GENERAL DE LA REPUBLICA

specific *mens rea* required for the quoted criminal definition, which specifies that such behavior **must have the purpose to hide them** so as to avoid a migratory revision.

In this regard, this court is not empowered to reclassify the present facts into a different criminal definition, such as **CHILD TRAFFICKING,** since it cannot be ignored that in relation to the facts that gave rise to the present study, the Seventh District Court in the State of Mexico, sitting in Naucalpan de Juarez, accepted the competence given in that moment on behalf of that court, regarding the aforementioned crime; therefore, considering that the stage of the case is acknowledged, studying the same crime based on the same facts would reclassify the behavior and the same crime would be punished twice, which is forbidden by Article 23 of the Constitution under the apothegm *non bis in idem.*

In this respect, since not all the elements that integrate the crime of **VIOLATION TO THE GENERAL IMMIGRATION LAW** are proven, as set forth in article 138, first and second paragraphs of the General Immigration Law, the requirements for an arrest warrant are not gathered as foreseen in Article 16 of the Constitution and 142 of the Federal Code of Criminal Procedure, so it is not necessary to deal with the remaining element of the *corpus delicti* or with the alleged responsibility of the accused, therefore **the arrest warrant requested by the Public Prosecutor submitting the indictment is denied.**

The core legal precedent number 278, page 203, Volume II, Criminal Matters, of the Appendix of the Weekly Federal Court Report, 1917 to 2000, which states:

***"INSUFFICIENT EVIDENCE, CONCEPT.-*** *Insufficient evidence is considered when the recorded information does not fully prove the accusations made; a decision based upon insufficient evidence violates constitutional rights."*

**PROVING THE CRIMES**



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

**FIFTH.-** Likewise, criminal action was applied against **MARIA DEL ROSARIO MORENO VAZQUEZ,** for her alleged responsibility in the perpetration of the crimes of **FORGERY OF PUBLIC DOCUMENT** and **USE OF FALSE DOCUMENT,** foreseen in Article 244 (II), in relation to Article 246 (VII) and sanctioned by Article 243, paragraph one, of the Federal Criminal Code; against **ARTEMIO BARRERA HERNANDEZ** for his alleged responsibility in the perpetration of the crime of **FORGERY OF DOCUMENTS,** foreseen in Article 244 (I) and (V), sanctioned by Article 243, paragraph one, of the Federal Criminal Code, and against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility in the perpetration of the crimes of **FORGERY OF DOCUMENTS** and **USE OF FALSE DOCUMENT,** foreseen in Article 244 (V)(X), and sanctioned by Article 243, paragraph one, of the Federal Criminal Code [sic], which state the following:

***"ARTICLE 243.-*** *The crime of falsifying public documents shall be punished with imprisonment ranging from four to eight years and a fine ranging from two hundred to three hundred and sixty days. As for private documents, imprisonment ranging from six months to five years and a fine ranging from one hundred and eighty to three hundred and sixty days…"*

***"ARTICLE 244.-*** *The crime of forgery of documents is committed by any of the following means.*

***I.- By stamping a false signature, even if the signature is fictitious or if an original signature is modified.***

***II.- By unduly obtaining a benefit from another's blank endorsement, issuing a debenture, or any other document that may compromise the assets, honor, the physical integrity or reputation of another third person, or that cases a harm to society, the State or a third party,***

M



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

*III.- By altering the text of the original after it has been concluded and signed, if said alternation changes the meaning of the document with respect to some material circumstance or issue, either by partially or completely adding, correcting or erasing, one or more words or clauses or by changing the punctuation.*

*IV.- By varying the date or any other circumstance related to the time that the act stated in the document was executed.*

***V. - By attributing to the person who issues the document, or by attributing to the person in whose name the perpetrator issues the document a name or office, capacity or condition that they do not have and which is necessary to the validity of the act.***

*VI.- By drafting a document on terms that modify the agreement executed to another that varies the representations or will of the grantor, the obligations which the latter wished to undertake, or the rights that the latter should have been acquired.*

*VII.- By adding or altering clauses or statements, or recording as true false facts, or as admission what has not be admitted, if the document in which these are manifested is issued as a record and proof of the same.*

*VIII.- By extending a supposed official copy of non-existent documents, extending a copy of a document that lack the legal requirements when these have allegedly been fulfilled, or by extending a copy of a document that meets the legal requirements but in the copy the contents of the original document have been added to or suppressed and these changes import a substantial variation,*



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

*IX.- By altering an expert translator or paleographer the contents of the document translated or decoded.*

***X.- "By making plates, identification badges, emblems, documents or any other official identification without the authorization of the pertinent authority".***

*"**Article 246**. The penalty referred on Article 243 shall be also incurred by:*

...

*VII.- Whoever, knowingly, makes use of a forged document or copy, transcript or notarial certificate of it, be it public or private."*

After pointing out the above, it has to be clarified that according to the method used, the *corpus delicti* will be studied separately for each one of the accused; in this regard, the first crimes to analyze are the ones attributed to **MARIA DEL ROSARIO MORENO VAZQUEZ,** which are: **FORGERY OF PUBLIC DOCUMENTS,** foreseen in Article 246 (II), and **USE OF FALSE DOCUMENT** foreseen in Article 246 (VII), both sanctioned by Article 243, paragraph one, of the Federal Criminal Code.

In accordance with the provisions set forth in Article 19 of the Political Constitution of the United Mexican States, as well as 134, paragraph three and 168 of the Federal Code of Criminal Procedure, concerning the requirements for an arrest warrant, the first step is to decide which criminal definition corresponds to the behavior of the accused and then to verify if the evidence gathered during the preliminary investigation proves the elements of the *corpus delicti* or the corresponding crimes, and the alleged responsibility. Likewise, in compliance with the provisions set forth in Article 163 of the Federal Code of Criminal Procedure, the judge has the obligation of rendering a resolution (an



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

arrest warrant or indictment with detainee within the constitutional term, since both have the same basic requirements), for the classified crime; as a result, this judge is empowered to modify the classification made by the investigating federal authority because the legislator created this rule considering juridical security in all actions of the court.

In this regard, the legal precedent of the First Collegiate Court of the Fifteenth Circuit can be applied, which can be found in the Weekly Federal Court Report, Volume XII, August 1993, page 495, eight period, which states:

***"ARREST WARRANT. CRIMES THAT MERIT ITS ISSUANCE. DETERMINED BY A JUDGE"*** *In order to grant it, it is not necessary to only consider the crime deemed by the Public Prosecutor; the judge can also find some criminal action in the facts analyzed by the court which merits imprisonment and some indication of responsibility from the accused, apart from the fact that the crime that gave rise to the warrant coincides with the crime considered by the Public Prosecutor; his job is to submit the facts and only the judge can place them within the Law".*

Contrary to the opinion of the prosecuting authority about the documents that integrate the present criminal case, it can be seen that only one crime was committed, **FORGERY OF PUBLIC DOCUMENT**, foreseen in article 244 (I) and penalized by Article 243, paragraph one, both from the Federal Criminal Code and there is no evidence of **USE OF FALSE DOCUMENT**, foreseen in Article 246 (VII), due to the following reasons:

On this matter, the transcription above shows the following elements for the first crime mentioned:

***a) The existence of a false public document (regulating element);***

***b) Making a false signature or false initials, even if they are fictitious, or modifying a false signature;***

The typical description contains as regulating elements the terms "**public or private document**", "**signature**" or "**initials**" understood as follows: the



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

first concept requires a legal and cultural assessment since, in compliance with Article 133 of the Federal Code of Civil Procedure, private documents do not gather the conditions foreseen in Article 129 of the aforementioned Code, which specifies the document must be created by law, within the limits of its competence, to a government employee; a public document has seals, signatures or other external signs required by law. Therefore, false *public documents* shall not present the foregoing elements. On the other hand, the word ***signature*** is defined in the Royal Spanish Academy Dictionary as the name and last name of a person or the title a person manually writes on a document in order to give it authenticity or to express that the content is approved, while ***initials*** are the strokes each one adds to the name or title, sometimes used by themselves, without using the name or title of the signing person.

The **first element of the crime,** regarding the existence of false public documents is duly fulfilled with the **expert opinion on graphology**, dated June fifteen two thousand and four, signed by the expert L.Aldo Chisanto Molina, assigned to the General Division for Expert Services Coordination, dependent of the Attorney General's Office, which was made after analyzing the following documents: two ordinary passport applications, Mexican (OP-5), number [redacted] and [redacted] in the name of the minors [redacted] and [redacted] respectively, issued in Naucalpan de Juarez, State of Mexico, dated February sixteen, two thousand and four, which have the acronym of the Ministry of Foreign Affairs on the left upper corner and with the OP-7 form at the back, regarding the authorization of parents or guardians to issue such passport. The expert concluded that: "**FIRST.-** THE SIGNATURES IN THE DOCUMENTS ANALYZED DURING THE FIRST OPINION **DO NOT TALLY WITH** THE SIGNATURE OF **JOSE FERNANDO CASTILLO TAPIA** IN COMPARISON WITH THE SIGNATURES GIVEN FOR COLLATING. **SECOND**.- THE HANDWRITING IN THE

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

DOCUMENTS ANALYZED DURING THE FIRST OPINION **DO NOT TALLY WITH** THAT OF **JOSE FERNANDO CASTILLO TAPIA** IN COMPARISON WITH THE HANDWRITING GIVEN FOR COLLATING".

Likewise, we shall consider the **expert opinion on graphology,** dated June ten two thousand and four, signed by experts Praxedis Irma Garcia Guerrero and Rosa Flores Vazquez, assigned to the General Division of Expert Services Coordination, dependent of the Attorney General's Office, which presented the following results:

**I).-** When the study of the fingerprint file in the name of Castillo Tapia José Fernando was analyzed, it presented the following dactylographic pattern E-3343 I-2222, on the right hand, thumb, forefinger, middle finger and little finger, which belong to the third fundamental type internal loop. Due to its morphology, the right ring finger belongs to the fourth fundamental type WHORL, CONCENTRIC SUBTYPE, and it was the only one analyzed since it corresponds to the same fundamental type of the fingerprints stamped on the forms OP7;

**II).-** When we made the study of the fingerprints stamped on the forms OP7, from the parent or guardian with the legend "left index finger" we found that it belongs to the fourth fundamental type WHORL, SPIRAL SUBTYPE, RIGHT DIRECTION. The fingerprints with the legend "right index finger" belong to the fourth fundamental type WHORL, SPIRAL SUBTYPE, LEFT DIRECTION. **After comparing the fingerprint of the right ring finger in the fingerprint file of CASTILLO TAPIA JOSE FERNANDO with the fingerprints stamped on the forms OP7, we found that the subtype does not coincide as well as other features. The photographs of the fingerprints and the OP7 forms were entered into the AFIS system in order to compare them to the information in the system and a positive match was found for: "BARRERA HERNANDEZ ARTEMIO, for forgery of official documents.** Preliminary Investigation 9545/D/94, Federal Public Prosecutor, Head of the



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

Desk IX-D, 39 years old, born on [redacted] 1955, with address on [redacted] Santa Cruz Xochintepec, Xochimilco, D.F., with a fingerprint file attached to this file. Then we made a comparative study, taking as a reference the right and left middle fingers, based on the fundamental type, subtype and characteristic point location, the fingerprint file was photographed and the pictures were amplified in order to compare them with the fingerprints stamped on the OP7 formats of the minors [redacted], both [redacted]

Conclusions. **First.- The fingerprints stamped on the fingerprint file in the name of CASTILLO TAPIA JOSÉ FERNANDO, DO NOT MATCH the fingerprints stamped on the OP-7 applications, with the legend "right and left index fingers of the minors [redacted], both with the last names [redacted] SECOND.- The fingerprints stamped on the OP-7 application with the legend "right and left index fingers of the minors [redacted], both with the last names [redacted] MATCH the fingerprints stamped of the right and left middle fingers of the fingerprint file in the name of Barrera Hernandez Artemio.**

These expert opinions comply with Articles 285 and 288 of the Federal Code of Criminal Procedure, since they were made by official experts in accordance with the requirements set forth in Articles 221 and 223 of the same Code, which also explain the techniques used and considered to draw their conclusions. These documents were submitted to the investigating authority and their content has not been objected.

In this regard, we can apply the legal precedent made by the First Room of the Supreme Court of Justice of this country, page 20, volume 49, second part, of the Weekly Federal Court Report, which states:

***"EXPERT'S OPINION, ASSESSMENT"*** *The judge shall grant the value he considers reasonable for the expert's opinions, since they are useful*



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

*information; however, they do not oblige to accept their results. When there are no other elements that distort the contents of such opinions, the Judge can give them full weight of evidence".*

We can apply the court precedent 254 of the First Room of the Supreme Court of Justice of this country, page 143, volume II, part SCJN, of the Appendix to the Weekly Federal Court Report 1995, criminal matters, which states:

***"EXPERTS. EVIDENTIARY WEIGHT OF THEIR OPINION.** Within the broad scope given by law and jurisprudence to the judicial authority so as to value expert's opinions, the judge can deny them full evidentiary efficiency, choosing those issued legally, accepting or discarding one or several opinions in accordance with the legal capacity determined for each one of them".*

Likewise, we can apply the legal precedent XXI. 1o. 27 P, supported by the First Collegiate Court of the Twenty First Circuit, visible on page 384, volume XIV, September 1994, of the Weekly Federal Court Report, eighth period, with the text:

***"EXPERTS. NOT CHALLENGED OPINION.** The concept of constitutional violation is inadmissible for substantive or adjective irregularities of an expert's opinion valuated in the claimed sentence if such opinion is not legal or if it was not properly challenged before the natural judge".*

The foregoing is supported by the statement given by FERNANDO CASTILLO TAPIA, on April twenty three, two thousand and four, when he said that, as he had said on his appearance of March twenty two, two thousand and four, he did not consent to the issuance of a passport in favor of the minors; after he saw the documents submitted by the Ministry of Foreign Affairs, **which presented the name and initials of the person who requested a passport for the minors [redacted] both with the last names [redacted] as well as the copy of the passport with the**



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

**name of JOSE FERNANDO CASTILLO TAPIA, who supposedly authorized the issuance of the aforementioned document; after revising the documents included in the file, he said he does not know who signed for him and he does not know who the signature and the fingerprint on both applications belongs to; therefore, he was not physically there to present the application or sign the authorization for the issuance of the passport of his children, he only recognizes the copy of the passport of her daughter [redacted] issued on December seventeen, nineteen ninety seven, since he requested it with MARIA DEL ROSARIO MORENO VAZQUEZ.** He does not know about any other authorization documents signed by his own hand; he also mentioned that the handwriting on the applications belongs to MARIA DEL ROSARIO MORENO VAZQUEZ. He remembered that some days before his children were abducted by their mother, he had his passport in his bedroom and then he found it somewhere else, but he did not pay attention to this fact; his son, [redacted] has a copy of the keys to his house, and he thought maybe his daughter, his son or their mother could have taken the passport and then placed it there again, since they had access to his house and he was working that day, but he did not notice someone had taken it and he did not know it was used to request a passport for the minors. Likewise, in relation to the contents of the document by INTERPOL dated April twelve, two thousand and four, he only accepts part of it; he requested help from that institution because he had the feeling that his children had been taken to another country by MARIA DEL ROSARIO MORENO VAZQUEZ, as it was also stated before the Public Prosecutor of the State of Mexico, **the day he learned that his children were no longer living in the house located at [redacted] Alteña Dos Lomas Verdes, considering that some months before, MARIA DEL ROSARIO MORENO told him she had married a man named RONALD COONLEY, American, and that she was planning to move with**



PROCURADURIA GENERAL
DE LA
REPUBLICA

**her children to the United States; then he said he did not agree with that and he was not going to authorize such thing, first of all because MARIA ROSARIO MORENO told him she had met Mr. COONLEY on the Internet and this was her second marriage, after his own, with someone she met on the Internet.**

Statement valued as evidence in compliance with Article 285 of the Federal Code of Criminal Procedure, determined in accordance to Article 289 of the aforementioned document; the deponent is of age, he has the necessary capacity and education to judge the fact, and he witnessed the fact, he did not learn about it through inductions or references given by others, he was able to appreciate it through his own senses through a clear and precise exposure, without any doubts or reluctances, considering that as an adult, he has the capacity and education to judge the fact that gave rise to his statement.

The legal precedent 1.8o.C.58C of the Weekly Federal Court Report, Ninth Period, Volume VI, September 1996, page 759, with the text:

***"TESTIMONY. ANALYSIS AND VALUATION OF EVIDENCE.*** *The statements given by witnesses during a judicial procedure must be valuated by the court, considering the justification elements specified in the positive standards of the applicable legislation as well as all the other objective and subjective circumstances useful to determine the mendacity or veracity of witnesses through a logical process and a correct reasoning, since they are not only narrators of an isolated fact, but of an experience they lived and heard; therefore, their statements must be appreciated through such critical sense. On the other hand, the valuation of a testimony always entails two investigations: the first one regarding the truthfulness of the testimony, considering the subjective credibility of the witness; the second one analyzes the objective credibility of the testimony, considering the perception source the witness received as well as the content and form of the statement".*

1a

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

The core legal precedent 376 can also be applied, supported by the First Room of the Supreme Court of Justice of this country, published on page 275 of the Appendix of the Weekly Federal Court Report, 1917-2000, Volume II, Criminal Matters, with the following heading and text:

***"WITNESSES. APPRECIATION OF THEIR STATEMENTS.-*** *The statements rendered by witnesses during a criminal process shall be assessed by the jurisdictional authenticity having in mind the valuation elements specified in the positive standards of the applicable Law as well as all the objective and subjective circumstances which determine the mendacity or veracity of the testimony subject to litigation".*

Considering the foregoing, we have to mention that we are talking about public documents, in compliance with Article 129 of the Federal Code of Civil Procedure, since the application for ordinary passport OP-5 and OP-7 is issued by the Ministry of Public Affairs, an agency of the Centralized Public Administration, in accordance with the Organic Law of the Federal Public Administration.

As for falseness, it is concluded that the person who went to the offices of such Ministry located in the municipality of Naucalpan de Juarez, State of Mexico, was not entitled to fill such applications since, at the back, it can be seen that the person who appeared was there in the name of the father of the minors [redacted] and [redacted] both with the last names [redacted] at that time, as seen in the box marked with an "x" in the space regarding the information of the parent or guardian, and he identified himself with the passport [redacted] issued by the Ministry of Foreign Affairs, on November the sixth, two thousand and three. These circumstances are contradicted in relation to the aforementioned evidence, since it was proven that on February sixteen two thousand and four the applications were filled by a person different from the name recorded in the documents, Jose Fernando Castillo Tapia.

PROCURADURIA GENERAL
DE LA
REPUBLICA

On the other hand, about the **second element** regarding the use of a false signature or false initials, even if it is fictitious, or altering a false one; it is also proven with the convicting elements, previously reported and valuated, since the expert's opinion on Graphology and identification showed that the fingerprints and the signature on the two ordinary passport applications OP-5 and OP-7 did not belong to Jose Fernando Castillo Tapia; when they were compared to the files of the Federal Investigation Agency, it was seen that the fingerprints stamped at the office of the Ministry of Foreign Affairs belonged to **"BARRERA HERNANDEZ ARTEMIO"**, who is now related to the **crime of forgery of official documents, under the preliminary investigation** 9545/D/94; authority, Federal Public Prosecutor, Head of Desk IX-D.

Due to the above, the evidence valuated in compliance with Articles 280, 285, 288 to 290 of the Federal Code of Criminal Procedure is suitable to prove the elements that make the criminal definition of **FORGERY OF PUBLIC DOCUMENTS**, foreseen in Article 244, section I and penalized by Article 243, first paragraph, of the Federal Criminal Code, since some active individuals carried out the facts voluntarily and the crime was proven through the generic rule set forth in Article 168 of the Code of Procedures in this matter, since the evidence showed that such active individuals, on February sixteen two thousand and four, appeared in the Ministry of Foreign Affairs offices located in Naucalpan, State of Mexico, so as to fill ordinary passport applications OP-5 and OP-7, and with such purpose they used a false signature, as proven by the graphology and identification studies, since it was concluded that such signatures and the stamped fingerprints in the name of Jose Fernando Castillo Tapia were not his; such actions attempt against the public trust of documents issued by the state, as foreseen in Articles 243 and 244 of the Federal Criminal Code.



PROCURADURIA GENERAL DE LA REPUBLICA

Therefore, the legal precedent VI.2o.J/174 of the Second Collegiate Court of the Sixth Circuit, published in the Weekly Federal Court Report, Volume IX, February 1992, page 96, Eighth Period, which explains:

***"CIRCUMSTANTIAL EVIDENCE. ASSESSMENT.*** *The circumstantial evidence is based on the incriminatory value of evidence and it takes, as a starting point, proven facts and circumstances which have to be linked to the inquired fact; it can be a missing piece of information or an uncertainty, a hypothesis that needs verification, applied to the materiality of the crime and to the identification of the offender and the circumstances of the offense".*

After highlighting the above, it is important to resume that in the present study, the offender, the evidence of the crime of Forgery of false public document [sic] and use of such document do not concur, considering the following:

Article 246 (VII) of the Federal Criminal Code foresees:

*"**Article 246**. The penalty referred on Article 243 shall be also incurred by:*

*. . .*

***VII.- Whoever, knowingly,*** *makes use of a forged document or copy, transcript or notarial certificate of it, be it public or private."*

In that sense, it is important to mention the scope of the words used in the last element, ***"knowingly"***, and in that regard, the Supreme Court of Justice of the Nation describes who can be blamed for that offense. It is now important to consider the legal precedent supported by the First Room of our main Court, which can be consulted in the Weekly Federal Court Report, volume LXIV, page 3066, criminal matters, fifth period, which says:

***"FALSE DOCUMENTS, USE, THIS CRIME CAN ONLY BE ATTRIBUTED TO THIRD PARTIES, NOT INVOLVED IN THE FORGERY"*** *Article 246, section VII of the Criminal Code in force in the Federal District establishes that public or private forgery will also be considered when a person uses a document, private or public, knowing it is false.* ***If the accused was imprisoned for forgery of public document, it is unquestionable that he could not be responsible for***



PROCURADURIA GENERAL DE LA REPUBLICA

***the crime of use of false documents at the same time, since that crime can only be attributed to third parties, not involved in the forgery of documents, since the forger cannot ignore the document is false and it would be redundant to demand by law as an exclusive requirement to punish the use of false documents only when the person is aware of the falseness,*** *and the order of formal imprisonment for this crime with the aforementioned conditions contravenes constitutional rights.*

Likewise, the above is supported by the legal precedent of the First Room of the Supreme Court of Justice of the Nation, which can be consulted in the Weekly Federal Court Report, volume 187-192, second part, page 75, seventh period, which states:

***"USE OF FALSE DOCUMENT, INEXISTENCE.*** *The act carried out by the person who falsifies a document is not included in the precedent established in Article 246 (VII) of the Federal Criminal Code, since it refers to whoever uses a document knowing it is false; therefore, the forger is not included in such standard, since the knowledge of the falseness is evident; if the use of apocryphal documents is attributed to the accused, representing fictitious situations and participating in their forgery, he cannot be liable for use of false documents at the same time, he will only be liable for their forgery".*

Due to the above, it is inferred that the offender included in the criminal hypothesis of *use of false document* shall have nothing to do with the person liable for *use of false document.* If that person was one of the participants of the latter crime, they would have some participation in the crime, as an author, accomplice, etcetera, as set forth in Article 13 and all its fractions of the Federal Criminal Code. If it is held that the accused participated in the possible commission of the crime described in Section I of Article 244, regarding document forgery, and that she also committed the crime of use of such false document, that would entail improperly re-qualifying an action or punishing it



PROCURADURIA GENERAL
DE LA
REPUBLICA

twice, which would infringe the apothegm *non bis in idem* established as a constitutional right in Article 23 of the Constitution.

In this regard, if the forger of a document is punished for using the document, the action would be classified incorrectly, since we must not forget that the offender cannot be involved in the forgery and, in compliance with the specified terms, using that document should damage a legal asset other than public trust; when the use of a false document involves depletion of forgery, we cannot talk about two independent and autonomous behaviors, the use is subsumed in the act of forgery in accordance with the *mergence or absorption principle.*

If we consider that on February sixteen, two thousand and four, when the ordinary passport applications OP-5 and OP-7 were forged in the aforementioned terms, the accused Maria del Rosario Moreno and Artemio Barrera Hernandez filled out such documents despite the fact that Artemio Barrera was not entitled to do so since the applications have to be filled out by the parent or guardian, in this case of the aforementioned minors. It is undeniable, in the light of a logical and legal concatenation of all the convictive elements, they were aware of the falseness of their acts since a signature was stamped which should have only be written by the father of the minors, Jose Fernando Castillo Tapia. In accordance with the descriptions given in the paragraphs above, the corpus delicti for **intentional use of false document** is not formed, because in order to prove such thing, the person involved shall not have participated in the forgery.

On the other hand, without ignoring the contents of Article 251 of the Federal Criminal Code, there are several common provisions in the previous chapters which stipulate that if the forger used the false documents or objects described in section thirteen, forgery shall be added to the crime committed by the offender using false elements.



PROCURADURIA GENERAL DE LA REPUBLICA

In this context we can deduce that the purpose of the legislator was to accumulate sanctions for forgery and the crime committed through the use of a false document, known as *ratio legis.* The behavior of the accused cannot be classified in Section VII of Article 246, since such text refers to the use of a false document by a person other than the forger and it shall be punished in compliance with 251, only when a crime other than document forgery is committed, excluding the use of such document for the commission of the crime.

The above is supported by the legal precedent of the Collegiate Court for Criminal Matters of the Seventh Circuit, which can be consulted in the Weekly Federal Court Report and its Gazette, volume II, September 1995, page 497, ninth period, with the following text:

***"USE OF FALSE DOCUMENT AND FORGERY OF DOCUMENTS. WHEN THE FIRST IS SUBSUMED IN THE SECOND.*** *When a person falsifies a document and* ***uses it intentionally,*** *two autonomous crimes cannot be considered, since the hypothesis of use of false document is subsumed in document forgery."*

Once again, Article 246 (VII) of the Federal Criminal Code establishes as specific *mens rea* that the offender *knowingly, makes use of a forged document,* so the criminal figure is defined. Therefore, it is evident that the forger knows about the falseness of the document, so it would be redundant if the law demanded as one of the requirements that the false document was used knowing it is false.

So, it is important to highlight that the elements of **USE OF FALSE DOCUMENT, foreseen in Article 246 (VII) and sanctioned by 243, first paragraph, all of them of the Federal Criminal Code** are not proven; therefore, the standards of **crime exclusion** foreseen in section II of Article 15 of the Federal Criminal Law are considered and the **alleged responsibility** of **MARIA DEL ROSARIO MORENO VAZQUEZ in the commission of such**



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

**crime is excluded; due to the above, the warrant requested against her for such crime is denied.**

**PROVING THE CRIME**

**SIXTH.-** On the other hand, in relation to the crime attributed to **ARTEMIO BARRERA HERNANDEZ** relating to **FORGERY OF DOCUMENTS**, foreseen in Article 244 (I)(V) and sanctioned by Article 243, paragraph one, of the Federal Criminal Code, it is fulfilled.

Considering such article, we take several elements applicable to the first crime:

***a).- The existence of a false public document (normative element):***

***b).- stamping a false signature, even if the signature is fictitious or if an original signature is modified (section I)***

***c).- attributing to the person who issues the document, or by attributing to the person in whose name the perpetrator issues the document a name or office, capacity or condition that they do not have and which is necessary to the validity of the act (section V).***

The **first element** of the corpus delicti has been duly recorded, as it was tackled when the criminal definition attributed to Maria del Rosario Moreno was studied, due to the fact that there is a link between the events, once such element is met in that analysis, as well as this element, since the ordinary passport applications OP-5 and OP-7 are issued by the Ministry of Foreign Affairs, an office of the Centralized Public Administration in accordance with the Organic Law of the Public Administration and they are public documents, in compliance with Article 129 of the Federal Code of Civil Procedure.

In relation to the **second element** regarding Section I of such article, it is also fulfilled, since in the Graphology and Identification expert's opinions, signed by experts assigned to the Mexican Attorney General's Office on June ten and fifteen, two thousand and four, respectively, considered as evidence in



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

compliance with Article 285, in relation to 288 of the Federal Code of Criminal Procedure, it was seen that the fingerprints and the signature on the two ordinary passport applications OP-5 and OP-7 were not made by Jose Fernando Castillo Tapia; when they were compared to the files of the Federal Investigation Agency it was seen that the fingerprints stamped on such Ministry of Foreign Affairs office belonged to "**BARRERA HERNANDEZ ARTEMIO**", who was related to the **crime of forgery of official documents, under the preliminary investigation** 9545/D/94 carried out by the Federal Public Prosecutor, Head of the IX-D Desk, while it was concluded that the signatures on such documents were not made by Jose Fernando Castillo Tapia.

Despite the fact that the two elements mentioned above exist, the corpus delicti is formed in relation to Section I; it is important to mention that the hypothesis contained in Article 244 (V) is also present, which considers *attributing to the person who issues the document, or by attributing to the person in whose name the perpetrator issues the document a name or office, capacity or condition that they do not have and which is necessary to the validity of the act.*

In this regard, the aforementioned expert's opinions of Graphology and Identification are used since through them it is proven that on February sixteen, two thousand and four, before the Ministry of Foreign Affairs in Naucalpan de Juarez, State of Mexico, a person appeared in order to fill out with his signature, fingerprints and other information the ordinary passport applications [redacted] and [redacted]; and he identified himself with the passport number [redacted] issued by the Ministry of Foreign Affairs on November six, two thousand and three, but it was not Jose Fernando Castillo Tapia, since, in accordance with the original birth certificates analyzed by the investigating authority, on March twenty two, two thousand and four, number [redacted] for [redacted] [redacted] issued by the Central Registrar of Vital Statistics in the Federal District, and number [redacted] dated March twelve two thousand and three for



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

[redacted] issued by officer zero two of the Registry of Vital Statistics in the State of Mexico, and it is seen that Jose Fernando Castillo is the father of both children and therefore, in accordance with the restrictions of such applications, he is the person authorized to fill them since at the back it is specified that the application must be filled out by a minor's parent or guardian. This person is the only one entitled to do so and another person took his place and, according to the results of the identification study based on the stamp fingerprints and other elements, Artemio Barrera Hernandez claimed, by filling out such document, the name of the person authorized to do so, the parent or guardian.

Due to the foregoing, the aforementioned evidence valued in compliance with Articles 280, 285, 288 to 290 of the Federal Code of Criminal Procedure, is effective and suitable for the criminal definition of **FORGERY OF DOCUMENTS**, foreseen in Article 244 (I) and (V), sanctioned by Article 243, paragraph one, all from the Federal Criminal Code, since an offender voluntarily carried out an action and the criminal definition was proven through the generic rule contained in Article 168 of the Code of Procedure in this matter, since the content of such elements showed that such person, on February sixteen two thousand and four, appeared with another person before the Ministry of Foreign Affairs in Naucalpan, State of Mexico, so as to fill out the applications for ordinary passport OP-5 and OP-7, and the offense was externalized by stamping a false signature, as seen in the identification and graphology expert opinions, since it was proven that the signatures stamped in the name of Jose Fernando Castillo Tapia were not made by him; such person filled out the aforementioned documents claiming to be Jose Fernando Castillo by illegally signing and stamping his fingerprints, and such action infringed the legal right set forth in articles 243 and 244 (I) (V) of the Federal Criminal Code, which is the public trust any document issued by the State shall fulfill.





PROCURADURIA GENERAL DE LA REPUBLICA

Therefore, we can apply the legal precedent VI.2o.J/174 of the Second Collegiate Court of the Sixth Circuit, published in the Weekly Federal Court Report, Volume IX, February 1992, page 96, Eighth Period, which explains: ***"CIRCUMSTANTIAL EVIDENCE. ASSESSMENT.*** *The circumstantial evidence is based on the incriminatory value of evidence and it takes, as a starting point, proven facts and circumstances which have to be linked to the inquired fact; it can be a missing piece of information or an uncertainty, a hypothesis that needs verification, applied to the materiality of the crime and to the identification of the offender and the circumstances of the offense".*

**PROVING THE CRIME**

**SEVENTH.-** Finally, criminal action was also applied against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility in the commission of the crimes **FORGERY OF DOCUMENTS and USE OF A FALSE PUBLIC DOCUMENT**, foreseen in Article 244 (V) (X) and penalized by Article 243, first paragraph, of the Federal Criminal Code (sic), which will now be analyzed.

The elements of the corpus delicti for the first offense are:

***a) The existence of a false public document (normative element);***

***b).- attributing to the person who issues the document, or by attributing to the person in whose name the perpetrator issues the document a name or office, capacity or condition that they do not have and which is necessary to the validity of the act (section V)or***

**The hypothesis contained in section X of such Article as a sole element:**

***Sole.- Making plates, identification badges, emblems, documents or any other official identification without the authorization of the pertinent authority.***



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

As it has already been mentioned, the **first element** of the corpus delicti of Article 244 (V), idem, has been proven with the passport applications OP-5 and PO-7 [sic] as public documents in compliance with Article 129 of the Federal Code of Civil Procedure, since they are controlled by the Ministry of Foreign Affairs, an office of the Centralized Federal Public Administration.

However, **the other element is not proven** since, in accordance with the analysis made in the previous paragraphs, it was learned that the offender improperly claimed a name other than his so as to fill out the passport applications; therefore, from the aforementioned accusations only one of them was proven and such offense cannot be attributed to two individuals, especially if we consider the nature and special features of the forged public documents; at the back of the applications there is a space for information about the Parent or Guardian, and the corresponding box is marked with an "x", the one that says "as a parent"; moreover, in order to complete the procedure, the offender identified himself with passport number [redacted] issued by the Ministry of Foreign Affairs on November six, two thousand and three. In other words, the only person empowered to fill out such document was the parent or guardian, without giving such capacity to another person, so after having Jose Fernando Castillo replaced, it is legally inadmissible to attribute such action to another person.

Finally, in relation to the other hypothesis contained in Article 244 (X) of the Federal Code of Criminal Procedure, with the only element of *making plates, identification badges, emblems, documents or* ***any other official identification*** *without the authorization of the pertinent authority,* such actions are not proven.

It is important to link the above to the statements given by **JUAN ARAMONI BURGUETE**, on November twelve, two thousand and four, who stated he was working as a delegate for the Ministry of Foreign Affairs in Naucalpan, State of Mexico; he also said that the necessary documents to



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

obtain the passports for [redacted] were presented, since they fulfilled the requirements established by such institution in compliance with the Regulations of Passports in force, and he added that his participation in the issuing process was verifying the appropriate creation of the basic file for passport issuance; he did not remember having seen the minors' parents.

The foregoing is also linked to the statement given by **ANA LUISA LOZANO GUTIERREZ** on November twelve, two thousand and four, when she affirmed she worked as a typist for the Ministry of Foreign Affairs in Naucalpan, State of Mexico, and she also stated she ignored the facts under investigation since her job was limited to entering information into the system regarding the files, previously created and checked, so she did not have contact with users.

Finally, in her statement given on that same date, November twelve, two thousand and four, **VIRIDIANA MOLINA OLVERA** said she worked as a file digitalizer for the Ministry of Foreign Affairs in Naucalpan, State of Mexico, and her job was to verify the information in a file, previously created and verified and after it had been entered into the system; she also said that her work did not entail contact with users.

These statements are considered as testimonies in relation to the facts, the issuance of passports, and in this regard they gather the requirements set forth in Article 289 of the aforementioned body of law, since they were given by persons that, according to their age and education, have the necessary capacity to judge the fact and the circumstances surrounding it; they witnessed the facts and were not influenced about them by third parties. Their statements were clear and precise, without doubts or reluctance, they were not given by mistake, deception or bribery; therefore, they are considered as evidence in compliance with Article 285 of the corresponding Code of procedures.

In this regard we can apply Jurisprudence 376, supported by the First Room of the Supreme Court of Justice of this country, published on page 275 of



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

the Appendix of the Weekly Federal Court Report, 1917-2000, Volume II, Criminal Matters, with the following heading and text:

***"WITNESSES. APPRECIATION OF THEIR STATEMENTS.-*** *The statements rendered by witnesses during a criminal process shall be assessed by the jurisdictional authenticity having in mind the valuation elements specified in the positive standards of the applicable Law as well as all the objective and subjective circumstances which determine the mendacity or veracity of the testimony subject to litigation".*

Each one of the aforementioned deponents, who participated in some way in the issuance of the requested passports as employees of the Ministry of Foreign Affairs in Naucalpan de Juarez, State of Mexico, in accordance to their statements and identification cards issued by such institution, it is clear that due to the nature of their jobs it would be unconceivable to obtain official identification documents, in this case, *"without the consent of the corresponding authority",* such hypothesis is applicable to third parties not involved in the aforementioned institution; if irregularities were presented during their issuance, they could be considered as administrative infraction.

Going into detail on the above, the powers and functions for the task mentioned in the previous paragraph are supported by Article 1 of the Regulations of Passports, which grants the power to issue Mexican passports to the Ministry of Foreign Affairs.

On the other hand, in Article 10 of such legal body, the requirements for the issuance of such documents are described. One of the requirements is to appear in person, fill out and sign the application, prove the Mexican nationality, etcetera. After covering them, the personnel involved in the passport issuance process confirmed they had been fulfilled, which is proven by the passports issued by such institution as expressed in the official letter made on November nine, two thousand and four, signed by the Director of Internal Rules and Regulations dependent from the Ministry of Foreign Affairs, after the personnel



PROCURADURIA GENERAL DE LA REPUBLICA

involved in the process was identified. Therefore, **there was an authorization,** regardless of the original offenses presented during the process.

During his statement, **FRANCISCO JAVIER TOVAR MARTINEZ** said he was an employee for the Ministry of Foreign Affairs in Naucalpan de Juarez and his job was to receive documents for the issuance of passports; he received original documents and copies from the users, and he had to verify that the documents were original and that they matched with the information given by applicants. He also had to verify that the identity documents coincided with the physical features of the persons appearing; once the file was created with photocopies, they were asked to sign the application and to stamp their fingerprints to then be checked by the Delegate or Assistant Delegate of the Ministry of Foreign Affairs. As for the passports of the minors, which are attached to this file, he states he followed the same procedure, since on February sixteen two thousand and four, he received JOSE FERNANDO CASTILLO TAPIA and MARIA DEL ROSARIO MORENO VAZQUEZ, and he said this woman told him they wanted to apply for the minors' passports and he asked for the following documents: birth certificate, identity documents of the minors and their parents. Those documents are checked and the identity documents have to match the physical features of the persons presenting them, as well as the signature, at that time he noticed the children were playing with their father and then he created the corresponding files and **asked the parents to stamp their signatures and fingerprints on the applications, then he asked them to sit down** while he took the documents to be verified by the Delegate and to continue with the different stages of the passport issuance process, carried out by different employees of that office. He gave this information about his job and he talked about the particular case of [redacted]

that is everything regarding his responsibility within the Ministry of Foreign Affairs. He was asked some questions by the authority: FIRST.- Let the



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

deponent state if he recognizes the photograph on passport [redacted] issued in the name of JOSE FERNANDO CASTILLO TAPIA, attached to the present investigation, and he shall also state if he recognizes the person in the picture as the same one that went with MARIA DEL ROSARIO MORENO VAZQUEZ to request the passports of their children in the office of the Ministry of Foreign Affairs in Naucalpan de Juarez, State of Mexico. ANSWER: Yes, it is the same person that came to me for document reception, FERNANDO CASTILLO TAPIA and MARIA DEL ROSARIO MORENO VAZQUEZ , I clearly identify them. SECOND.- Let the deponent give the physical description of JOSE FERNANDO CASTILLO TAPIA. ANSWER.- He is approximately one meter and sixty centimeters tall, medium built, he was wearing a suit and he is in good shape. THIRD.- Let the deponent give the physical description of MARIA DEL ROSARIO MORENO VAZQUEZ. ANSWER. I don't remember much about her. In this regard, the Federal Public Prosecutor attested that the accuser JOSE FERNANDO CASTILLO TAPIA has different physical features than those given by FRANCISCO JAVIER TOVAR MARTINEZ.

This statement is considered as evidence in compliance with Article 285 of the Federal Code of Criminal Procedure and, as it was said in previous paragraphs, if there were irregularities regarding the rules of this person's job, such act would be considered as an administrative infraction. However, we must highlight that the corresponding authorization was granted by the Ministry of Foreign Affairs.

For these reasons, and due to the failure to prove the crime of **FOREGERY OF PUBLIC DOCUMENT**, foreseen in article 244 (V) (X), and sanctioned by Article 243, paragraph one, of the Federal Criminal Code, the arrest warrant requested against him shall be denied in compliance with the provision of **crime exclusion**, foreseen in Article 15 (II) of the Federal Criminal Code and therefore, **the alleged responsibility of FRANCISCO JAVIER TOVAR MARTINEZ is the commission of such crime is also denied.**



PROCURADURIA GENERAL DE LA REPUBLICA

**PROVING THE CRIME**

**EIGHTH.-** The authority applied criminal action against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility in the commission of the crime of **USE OF FALSE PUBLIC DOCUMENT** foreseen in Article 246, section VII, of the Federal Criminal Code, without ignoring the fact that in the paragraphs of the judgment, the legal support of such crime is not specified. After analyzing the preliminary investigation it was seen that at the beginning of the consignment, the investigating authority already defines the alleged commission of the crime, classified in Article 246 (VII), and punished by Article 243 of the Federal Criminal Code.

We take the following elements from the aforementioned article:

***a).- The existence of a false public document (actus reus), or***

***b).- The existence of a copy; or***

***c).- The existence of a transcription; or***

***d).- The existence of a testimony, all regarding such document;***

***e).-That the offender uses such document, copy, transcription or testimony (normative element); and***

***f).- The action described above knowing the document is false (specific mens rea).***

The description uses as normative elements the words ***"use", "public or private document", "copy", "transcription" and "testimony",*** which are understood as follows: regarding the first concept, besides being the essential element of the crime, it requires a cultural assessment and its connotation entails someone using something; the second element requires cultural and legal assessment, since in compliance with Article 133 of the Federal Code of Civil Procedure public documents are those that do not fulfill the conditions foreseen in Article 129 of the aforementioned Code, they are not issued by law within its competence to a government employee; the quality of public is proven



FORMA CG - 1A

PROCURADURIA GENERAL DE LA REPUBLICA

by the presence of seals, signatures or other external signs required by law. Therefore, false *public documents* are those that do not comply with the requirements described above. The word *copy* is conceptualized as the literal reproduction of a document; *transcription* is the representation of phonetic, phonological, lexical or morphological elements of a language or dialect through a writing system. Finally, the word *testimony* refers to an instrument authorized by a notary and it attests a fact, it is partially or totally transferred to a document or it is summarized.

Now, according to the evidentiary context duly valued in the paragraphs above, the present study is related to public documents, so the element under study has to do with the *existence of a false public document,* duly proven because of the legal reasons and considerations which are taken as reproduced in order to avoid useless repetitions.

As for the element regarding the *use of such document by the offender knowing it is false*, the study will be comprehensive, due to its close link and the flexibility of its verification.

In this regard, such elements are not proven. Despite the statement by Francisco Javier Tovar Martinez, considered as evidence in compliance with Article 285 of the Federal Code of Criminal Procedure, which shows that due to the nature of his job, he inevitably had to use the passport applications OP-5 and OP-7, which are considered false, after having stated that as an employee of the Ministry of Foreign Affairs in Naucalpan de Juarez in the area of document reception for passport requests, his job was to receive documents.

Despite the fact that the offender used false documents in his duty, the intention of using them knowing they were false is not proven. Taking as a starting point the difficulty to prove such element, it is important to say that such prove cannot be achieved objectively, because it is not an isolated material element; it is immersed in the conscience and it cannot be seen directly and objectively, it can be analyzed through intellectual operations proven by other



PROCURADURIA GENERAL
DE LA
REPUBLICA

convictive means in compliance with the rules of circumstantial evidence foreseen in Article 286 of the Federal Code of Criminal Procedure. That is why it is important to prove the objective elements first, in order to reach the sought truth.

In this regard, there are no elements proving the above, since according to the statement by Francisco Javier Tovar, his job was to receive documents for passport requests and verifying the identity of the applicants in relation to the identity documents they presented. The failure to observe the applicable rule shall not take us to the conclusion that the author of such act knew about the falseness of the document, it is possible that he carried out such action by distraction or lack of concentration.

On this subject, there is no evidence that the offender had some kind of relationship, link or friendship with neither of the accused, so as to prove that such person knew about the use of a false document, since it can be considered that, if the persons involved knew each other, no stranger could have replaced one of them without being noticed. Considering the certification made by the investigating authority, when the accused rendered his statement he talked about the physical features of the person that went to the aforementioned office to fill out the passport applications, and they were different from those presented by Jose Fernando Castillo, as indicated above, and it does not inexorably lead to the conclusion that he acted knowing about the falseness, since in that regard there is only subjective evidence, without support.

So, it is important to mention that there is no evidence to prove the elements of the criminal definition of **FORGERY OF PUBLIC DOCUMENT AND USE OF FALSE DOCUMENT** foreseen in Article 244 (V) (X) and 246 (VII) respectively, sanctioned by Article 243, paragraph one, of the Federal Criminal Code; therefore, the cause of **crime exclusion** is actualized, foreseen in Article 15 (II) of the Federal Criminal Code and in consequence, and **the**



PROCURADURIA GENERAL DE LA REPUBLICA

**responsibility of FRANCISCO JAVIER TOVAR MARTINEZ in the commission of the crime is not proven; so, the warrant requested against him is denied.**

The applicable legal precedent is number 278, page 203, Volume II, Criminal Matters, of the Appendix of the Weekly Federal Court Report, 1917 to 2000, which states:

***"INSUFFICIENT EVIDENCE, CONCEPT.-*** *Insufficient evidence is considered when the recorded information does not fully prove the accusations made; a decision based upon insufficient evidence violates constitutional rights."*

**PROBABLE CRIMINAL RESPOPNSIBILITY**

**NINTH.-** The probable criminal responsibility of **MARIA DEL ROSARIO MORENO VAZQUEZ** in the commission of the crime of **FORGERY OF PUBLIC DOCUMENT**, foreseen in Article 244 (I) and penalized by Article 243, paragraph one of the Federal Criminal Code, as well as that of **ARTEMIO BARRERA HERNANDEZ** in the commission of the crime of **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) (V), penalized by 243, paragraph one, of the Federal Criminal Code; it is proven in compliance with Article 13 (IV) of the Federal Criminal Code in relation with the accused, and as for the defendant, in compliance with Article 13 (II), idem, as it will be described, with all the elements specified above.

Indeed, the body of the crime and the responsibility are different concepts; the first one refers to impersonal matters regarding the verification of a fact classified by law and the second one lies in the attribution of the offense to a person. The same forms of proof are used to demonstrate both elements; on one hand, it can reveal the existence of a fact defined as a crime and, on the other hand, it reveals that such fact can be attributed to a certain individual.



FORMA C G - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

Therefore, justifying both postulates with the same evidence does not have as a consequence an infraction to the formalities of the procedure.

The above is supported by the legal precedent number 500, page three hundred and eighty four of the Appendix of the Weekly Federal Court Report, 1917 – 2000, Volume II, Criminal Matters, Second Part, which says:

***"CORPUS DELICTI AND ALLEGED RESPONSIBILITY, PROVE ON THE SAME ELEMENTS.-*** *The corpus delicti and the alleged responsibility are different concepts; the first one refers to impersonal matters regarding the verification of a fact classified by law as a crime, regardless of the author; the second one refers to the attribution of the result on a person. It is possible to have one form of proof to evidence both elements, and in that case it can reveal the existence of a fact identified as a crime and at the same time attribute the commission of such crime to a specific person; therefore, using the same evidence to prove both elements does not violate constitutional rights."*

In this regard, it is important to consider the **expert's opinion on Graphology,** dated June fifteen, two thousand and four, signed by the expert L.Aldo Chisanto Molina, assigned to the General Division of Expert Services Coordination, dependant of the Mexican Attorney General's Office, which determined that after analyzing the corresponding documents, which were: two ordinary passport applications (OP-5), numbers [redacted] and [redacted] in the name of the minors [redacted] and [redacted] respectively, issued in Naucalpan de Juarez, State of Mexico, dated February sixteen, two thousand and four, which also presented the acronym of the Ministry of Foreign Affairs on its left upper margin and with the form OP-7 at the back, regarding the consent of parents or holders of the patria potestas for the issuance of a passport, the expert in charge concluded that: "FIRST.- THE SIGNATURES ON THE ANALYZED DOCUMENTS **DO NOT MATCH** THOSE GIVEN BY **JOSE FERNANDO CASTILLO TAPIA** FOR

FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

COMPARISON. **SECOND.-** THE HANDWRITING ON THE ANALYZED DOCUMENTS **DOES NOT MATCH** THE HANDWRITING MADE BY **JOSE FERNANDO CASTILLO TAPIA** FOR COMPARISON."

Likewise, the **expert's opinion on Graphology** dated June ten, two thousand and four, signed by experts Praxedis Irma Garcia Guerrero and Rosa Flores Vazquez, assigned to the General Division of Expert Services Coordination, dependant of the Mexican Attorney General's Office, showed the following results:

**I).-** When the study of the fingerprint file in the name of Castillo Tapia José Fernando was analyzed, it presented the following dactylographic pattern E-3343 I-2222, on the right hand, thumb, forefinger, middle finger and little finger, which belong to the third fundamental type internal loop. Due to its morphology, the right ring finger belongs to the fourth fundamental type WHORL, CONCENTRIC SUBTYPE, and it was the only one analyzed since it corresponds to the same fundamental type of the fingerprints stamped on the forms OP7;

**II).-** When we made the study of the fingerprints stamped on the forms OP7, from the parent or guardian with the legend "left index finger" we found that it belongs to the fourth fundamental type WHORL, SPIRAL SUBTYPE, RIGHT DIRECTION. The fingerprints with the legend "right index finger" belong to the fourth fundamental type WHORL, SPIRAL SUBTYPE, LEFT DIRECTION. **After comparing the fingerprint of the right ring finger in the fingerprint file of CASTILLO TAPIA JOSE FERNANDO with the fingerprints stamped on the forms OP7, we found that the subtype does not coincide as well as other features. The photographs of the fingerprints and the OP7 forms were entered into the AFIS system in order to compare them to the information in the system and a positive match was found for: "BARRERA HERNANDEZ ARTEMIO, for forgery of official documents.** Preliminary Investigation 9545/D/94, Federal Public Prosecutor, Head of the Desk IX-D, 39



PROCURADURIA GENERAL
DE LA
REPUBLICA

years old, born on [redacted] 1955, with address on [redacted] Cruz Xochintepec, Xochimilco, D.F., with a fingerprint file attached to this file. Then we made a comparative study, taking as a reference the right and left middle fingers, based on the fundamental type, subtype and characteristic point location, the fingerprint file was photographed and the pictures were amplified in order to compare them with the fingerprints stamped on the OP7 formats of the minors [redacted]

Conclusions. **First.- The fingerprints stamped on the fingerprint file in the name of CASTILLO TAPIA JOSÉ FERNANDO, DO NOT MATCH the fingerprints stamped on the OP-7 applications, with the legend "right and left index fingers of the minors [redacted] both with the last names [redacted] SECOND.- The fingerprints stamped on the OP-7 application with the legend "right and left index fingers of the minors [redacted] both with the last names [redacted] MATCH the fingerprints stamped of the right and left middle fingers of the fingerprint file in the name of Barrera Hernandez Artemio.**

Expert opinions weighed as evidence in accordance with Articles 285 and 288 of the Federal Code of Criminal Procedure, since they were made by official experts in compliance with Articles 221 and 223 of the same Code. Such opinions detail the techniques applied during the analyses, and they were submitted to the investigating authority without being objected so far.

In this regard, we can apply the legal precedent made by the First Room of the Supreme Court of Justice of this country, page 20, volume 49, second part, of the Weekly Federal Court Report, which states:

***"EXPERT'S OPINION, ASSESSMENT..."***



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

We can also apply the court precedent 254 of the First Room of the Supreme Court of Justice of this country, page 143, volume II, part SCJN, of the Weekly Federal Court Report 1995, criminal matters, which states:

***"EXPERTS. EVIDENTIARY WEIGHT OF THEIR OPINION..."***

Likewise, we can apply the legal precedent XXI. 1o. 27 P, supported by the First Collegiate Court of the Twenty First Circuit, visible on page 384, volume XIV, September 1994, of the Weekly Federal Court Report, eighth period, which refers to:

***"EXPERTS. NOT CHALLENGED OPINION..."***

The foregoing is supported by the statement given by **FERNANDO CASTILLO TAPIA**, on April twenty three, two thousand and four, when he said that, as he had said on his appearance of March twenty two, two thousand and four, he did not consent to the issuance of a passport in favoGr of the minors; after he saw the documents submitted by the Ministry of Foreign Affairs, **which presented the name and initials of the person who requested a passport for the minors [redacted] both with the last names [redacted] as well as the copy of the passport with the name of JOSE FERNANDO CASTILLO TAPIA, who supposedly authorized the issuance of the aforementioned document; after revising the documents included in the file, he said he does not know who signed for him and he does not know who the signature and the fingerprint on both applications belongs to; therefore, he was not physically there to present the application or sign the authorization for the issuance of the passport of his children, he only recognizes the copy of the passport of her daughter [redacted] issued on December seventeen, nineteen ninety seven, since he requested it with MARIA DEL ROSARIO MORENO VAZQUEZ.** He does not know about any other

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

authorization documents signed by his own hand; he also mentioned that the handwriting on the applications belongs to MARIA DEL ROSARIO MORENO VAZQUEZ. He remembered that some days before his children were abducted by their mother, he had his passport in his bedroom and then he found it somewhere else, but he did not pay attention to this fact; his son, [redacted] has a copy of the keys to his house, and he thought maybe his daughter, his son or their mother could have taken the passport and then placed it there again, since they had access to his house and he was working that day, but he did not notice someone had taken it and he did not know it was used to request a passport for the minors. Likewise, in relation to the contents of the document by INTERPOL dated April twelve, two thousand and four, he only accepts part of it; he requested help from that institution because he had the feeling that his children had been taken to another country by MARIA DEL ROSARIO MORENO VAZQUEZ, as it was also stated before the Public Prosecutor of the State of Mexico, **the day he learned that his children were no longer living in the house located at [redacted] Alteña Dos Lomas Verdes, considering that some months before, MARIA DEL ROSARIO MORENO told him she had married a man named RONALD COONLEY, American, and that she was planning to move with her children to the United States; then he said he did not agree with that and he was not going to authorize such thing, first of all because MARIA ROSARIO MORENO told him she had met Mr. COONLEY on the Internet and this was her second marriage, after his own, with someone she met on the Internet.**

Statement valued as evidence in compliance with Article 285 of the Federal Code of Criminal Procedure, determined in accordance to Article 289 of the aforementioned body of law; the deponent is of age, he has the necessary capacity and education to judge the fact, and he witnessed the fact, he did not learn about it through inductions or references given by others, he



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

was able to appreciate it through his own senses through a clear and precise exposure, without any doubts or reluctances, considering that as an adult, he has the capacity and education to judge the fact that gave rise to his statement.

The legal precedent 1.8o.C.58C of the Weekly Federal Court Report, Ninth Period, Volume VI, September 1996, page 759, with the text:

***"TESTIMONY. EVIDENCE ANALYSIS AND VALUATION..."***

Another applicable legal precedent is number 376, supported by the First Room of the Supreme Court of Justice of the Nation, published on page 275 of the Appendix of the Weekly Federal Court Report, 1917-2000, Volume II, Criminal Matters, with the following title and text:

***"WITNESSES. APPRECIATION OF THEIR STATEMENTS..."***

We can identify the crime and its authors; they forged the ordinary passport applications OP-5 and OP7 numbers [redacted] and [redacted] Maria del Rosario Moreno Vazquez and Artemio Barrera Hernandez went to the Ministry of Foreign Affairs office in Naucalpan, State of Mexico, and the accused wrote a false signature on the passport applications, he was not the father or guardian as proven by the original certificates of birth [redacted] and [redacted] issued in the name of [redacted] **both with the last names** [redacted] since those certificates show that their father is Jose Fernando Castillo Tapia. On the other hand, we also link the simple copy of the agreement signed by Jose Fernando Castillo Tapia and Maria del Rosario Moreno Vazquez, attested by the investigating authority, which shows that the signatories agreed to share the patria potestas of the minor [redacted]

In this context, it is evident that Artemio Barrera was an instrument for the accused Maria del Rosario Moreno; when she did not obtain the consent of her ex husband Jose Fernando Castillo Tapia to take her children out of the



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

country, she used Artemio Barrera to falsely fill out the passport application and illegally replace the consent required for such application process, since the only person entitled to grant so was the accuser Castillo Tapia, since he is the father of the minors, and Artemio Barrera stamped his own fingerprints, as proven by the identification expert's opinion made by experts from the Mexican Attorney General's Office which evidenced that such prints did not belong to the accuser, but to the accused.

Due to the above, the aforementioned pieces of evidence valued in compliance with Articles 280, 285, 288 to 290 of the Federal Code of Criminal Procedure **are effective and suitable to prove the alleged responsibility of the accused MARIA DEL ROSARIO MORENO VAZQUEZ** in the commission of the crime of **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) and penalized by Article 243, paragraph one, in relation to Article 13 (IV) of the Federal Criminal Code, **as well as the alleged responsibility of ARTEMIO BARRERA HERNANDEZ,** for the crime of **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) (V), and penalized by Article 243, paragraph one, in relation to Article 13 (II) of the Federal Criminal Code, since they voluntarily committed the crime and the criminal definition was proven through the generic rule included I Article 168 of the Code of Procedures in this matter; the evidence showed that they went to the Ministry of Foreign Affairs office in Naucalpan, State of Mexico, so as to fill out ordinary passport applications OP-5 and OP-7, and for that purpose Artemio Barrera wrote a false signature and stamped his fingerprints, proven by the identification expert's opinions, in order to illegally fulfill the consent required for such application processes. The only person entitled to do so is the father of the minors, so, since he pretended to be the minors' father, the applications with the signature that was not made by the accuser are considered false; Artemio used a name that was not his in order to fill out the applications, and this was necessary because the consent of both parents was asked. This infringed the legal right of



FORMA CG - 1A

PROCURADURIA GENERAL DE LA REPUBLICA

public trust that all documents issued by the State must have, such element is warded by Articles 243 and 244 of the Federal Criminal Code.

Therefore, we can apply the legal precedent VI.2o.J/174 of the Second Collegiate Court of the Sixth Circuit, published in the Weekly Federal Court Report, Volume IX, February 1992, page 96, Eighth Period, which explains:

***"CIRCUMSTANTIAL EVIDENCE. ASSESSMENT.*** *The circumstantial evidence is based on the incriminatory value of evidence and it takes, as a starting point, proven facts and circumstances which have to be linked to the inquired fact; it can be a missing piece of information or an uncertainty, a hypothesis that needs verification, applied to the materiality of the crime and to the identification of the offender and the circumstances of the offense".*

We can also apply the legal precedent IV.2o.J/29, published in the Gazette of the Weekly Federal Court Report; Volume 72, December 1993, Eight Period, page 77, with the following title and text:

***"CIRCUMSTANTIAL EVIDENCE, IMPORTANCE.*** *Modern laws in criminal matters have pushed into the background the statement rendered by the accused and gives it evidentiary weight only when it is corroborated with other evidence; then, the circumstantial evidence acquires the level of "queen of evidence", since it is more technical and it reduces judicial mistakes. Indeed, such evidence is based on inference or reasoning, and it takes, as a starting point, proven facts and circumstances which have to be linked to the inquired fact; it can be a missing piece of information or an uncertainty, a hypothesis that needs verification or the material elements of the crime, the identification of the offender and the circumstances of the offense".*

The accused acted **intentionally** in accordance with paragraph one, Article 9 of the Federal Criminal Code; the accused acted **making use of another person**, in compliance with Article 13 (IV) of the Federal Criminal Code, since evidence shows that the purpose of the accused was to take her

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

children to a foreign country to live with her new husband, Ronald Coonley, and she was not allowed to do so because her ex husband clearly said he did not approve that. So, she had to use Artemio Barrera Hernandez, and he pretended to be her husband during the application process, so the applications were falsely filled out; on the other hand, Artemio Barrera carried out an action reproached by himself, in accordance with Article 13 (II), he only used his own person to stamp his fingerprints and signatures and also to claim a name that did not belong to him.

With all this, they committed the offense keeping the functional domain of the fact, knowing the elements of the crime and willing to obtain the illegal results, which is deduced from the way the facts were carried out, but most of all, due to the fact that since the accused interacted with the exterior world, they knew their act was illegal, as well as the result obtained through it and there is no sign that indicates that the offenders were related to the provision foreseen in Article 15, clause a), section VIII, of the Federal Criminal Code, regarding the definition error, which is bearing on the knowledge of elements, and if that had been presented it would have had as a legal consequence the exclusion of intention, and therefore, the criminal definition. However, since there was no error, it subsists.

Likewise, there are no causes of crime exclusion in their favor, as referred in Article 15 of the Federal Criminal Code; in that sense, since there is no cause that makes their behavior legal, it can be considered unlawful, since it was made in a completely attributable state because the accused had and still have the capacity to understand the legal aspect of the fact and to act in accordance with that. There is no evidence that shows that when the facts occurred, they suffered from any permanent or temporary mental disorders affecting such capacity; they acted knowing their action was illegal and they performed such actions showing they knew they were infringing the existing legal regime, and they freely determined to do so.



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

It is important to highlight that in order to issue an arrest warrant, there is no need of evidence that fully proves the criminal responsibility of the accused; it is only important to fulfill the requirements included in Article 16 of the Political Constitution of the United Mexican States and have information that makes possible the alleged responsibility of the accused.

The foregoing is supported by the legal precedent 619 of the Second Collegiate Court of the Sixth Circuit, published in the Appendix of the Weekly Federal Court Report 1917-2000, Volume II, Criminal Matters, Second Part, visible on page 504 with the following text and title:

***"ARREST WARRANT. ITS ISSUANCE DOES NOT REQUIRE FULL EVIDENCE TO PROVE THE RESPONSIBILITY OF THE ACCUSED.*** *In order to issue an arrest warrant, it is not necessary to have full evidence to prove the responsibility of the accused, it is only important to fulfill the requirements described in Article 16 and have information that makes possible the alleged responsibility of the accused."*

In this regard, the alleged criminal responsibility of **MARIA DEL ROSARIO MORENO VAZQUEZ** is proven for **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) and penalized by Article 243, paragraph one, of the Federal Criminal Code, as well as the alleged responsibility of **ARTEMIO BARRERA HERNANDEZ** for **FORGERY OF DOCUMENTS,** foreseen in Article 244 (I) (V) and penalized by Article 243, paragraph one, of the Federal Criminal Code.

**TENTH.-** In this regard and in compliance with article 195 of the Federal Code of Criminal Procedure, the present case gathers the requirements described in Article 16 of the Constitution to issue an arrest warrant, since the corresponding complaint is included in the core records. The facts attributed to the accused are foreseen as crimes and punished with imprisonment; the elements of the corpus delicti are also proven as well as the alleged



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

responsibility of the perpetrator and there is no cause to eliminate the criminal action in accordance with Article 195 of the Federal Code of Criminal Procedure. **Consequently, an ARREST WARRANT is issued against MARIA DEL ROSARIO MORENO VAZQUEZ** for **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) and punished by Article 243, paragraph one, of the Federal Criminal Code and also against **ARTEMIO BARRERA HERNANDEZ,** for his alleged responsibility in the commission of the crime of **FORGERY OF DOCUMENTS,** foreseen in Article 244 (I) (V) and penalized by Article 243, paragraph one, of the Federal Criminal Code.

**ELEVENTH.-** This Third District Court for Federal Criminal Matters in the Federal District, **is not legally empowered to continue with the present case,** because from the documents included in the preliminary investigation PGR/NAU/87/2004, improperly sent to this court by the Head of the Second District Court of the State of Mexico in Naucalpan de Juarez under the argument of a supposed joinder between the present cause and the cause 108/2004, received by this court on July nineteen, two thousand and four. The crime foreseen in Article 138 of the General Immigration Law is considered a felony by Article 194 (V) of the Federal Code of Criminal Procedure and it was even advised by the person in charge of the Reception Desk for those District Courts in the State of Mexico, located in Naucalpan on the paper dated June two, two thousand and five, with a register number 00178/2005, so the provisions set forth in articles 142 and 432 of the Code of Criminal Procedure were ignored. Such articles state:

***"ARTICLE 142.- In regard to serious offenses so defined under Article 194, the ruling declaring jurisdiction shall be made immediately and the presiding judge shall order or deny the arrest or search requested by the Public Prosecutor, within 24 hours as of the moment the ruling declaring jurisdiction was resolved"***



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

***"ARTICLE 432.- The competence in the form of a motion for improper venue shall not be resolved until the proceedings that cannot be delayed are fulfilled and when the offender is arrested after the issuance of an arrest warrant or in case of acquittal based on insufficient evidence".***

Reading these transcriptions we can see that when there is a felony, foreseen in Article 194 (as in this case), the case must be filed immediately and the warrant shall be requested within twenty four hours after filing the case. The last article transcribed shows that no competence shall be declined before the corresponding proceedings have been practiced; so, competence issues shall not be reserved since we are dealing with a felony.

Furthermore, after reading the document considered by the head of the Second District Court of the State of Mexico in Naucalpan, when she resolved the supposed joinder (as if dealing with simple crimes) it is clearly seen that the facts occurred in Naucalpan de Juarez, State of Mexico, in the Ministry of Foreign Affairs office in the municipality of Naucalpan de Juarez. That is the place where it is said the document was forged and the false document was used to request the passports of the aforementioned minors, placing some signatures and fingerprints claiming they belonged to such children's father. All the above occurred in the territory of the jurisdiction of the Second District Court in Naucalpan de Juarez, State of Mexico, and therefore, the legal precedent supported by the First Room of the Supreme Court of Justice, which can be consulted in the Weekly Federal Court Report and its Gazette, Volume IX, May 1999, page 267, ninth period, which states:

***"ARREST WARRANT. IT SHALL BE ISSUED BY THE COMPETENT JUDICIAL AUTHORITY.*** *Article 16, paragraph two of the Constitution, establishes about the arrest warrant, among other requirements, that it must be*

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

*issued by a judicial authority; at the same time, the first paragraph of such Article guarantees protection to individuals as it demands that all acts that could have an impact on them shall come from the competent authority, the one legally empowered to issue such act. Therefore, if the arrest warrant affects an individual, since it provisionally restricts their personal or ambulatory freedom so as to subject it to a criminal process, the judge issuing it shall also be legally competent to know the criminal process that could begin for the crime or crimes it is being issued for, considering the criteria to establish the competence, by territory, matter, amount or connection."*

Even if the Second District Judge of the State of Mexico in Naucalpan was incompetent for the issuance of the arrest warrant, it should have fulfilled the provisions set forth in Articles 142 and 432 of the Federal Code of Criminal Procedure, because they are exceptions to such legal precedent since they safeguard public order and cannot be delayed.

Due to the above, as it has been said, this Third District Court for Federal Criminal Matters in the Federal District is not competent to know the criminal cause 66/2005 of the index in this court, so the Federal Prosecution Office exercised criminal action against MARIA DEL ROSARIO MORENO VAZQUEZ for her alleged responsibility in the commission of the crime of FORGERY OF DOCUMENTS; and against FRANCISCO JAVIER TOVAR MARTINEZ for his alleged responsibility in the commission of the crimes of FORGERY OF DOCUMENTS and USE OF FALSE PUBLIC DOCUMENT; from this proceedings it is learned that the consigned acts are the same ones that gave rise to the criminal cause 108/2004, filed with this court against the aforementioned accused but for the crimes of CHILD TRAFFICKING; about that crime, through a resolution issued on August three, two thousand and four, it was decided to grant competence, for territorial reasons, in favor of a District Judge on duty in the State of Mexico, sitting in Naucalpan de Juarez, since the facts occurred in such municipality; for that reason, on August twenty six, two



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

thousand and four, the Seventh District Court in the State of Mexico, sitting in Naucalpan, who had knowledge about the case because he was on duty, informed he had accepted the competence.

In this regard, since it was seen that the latter cause was linked to the cause that is being resolved, this Court cannot preside the aforementioned criminal facts, considering that the General Agreement 23/2002 of the Plenary of the Council of the Judiciary Branch of the Federation regarding criminal matters, establishes that contradictory resolutions shall be avoided.

Therefore, it is evident that the aforementioned Seventh District Judge had previous knowledge of the criminal facts under investigation.

On this matter, it is important to highlight that the General Agreement 23/2002 of the Plenary of the Council of the Judiciary Branch of the Federation, which regulates the functioning of the common correspondence offices of the Circuit Courts and the District Courts of the Federal Judiciary Branch, in Article 6 provides the following:

*"**Article 6**. About Remitting Related Cases. When a certain case is linked to another one already solved or in process, it is presented before these Common Correspondence Offices, since the same parties will be involved in the natural or constitutional procedure of both matters and since there will be actions derived from the procedure itself, the aforementioned offices will remit such case to the resolving Court or the Court processing the previous case.*

*For that purpose, <u>when a Federal Court has previous knowledge of a case, stating its incompetence due to its procedure</u>, it shall not be considered, or when the corresponding resource is discarded.*

*<u>As for criminal matters,</u> a case will be considered related when it refers to the same facts, so it shall be remitted to the same court so as to avoid contradictory resolutions.*



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

*Except for the abovementioned cases, in order to determine if a case is related to another one, <u>any resolution pronounced in the previous case shall be used,</u> no matter what its reason is.*

***If related cases are presented in two or more federal courts, in compliance with the aforementioned terms, the Common Correspondence Office shall remit the new related case to the Circuit Court or the District Court that dictated the closest resolution to the date in which it is presented.***

***<u>If related cases are in process, the new case shall be remitted to the requiring court.</u>***

*In order to avoid any delays imparting justice, the heads of the federal courts must express that the knowledge of a certain case does not concern them because of their periods of duty, before the constitutional hearing is carried out by direct writ of amparo, or in a situation similar to the ones described above.*

*So as to balance work loads, the computerized system shall compensate cases."*

In accordance with the foregoing, it is evident that this District Court does not have the legal competence to continue presiding this matter, not only for territorial reasons, but also for the previous knowledge. As it was said before, the facts that gave rise to the exercise of criminal action are identical to the facts that granted competence to the Seventh District Judge in the State of Mexico, sitting in Naucalpan de Juarez, but attributing a different crime.

Consequently, the presumption foreseen in Article 6 of the General Agreement 23/2002, idem, is completely fulfilled, with the main purpose of bringing out justice promptly and efficiently, and avoiding the issuance of resolutions in different senses.

FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

Due to the reasons described above, in compliance with the General Agreement, the present file shall be submitted to the District Courts in the State of Mexico sitting in Naucalpan de Juarez through the Common Correspondence Office, only in original (since that is how it was received), to the Seventh District Judge in the State of Mexico, sitting in Naucalpan de Juarez, asking for the corresponding confirmation.

**Once the accused have been arrested, they shall be imprisoned in the Preventing Detention Center corresponding to the territorial area of the Seventh District Court in the State of Mexico, sitting in Naucalpan de Juarez.**

In compliance with Article 468 (I) and 472 of the Federal Code of Criminal Procedure, the **procedure is suspended** in the present case, until the offenders are arrested and the aforementioned Court carries out the corresponding proceedings.

Therefore, in compliance with Article 41 of the Federal Code of Criminal Procedure, through the assigned Federal Social Representative, an official letter shall be submitted to the Head of the Federal Investigation Agency with the aforementioned information. Likewise, in accordance with Article 17 of the Federal Code of Criminal Procedure, two authorized copies shall be submitted to such Agent for the corresponding legal effects.

In such conditions, this shall be recorded as a precedent and the appropriate notes to the Government Docket of this Court shall be added.

Due to all the information above, and in compliance with the provisions set forth in Articles 1, 14, 16, 20, 21, 104 and 133 of the Political Constitution of the United Mexican States in relation to Articles 1, 4, 6, 94, 95, 104, 142 and 168 of the Federal Code of Criminal Procedure, it is decided and

**RESOLVED**

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

**FIRST.-** Due to the reasons described in section four of this resolution, at **FOURTEEN HOURS OF THIS DATE, THE ARREST WARRANT IS DENIED requested against MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility in the commission of the crime of **USE OF FALSE DOCUMENT**, foreseen in Article 246 (VII) and penalized by Article 243, paragraph one, of the Federal Criminal Code as well as for the crime of **VIOLATION TO THE GENERAL IMMIGRATION LAW,** foreseen and sanctioned by Article 138 of the General Immigration Law. Likewise, the **ARREST WARRANT requested against FRANCISCO JAVIER TOVAR MARTINEZ is denied,** for his alleged responsibility in the commission of the crime of **FORGERY OF DOCUMENT** and **USE OF FALSE PUBLIC DOCUMENT**, foreseen in Article 244 (V) (X) and Article 246 (VII) respectively, and sanctioned by Article 243, paragraph one, of the Federal Criminal Code.

**SECOND.- AN ARREST WARRANT IS ISSUED AGAINST MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility in the commission of the crime of **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) and sanctioned by Article 243, paragraph one, all from the Federal Criminal Code; likewise, **AN ARREST WARRANT IS ISSUED AGAINST ARTEMIO BARRERA HERNANDEZ,** for his alleged responsibility in the commission of the crime of **FORGERY OF DOCUMENT,** foreseen in Article 244 (I) (V) and sanctioned by Article 243, paragraph one, of the Federal Criminal Code.

**THIRD.-** Since the proceeding that cannot be delayed was resolved (and since this is the resolution of a felony), the records of the present criminal case **shall be submitted immediately** to the **Seventh District Court in the State of Mexico, sitting in Naucalpan de Juarez,** through the Common Reception Desk of the District Courts in the State of Mexico, sitting in Naucalpan de Juarez, since the *previous knowledge* hypothesis mentioned in Article 6 was actualized, in the General Agreement 23/2002 of the Plenary of the Judiciary

FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

Branch of the Federation, in compliance with section eleven of the present resolution.

**FOURTH.-** In order to fulfill this proceeding, two certified copies shall be turned in to the assigned Federal Public Prosecutor, so it can then be submitted to the Head of the Federal Investigation Agency so as to locate and arrest the accused; **once the above has been fulfilled, they shall be turned over to the Seventh District Court in the State of Mexico, sitting in Naucalpan de Juarez, inside the corresponding Preventive Detention Center.**

**FIFTH.-** In compliance with Article 468 (I) and 472 of the Federal Code **the procedure of the present case is suspended** until the referred offenders are arrested and they are bound into the custody of the corresponding **Judge.**

**SIXTH.-** The Second District Judge in the State of Mexico, sitting in Naucalpan de Juarez, shall also be informed about the above.

**SEVENTH.-** The appropriate notes to the Government Docket shall be added and the above shall be reported in the Statistics of this Court.

**NOTIFY THE PUBLIC PROSECUTOR ASSIGNED TO THE COURT. SO BE IT FULFILLED.**

This was resolved and signed by **ARTURO CESAR MORALES RAMIREZ,** Third District Judge in Federal Criminal Procedures in the federal District, before the Secretary who authorizes and attests.

[Signed]

The present page corresponds to the final part of the resolution, dated June eight two thousand and five, dictated in the criminal case 66/2005 against **MARIA DEL ROSARIO MORENO VAZQUEZ AND OTHERS,** for the crime of **VIOLATION TO THE GENERAL IMMIGRATION LAW AND OTHERS.**- I attest.

**[ILLEGIBLE SEAL DATED JUNE 8, 2005 15:30]**

# EXHIBIT 12



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

OFFICIAL GAZETTE Monday May 13, 1996

# EXECUTIVE POWER
# MINISTRY OF THE INTERIOR

**DECREE** that reforms, adds and derogates different articles of the Criminal Code for the Federal District, for local matters, and for all the Republic, in Federal matters, the Federal Tax Code , the Code of Criminal Procedure for the Federal District and the Federal Code for Criminal Procedure.

At the margin there is a stamp with the Mexican Coat of Arms reading United Mexican States – Mexican Presidency.

ERNESTO ZEDILLO PONCE DE LEON, President of the United Mexican States, inform to the habitants:

That the Honorable Congress of the Union has submitted the following

**DECREE**

THE CONGRESS OF THE UNITED MEXICAN STATES, DECREES:

IT REFORMS, ADDS AND DEROGATES DIFFERENT ARTICLES OF THE CRIMINAL CODE FOR THE FEDERAL DISTRICT, FOR LOCAL MATTERS, AND FOR ALL THE REPUBLIC, IN FEDERAL MATTERS, THE FEDERAL TAX CODE , THE CODE OF CRIMINAL PROCEDURE FOR THE FEDERAL DISTRICT AND THE FEDERAL CODE FOR CRIMINAL PROCEDURE.

**ARTICLE 1.-** We reform Articles 7 (III), 64 second and third paragraph, 65, 70 (I) (II) (III), 185, 189, 243, 253 paragraph one and section (I), clauses e), second paragraph, and g), 289, 364, paragraph one, 366 paragraph one, second and third sections, and 400 bis; a third paragraph is added to Article 63, a second and third paragraph are added to Article 65, one final paragraph to Article 70 and another one to Article 158, Article 196 ter, a second paragraph to Article 243, clause l) to Article 253, sections VII and VIII to Article 254, Article 254 ter, second and third paragraphs to section I of Article 364, a new Article 366 bis which will become Article 366 ter, section III to Article 368, Articles 368 bis and 368 ter, a third paragraph to Article 371, Article 377 and one last paragraph to Article 400; the denomination of the Twenty Third Title of the Second Book and it is divided in two chapters; Article



PROCURADURIA GENERAL DE LA REPUBLICA

321 of the Criminal Code is derogated, for the Federal District, local matters, and for all the Republic, Federal matters, the changes are the following:
[...]

---

**ARTICLE 243.** The crime of forgery of public documents shall be punished with an imprisonment penalty from four to eight years and a fine from two hundred to three hundred and sixty days of minimum daily wage. Of private documents, with an imprisonment penalty from six months to five years and a fine from one hundred and eighty to three hundred and sixty days of minimum daily wage".

If the person who carries out the forgery of document is a public officer, the above mentioned penalty shall be increased up to an additional half of it.

FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

Monday January 10, 1994 OFFICIAL GAZETTE

# SECOND SECTION
# MINISTRY OF THE INTERIOR

DECREE by means of which a several articles of the Criminal Code for the Federal District for local matters and for all the Republic, for federal matters, the Federal Code of Criminal Procedure, the Code of Criminal Procedure for the Federal District, the Individual Rights Procedural Law, Articles 103 and 107 of the Political Constitution of the United Mexican States, the International Extradition Law, the Civil Code for the federal District in local matters and for all the Republic in Federal Matters, the Federal Law of Responsibilities of Public Officers, the Organic Law of the Federal Tax Court, Administrative-Law Court for the Federal District, Federal Law for the Prevention and Sanction of Torture, the Federal Budget, Accounting and Public Expense Law and the Organic Law of the Federal Judiciary Branch.

A seal bearing the Mexican Coat of Arms appears at the margin, reading: United Mexican States. Presidency of the Republic.

**I, CARLOS SALINAS DE GORTARI**, President of the United Mexican States, inform to the habitants:

That the Honorable Congress of the Union has submitted the following

**DECREE**

THE CONGRESS OF THE UNITED MEXICAN STATES, DECREES:

SEVERAL ARTICLES OF THE CRIMINAL CODE ARE REFORMED, ADDED AND DEROGATED, FOR THE FEDERAL DISTRICT IN LOCAL MATTERS, AND FOR THE MEXICAN REPUBLIC IN FEDERAL MATTERS
[...]

**ARTICLE ONE.-** From the Criminal Code for the Federal District in local matters and for the Mexican Republic in Federal Matters, the articles reormed are: 8, 9, 12, first and second paragraphs, 13 first paragraph and sections V, VI, and VIII, 15, 16, 17, 29, second paragraph, 30 sections II and III, 32 section VI, 34 first paragraph, 35 fourth paragraph, 37, 52, 60, first and second paragraph and section II, 61,62,64 second paragraph, 64 bis, 65, 66,

\\n



PROCURADURIA GENERAL
DE LA
REPUBLICA

71, first paragraph, 85 first paragraph, 86 section II, 90 clause b) of section I and sections VII and VIII, 93 first paragraph, 107 second paragraph, 111, 115, 153, 158 first paragraph, 164 second paragraph, 170, 172 bis, 173 first paragraph, 178, 187, 193, 194, 195, 196, 197, 198, 199, 201, paragraphs first and second, 209, 210, 225 sections IX, X, XII, XVII and XX, 228 section I, 231 first paragraph, 340, 341, 247 first paragraph and sections II and IV in its first paragraph, 249 first paragraph, 250 first paragraph and sections II and IV, 284, 303, 310, 323, 368 section I, 388 and 390. In the same Code, the following elements are added: a second paragraph to article 7, two last paragraphs to article 13, one fourth paragraph to article 27 moving the order of the current paragraphs four, five and six, which are now five, six and seven, Article 31 bis, one second paragraph to article 34, moving the order of the current paragraphs two and three to three and four, a fifthe paragraph in Article 35 as well as one last paragraph, Article 69 bis, second and third paragraphs to Article 93 moving the current paragraphs two and three to become three and four, a third and a fourth paragraph to Article 110, Article 195 bis, Article 196 bis, sections III and IV to article 231, article 248 bis, a second paragraph to Article 286, Article 321 bis, Article 336 bis, Article 388 bis, a second paragraph to article 390 and Appendix 1; the following elements are derogated: Articles 59 bis, section VI of article 60, the last paragraph of article 70, clause e) of section I of article 90, section XXVII to article 225, 299, section II of Article 303, 311, 324, 325, 326, 327, 328, the second paragraph of section X of Article 387; denomination of Chapters Second and Fourth of the Third Title of the Fist Book, Chapter I of the Seventh Title of the Second Book, Chapter one of the Nineteenth Title of the Second Book, as follows:

**Article 107.-** But if the procedural requirement is satisfied within the above-specified term, statute of limitations shall continue running according to the rules for prosecutable crimes.
[...]
**Article 110**. Statute of limitations of the criminal actions shall also be interrupted by a request for investigative assistance with respect to the crime or the offender, by international extradition proceedings that are carried out, and by a formal request for the surrender of the offender made by the Public Prosecutor of a State different from the State in which the offender has taken refuge, is located or is being detained for the same or different crime. In the first case, interruption of statute of limitations shall also be caused by the proceedings that are carried out by the requested authority and in the second case the interruption shall continue until the authority to which the request has been made refuse surrender or until the legal conditions which gave to the offender's detention or that caused delay in his surrender ceases to exit.

FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

Interruption of the statute of limitations in the criminal action only shall be extended to one half of the terms mentioned in articles 105, 106 and 107 of this Code.

**ARTICLE 111.** The provisions contained in the first two paragraphs and in the first case of the third paragraph of the preceding article, shall be inoperative whenever the proceedings are carried out after half of the statute of limitations term.
It is an exemption of the preceding rule, the term set forth in Article 107 to meet the grievance or any other equivalent requirement.
[...]
**Article 115.** The prescription of the imprisonment penalty is only interrupted by the arrest of the offender, even though the arrest is executed due to another crime, or with the formal request for the delivery of the offender made by the Agent of the Public Prosecutor of another state in which the offender is detained. In this case, the interruption shall continue until the authority to which the request has been made refuses delivery or until the legal conditions giving cause to the detention disappear, conditions which motivate the delay in his delivery.

The prescription of the others penalties shall be interrupted by any other act taken by a competent authority in order to make them effective. The prescription of the penalty pertaining to the redress of damages or to any other kind of economic penalty shall interrupted also by the moving papers presented by either the victim or by the person in whose favor said redress of damages has been decided before the correspond tax authority and with the proceedings initiation of the summary attachment proceedings before a civil authority, proceedings which are based on the record for attachment constituted by the corresponding guilty verdict.

FORMA CG - 1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

OFFICIAL GAZETTE Monday December 23, 1985

# EXECUTIVE BRANCH
# MINISTRY OF THE INTERIOR

Decree through which different provisions of the Criminal Code for the Federal District in Local Matters and for all Mexico in Federal Matters are reformed, added or repealed.

A seal bearing the Mexican Coat of Arms appears at the margin, reading: United Mexican States. Presidency of the Republic.

**MIGUEL DE LA MADRID H**, Constitutional President of the United Mexican States, hereby informs the Mexican People—

That the Hon. Federal Congress has pronounced the following

DECREE

The Federal Congress of the United Mexican States enacts—

THE CRIMINAL CODE IS REFORMED FOR THE FEDERAL DISTRICT IN LOCAL MATTERS, AND FOR THE MEXICAN REPUBLIC IN FEDERAL MATTERS

ARTICLE ONE.- The following Articles are reformed: 15 sections I, III, IV, V, VI; 24 clause 8, 40, 56, 102 first paragraph, 103, 104, 105, 106, 107, paragraph one, 108, 109, 110, 112, 113, 114, 115, 116, 117, 118, 208 and 400, sections I, III and the final part of the article:

FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

ARTICLE 102—The terms of the statute of limitations for the criminal action shall be continuous, and it shall be taken into account the crime and its modalities, and they shall begin to run:

ARTICLE 103—The terms of the statute of limitations for sanctions shall also be continuous and shall start running from the moment the sentenced person absconds, if the penalties deprive him of his liberty or restrict it; and if they do not, the statute of limitations shall start to run from the date the sentence became final and conclusive.

ARTICLE 104—The statute of limitations shall prescribe in a year if the crime is punished only by a fine. If besides a fine, the crime is also punished by imprisonment or an alternative penalty, it shall be taken into account the statute of limitations for criminal action to count the prison term, and the same shall happen when it is punished by an ancillary penalty.

ARTICLE 105—The criminal action shall prescribe in a term equal to the arithmetic mean of the prison term provided by law for that crime, but under no circumstances shall it be less than three years.

ARTICLE 106—The criminal action shall prescribe in two years, if the crime is only punished by removal from office, suspension, deprivation of rights, or disqualification, except as otherwise provided by law.

ARTICLE 107—Except as otherwise provided by law, the criminal action derived from a crime that can only be prosecuted after the victim or the aggrieved party has filed a complaint, the criminal action shall prescribe in one year, starting from the date on which the victims or aggrieved parties are acknowledged of the crime and the perpetrator, and it shall prescribe in three years in any other circumstance.

ARTICLE 108—In case of merged crimes, the statute of limitations for the criminal actions of all of them shall be the moment in which the crime for which it is imposed the greatest penalty prescribes.

ARTICLE 109-- If, in order to bring or continue with a criminal action, it is required a prior decision from the court of law, the term of the statute of limitations shall not begin to run until a final unappealable judgment has been pronounced.

ARTICLE 110—The statute of limitations for the action shall be interrupted by the proceedings performed to investigate the crime and the perpetrators,

PROCURADURIA GENERAL DE LA REPUBLICA

even though the proceedings are not practiced on a determined person because the identity of the perpetrator is unknown.

If no more proceedings are practiced, the statue of limitations shall being to run again as of the following day the last proceeding was practiced.

[...]

ARTICLE 112—If in order to deduce a criminal action, it was established by law that a prior statement or decision is pronounced, the proceedings practiced before the term so established under the preceding article for the purpose thereof shall interrupt the statute of limitations.

ARTICLE 113—Unless otherwise provided by law, a prison term shall prescribe in a term equal to the term established in the sentence plus a fourth, but it shall not be less than three years; a fine shall prescribe in a year; any other sanction shall prescribe in a term equal to the term such penalties shall last, plus a fourth, but under no circumstances shall that term be less than two years; any sanction that does not have a term, shall prescribe in two years. The terms shall start as of the date the decision becomes final and conclusive.

ARTICLE 114—If the convicted person has already served a part of the sanction imposed on him, the statute of limitations shall be the term he has not served yet, plus a fourth, but it cannot be less than one year.

Article 115. The prescription of the imprisonment penalty is only interrupted by the arrest of the offender, even though the arrest is executed due to another crime. Should action be suspended, prescription shall begin again the next day after the last proceeding.

The prescription of the others penalties shall be interrupted by any other act taken by a competent authority in order to make them effective.

FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

OFFICIAL GAZETTE Monday December 23, 1985

# EXECUTIVE BRANCH
# MINISTRY OF THE INTERIOR

Decree through which different provisions of the Criminal Code for the Federal District in Local Matters and for all Mexico in Federal Matters are reformed, added or repealed.

A seal bearing the Mexican Coat of Arms appears at the margin, reading: United Mexican States. Presidency of the Republic.

**MIGUEL DE LA MADRID H**, Constitutional President of the United Mexican States, hereby informs the Mexican People—

That the Hon. Federal Congress has pronounced the following

DECREE

The Federal Congress of the United Mexican States enacts—

DIFFERENT PROVISIONS OF THE CRIMINAL CODE FOR THE FEDERAL DISTRICT IN LOCAL MATTERS AND FOR THE MEXICAN REPUBLIC IN FEDERAL MATTERS ARE REFORMED, ADDED, AND REPEALED.

ARTICLE 1 .- Articles 7, 8, 9, 13, 15, 16, 18, 19, 24, 27, 29, 30, 31, 33, 34, 39, 40, 41, 43, 44, 52, 54, 55, 60, 62, 64, 67, 68, 69, 70, 71, 72, 73, 74, 93, 96, 98, 101, 102, 160, 205, 225, 226, 228, 230, 265, 267, 268, 269, 281, 289, 295, 366, 381 bis, 387, 388 and 390, of the Criminal Code for the Federal District in Local Matters and for all the Mexican Republic in Federal Matters are reformed to be as follows—

Article 101.-

The terms for the statute of limitations shall double for those who are out of Mexican Territory, if for that reason it is not possible to complete a preliminary investigation, conclude a case, or enforce a sanction.

The statute of limitations shall come into effect even though the defendant does not plea for it. The Judge shall apply it "ex-officio", as soon as he is informed of it, regardless of the status of the proceeding.



FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

Article 102—The terms of the statute of limitations for the criminal action shall be continuous, and shall begin to run:

(I) As of the moment the crime was perpetrated, if it is instantaneous
(II) From the day the last act of implementation or omission took place, if it is a crime of attempt.
(III) From the day the last criminal act was perpetrated, if it is a continuous crime; and
(IV) From the day the conduct ceased to be criminal, if the crime is a permanent crime.



FORMA CG-1A

PROCURADURIA GENERAL DE LA REPUBLICA

MINISTRY OF THE INTERIOR

Friday, August 14, 1981

# CRIMINAL CODE

## FOR THE FEDERAL DISTRICT AND FEDERAL TERRITORIES

IN LOCAL MATTERS AND FOR ALL THE MEXICAN REPUBLIC FOR FEDERAL MATTERS

OFFICIAL GAZETTE

TALLERES GRAFICOS DE LA NACION, TOLSA Y ERICO MARTINEZ
MEXICO D.F. – 1931



FORMA CG - 1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

ARTICLE 100—The statute of limitations extinguishes the criminal action and the sanctions, pursuant to the following articles:

ARTICLE 101—The statute of limitations is personal; it only takes the simple passage of the time so established by law.
The statute of limitations shall come into effect even though the defendant does not plea for it. The Judge shall apply it "ex-officio", as soon as they are informed of it, regardless of the status of the proceeding.

ARTICLE 102. Statute of limitations of the criminal action shall be continuous and its modalities shall be taken into consideration shall begin to run from: the day when the crime was committed, if it is instantaneous; the moment the crime was perpetrated, if it is a continuous crime; the day the last criminal act of a crime was carried out, if it is an attempt.

ARTICLE 103—The terms of the statute of limitations for sanctions shall be ALSO continuous and shall start running from the moment the sentenced person absconds, if the penalties deprive him of his liberty or restrict it; and if they do not, the statute of limitations shall start to run from the date the sentence became final and conclusive.

ARTICLE 104—The statute of limitations shall prescribe in a year if the crime is punished only by a fine. If besides a fine, the crime is also punished by imprisonment or an alternative penalty, it shall be taken into account the statute of limitations for criminal action to count the prison term, and the same shall happen when it is punished by an ancillary penalty.

ARTICLE 105—The criminal action shall prescribe in a term equal to the arithmetic mean of the prison term provided by law for that crime, but under no circumstances shall it be less than three years.

ARTICLE 106—The criminal action shall prescribe in two years, if the crime is only punished by removal from office, suspension, deprivation of rights, or disqualification, except as otherwise provided by law.

ARTICLE 107—Except as otherwise provided by law, the criminal action derived from a crime that can only be prosecuted after the victim or the aggrieved party has filed a complaint, the criminal action shall prescribe in one year, starting from the date on which the victims or aggrieved parties are acknowledged of the crime and the perpetrator, and it shall prescribe in three years in any other circumstance.



FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

ARTICLE 108—In case of merged crimes, the statute of limitations for the criminal actions of all of them shall be the moment in which the crime for which it is imposed the greatest penalty prescribes.

ARTICLE 109-- If, in order to bring or continue with a criminal action, it is required a prior decision from the court of law, the term of the statute of limitations shall not begin to run until a final unappealable judgment has been pronounced.

ARTICLE 110—The statute of limitations for the action shall be interrupted by the proceedings performed to investigate the crime and the perpetrators, even though the proceedings are not practiced on a determined person because the identity of the perpetrator is unknown.
If no more proceedings are practiced, the statue of limitations shall being to run again as of the following day the last proceeding was practiced.
[...]
ARTICLE 112—If in order to deduce a criminal action, it was established by law that a prior statement or decision is pronounced, the proceedings practiced before the term so established under the preceding article for the purpose thereof shall interrupt the statute of limitations.

ARTICLE 113—Unless otherwise provided by law, a prison term shall prescribe in a term equal to the term established in the sentence plus a fourth, but it shall not be less than three years; a fine shall prescribe in a year; any other sanction shall prescribe in a term equal to the term such penalties shall last, plus a fourth, but under no circumstances shall that term be less than two years; any sanction that does not have a term, shall prescribe in two years. The terms shall start as of the date the decision becomes final and conclusive.

ARTICLE 114—If the convicted person has already served a part of the sanction imposed on him, the statute of limitations shall be the term he has not served yet, plus a fourth, but it cannot be less than one year.

ARTICLE 115. The prescription of the imprisonment penalty is only interrupted by the arrest of the offender, even though the arrest is executed due to another crime.



FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

***CERTIFICATION***

***EDUARDO DE JESUS CASTELLANOS HERNANDEZ, General Director of Compilation and Consultation of the National Legal Order of the Under-Secretariat of Legal Affairs and Human Rights of the Ministry of the Interior, in compliance with articles 9° (XIII) and 22 (XII of the Internal Regulations of the Ministry of the Interior -----------------------------------------***

***----------------------------------C E R T I F I E S-----------------------------------------***

***For the corresponding legal effects, that the present photocopy in twelve (12) pages , duly stamped and signed, faithfully match the text published in different dates in the corresponding Official Gazette of the Federation, that they were at sight and were recorded in the files of this General Direction.***

[Signed]

***Mexico City, Federal District, on March twenty two, two thousand and six.***

| Due to the fact that this certification was formally requested by the Mexican Attorney General's Office, in official matter of its jurisdiction, pursuant to Article 5 of the Federal Law of Rights, published in the Federal Official Gazette on December 31, 1981, tax exempted by issuance of certified copies. |
|---|

**[SEAL:**
**MINISTRY OF THE INTERIOR**
**UNIT OF GOVERNMENT]**

BY DECISION OF THE SECRETARY OF THE INTERIOR, **MIGUEL ANGEL DE HARO PAYAN**, HEAD OF THE AUTHENTICATION PROCESS OFFICE OF THE ASSISTANT DIRECTOR'S OFFICE OF CONTROL AND FORMALIZATION OF THE DIVISION OF POLITICAL COORDINATION WITH THE BRANCHES OF THE UNION, **CERTIFIES:** THAT EDUARDO DE JESUS CASTELLANOS HERNANDEZ WAS NATIONAL LEGAL SYSTEM COMPILATION AND REFERENCE GENERAL DIRECTOR OF THE LEGAL AFFAIRS AND HUMAN RIGHTS UNDERSECRETARY'S OFFICE OF THE MINISTRY OF THE INTERIOR ON MARCH 22, 2006, AND THAT THE SIGNATURE APPEARING ON THE PRESENT DOCUMENT IS HIS OWN.

MEXICO, FEDERAL DISTRICT, ON MARCH 23, 2006.

REGISTRY No. **4180**
TAXES PAID 0.00
TAX EXEMPT

(Sealed and signed)

THIS MINISTRY DOES NOT ASSUME ANY LIABILITY
AS FOR THE CONTENTS OF THE DOCUMENT

FORMA CG - 1 A

PROCURADURIA GENERAL DE LA REPUBLICA

----In Mexico City, Federal District on June twenty (20), two thousand six (2006), the undersigned, Leopoldo Velarde Ortiz, attorney-at-law, General Director of Extraditions and Legal Assistance and Federal Public Prosecutor in the service of the Mexican Attorney General's Office, in compliance with Articles 2 and 4 (VIII) (d) of the Regulations of the Organic Law of the Mexican Attorney General's Office in the performance of the powers set forth in Article 35 (I) related to article 12 (X) of the Regulations of the Organic Law of the Mexican Attorney General's Office, legally acting along with attesting witnesses who at the end sign and attest,

**CERTIFY**

----That these photocopies consisting of 205 (two hundred and five) pages of text are true and correct copies tallying in each end every part with different documents that are international extradition file brought with this General Division against **MARIA DEL ROSARIO MORENO VAZQUEZ**. These documents were taken before me and compared. I attest this for the proper legal effects.

**WE ATTEST**

(AN ILLEGIBLE SIGNATURE)

| ATTESTING WITNESS | ATTESTING WITNESS |
|---|---|
| (signed) | (signed) |
| Lic. Ma. Elmina Meixuerio Herrera | Lic. Gerardo Ruiz Terroba |

[AT THE BOTTOM OF THE DOCUMENT A SEAL APPEARS WHICH READS: MEXICAN ATTORNEY GENERAL'S OFFICE; GENERAL DIVISION OF EXTRADITIONS AND LEGAL ASSISTANCE; UNITED MEXICAN STATES; THE MEXICAN COAT OF ARMS.]



FORMA CG - 1 A

PROCURADURIA GENERAL
DE LA
REPUBLICA

**[SEAL:
MINISTRY OF THE INTERIOR
GENERAL DIVISION OF
THE INTERIOR.
UNITED MEXICAN STATES.
MEXICAN COAT OF ARMS]**

BY DECISION OF THE SECRETARY OF THE INTERIOR, **MARIA DEL ROCIO GARFIAS AGUILAR**, ASSISTANT DIRECTOR OF THE OFFICE OF CONTROL AND FORMALIZATION OF THE DIVISION OF POLITICAL COORDINATION WITH THE BRANCHES OF THE UNION, **CERTIFIES:** THAT LEOPOLDO VELARDE ORTIZ WAS GENERAL DIRECTOR OF EXTRADITIONS AND LEGAL ASSISTANCE AND FEDERAL PUBLIC PROSECUTOR OF THE MEXICAN ATTORNEY GENERAL'S OFFICE ON JUNE 20, 2006, AND THAT THE SIGNATURE APPEARING ON THE PRESENT DOCUMENT IS HIS OWN.
MEXICO, FEDERAL DISTRICT, JUNE 27, 2006.

Registry No. **9357**
TAXES PAID 0.00
TAX EXEMPT
**This Ministry does not assume any liability as for the contents of the document being authenticated.**

Sealed and signed

[SEAL:
MINISTRY OF FOREIGN AFFAIRS
CONSULAR SERVICE
**AUTHENTICATIONS**
UNITED MEXICAN STATES.
MEXICAN COAT OF ARMS]

F. 8 (Consular)

**372580**

THE MINISTRY OF FOREIGN AFFAIRS CERTIFIES: that MARIA DEL ROCIO GARFIAS AGUILAR, WAS ASSISTANT DIRECTOR OF THE OFFICE OF CONTROL AND FORMALIZATION OF THE DIVISION OF POLITICAL COORDINATION WITH THE BRANCHES OF THE UNION OF THE MINISTRY OF THE INTERIOR ON JUNE 27, 2006, the preceding signature is his own.

Tlatelolco, Federal District, JUNE 30, 2006.

By resolution of the Minister
THE DEPUTY
(signed and sealed)
**MYRNA GRANADOS HERNANDEZ**

The Ministry does not assume any liability as for the contents of the document being legalized.

# PRUEBA 1



**DECLARACIÓN MINISTERIAL**

En la ciudad de México Distrito Federal, a los dos días del mes de marzo del año dos mil cuatro, ante el suscrito licenciado Mariano Martínez García, Agente del Ministerio Público de la Federación, Adscrito a la Dirección General de Asuntos Policiales Internacionales e INTERPOL, quien actúa en forma legal en compañia de testigos de asistencia, y que al final firman y dan fe para debida constancia legal, --------------------------------------------------
---------------------------------------------------**HACE CONSTAR**--------------------------------------------
----Que en este acto comparece en esta Oficina con domicilio cito en el número 333 de la Avenida de la Moneda, Colonia Lomas de Sotelo, Delegación Miguel Hidalgo en la ciudad de México, el señor **JOSÉ FERNANDO CASTILLO TAPIA**, quien acude en forma voluntaria ante esta Representación Social de la Federación, y se identifica en estos momentos con una credencial expedida por la Universidad Nacional Autónoma de México con número de trabajador 92082, misma que presenta una fotografía en color del lado superior derecho que coincide con los rasgos físicos del compareciente, misma que se agrega en copia simple de acuerdo a lo que estipula el artículo 208 del Código Federal de Procedimientos Penales, se le advierte de las penas en que incurren los que declaran con falsedad ante autoridad distinta a la judicial, por lo que se le exhorta a que se conduzca con verdad en la presente declaración, y dicho lo anterior, el de la voz manifiesta llamarse como ha quedado escrito, ser de cuarenta y cinco años de edad, por haber nacido, veintiséis de octubre de mil novecientos cincuenta y ocho, con domicilio en la calle de ██████████████████████████████████████████████████████████ Estado de México ███████████████████████████████████████████████████ estado civil ███████ado, con instrucción escolar de estudios de postgrado, no afecto a las bebidas embriagantes, no afecto a las drogas, no afecto al tabaco comercial, de ocupación ████ado federal, que comparece de manera voluntaria ante esta Representación Social de la Federación a efecto de manifestar lo siguiente:--------------------------------------------------
---------------------------------------------------------**DECLARA**-------------------------------------------------
Que aproximadamente en mil novecientos ochenta y cuatro se casó con la señora Rosario Moreno Vázquez, nacida el veintisiete de septiembre de mil ████████senta y uno, en el Distrito Federal, unión de la cual procrearon dos hijos de ████████████████████████████████ de edad por haber nacido el ██████████████ ██████████████████████ enta y nueve y ███████████████████████████████████ ██████████████████████████ pronto el diez de octubre de ██████████████████ ███████████████████████████ que el de la voz manifiesta que ██████ el de la voz ██████████████████████ y dos se ██████ solicito de la señora María del Rosario Moreno ██████████████████████████████████████████ dad de los menores y la guarda y custodia ██████████████████████████ ría María del Rosario Moreno, quien era la encargada de los ████████████████████ menores, es el caso que el día sábado veintiocho de febrero de los ████████████████ dirigió como de costumbre a visitar a sus menores en el domicilio que se ██████████████████, Naucalpan, Estado de México, en donde la señora María Elena Vázquez ████████████████████████ que la señora María del Rosario Moreno y sus dos hijos habían salido del país, entregándole en ese momento una carta en donde en su opinión le exponía los motivos que la habían llevado a tomar esa determinación, el declarante manifiesta que

ESTADOS UNIDOS MEXICANOS
PROCURADURIA GENERAL DE LA REPUBLICA

008

tenía conocimiento que la señora María del Rosario Moreno contrajo nuevamente matrimonio con una persona de nacionalidad estadounidense, por lo que presume que sus menores hijos puedan encontrarse en los Estados Unidos de América, ya que por voz del C. Enrique A. E. Ahrens Jahp Director del Colegio "La Salle" del Estado de México, al que asiste el menor Luis Fernando Castillo Moreno, en donde le comentó al manifestante que su baja del plantel escolar era por motivos de cambio de residencia, ya que se iba a vivir a los Estados Unidos de América, por lo que en estos momentos proporciona los teléfonos en los cuales pudieran encontrarse sus menores [redacted] derivado de los presentes actos, el declarante dio parte al Agente del Ministerio Público en Naucalpan, Estado de México mismo que inicio la denuncia de hechos número NJ/II/816/04-02; asimismo, el de la voz manifiesta que únicamente tiene la sospecha de que se pueden localizar en la costa Oeste de ese país, de la misma forma proporciona los siguientes teléfonos [redacted] el cual pertenece al domicilio de la señora María Elena Vázquez Saucedo, abuela materna de sus menores o los de la Parroquia cercana a su domicilio [redacted] este último pertenece a su anterior empleo, ya que manifiesta que esta seguro que la señora María del Rosario intentará comunicarse con sus familiares, no habiendo mas que hacer constar, se levanta la presente diligencia firmando al calce los que en ella intervinieron para la debida constancia legal, así lo resolvió y firma el licenciado Mariano Martínez García, Agente del Ministerio Público de la Federación Adscrito a la Dirección General de Asuntos Policiales Internacionales e INTERPOL.-----------------------------------------

---------------------------------------------------DOY FE-----------------------------------------

JOSÉ FERNANDO CASTILLO TAPIA
DECLARANTE

LIC. MARIANO MARTÍNEZ GARCÍA

TESTIGOS DE ASISTENCIA.

PROCURADURIA GENERAL DE LA REPUBLICA
DIRECCION GENERAL DE ... Y JURIDICA

LIC. DAVID JOAQUÍN CORTÉS VILLARREAL

LIC. MIGUEL ÁNGEL CORTAZAR LARA

# PRUEBA 2




3

SECRETARIA DE RELACIONES EXTERIORES

OFICIALIA MAYOR
DIRECCION GENERAL DE DELEGACIONES
DIRECCION DE NORMATIVIDAD

000135

**Ref.: DGD-A DN02971**

**RESERVADO**

México, D.F., a 21 de Julio de 2004

**ASUNTO: EXPEDIENTE: A.P. PGR/NAU/87/2004-II**

**LIC. VICTOR MARTINEZ CABRERA**
Agente del Ministerio Público de la Federación
Titular de la Mesa Segunda Investigadora
Subprocuraduría de Procedimientos Penales "B"
Mesa Dos
Procuraduría General de la República
Presente.-

134

Con relación a su oficio número 1705/2004, de fecha 13 de Julio de 2004, recibido en esta Dirección General el día 15 del mismo mes y año, remito copia certificada de los documentos que sustentaron la expedición de pasaporte a nombre de las personas que se mencionan a continuación:

[redacted] con número de pasaporte [redacted] con fecha de expedicion **17 de Febrero de 2004.**
[redacted] con número de pasaporte [redacted] con fecha de expedición **17 de Febrero de 2004.**
**MARIA DEL ROSARIO MORENO VAZQUEZ** con número de pasaporte [redacted] con fecha de expedición **22 de Septiembre de 2003.**

Con referencia al segundo punto de su oficio de referencia, se informa que se expidieron mediante el reglamento de pasaportes vigente.

Sin otro particular, reciba un cordial saludo.

**ATENTAMENTE**

**EL DIRECTOR DE NORMATIVIDAD**

**LIC. HUMBERTO LUGO GUERRERO**

HLG/PATR
C:\P.G.R. 09 JULIO 04.doc

Paseo de la Reforma 255 Piso 13, Col. Cuauhtémoc, C.P. 06500, México D.F.
Tels. 50633000. fax: 91574304 Ext. 4008 Correo electrónico: dgdelegaciones@sre.gob.mx

57

000001

56604

**SRE**

Secretaría de Relaciones Exteriores

## SOLICITUD DE PASAPORTE ORDINARIO MEXICANO

TRÁMITE: Primera Vez ☐ Canje ☑ Vigencia: 1 año ☒ 5 años ☐ 10 años ☐

I. DATOS GENERALES DEL SOLICITANTE

1. No. de pasaporte anterior: [redacted]

2. CURP: MOVR 6 ... MDFR 2 ...

3. Apellido paterno: MORENO

4. Apellido materno: VAZQUEZ

5. Nombre(s): MARIA DEL ROSARIO

6. Fecha de nacimiento: [redacted] 1961

7. Sexo: M ☒

8. Lugar de nacimiento: México, D.F. — D.F.

11. Domicilio: [redacted]

Población: NAUCALPAN — Estado: ESTADO DE MEXICO

Teléfono: 5344-1238 — Trabajo: 5255 5346

12. Datos de los padres del solicitante

Padre: MORENO RUBIALES ENRIQUE — MEXICANA

Madre: VAZQUEZ SAUCEDO MARIA ELENA — MEXICANA

Estatura: 1.57

Tez: Blanca ☒ — Ojos: Café claro ☒ — Cabello: Castaño oscuro ☒

Otros: LENTES

Señas particulares: PECAS

Documentos que presenta

Nombre de la persona que autoriza: MARIA ELENA VAZQUEZ SAUCEDO

Manifiesto, bajo protesta de decir verdad y conociendo las penas en que incurren quienes falsean a ella en los términos de las disposiciones penales aplicables, que los datos asentados en esta solicitud son verídicos y que los documentos presentados son auténticos y legales.

Firma del titular del pasaporte — Firma del solicitante

Huellas digitales: Índice izquierdo — Índice derecho — ...

Sello: SECRETARIA ... MEXICO; ESTADOS UNIDOS MEXICANOS

...A GENERAL ...BLICA ...NERAL DE ...NES Y ...RIDICA



000021

022

SRE
Secretaría de Relaciones Exteriores

SOLICITUD DE PASAPORTE ORDINARIO MEXICANO (OP-5)

Primera Vez [ ] Canje [X] Vigencia: 1 año [ ] 5 años [X] 10 años [ ]

OBSERVACIONES

NÚMERO DE SOLICITUD 6289

Antes de llenar la presente solicitud de pasaporte lea detenidamente su contenido.

Anote los datos solicitados o cruce en cada caso el cuadro correspondiente, respetando los espacios destinados sobre todo los campos destinados a firma.

Nota: La presente solicitud deberá ser llenada con tinta negra y letra de molde

LUGAR Y FECHA: Naucalpan, Estado de México, Febrero 16, 2004

1. No. DE PASAPORTE ANTERIOR (EN CASO DE CANJE)

2. CURP 1505 702 4 402 1 56

3. APELLIDO PATERNO

4. APELLIDO MATERNO

5. NOMBRE(S)

6. FECHA DE NACIMIENTO

7. SEXO

8. NACIDO EN:
a) Entidad Federativa: México
b) Municipio: Distrito Federal

IDENTIFICACIÓN QUE PRESENTA: Pasaporte

DOMICILIO

Población: NAUCALPAN

Entidad: México

Teléfonos: Particular 5344-1238 Trabajo 5253 63 64

11. EN CASO DE ACCIDENTE O FALLECIMIENTO AVISAR A: MARIA DEL ROSARIO MORENO VAZQUEZ

CON DOMICILIO EN:

Manifiesto bajo protesta de decir verdad, conociendo las penas en que incurren quienes faltan a ella en los términos de las disposiciones penales aplicables, que soy mexicano, que los datos asentados en esta solicitud son verídicos y que los documentos presentados son auténticos y legales.

FIRMA DE CONFORMIDAD CON LOS DATOS CONTENIDOS EN EL PASAPORTE AL RECIBIRLO

FIRMA DEL SOLICITANTE

CAMPOS DE CONTROL: RECEPCIÓN, REVISIÓN, CAPTURA Y VERIFICACIÓN DE DATOS, AUTORIZACIÓN, IMPRESIÓN, EN TRÁMITE, ENTREGA

GENERAL
BLICA
ERAL DE
ES Y
DICA

67

000003

C Nº 8522156

FOLIO No. A2929095

ACTA DE NACIMIENTO

ESTADOS UNIDOS MEXICANOS
ESTADO LIBRE Y SOBERANO DE MEXICO
REGISTRO CIVIL

CURP ETIQUETA

02 11 02195 SATELITE

NAUCALPAN DE JUAREZ MEXICO 13 12 94

DISTRITO FEDERAL

JOSE FERNANDO CASTILLO TAPIA 32
MEXICANA
MARIA DEL ROSARIO ... VAZQUEZ 31
MEXICANA
FERNANDO CASTILLO MEXICANA
ESTELA TAPIA MEXICANA
MEXICANA
MARIA ... VAZQUEZ MEXICANA
... DE LA MADRID MEXICANA 28
MEXICANA 25

PERSONA DISTINTA DE LOS PADRES QUE PRESENTA AL REGISTRADO

FIRMA DE LOS PADRES O DE LA PERSONA DISTINTA QUE PRESENTA AL REGISTRADO

FIRMAS DE LOS TESTIGOS

02

C. LIC. MARGARITA MARISCAL DE OLVERA

CARTILLA DE VACUNACION

(La presente acta ... invalida esta certificación)

FOLIO 0570202083

OFICIALIA

PRESIDENCIA MUNICIPAL
Oficialía ... Registro Civil
Ciudad Satélite
Naucalpan de Juárez
Edo. de México

...ENERAL
...ICA
...RAL DE
...ES Y
...RIDICA

Clo

000024
En caso de que el titular de este pasaporte requiera de asistencia o protección del gobierno mexicano, se recomienda acudir a la representación diplomática o consular más cercana. Para su protección en caso de emergencia.
Nombre: María del Rosario Moreno
Dirección:
Entidad Federativa: Estado de México
C.P.
Teléfono:
DOMICILIO DEL TITULAR / HOLDER'S ADDRESS / ADRESSE DU TITULAIRE
Dirección:
Entidad Federativa: Estado de México
C.P.
Teléfono:
ESTADOS UNIDOS MEXICANOS
MEX
MEXICANA
MEXICO, D.F.
17 DIC 1997
17 DIC 2002
NAUCALPAN, MEX.
025
ASUNTOS
NERAL
RIDICA

000026

FIRMA DE EXPEDICION

GRUPO

3° blanco

FECHA

18 agosto/93

COLEGIO LA SALLE BULEVARES

NTOS POLICIALES INTERPOL

ENERAL
CA
RAL DE
ES Y
RIDICA

64

000005

000028



000029

OP-7

PERMISO QUE OTORGAN LOS PADRES O PERSONAS QUE EJERCEN LA PATRIA POTESTAD O TUTELA, PARA LA EXPEDICIÓN DE PASAPORTE

OBSERVACIONES

LUGAR Y FECHA

LOS QUE SUSCRIBIMOS PADRES Y/O TUTORES DEL MENOR ____ MANIFESTAMOS, PARA LOS EFECTOS DEL ARTÍCULO 14 DEL REGLAMENTO DE PASAPORTES Y 215 DEL REGLAMENTO DE LA LEY GENERAL DE POBLACIÓN EN VIGOR, EL CONSENTIMIENTO PARA QUE NUESTRO (A) HIJO (A) PUEDA SALIR DEL TERRITORIO DE LA REPÚBLICA MEXICANA POR LO QUE SOLICITAMOS SE LE EXPIDA PASAPORTE ORDINARIO BAJO EL NOMBRE QUE APARECE EN EL FORMATO OP-5 DE LA PRESENTE SOLICITUD Y CON UNA VIGENCIA DE ____ QUEDANDO EN EL ENTENDIDO QUE A MENORES DE TRES AÑOS DE EDAD SOLO SE LES EXPEDIRÁ DICHO DOCUMENTO POR UN PERIODO MÁXIMO DE ___ MESES.

(PADRE O TUTOR) (MADRE O TUTORA)

| DATOS DEL PADRE O TUTOR | DATOS DE LA MADRE O TUTORA |
|---|---|
| Como Padre [X] Como Tutor [ ] | Como Madre [X] Como Tutora [ ] |
| Para realizar el trámite me identifico con el siguiente documento: Pasaporte | Para realizar el trámite me identifico con el siguiente documento: Pasaporte |
| No. [redacted] | No. [redacted] |
| Expedido (a) por: Secretaría de Relaciones Exteriores | Expedido (a) por: Secretaría de Relaciones Exteriores |
| De fecha: 06 / 11 / 2003 (día, mes, año) | De fecha: 22 / 09 / 2003 (día, mes, año) |
| ÍNDICE IZQUIERDO / ÍNDICE DERECHO | ÍNDICE IZQUIERDO / ÍNDICE DERECHO |

...PÚBLICO ...ADOS ...EZ



000030

SRE

SECRETARÍA DE RELACIONES EXTERIORES

SOLICITUD DE PASAPORTE ORDINARIO MEXICANO (OP-5)

Primera Vez [ ] Canje [X] Vigencia: 1 año [ ] 5 años [X] 10 años [ ]

OBSERVACIONES

NUMERO DE SOLICITUD 6290

Antes de llenar la presente solicitud de pasaporte lea detenidamente su contenido.

Anote los datos solicitados o cruce en cada caso el cuadro correspondiente respetando los espacios delimitados sobre todo los campos destinados a firma.

Nota: La presente solicitud deberá ser llenada con tinta negra y letra de molde

LUGAR Y FECHA: Naucalpan Estado de México, Febrero 16, 2004

1. No. DE PASAPORTE ANTERIOR (EN CASO DE CANJE)

2. CURP

4. APELLIDO MATERNO: MORENO

6. FECHA DE NACIMIENTO

7. SEXO

a) Entidad Federativa: MEXICO

b) Municipio: DISTRITO FEDERAL

IDENTIFICACIÓN QUE PRESENTA: PASAPORTE

10. DOMICILIO

NAUCALPAN

MEXICO

EN CASO DE ACCIDENTE O FALLECIMIENTO AVISAR A:

MARIA DEL ROSARIO MORENO VAZQUEZ

CON DOMICILIO EN:

Manifiesto bajo protesta de decir verdad y conociendo las penas en que incurren quienes faltan a ella en los términos de las disposiciones penales aplicables que soy mexicano, que los datos asentados en esta solicitud son verídicos y que los documentos presentados son auténticos y legales.

FIRMA DE CONFORMIDAD CON LOS DATOS CONTENIDOS EN EL PASAPORTE AL RECIBIRLO

FIRMA DEL SOLICITANTE

CAMPOS DE CONTROL

HUELLAS DACTILARES

EL USO DE ESTE FORMATO ES DE LIBRE REPRODUCCIÓN

13

000031

033

593462

GOBIERNO DEL DISTRITO FEDERAL

ACTA DE NACIMIENTO

CURP

| ENTIDAD | DELEGACION | JUZGADO | ACTA | AÑO | CLASE | FECHA DE REGISTRO DIA | MES | AÑO |
|---|---|---|---|---|---|---|---|---|
| 09 | 06 | 0C | 01433 | 1989 | NA | 04 | 09 | 89 |

REGISTRADO

NOMBRE

FECHA DE NACIMIENTO — HORA 12.35

LUGAR DE NACIMIENTO

FUE PRESENTADO, VIVO X MUERTO — SEXO: MASCULINO — FEMENINO

COMPARECIO: EL PADRE — LA MADRE — AMBOS X — EL PROPIO REGISTRADO — PERSONA DISTINTA

PADRES

NOMBRE DEL PADRE: JOSE FERNANDO CASTILLO TAPIA

NACIONALIDAD: MEXICANA — OCUPACION E. FEDERAL — EDAD 39 AÑOS

NOMBRE DE LA MADRE: MARIA DEL ROSARIO MORENO VARGAS

NACIONALIDAD: MEXICANA — OCUPACION AMA DE CASA — EDAD 37 AÑOS

DOMICILIO(S): CUAUHTEMOC 170 DOCTORES CUAUHTEMOC [illegible]

ABUELOS

ABUELO PATERNO: FERNANDO CASTILLO FERNANDEZ

NACIONALIDAD: MEXICANA

ABUELA PATERNA: ESTELA TAPIA CORDERO

NACIONALIDAD: MEXICANA

DOMICILIO(S): AGRICULTORES 15[illegible]-29 MINERVA IZTAPALAPA D.F.

ABUELO MATERNO: ENRIQUE MORENO ROBLES

NACIONALIDAD: MEXICANA

ABUELA MATERNA: MARIA ELENA VAZQUEZ [illegible]

NACIONALIDAD: MEXICANA

DOMICILIO(S): [illegible] NAUCALPAN, MEXICO

TESTIGOS

NOMBRE: JOSE ALFREDO AGUILAR [illegible]

NACIONALIDAD: MEXICANA — EDAD 23 AÑOS

DOMICILIO: [illegible] CUAUHTEMOC D.F.

NOMBRE: RODOLFO FLORES [illegible]

NACIONALIDAD: MEXICANA — EDAD 30 AÑOS

DOMICILIO: [illegible] CUAUHTEMOC D.F.

SE DIO POR TERMINADO EL ACTO Y FIRMAN LA PRESENTE, PARA CONSTANCIA, LOS QUE EN ELLA INTERVINIERON Y SABEN HACERLO Y LOS QUE NO, IMPRIMEN SU HUELLA DIGITAL. SE CIERRA EL ACTO QUE SE AUTORIZA DOY FE. LIC. RAFAEL DOMINGUEZ MORFIN.

CUATRO FIRMAS ILEGIBLES RUBRICAS

HUELLA DIGITAL DEL REGISTRADO

UNTOS POLICIALES E INTERPOL

ES COPIA FIEL DE SU ORIGINAL QUE SE EXPIDE EN LA CIUDAD DE MEXICO [illegible] ABRIL DE 2000

EL JUEZ CENTRAL DEL REGISTRO CIVIL DE LA CIUDAD DE MEXICO

LIC. ISABEL FERNANDEZ MORAN

HUMANITARIA

[illegible] DE LA REPUBLICA

MINISTERIO PUBLICO
[illegible]CION MESA DOS
[illegible]N DE JUAREZ
DE MEXICO

000032
034
PASAPORTE
Estados Unidos Mexicanos
P<MEXCASTILLO<TAPIA<<JOSE<FERNANDO<<<<<<<<

000033

000034

036

NOMBRE
CASTILLO MORENO LUIS FERNANDO
FIRMA
FIRMA DE DIRECCION
GRUPO
1°A
MATRICULA
FECHA
2003-2004

SECUNDARIA
LA SALLE
BOULEVARES

C670

PUBLICO

NERAL
DA
RAL DE
ES Y
IDICA

000035

OP-7

PERMISO QUE OTORGAN LOS PADRES O PERSONAS QUE EJERCEN LA PATRIA POTESTAD O TUTELA, PARA LA EXPEDICIÓN DE PASAPORTE

OBSERVACIONES

LUGAR Y FECHA

LOS QUE SUSCRIBIMOS PADRES Y/O TUTORES DEL MENOR ________ MANIFESTAMOS, PARA LOS EFECTOS DEL ARTÍCULO 14 DEL REGLAMENTO DE PASAPORTES Y 215 DEL REGLAMENTO DE LA LEY GENERAL DE POBLACIÓN EN VIGOR, EL CONSENTIMIENTO PARA QUE NUESTRO (A) HIJO (A) PUEDA SALIR DEL TERRITORIO DE LA REPÚBLICA MEXICANA POR LO QUE SOLICITAMOS SE LE EXPIDA PASAPORTE ORDINARIO BAJO EL NOMBRE QUE APARECE EN EL FORMATO OP-5 DE LA PRESENTE SOLICITUD Y CON UNA VIGENCIA DE ________ QUEDANDO EN EL ENTENDIDO QUE A MENORES DE TRES AÑOS DE EDAD SÓLO SE LES EXPEDIRÁ DICHO DOCUMENTO POR UN PERIODO MÁXIMO DE 17 MESES.

________ Y ________

(PADRE O TUTOR) (MADRE O TUTORA)

| DATOS DEL PADRE O TUTOR | DATOS DE LA MADRE O TUTORA |
|---|---|
| Como Padre [X] Como Tutor [ ] | Como Madre [X] Como Tutora [ ] |
| Para realizar el trámite me identifico con el siguiente documento: Pasaporte | Para realizar el trámite me identifico con el siguiente documento: Pasaporte |
| No. [redacted] | No. [redacted] |
| Expedido (a) por: Secretaría de Relaciones Exteriores | Expedido (a) por: Secretaría de Relaciones Exteriores |
| De fecha: 06 / 11 / 2003 (día, mes, año) | De fecha: 22 / 04 / 2003 (día, mes, año) |
| Firma | Firma |
| Índice izquierdo / Índice derecho | Índice izquierdo / Índice derecho |

# PRUEBA 3

000039

CA DataBase Portal - Microsoft Internet Explorer
File Edit View Favorites Tools Help
Back Stop Refresh Home Search Favorites History Mail Print Edit
Address
Go Links
Home ACS CST DV/DVIS INK IV/IVIS NIV Passport Public Admin
Issuing Post Name
MEXICO CITY
Surname
Given Name
Passport Number
380053110, Regular
Gender
Male
Date of Birth
Nationality
MEX
Control Number
Place of Birth
Distrito Federal (DF)
City of Birth
Fingerprint 1
Fingerprint
Adjudication Data
Adjudication 1:
Interviewed by:
Adjudicated by:
FALLSE
Decision:
issued
Adjudication Date:
Done
Internet
Start
Inbox - Microsoft Outlook
CA Database Portal - ...
8:43 AM
NTOS POLICIALES
INTERPOL
GENERAL
ENERAL DE
CIONES Y
JURIDICA

041

# PRUEBA 4

000040

042

CA Database Portal - Microsoft Internet Explorer
File Edit View Favorites Tools Help
Back Stop Refresh Home Search Favorites History Mail Print Edit
Address https://cadata.ca.state.gov/index_ssl.html
Go Links
Database Portal
Home ACS CST DV/DVIS INK IV/IVIS NIV Passport Public Admin
Issuing Post Name display ink report links
MEXICO CITY
Surname
MORENO VAZQUEZ
Given Name
MARIA DEL ROSARIO
Passport Number
Regular
Gender
Female
Date of Birth
961
Nationality
MEX
Place of Birth
Distrito Federal (DF)
City of Birth
Fingerprint 1
Finger # 2
Fingerprint 2
Finger # 7
Control Number
Adjudication Data
Adjudication 1:
Interviewed by:
Adjudicated by:
FALLSE
Decision
Adjudication Date:
Issued
11-JUN-2001 08:58
javascript:display_ink()
Internet
Start
Inbox - Microsoft Outlook
CA Database Portal - ...
8:41 AM
INTERPOL

# PRUEBA 5

000041
70
043
CA Database Portal - Microsoft Internet Explorer
File Edit View Favorites Tools Help
Back Stop Refresh Home Search Favorites History Mail Print Edit
Address
Go Links
Home ACS CST DV/DVIS INK IVIS NIV Passport Public Admin
Issuing Post Name
MEXICO CITY
Surname
CASTILLO MORENO
Given Name
Control Number
Passport Number
Regular
Gender
Female
Date of Birth
1994
Nationality
MEX
Place of Birth
Distrito Federal (DF)
City of Birth
Fingerprint 1
Fingerprint Waived
Fingerprint 2
Adjudication Data
Adjudication 1:
Interviewed by:
Adjudicated by:
Decision:
Issued
Adjudication Date:
11-JUN-2001
Done
Internet
Start
Inbox - Microsoft Outlook
CA Database Portal -
8:44 AM
ASUNTOS POLICIALES
NACIONALES E INTERPOL
ESTADOS UNIDOS MEXICANOS
GENERAL
REPUBLICA
GENERAL DE
JURIDICA

# PRUEBA 6

000096

COORDINACIÓN DE PLANEACIÓN DESARROLLO E INNOVACIÓN INSTITUCIONAL
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES
DIRECCIÓN GENERAL ADJUNTA DE ESPECIALIDADES DOCUMENTALES
DEPTO: DOCUMENTOS CUESTIONADOS
FOLIO: 13611
OFICIO: DGAPII/2638/0550/04-AAH

**ASUNTO: SE EMITE DICTAMEN DE GRAFOSCOPÍA**

097

México, Distrito Federal, a 17 de marzo del 2004.

**LIC. MARIANO MARTÍNEZ GARCÌA**
**AGENTE DEL MINISTERIO PÙBLICO**
**DE LA FEDERACION.**
**ADSCRITO A LA AGENCIA FEDERAL DE INVESTIGACION**
**DIRECCION GENERAL DE ASUNTOS POLICIALES INTERNACIONALES E INTERPOL.**
**P R E S E N T E**

El suscrito perito en materia de Grafoscopía y Documentoscopía, designado para intervenir en relación a su oficio citado al rubro, ante Usted con respeto manifiesto lo siguiente:

Fue requerida mi intervención a fin de atender su petición dirigida al DIRECTOR GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES, la cual en su parte conducente informa:

"…me permito hacer de su conocimiento que con el propósito de obtener la impresión original del documento en donde se estampó la firma, se solicitó a la Secretaría de Relaciones Exteriores, el original del documento, obteniendo una respuesta negativa, sin embargo nos han permitido realizar el cotejo directamente en las instalaciones de la Delegación de la citada Secretaría en Naucalpan, Estado de México.

En virtud de lo anterior, agradeceré su valiosa colaboración a efecto de que se sirva designar al personal indicado para realizar el cotejo de la firma plasmada en la forma OP7, la cual permitió la expedición de pasaporte a nombre de los menores de edad Luis Fernando y Maria Fátima, ambos de apellidos Castillo Moreno."

000097

098

Una vez leída su petición, realizar las diligencias encomendadas y observar los documentos motivo de estudio, infiero que el problema a resolver es el siguiente:

**PROBLEMA PLANTEADO.**

Determinar si corresponde o no por su ejecución al C. JOSÉ FERNANDO CASTILLO TAPIA, las firmas que se encuentran en los documentos descritos a continuación:

**DESCRIPCIÓN DE LOS DOCUMENTOS CUESTIONADOS**

Se cuestiona en la presente intervención, las firmas que como del C. JOSÉ FERNANDO CASTILLO TAPIA, aparecen asentadas en la siguiente documentación:

1.- Solicitud de Pasaporte Ordinario Mexicano (OP-5), a nombre de [redacted] Naucalpan, Estado de México, a 16 de febrero del 2004, el cual presenta las siglas de la Secretaría de Relaciones Exteriores (SRE), en el margen superior izquierdo, así también, se encuentra la forma OP-7 PERMISO QUE OTORGAN LOS PADRES O PERSONAS QUE EJERCEN LA PATRIA POTESTAD O TUTELA, PARA LA EXPEDICIÓN DE PASAPORTE, en el reverso de esta.

2.- Solicitud de Pasaporte Ordinario Mexicano (OP-5), a nombre de [redacted] Naucalpan, Estado de México, a 16 de febrero del 2004, el cual presenta las siglas de la Secretaría de Relaciones Exteriores (SRE), en el margen superior izquierdo, así también se encuentra la forma OP-7 PERMISO QUE OTORGAN LOS PADRES O PERSONAS QUE EJERCEN LA PATRIA POTESTAD O TUTELA, PARA LA EXPEDICIÓN DE PASAPORTE, en el reverso de esta.

000058

099

Documentos que tuve a la vista en original para su debido estudio y cotejo e impresiones Fotográficas, en la Delegación de la Secretaría de Relaciones Exteriores de Naucalpan, Estado de México.

**DESCRIPCIÓN DEL DOCUMENTO BASE DE COTEJO**

Como elementos base de cotejo se me proporciono Muestra de escritura y Firmas del C. JOSÉ FERNANDO CASTILLO TAPIA, la cual consta de dos fojas, de fecha 17 de marzo del 2004, misma que fue realizada en presencia del suscrito, la cual se tuvo en original para su debido estudio y confronta.

**METODO DE ESTUDIO**

**1.- ANALÍTICO**

I.- ANÁLISIS MINUCIOSO Y DETALLADO DE LAS FIRMAS BASE DE COTEJO.

II.- ANÁLISIS MINUCIOSO Y DETALLADO DE LAS FIRMAS CUESTIONADAS.

**2.- COMPARATIVO**

I.- CONFRONTACIÓN Y VALORACIÓN DE LOS RESULTADOS OBTENIDOS

**3.-DEDUCTIVO**

I.-. CONCLUSIÓN.

**4.- ILUSTRATIVO**

I- ANEXO GRÁFICO

**ESTUDIO.**

MINISTERIO PUBLICO ... DE LA FEDERACIÓN ... GENERAL DE ASUNTOS ... INTERPOL

000093

24

100

Primeramente procedí a analizar las firmas base de cotejo para así conocer y valorar sus características de orden general y sus particularidades gráficas, obteniendo lo siguiente:

| CARACTERÍSTICAS DE ORDEN GENERAL | FIRMAS BASE DE COTEJO |
|---|---|
| HABILIDAD ESCRITURAL | BUENA |
| VELOCIDAD ESCRITURAL | RÁPIDA |
| TENSIÓN DE LÍNEA | FIRME |
| PRESIÓN DE LÍNEA | MIXTA |
| INCLINACION | LIGERAMENTE HACIA LA IZQUIERDA |

| CARACTERÍSTICAS | FIRMAS BASE DE COTEJO |
|---|---|
| 1.-RASGO INICIAL DE LA FIRMA | EN BOTÓN, |
| 2.- COLOCACIÓN DEL INICIO DE LA FIRMA | PROVIENE DE LA PARTE SUPERIOR DE ARRIBA HACIA ABAJO |
| 3.- GAZA EN LA REBASANTE INFERIOR | PRESENTA |
| 4.- DESCARGA DE TINTA EN LA REBASANTE SUPERIOR | PRESENTA |
| 5.- ENLACES | LARGOSY CURVOS |
| 6.- TRAZO FINAL | LARGO Y CURVO |
| 7.- RASGO FINAL | DESVANECIENTE |

Con respecto a las firmas cuestionadas procedí a realizar un estudio similar al anterior, características que se enuncian a continuación:

| CARACTERÍSTICAS DE ORDEN GENERAL | FIRMAS CUESTIONADAS |
|---|---|
| HABILIDAD ESCRITURAL | REGULAR |
| VELOCIDAD ESCRITURAL | MEDIA |
| TENSIÓN DE LÍNEA | FLOJA |
| PRESIÓN DE LÍNEA | APOYADA |
| INCLINACION | PRONUNCIADA HACIA LA IZQUIERDA |

000100

101

| CARACTERÍSTICAS | FIRMAS CUESTIONADAS |
|---|---|
| 1.-RASGO INICIAL DE LA FIRMA | EN GANCHO O REDONDO |
| 2.- COLOCACIÓN DEL INICIO DE LA FIRMA | PROVIENE DE LA PARTE INFERIOR DE ABAJO HACIA ARRIBA |
| 3.- GAZA EN LA REBASANTE INFERIOR | NO PRESENTA |
| 4.- DESCARGA DE TINTA EN LA REBASANTE SUPERIOR | NO PRESENTA |
| 5.- ENLACES | CORTOS Y ANGULOSOSOS |
| 6.- TRAZO FINAL | CORTO Y RECTO |
| 7.- RASGO FINAL | BRUSCO |

Una vez hecho lo anterior, confronte las características obtenidas de las firmas base de cotejo y las firmas cuestionadas resultando lo siguiente:

| FIRMAS BASE DE COTEJO | CARACTERÍSTICAS DE ORDEN GENERAL | FIRMAS CUESTIONADAS |
|---|---|---|
| BUENA | HABILIDAD ESCRITURAL | REGULAR |
| RÁPIDA | VELOCIDAD ESCRITURAL | MEDIA |
| FIRME | TENSIÓN DE LÍNEA | FLOJA |
| MIXTA | PRESIÓN DE LÍNEA | APOYADA |
| LIGERAMENTE HACIA LA IZQUIERDA | INCLINACIÓN | PRONUNCIADA HACIA LA IZQUIERDA |

| FIRMAS BASE DE COTEJO | CARACTERÍSTICAS | FIRMAS CUESTIONADAS |
|---|---|---|
| EN BOTÓN, | 1.-RASGO INICIAL DE LA FIRMA | EN GANCHO O REDONDO |
| PROVIENE DE LA PARTE SUPERIOR DE ARRIBA HACIA | 2.- COLOCACION DEL INICIO DE LA FIRMA | PROVIENE DE LA PARTE INFERIOR DE ABAJO HACIA |

000101

102

| ABAJO | | ARRIBA |
|---|---|---|
| PRESENTA | **3.- GAZA EN LA REBASANTE INFERIOR** | NO PRESENTA |
| PRESENTA | **4.- DESCARGA DE TINTA EN LA REBASANTE SUPERIOR** | NO PRESENTA |
| LARGOSY CURVOS | **5.- ENLACES** | CORTOS Y ANGULOSOSOS |
| LARGO Y CURVO | **6.- TRAZO FINAL** | CORTO Y RECTO |
| DESVANECIENTE | **7.- RASGO FINAL** | BRUSCO |

Del estudio se desprende que las firmas cuestionadas contienen puntos de discordancia entre las firmas base de cotejo, lo cual me auxiliara para elaborar una conclusión categórica al respecto.

Por lo anterior que es el resultado técnico Grafoscópico aunado a mis conocimientos y experiencia en la materia, formulo la siguiente:

**CONCLUSIÓN**

**ÚNICA.- NO CORRESPONDE POR SU EJECUCIÓN AL C. JOSÉ FERNANDO CASTILLO TAPIA,** LAS FIRMAS QUE SE ENCUENTRAN COMO DE ESTE EN LOS DOCUMENTOS DESCRITOS COMO CUESTIONADOS EN EL PRESENTE DICTAMEN, CON RESPECTO A LAS FIRMAS PROPORCIONADAS COMO BASE DE COTEJO.

NOTA: Se anexa Muestra de Escritura del C. JOSE FERNANDO CASTILLO TAPIA, constante de dos fojas.

**ATENTAMENTE**
**EL PERITO**

**L. ALDO CRISANTO MOLINA**

27

000103

101

Mexico, D.F., a 17 de marzo del 2004

José Fernando Castillo tapia

La presente muestra de mi escritura la realizo voluntariamente, en presencia del Agente del Ministerio Publico de la Federación, con el fin de que sirva como elemento base del cotejo, así mismo para los fines a que haya lugar.

GENERAL
CA
LICO DE LA FEDERACIÓN
GENERAL DE ASUNTOS
ONALES E INTERPOL
O PUBLICO
MESA DOS
JAREZ
ICO

78

000104

México, D.F., a 17 de marzo del 2004.
José Fernando Castillo Tapia

105



PROCURADURIA GENERAL DE LA REPUBLICA

FIRMAS CUESTIONADAS

DGAPII/2638/0550/04AAH
FOLIO: 13611

107

108

DOCUMENTO BASE DE COTEJO

DGAPII/2638/0550/04AAH

FOLIO: 13611

32

IT-DC-01

FO-DC-15

3

| PROCURADURÍA GENERAL DE LA REPÚBLICA | DOCUMENTOS CUESTIONADOS | DGAPII/2638/0550/04AAH<br>FOLIO: 13611 |
|---|---|---|

SRE

OP-7

PERMISO QUE OTORGAN LOS PADRES O PERSONAS QUE EJERCEN LA PATRIA POTESTAD O TUTELA, PARA LA EXPEDICIÓN DE PASAPORTE

OBSERVACIONES

LUGAR Y FECHA

LOS QUE SUSCRIBIMOS PADRES Y/O TUTORES DEL MENOR ____________ MANIFESTAMOS, PARA LOS EFECTOS DEL ARTICULO 14 DEL REGLAMENTO DE PASAPORTES Y 215 DEL REGLAMENTO DE LA LEY GENERAL DE POBLACION EN VIGOR, EL CONSENTIMIENTO PARA QUE NUESTRO (A) HIJO (A) PUEDA SALIR DEL TERRITORIO DE LA REPUBLICA MEXICANA POR LO QUE SOLICITAMOS SE LE EXPIDA PASAPORTE ORDINARIO BAJO EL NOMBRE QUE APARECE EN EL FORMATO OP-5 DE LA PRESENTE SOLICITUD Y CON UNA VIGENCIA DE ______ QUEDANDO EN EL ENTENDIDO QUE A MENORES DE TRES AÑOS DE EDAD SOLO SE LES EXPEDIRA DICHO DOCUMENTO POR UN PERIODO MAXIMO DE 12 MESES

(PADRE O TUTOR) Y (MADRE O TUTORA)

DATOS DEL PADRE O TUTOR

DATOS DE LA MADRE O TUTORA

FECHA: 16-03-04 PERITO: H. C. CH.

A.P. DGAPII/2551/04/0550/04-AAH

ERAL

L DE

Y

000109

# PRUEBA 7

COORDINACIÓN DE PLANEACIÓN, DESARROLLO E INNOVACIÓN INSTITUCIONAL.
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES.
DIRECCIÓN GENERAL ADJUNTA DE LABORATORIOS.
SECCIÓN DE IDENTIFICACIÓN AFIS.

Oficio No. DGAPII/2551/04/0550/04-AAH

NÚMERO DE FOLIO: 13390-13425 111

ASUNTO: SE RINDE DICTAMEN EN MATERIA DE IDENTIFICACIÓN AFIS.

Ciudad de México, D.F., a 17 de Marzo de 2004

**Licenciado (a)**
**MARIANO MARTINEZ GARCIA**
Agente del Ministerio Público de la Federación,
Adscrito a la Dirección General de Asuntos Policiales Internacionales e Interpol
P r e s e n t e.

La que suscribe, Perito en materia de Identificación (AFIS), designada para intervenir en relación al Oficio No. DGAPII/2551/04/0550/04-AAH, se permite rendir a Usted, el siguiente:

D I C T A M E N

1.- PROBLEMA PLANTEADO

Ingresar las impresiones lofoscópicas plasmadas en la forma OP-7, la cual permitió la expedición de pasaporte de los menores de edad Luis Fernando y María Fátima, ambos de apellidos Castillo Moreno y realizar confronta eliminatoria contra posibles candidatos de la Base de Datos del Sistema Automatizado de Identificación de Huellas Dactilares (AFIS), determinando si existen o no Datos Registrales.

2.- MATERIAL DE ESTUDIO O DOCUMENTOS

A) En las Oficinas de la Secretaría de Relaciones Exteriores sito en la Calle Mexicas No. 63, Col. Santa Cruz Acatlán, Naucalpan, Estado de México, me fueron puestas a la vista dos Formas OP-7, en las que se leen al reverso Datos del Padre o Tutor que se identifica con pasaporte No. 03340032358, expedido por la Secretaría antes mencionada con fecha 6 de noviembre de 2003, cada uno con dos fragmentos lofoscópicos estampados uno como ÍNDICE IZQUIERDO y otro como ÍNDICE DERECHO, mismos que son tomados como base para la realización del presente estudio.

...URIA GENERAL ...EPUBLICA ... GENERAL DE ...ICIONES Y ...IA JURIDICA

3.- MÉTODO DE ESTUDIO

El presente dictamen se fundamenta en la morfología de los dactilogramas a identificar tales como deltas, tipo fundamental, subtipo, centro nuclear, ubicación de puntos característicos etc., insertos en la Base de Datos del Sistema Nacional de Seguridad Pública, el cual tiene como finalidad el determinar de manera indubitable la identidad de las personas vivas o muertas, a través de las impresiones dactilares.

- Se fijaron fotográficamente los fragmentos lofoscópicos que se ubican en el reverso de las dos formas OP-7, en los recuadros señalados como ÍNDICE IZQUIERDO e ÍNDICE DERECHO.

- Los cuatro fragmentos lofoscópicos estampados en el reverso de las formas OP-7 de los menores de edad Luís Fernando y María Fátima ambos de apellidos Castillo Moreno, en el recuadro de los Datos del Padre o Tutor corresponden por la morfología y ubicación de puntos característicos únicamente a dos dactilogramas, motivo por el cual sólo se ingresan dos fragmentos, uno del dedo índice izquierdo y otro del dedo índice derecho

- Se procedió a la asignación de un Número de Caso 34-07-0000142004 a los fragmentos lofoscópicos, obtenidos en la reproducción fotográfica motivo de estudio.

- Se ingresan los fragmentos lofoscópicos obtenidos en la reproducción fotográfica marcándose como No. 1 al ÍNDICE IZQUIERDO y como No. 2 al ÍNDICE DERECHO, al sistema AFIS para la comparación contra la Base de Datos del Sistema Nacional de Seguridad Pública.

RIA GENER
PUBLICA
GENERAL D
IONES Y
JURIDICA

000114

113

4.- RESULTADOS

Una vez realizada la comparación de los fragmentos lofoscópicos contra la base de datos del Sistema Nacional de Seguridad Pública, dio un resultado POSITIVO, el fragmento lofoscopico marcado con el número 1 contra el dactilograma impreso en el recuadro correspondiente al dedo medio izquierdo y el fragmento lofoscopico marcado con el número 2 contra dactilograma impreso en el recuadro correspondiente al dedo medio derecho respectivamente del registro decadactilar a nombre de:

ARTEMIO BARRERA HERNÁNDEZ Persona del Sexo MASCULINO, con fecha de nacimiento del día 20 de Octubre de 1955 con domicilio en Calle CANTERA No. 1, SANTA CRUZ XOCHINTEPEC, de la Delegación XOCHIMILCO, Distrito Federal. Con el Número de Control de Proceso (N.C.P..): 34-0000051089-T, que corresponde a la PROCURADURÍA GENERAL DE LA REPÚBLICA, con Clave de identificación Averiguación Previa 9545/D/94, por el Delito de FALSIFICACIÓN DE DOCUMENTO, Tipo de Registro C (Criminal). La ficha decadactilar fue tomada el día 30 de Diciembre de 1994.

Después de haber realizado el presente estudio técnico dactiloscópico, se formula la siguiente:

5.- CONCLUSIÓN

ÚNICA: Al realizar la confronta dactiloscópica contra la Base de Datos del sistema AFIS, SI se encontró correspondencia entre el fragmento lofoscopico marcado con el número 1, contra el dedo medio izquierdo y el fragmento lofoscopico marcado con el número 2, contra el dedo medio derecho respectivamente del registro decadactilar a nombre de: ARTEMIO BARRERA HERNÁNDEZ inserto en la Base de Datos del Sistema Nacional de Seguridad Pública.

Se rinde el presente dictamen para los efectos legales a que haya lugar.

Nota: se anexan al presente, siete láminas fotográficas ilustrativas.

ATENTAMENTE.
EL PERITO EN IDENTIFICACIÓN AFIS.

REVISO

C.D. CARMEN FARFAN RODRIGUEZ

ESTADOS UNIDOS MEXICANOS
PROCURADURIA GENERAL DE LA REPUBLICA
DIRECCION GENERAL DE COORDINACION DE SERVICIOS PERICIALES

...A GENERAL ...UBLICA ...NERAL DE ...ONES Y JURIDICA



PROCURADURÍA GENERAL DE LA REPÚBLICA
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES
DEPARTAMENTO DE IDENTIFICACIÓN A.F.I.S.
Oficio No. DGAPII/2551/04/055/04-AAH

Y

(PADRE O TUTOR)

DATOS DEL PADRE O TUTOR

Como Padre [X] Como Tutor [ ]

Para realizar el trámite me identifico con el siguiente documento Pasaporte

No. [redacted]

Expedido (a) por Secretaría de Relaciones Exteriores

De fecha 06 / 11 / 2003
día mes año

INDICE IZQUIERDO

INDICE DERECHO

114

PROCURADURIA GENERAL DE LA REPUBLICA
DIRECCION GENERAL DE COORDINACION DE SERVICIOS PERICIALES

LAMINA No. 1.-

Impresiones lofoscópicas que se encuentran en el recuadro de los Datos del Padre o Tutor de la forma OP-7 a nombre del menor de edad Luis Fernando Castillo Moreno.

...A GENERAL
...PUBLICA
...ENERAL DE
...IONES Y
...JURIDICA

38

000116

PROCURADURÍA GENERAL DE LA REPÚBLICA
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES
DEPARTAMENTO DE IDENTIFICACIÓN A.F.I.S.
Oficio No. DGAPII/2551/04/055/04-AAH

115

LAMINA No. 2.-
Impresiones lofoscópicas que se encuentran en el recuadro de los Datos del Padre o Tutor de la forma OP-7 a nombre de la menor de edad María Fátima Castillo Moreno.

000117

PROCURADURÍA GENERAL DE LA REPÚBLICA
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES
DEPARTAMENTO DE IDENTIFICACIÓN A.F.I.S.
Oficio No. DGAPII/2551/04/055/04-AAH

116

CURADURIA GENERAL
DE LA REPUBLICA
GENERAL DE COORDINACION
SERVICIOS PERICIALES

LAMINA 3.

Lado izquierdo: fragmento lofoscópico del dedo índice izquierdo motivo de estudio.
Lado derecho: dactilograma del dedo medio izquierdo a nombre de ARTEMIO BARRERA HERNÁNDEZ con N. C. P. 3407000051089-T.

000118

PROCURADURÍA GENERAL DE LA REPÚBLICA
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES
DEPARTAMENTO DE IDENTIFICACIÓN A.F.I.S.
Oficio No. DGAPII/2551/04/055/04-AAH

117

PROCURADURIA GENERAL DE LA REPUBLICA
DIRECCION GENERAL DE COORDINACION DE SERVICIOS PERICIALES

LAMINA 4.
Lado izquierdo: fragmento lofoscópico del dedo índice derecho motivo de estudio.
Lado derecho: dactilograma del dedo medio derecho a nombre de ARTEMIO BARRERA HERNÁNDEZ con N. C. P. 3407000051089-T.

41

000119

PROCURADURÍA GENERAL DE LA REPÚBLICA
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES
DEPARTAMENTO DE IDENTIFICACIÓN A.F.I.S.
Oficio No. DGAPII/2551/04/055/04-AAH

118

PGR PROCURADURÍA ... REPÚBLICA
134-00-00051-089T SNSP PGR
DIRECCIÓN GENERAL DE SERVICIOS PERICIALES

NOMBRE BARRERA/HERNANDEZ Artemio. EXP.

SEXO F [ ] M [x] ALIAS SEXO M REG. PGR 296/95.

FIRMA

MAESTRA

PERITO JLCL-ESC. 1058 FECHA 30 DIC.94 FOTO No. 3657

SERIE

| PULGAR | INDICE | MEDIO | ANULAR | MEÑIQUE |
|---|---|---|---|---|

SECCION

IZQ. IMPRESION SIMULTANEA — DER. IMPRESION SIMULTANEA

LAMINA 5.
Reproducción fotográfica del registro decadactilar a nombre de ARTEMIO BARRERA HERNÁNDEZ con N. C. P. 3407000051089-T.

PROCURADURIA GENERAL DE LA REPUBLICA
DIRECCION GENERAL DE COORDINACION DE SERVICIOS PERICIALES

Ref.:IT-IA-01 FO-IA-05

000120

PROCURADURÍA GENERAL DE LA REPÚBLICA
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES
DEPARTAMENTO DE IDENTIFICACIÓN A.F.I.S.
Oficio No. DGAPII/2551/04/055/04-AAH

# FILIACION

119.

PESO 70 KILOS
ESTATURA 95 CM.
COMPLEXION ROBUSTA

| CABELLO COLOR | PIEL COLOR | MENTON |
|---|---|---|
| ( )negro | ( )blanca | ( )punta |
| ( )castaño claro | ( )mor. clara | ( )oval |
| (X)castaño obscuro | ( )mor. obscura | ( )cuadrado |
| ( )rubio | ( )negra | (X)redondo |
| ( )rojizo | ( )amarilla | ( )bilobado |
| ( )albino | ( )rojiza | ( )con foseta |
| ( )entrecano | MORENA | ( )perfiles |
| **CABELLO TIPO** | **OJOS** | **NARIZ** |
| ( )ondulado | (X)cafes claros | (X)recta |
| (X)chino | ( )cafes obscuros | ( )concava |
| ( )lacio | ( )azules | ( )convexa |
| ( )crespo | ( )verdes | ( )repulgada |
| ( )lanoso | ( )pardos | ( )sinuosas |
| **CEJAS** | **BOCA** | **FRENTE** |
| ( )pobladas | ( )pequeña | ( )pequeña |
| ( )escasas o ralas | (X)mediana | ( )mediana |
| (X)semipobladas | ( )grande | (X)grande |

PERFIL FRONTO NASAL QUEBRADO

SEÑAS PARTICULARES PRESENTA AMPUTACION TOTAL DE AMBAS PIERNAS.

DATOS ESPECIALES

DATOS PERSONALES

DOMICILIO CANTERA NO 1 SANTA CRUZ XOCHINTEPEC.
POBLACION XOCHIMILCO.
ESTADO D.F. PAIS MEXICO

DATOS BIOGRAFICOS

EDAD 39 AÑOS. [redacted] 1955
ESTADO CIVIL CASADO
CONYUGE HORTENCIA ARRIAGA CHAVEZ
NACIONALIDAD MEXICANA
NACIDO EN MORELIA, MICH.
HIJO DE DELFINO BARRERA (F)
Y DE GUADALUPE HERNANDEZ CALLEJAS
PROF. OFICIO FOTOGRAFO
TRABAJA EN AMBULANTE

| FRENTE | PERFIL |
|---|---|
| | |

DELITO FALSIFICACION DE DOCUMENTOS OFICIALES A.P. 9545/D/94
CONSIGNADO PUB. FED. MESA IX-D

LAMINA 6.
Reproducción fotográfica de la media filiación a nombre de ARTEMIO BARRERA HERNANDEZ con N. C. P. 3407000051089-T.

PROCURADURIA GENERAL DE LA REPUBLICA
DIRECCION GENERAL DE COORDINACION DE SERVICIOS PERICIALES

Ref.:IT-IA-01 FO-IA-05

43

000121

PROCURADURÍA GENERAL DE LA REPÚBLICA
DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES
DEPARTAMENTO DE IDENTIFICACIÓN A.F.I.S.
Oficio No. DGAPII/2551/04/055/04-AAH

120

LAMINA 7.
Reproducción fotográfica de frente y perfil a nombre de ARTEMIO BARRERA HERNÁNDEZ. con N. C. P. 3407000051089-T.

# PRUEBAS 8 Y 9

**NAUCALPAN DE JUÁREZ, ESTADO DE MÉXICO, TRES DE JUNIO DE DOS MIL CINCO.**

**VISTOS**, los autos de la causa penal **42/2005**, para resolver dentro del término de ley sobre la procedencia del libramiento de la orden de aprehensión solicitada por la Representación Social de la Federación en contra de **MARÍA DEL ROSARIO MORENO VÁZQUEZ,** por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO Y USO DE DOCUMENTO FALSO,** previstos por el artículo 244, fracción II en relación con el artículo 246, fracción VII y sancionado por el artículo 243, primer párrafo, todos ellos del Código Penal Federal, así como el de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN,** previsto y sancionado por el artículo 138 de la Ley General de Población, en contra de **ARTEMIO BARRERA HERNÁNDEZ,** por su probable responsabilidad en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO,** previsto por el artículo 244, fracciones I y V y sancionado por el artículo 243, primer párrafo del Código Penal Federal, y en contra de **FRANCISCO JAVIER TOVAR MARTÍNEZ,** por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO Y USO DE DOCUMENTO PÚBLICO FALSO,** previstos por el artículo 244, fracciones V y X y sancionado por el diverso 243, primer párrafo, del Código Penal Federal; y,

**RESULTANDO:**

**PRIMERO.-** Por oficio 2383/2005 de treinta de mayo de dos mil cinco, recibido en la Oficina de Correspondencia Común de los Juzgados de Distrito en el Estado de México, con residencia en

Naucalpan de Juárez, el día dos de junio siguiente, y en la Oficialía de Partes de este Juzgado por razón de turno, a las trece horas con quince minutos de ese día, el Agente del Ministerio Público de la Federación, Titular de la Mesa Dos, en Naucalpan de Juárez, Estado de México, consignó sin detenido la averiguación previa **PGR/MEX/NAU-II/87/2005**, en la que ejercitó acción penal en contra de **MARÍA DEL ROSARIO MORENO VÁZQUEZ, ARTEMIO BARRERA HERNÁNDEZ y FRANCISCO JAVIER TOVAR MARTÍNEZ,** por su probable responsabilidad en la comisión de los ilícitos citados en el proemio de esta resolución, solicitando el libramiento de la correspondiente orden de aprehensión en contra de los citados indiciados.

**SEGUNDO.-** El dos de junio de dos mil cinco, se radicó la averiguación previa de que se trata, registrándose como causa penal **42/2005**, dándose aviso de inicio a la superioridad, la intervención que legalmente le compete al Agente del Ministerio Público Federal de la adscripción, y se reservó proveer por separado lo relativo a la orden de aprehensión solicitada; y,

**CONSIDERANDOS**

**PRIMERO.-** Este Juzgado Segundo de Distrito en el Estado de México, advierte que en el presente caso es procedente resolver de oficio y en vía incidental, acumulación de autos substanciado en la causa penal 42/2005, instruida en contra de **MARÍA DEL ROSARIO MORENO VÁZQUEZ, ARTEMIO BARRERA HERNÁNDEZ y FRANCISCO JAVIER TOVAR MARTÍNEZ,** por su probable responsabilidad en la comisión de los ilícitos citados en el proemio de esta resolución, con la causa penal abierta en el Juzgado Tercero de

Distrito en Materia de Procesos Penales Federales en el Distrito Federal, por el delito de Tráfico de Menores previsto y sancionado en el artículo 366 quater, segundo párrafo, en relación con el 366 ter, fracción III del Código Penal Federal, lo anterior en atención a las siguientes consideraciones.

**SEGUNDO.-** Disponen en cuanto a lo que aquí interesa los artículos 479. 480 y 481 del Código Federal de Procedimientos Penales:

> ***"Artículo 479.*** *Si los procesos se siguen en diversos Tribunales será competente para conocer de todos los que deban acumularse el Tribunal que conociera de las diligencias más antiguas; y si estas se comenzaron en la misma fecha, el que designare el Ministerio Público.*
>
> ***"Artículo 480.*** *La acumulación deberá promoverse ante el Tribunal que, conforme al artículo anterior, sea competente; y el incidente a que de lugar se substanciara en la forma establecida para las competencias por inhibitoria.*
>
> ***"Artículo 481.*** *Los incidentes de acumulación se substanciaran por separado sin suspender el procedimiento.".*

**TERCERO**.- Dentro de las constancias que obran en la causa penal en la que se actúa, por su importancia destacan:

A GENERAL
JBLICA
NERAL DE
NES Y
IRIDICA

**1.-** Declaración ministerial a cargo de José Fernando Castillo Tapia, de dos de marzo de dos mil cuatro, en la cual denuncia hechos posiblemente constitutivos de delito, que dio origen al acta número NJ/II/816/04-02, por la sustracción de sus menores hijos del país, llevado a cabo por su señora esposa María del Rosario Moreno.

**2.-** Oficio número 1060/2004-SPP-B, suscrito por la licenciada ELVA ROCHA PATIÑO, Agente del Ministerio Público de la Federación, encargada de la Subdelegación de Procedimientos Penales "B", con sede en Naucalpan de Juárez, Estado de México, por medio del cual remite Original de la Averiguación Previa número 0550/04-AAH, en vía de incompetencia por razón de Territorio, misma que se instruye en contra de **MARIA DEL ROSARIO VAZQUEZ MORENO**, por su probable responsabilidad en la comisión del delito de **FALSIFICACIÓN Y USO DE DOCUMENTO FALSO**, con el objeto de que se continué con la integración de la presente, hasta su total esclarecimiento.

**3.-** Original de la Averiguación Previa número 0550/04-AAH.

47

4.- Dictamen en materia de Grafoscopia, de fecha diecisiete de Marzo del año dos mil cuatro, signado por el perito L. ALDO CRISANTO MOLINA, y el cual concluye que UNICO: NO CORRESPONDE POR SU EJECUCIÓN AL C. JOSE FERNANDO CASTILLO TAPIA, LAS FIRMAS QUE SE ENCUENTRAN COMO DE ESTE EN LOS DOCUMENTOS DESCRITOS COMO CUESTIONADOS EN EL PRESENTE DICTAMEN, CON RESPECTO A LAS FIRMAS PROPORCIONADAS COMO BASE DE COTEJO.

5.- Dictamen en materia de IDENTIFICACIÓN AFIS, de fecha diecisiete de Marzo del año dos mil cuatro, signado por el perito en identificación AFIS, C.D. CARMEN FARFAN RODRIGUEZ, y el cual concluye que UNICO: AL REALIZAR LA CONFRONTA DACTILOSCÓPICA CONTRA LA BASE DE DATOS DEL SISTEMA AFIS, SI SE ENCONTRÓ CORRESPONDENCIA ENTRE EL FRAGMENTO LOFOSCÓPICO MARCADO CON EL NÚMERO 1, CONTRA EL DEDO MEDIO IZQUIERDO Y EL FRAGMENTO LOFOSCÓPICO MARCADO CON EL NÚMERO 2, CONTRA EL DEDO MEDIO DERECHO, RESPECTIVAMENTE DEL REGISTRO DECADACTILAR A NOMBRE DE ARTEMIO BARRERA HERNÁNDEZ, INSERTO EN LA BASE DE DATOS DEL SISTEMA NACIONAL DE SEGURIDAD PÚBLICA, Y NO SON LA DE JOSÉ FERNANDO CASTILLO TAPIA.

6.- Oficio número DGD-A DN02971, de fecha veintiuno de Julio del año dos mil cuatro, signado por el C. licenciado HUMBERTO LUGO GUERERO, Director de Normatividad, por medio del cual remite al agente del Ministerio Público Federal Investigador copia certificada de los documentos que sustentaron la expedición de pasaportes a nombres de las personas que se mencionan a continuación, [redacted] con número de pasaporte [redacted] de fecha diecisiete de febrero del año dos mil cuatro, [redacted] [redacted], con número de pasaporte [redacted] de fecha diecisiete de febrero del año dos mil cuatro, MARIA DEL ROSARIO MORENO VAZQUEZ, con número de pasaporte [redacted]4, de fecha veintidós de septiembre del años dos mil tres, así como que los anteriores documentos se expidieron mediante el Reglamento de Pasaportes vigente.

7.- Originales de la Averiguación Previa número A.P. PGR/NAU/148/2004-I, misma que se instruye en contra de ARTEMIO BARRERA HERNANDEZ Y/O QUIEN RESULTE RESPONSABLE por la probable comisión del delito de FALSIFICACION DE DOCUMENTO, averiguación Previa que se acordó su acumulación a la presente indagatoria por tratarse de los mismos hechos, y en donde destaca principalmente por lo que hace los hechos que se investigan dentro de la presente indagatoria.

8.- Dictamen en materia de IDENTIFICACIÓN DACTILOSCOPICA, de fecha diez de junio del año dos mil cuatro, signado por los peritos en materia de identificación dactiloscópica, PRAXEDIS IRMA GARCIA GUERRERO Y ROSA FLORES VAZQUEZ, y en donde por medio del cual concluyen que "PRIMERA.- LOS DACTILOGRAMAS impresos en la ficha dactilar, a nombre de CASTILLO TAPIA JOSE FERNANDO, NO corresponden, con las impresiones dactilares estampadas en las

PROCURADURIA GENERAL DE LA REPUBLICA

formas OP7, con la leyenda índice derecho e izquierdo de los menores [REDACTED], ambos de apellidos CASTILLO MORENO, SEGUNDA.- los dactilogramas estampados en las formas OP7, con la leyenda índice derecho e izquierdo de los del los menores [REDACTED] CORRESPONDEN a las impresiones dactilares de los medios derecho e izquierdo de la ficha dactilar a nombre de BARRERA HERNANDEZ ARTEMIO.

**9.-** Desglose de la Averiguación Previa número A.P. SIEDO/UETMIO/13/2004, en contra de MARIA DEL ROSARIO MORENO VAZQUEZ, por su probable comisión del delito de TRAFICO DE MENORES, en la que ya está solicitada y librada la correspondiente orden de aprehensión en contra de MARIA DEL ROSARIO MORENO VAZQUEZ.

**10.-** Acuerdo de solicitud de asistencia jurídica a la Dirección General de Extradiciones y Asistencia Jurídica, Dirección de Asistencia Jurídica Internacional, para que por su conducto y en atención a la Circular C/005/99, emitida por el Procurador General de la República, así como en base a lo establecido por el artículo cuadragésimo octavo "Las solicitudes de asistencia Jurídica que se formulen en otros países y las peticiones de extradición que requieran los Agentes del Ministerio Público de la federación, con motivo de sus funciones deberán de formularse a la Dirección General de Extradiciones y Asistencia Jurídica, Dirección de Asistencia Jurídica Internacional y, según la competencia, estar firmadas por los titulares de las unidades administrativas", Fracción II, " Subprocuradurías de Procedimientos Penales "A", "B" y "C". de dicha circular, se le solicite gire la instrucción a quien corresponda a efecto de que esta petición llegue a la Dirección General de Extradiciones y Asistencia Jurídica, Dirección de Asistencia Jurídica Internacional, y de esta forma y con las formalidades de ley se lleve a cabo el desahogo de diligencias de carácter Ministerial, necesaria para la debida integración de la presente indagatoria, la cual tiene por objeto recabar la declaración ministerial en relación con los presentes hechos de la C. MARIA DE ROSARIO VAZQUEZ MORENO y la comparecencia como testigo del señor RONALD COONLEY, quienes tienen su domicilio actual en [REDACTED] [REDACTED], ALABAMA, ESTADOS UNIDOS DE NORTE AMERICA. (HAY QUE PONER LA FECHA DEL OFICIO Y CITARLO, DONDE SE LE INFORMA AL AMPF DE LA MESA DOS DE NAUCALPAN QUE SU SOLICITUD DE ASISTENCIA JURÍDICA ESTÁ POR DESAHOGARSE).

**11.-** Comparecencia de JOSE FERNANDO CASTILLO TAPIA, quien entre lo más relevante de la misma manifiesta que ha conocido el domicilio en donde se encuentran sus hijos, de nombres [REDACTED], así como de su madre MARIA DEL ROSARIO MORENO VAZQUEZ, y su actual esposo RONALD COONLEY, y que esta ubicado en [REDACTED] [REDACTED] ALABAMA, en los estados Unidos de Norte América, ya que un joven compañero de escuela de sus hijos paso a su domicilio y le dejo un sobre con esos datos, también sabe que por comentarios de amigos de sus hijos, MARIA DEL ROSARIO MORENO VAZQUEZ, conoció a su actual esposo, RONALD

49

RAL

COONLEY, por internet, para posteriormente de haberse casado con esta persona RONALD COONLEY fue quien sufrago los gastos para al obtención de los pasaportes de sus menores hijos, así como los boletos de avión en el cual se trasladaron a los Estados Unidos de Norte América, es por ello que solicito esta Autoridad se recabara la declaración Ministerial de MARIA DEL ROSARIO MORENO VAZQUEZ, y RONALD COONLEY, respecto de la forma en que obtuvieron los pasaportes de sus menores hijos, así como de que forma se sufragaron los gastos para al obtención de los mismo y de su traslado a los estados Unidos de Norte América, considerando que MARIA DEL ROSARIO MORENO VAZQUEZ, y su actual esposo, RONALD COONLEY, se confabularon para cometer los delitos de FALSIFICACIÓN Y USO DE DOCUMENTO FALSO, y también del delito de FALSEDAD EN DECLARACIÓN, por parte de MARIA DEL ROSARIO MORENO VAZQUEZ, específicamente al mentir en las formas OP5 y OP7 de solicitud de permiso que obran en esta indagatoria en hojas 67 y 68, ya que en la hoja titulada " PERMISO QUE OTORGAN LOS PADRES QUE EJERCEN LA PATRIA POTESTAD O TUTELA PARA AL EXPEDICIÓN DE PASAPORTES ", regida para tales efectos por el artículo 14, del Reglamento de pasaportes y del artículo 215 del Reglamento de la Ley General de Población en vigor, como se señala en forma expresa en donde consta su firma y la falsificada del declarante, estas se estampan en el mismo acto y ante la presencia de al Autoridad Responsable, de la Secretaría de relaciones Exteriores, y que ha quedado demostrado que no fue el declarante quien firmo y estuvo ante la Secretaría de relaciones Exteriores, así como que reconoce que existe una firma como la de MARIA DEL ROSARIO MORENO VAZQUEZ, que firma de conformidad con los datos contenidos en el pasaporte y que contiene la siguiente leyenda, " MANIFIESTO BAJO PROTESTA DE DECIR VERDAD Y CONOCIENDO LAS PENAS, EN LAS QUE INCURREN LOS QUE FALTAN A ESTA, EN LOS TERMINOS DE LAS DISPOSICIONES PENALES QUE SOY MEXICANA, QUE LOS DATOS EN ESTA SOLICITUD SON VERIDICOS Y QUE LOS DOCUMENTOS PRESENTADOS SON AUTENTICOS Y LEGALES, como obra en al foja 126, de la presente indagatoria.

**12.-** Declaración Ministerial del inculpado FRANCISCO JAVIER TOVAR MARTINEZ, quien entre lo más relevante manifiesta que se desempeña como empleado de la Secretaría de Relaciones Exteriores, del Municipio de Naucalpan de Juárez, desempeñando el cargo de recepción de documentos, para el tramite de pasaportes, y su función es principalmente la de recibir la documentación en originales y fotocopias por parte de los usuarios, en la cual tiene que checar y verificar que los documentos sean originales y que correspondan con los datos asentados con lo manifestado por los peticionarios. Así como verificar que las identificaciones de los peticionarios concuerden con los rasgos fisonómicos de quienes las presentan, y ya integrado el expediente con fotocopias, se les pide que firmen la solicitud y al toma de huellas dactilares, para posteriormente pasar a revisión con el Delegado o Subdelegado, de la Secretaría de relaciones Exteriores, por lo anterior y en especifico con los pasaportes de los menores de edad que se encuentran anexos a este expediente, aclara que se hizo el mismo procedimiento, pues el día dieciséis de febrero del año dos mil cuatro, atendió a los señores JOSE FERNANDO CASTILLO TAPIA Y MARIA DEL

ROSARIO MORENO VAZQUEZ, aclarando que la señora le manifestó que tramitarían los pasaportes de los menores, lo cual atendió, pidiendo la documentación consistente en acta de nacimiento, identificación de los menores e identificación de los padres, en el cual hacen una revisión de los documentos para que estos sean correctos y al mismo tiempo estar revisando que las identificaciones concuerden fielmente con los rasgos fisonómicos de quien la presenta, así como la firma que aparece en la identificación, dándose cuenta en esos momentos que los menores jugaban con su padre, para posteriormente que integro los expedientes, les pidió a los papas que pusieran sus firmas y huellas dactilares, y ya que firmaron los papas se acercaron los menores para que el declarante les tomara las huellas y firmaran la solicitud, indicándoles que tomaran asiento, pues pasaría la documentación con el Delegado, para su verificación, y continuación del proceso De expedición de pasaportes en las diferentes etapas del mismo, en las cuales intervienen diferentes funcionarios de esa oficina, siendo lo anteriormente narrado su función, y lo acontecido en el caso particular, en el tramite de los menores de edad [redacted], eso es todo lo que le compete en relación con su función dentro de la Secretaria de relaciones Exteriores, y a preguntas que le hizo esta Autoridad, A LA PRIMERA. Que diga el declarante, si reconoce la fotografía que aparece en el pasaporte número [redacted] expedido a favor de JOSE FERNANDO CASTILLO TAPIA, el cual se encuentra anexo a al presente indagatoria, y que dicha persona fuera la misma que acudió en compañía de MARIA DEL ROSARIO MORENO VAZQUEZ, para la expedición de los pasaportes de sus menores hijos, en la Delegación de la Secretaría de Relaciones Exteriores, en el Municipio de Naucalpan de Juárez, Estado de México, RESPUESTA: Si es la misma persona que se presento conmigo, pues en al fila que se forma para atención y recepción de documentos, se encontraban los señores FERNADO CASTILLO TAPIA Y MARIA DEL ROSARIO MORENO VAZQUEZ, a los cuales reconozco plenamente y como las mismas personas que atendió. A LA SEGUNDA. Que diga el declarante como es físicamente JOSE FERNANDO CASTILLO TAPIA, RESPUESTA.- es una persona de aproximadamente un metro con setenta centímetros de alto, de complexión mediana, y vistiendo de traje y teniendo buen estado físico, A LA TERCERA. Que diga el declarante como es físicamente MARIA DEL ROSARIO MORENO VAZQUEZ. RESPUESTA No recuerdo bien su estado físico. Al respecto, el Ministerio Público de la Federación da fe que el denunciante JOSÉ FERNANDO CASTILLO TAPIA tiene rasgos físicos notablemente diferentes a los asentados como ciertos por FRANCISCO JAVIER TOVAR MARTÍNEZ.

**13.-** Oficio vía fax con folio número 04226, procedente de las Dirección General de Asuntos Policiales Internacionales e INTERPOL, en donde por medio de la cual se envía la Declaración Ministerial de JOSE FERNANDO CASTILLO TAPIA, en la que solicita al localización de sus [redacted], mismos que fueron sustraídos por su madre MARIA DEL ROSARIO MORENO VAZQUEZ.

**14.-** Oficio vía fax con folio número 11971, procedente de las

Dirección General de Extradiciones y Asistencia Jurídica, en donde por medio de la cual se envía el oficio número DGEAJ/7726/04, de fecha diecisiete de noviembre del año dos mil cuatro, en donde por medio del cual se solicita la Asistencia Jurídica del departamento de Justicia de los Estados Unidos de Norte América, Washington D.C. suscrito por el Director General LIC. MIGUEL NAVA ALVARADO, y dirigido a SRA. MERY ELLEN WARLOW, Directora de Asuntos Internacionales del departamento de Justicia de los Estados Unidos de Norte América, Washington D.C. FALTA RELACIONAR EL DOCUMENTO MÁS RECIENTE, DONDE SE LE INFORMA AL AMPF QUE AÚN NO SE HA LOGRADO DESAHOGAR LA ASISTENCIA JURÍDICA POR ÉL SOLICITADA.

**15.-** Comparecencia de JOSE FERNANDO CASTILLO TAPIA, quien entre lo más relevante de la misma manifiesta que exhibo copia del escrito presentado por el suscrito el día dos de febrero del año en curso, al doctor LUIS ERNESTO DERBEZ BAUTISTA Secretaría de relaciones Exteriores, Doctor Santiago Creel Miranda, Secretaría de Gobernación y a la Doctora Magdalena Carral, Titular del Instituto Nacional de Migración, mediante el cual le solicito que con base en el artículo 8° Constitucional y 117 del Código Federal de Procedimientos Penales, que tomen conocimiento de la presente Averiguación Previa, por haberse cometido presuntamente actos delictivos contra bienes Jurídicos tutelados por esas Instituciones Federales, así como escrito dirigido a esta Autoridad, en donde por medio del cual integro copias de lasa cartas señaladas y solicito conocer si han sido comparecidos la madre de MARIA DEL ROSARIO MORENO VAZQUEZ cuyo nombre es MARIA ELENA VAZQUEZ SAUCEDO [redacted] en el Municipio de Naucalpan de Juárez, Estado de México, así como del señor ARTEMIO BARRERA HERNANDEZ, cuyo domicilio desconozco en la actualidad, toda vez que sus comparecencias son de interés Jurídico, para los tramites legales que estoy desarrollando, ante los Juzgados Familiares, documentos con los cuales solicito se vuelva al tramite activo la presente Averiguación Previa, y de esta forma se resuelva conforme a Derecho.

**CUARTO.-** Disponen los artículos 473 del Código Federal de Procedimientos Penales y 18 del Código Penal Federal, en lo que aquí interesan:

***"Artículo 473**.- La acumulación tendrá lugar:*

***I**. En los procesos que se sigan contra una misma persona en los términos del artículo 18 del Código Penal...".*

***"Artículo 18**. Existe concurso real, cuando pluralidad de conductas se comenten varios delitos.".*

De las anteriores transcripciones, se desprende que las condiciones jurídicas de la incidencia de acumulación de autos son:

**a).** La existencia de diversos procesos que se sigan contra una

misma persona, en este caso, la indiciada MARÍA DEL ROSARIO MORENO VÁZQUEZ.

**b).** Que opere el concurso real de delitos.

La primera condición jurídica de la incidencia de acumulación, en especie se acredita con la copia certificada del número de orden 964/04, con fecha de registro lunes diecinueve de julio de dos mil cuatro, expedida por la Oficialía de partes Común a los Juzgados de Distrito en Materia de Procesos Penales Federales en el Distrito Federal **(fojas 392)**, de la que se desprende haber recibido el oficio número **SIEDO/2216/2004**, por medio del cual el Agente del Ministerio Público de la Federación adscrito a la Unidad Especializada en Tráfico de Menores, Indocumentados y Órganos de la Procuraduría General de la República, consignó la averiguación previas **SIEDO/UETMIO/13/2004**, instruida en contra de **MARÍA DEL ROSARIO MORENO VAZQUEZ** por el delito de Tráfico de Menores, consignación que fue remitida por cuestión de turno al Juzgado Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, además por así manifestarlo expresamente el Fiscal Federal consignador en esta causa en su pliego consignatario de treinta de mayo del año en curso, concretamente en el punto seis, inciso b) del capítulo denominado **"ELEMENTOS PROBATORIOS (MEDIOS DE PRUEBA)"**, visible a fojas setecientos treinta y tres de autos, en al que refirió: *"con el desglose de la averiguación previa número A.P. SIEDO/UETMIO/13/2004, en contra de MARIA DEL ROSARIO MORENO VÁZQUEZ, por su probable comisión del delito de TRÁFICO DE MENORES, en la que ya está solicitada y librada la correspondiente orden de aprehensión en contra de MARIA DEL ROSARIO MORENO VAZQUEZ"*.

La segunda condición jurídica de la acumulación planteada, en el caso se surte; esto es, por que de las constancias que obran en autos se evidencia que las conductas atribuidas a la indiciada **MARIA DEL ROSARIO MORENO VAZQUEZ**, constituyen delitos instantáneos, en cuanto a que la consumación de cada uno de ellos se agotó en el mismo momento en que se

realizaron todos sus elementos constitutivos.

Así es, por que tratándose del delito de **TRÁFICO DE MENORES**, relacionado con los diversos de **FALSIFICACIÓN DE DOCUMENTO, USO DE DOCUMENTO FALSO y VIOLACIÓN ALA LEY GENERAL DE POBLACIÓN**, previstos y sancionados cada uno de ellos por los artículos 366, quater, segundo párrafo y 366 ter, fracción III, 244 fracciones I, II V y X, 243, primer párrafo, 246 fracción VII, todos ellos del Código Penal Federal y 138 del la Ley General de Población, su consumación se agota en el mismo momento en que se han realizados todos sus elementos constitutivos, por ser de naturaleza instantáneas.

En esta tesitura, a juicio de quien esto resuelve, se trata de una pluralidad de conductas, es decir, de dos, la primera de ellas que realizó la sujeto activo, acorde a la denuncia formulada por **JOSÉ FERNANDO CASTILLO TAPIA**, el veintidós de marzo de dos mil cuatro, que dio inició a la indagatoria número **PGR/SIEDO/UEITMIO/013/2004**, relacionado con el **TRAFICO DE MENORES**, cometido en agravio de los menores [redacted] por medio del cual con documentación diversa que con posterioridad resultó ser falsa de acuerdo al dictamen pericial reseñado en esta resolución abandonaron el país sin la autorización del denunciante, y posteriormente previo el desglose que ordenó el Agente del Ministerio Público adscrito a la Unidad Especializada en Trafico de Menores, Indocumentados y Órganos de la Procuraduría General de la República, en su resolución de consignación de diecinueve de julio de dos mil cuatro, en su punto resolutivo CUARTO, determinó *"por lo que se refiere al delito de FALSIFICACIÓN Y USO DE DOCUMENTO en contra de ARTEMIO BARRERA HERNANDEZ y en contra de quien o quienes resulten responsables, así como, de otros ilícitos penales que se deriven, por no tratarse de delitos competencia de esta Unidad Especializada, déjese abierto un tanto, remitiéndose en fotocopia debidamente certificado a la Delegación de esta Procuraduría competente*



*para su prosecución y perfeccionamiento legal, recabando el acuse correspondiente"*; por consiguiente se actualiza la figura procesal de concurso real, prevista en la segunda parte del artículo 18, del Código Penal Federal.

Al respecto, es aplicable por identidad jurídica la tesis aislada visible en la página 179 del tomo XII, julio de 1993, del Semanario Judicial de la Federación, instancia Tribunales Colegiados de Circuito, Octava Época, cuyo rubro y texto dice:

> ***"CONCURSO REAL DE DELITOS.- INTERPRETACIÓN DEL ARTÍCULO 24 DEL CÓDIGO PENAL PARA EL ESTADO.- (LEGISLACIÓN DE VERACRUZ).*** *Una recta interpretación del artículo 24 del Código Penal para el Estado permite estimar que existe concurso real o material de delitos aún en el supuesto de que de las conductas antisociales se repitan con infracción de la misma norma penal, siempre que ello ocurra mediante pluralidad de delitos, entendidos estos como pluralidad de conductas o hechos delictuosos, que es lo que esencialmente general la existencia de tal concurso.".*

En las relatadas condiciones, es procedente decretar la acumulación de que nos ocupa en términos de la fracción I, del Artículo 473 del Código Federal de Procedimientos Penales en relación con el 18 del Código Penal Federal.

Sin que sea obstáculo arribar a la anterior determinación, el hecho de que sólo se haya ejercido acción penal en contra de la indiciada **MARÍA DEL ROSARIO MORENO VÁZQUEZ,** por el delito de **TRÁFICO DE MENORES,** ante el referido Juzgado Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, y no así en contra de los restantes indiciados señalados en esta causa por resultar incompetente respecto de la jurisdicción que declinó el agente del Ministerio Público de la Federación adscrito a la Unidad Especializada de Tráfico de Menores, Indocumentados y Órganos de la Procuraduría General de la República, Fiscalía de tráfico de Menores, en el Distrito Federal, en su respectiva resolución de diecinueve de julio

de dos mil cuatro, a favor del ahora Fiscal Federal consignador en esta causa, puesto que si bien, declinó dicha competencia aludida a favor del Representante Social de la Federación en esta ciudad, no menos cierto es que existe un antecedente derivado de los mismos hechos denunciados por el ofendido José Fernando Castillo Tapia, el veintidós de febrero de dos mil cuatro ante el referido Fiscal Federal del Distrito Federal, en el que en síntesis refirió que en ningún momento otorgó permiso para que los menores [redacted] abandonaran el país, ni solicitó documento para la tramitación de los pasaportes a favor de sus hijos, negando la firma que obra en los pasaportes que tuvo a la vista, motivo por el cual, al haber recibido el ahora fiscal federal consignador la incompetencia declinada a que se ha hecho referencia en este apartado, por antonomasia, debió realizar las diligencias que le permitieran llegar a la verdad histórica buscada en torno a los hechos denunciados por el ofendido aludido, las cuales obran en la averiguación previa radicada en esta causa penal.

En esa tesitura, no es posible dividir la causa penal iniciada con motivo y como consecuencia de hechos denunciados materia de conocimiento de una juez de instrucción, como en el caso lo sería el Juez Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, aun y cuando con posterioridad de los mismos aparecieren indicios, pruebas o probables responsables diversos de los inicialmente consignados, pues ello, es precisamente consecuencia de los ya consignados, esto es, derivado de los desgloses hechos de la primaria indagatoria respectiva, no obstante que la inicial consignación a favor del Tribunal al que se declina competencia, se realizó con

fundamento en el artículo 10 del Código Federal de Procedimientos Penales, de acuerdo a la reforma sufrida el veintitrés de diciembre de mil novecientos noventa y tres, en el que se estableció una forma de competencia por razón de territorio que permite a la Representación Social de la Federación "Ad Limitum", elija el Órgano Jurisdiccional que deba de conocer de un proceso, aún y cuando no sea el del lugar donde ocurrieron los hechos delictivos, motivo por el cual, se materializó la competencia por vía de excepción prevista en el párrafo tercero del precepto legal invocado.

Además, no debe pasarse por alto que la causa penal **42/2005**, del índice de este Juzgado se inició con motivo del desglose ordenado por el Fiscal Federal Consignador de la indagatoria número SIEDO/UETMIO/13/2004, en el que ejerció acción penal en contra de **MARÍA DEL ROSARIO MORENO VAZQUEZ** por el **DELITO DE TRAFICO DE MENORES,** esto es por tratarse de los mismo hechos y consecuencias derivadas de la sustracción de los menores [redacted] de los cuales, como ya se dijo inicialmente conoció el Juzgado Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, órgano judicial que conoce actualmente de las actuaciones más antiguas, por consiguiente, el Tribunal competente para conoce tanto de la causa penal que dio origen a la consignación de la averiguación previa número **SIEDO/UETMIO/13/2004**, como de la que dio origen a la presente causa penal, es precisamente el Juzgado Tercero de Distrito aludido.

**QUINTO.-** En atención a que es procedente la acumulación en la causa penal **42/2205** del índice de este Juzgado, a la causa penal

iniciada con motivo de la consignación efectuada en la indagatoria número **SIEDO/UETMIO/13/2004**, recepcionada, según número de orden **964/2004**, expedida por la oficialía de parte de común a los Juzgados de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, remitida por cuestión de turno al Juzgado Tercero de Distrito de esa Entidad Federativa, con fundamento en lo dispuesto en los artículos 478, primer párrafo, 479 y 480 del Código Federal de Procedimientos Penales, remítase original de la presente causa penal, así como copia certificada de la presente resolución al Juzgado Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, a efecto de que con conocimiento de lo anterior, proceda a emitir la resolución respectiva en relación con el incidente de acumulación planteado por este Juzgado.

**SEXTO.-** Transcríbase la presente resolución al Agente del Ministerio Público de la Federación, para su conocimiento y efectos legales conducentes.

Por lo expuesto y fundado, se

**R E S U E L V E**

**PRIMERO.-** Es procedente el incidente de acumulación planteado de oficio por este Juzgado respecto de la causa penal número 42/2005, instruida en contra de **MARÍA DEL ROSARIO MORENO VÁZQUEZ,** por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO Y USO DE DOCUMENTO FALSO,** previstos por el artículo 244, fracción II en relación con el artículo 246, fracción VII y sancionado por el artículo 243, primer párrafo, todos ellos del Código Penal Federal, así como el de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN,**

previsto y sancionado por el artículo 138 de la Ley General de Población, en contra de **ARTEMIO BARRERA HERNÁNDEZ,** por su probable responsabilidad en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO,** previsto por el artículo 244, fracciones I y V y sancionado por el artículo 243, primer párrafo del Código Penal Federal, y en contra de **FRANCISCO JAVIER TOVAR MARTÍNEZ,** por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO Y USO DE DOCUMENTO PÚBLICO FALSO,** previstos por el artículo 244, fracciones V y X y sancionado por el diverso 243, primer párrafo, del Código Penal Federal, a la diversa causa penal radicada con motivo de la consignación hecha al Juzgado Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, de la averiguación previa número SIEDO/UETMIO/13/2004, según número de orden 964/2004, de la Oficina de Correspondencia de los Juzgados de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, seguida en contra de MARÍA DEL ROSARIO MORENO VÁZQUEZ, por la comisión del delito de Tráfico de Menores, previsto y sancionado por el artículo 366 quater, segundo párrafo, en relación con el diverso 366 Ter, fracción III, del Código Penal Federal.

**SEGUNDO.-** La Titular de este Juzgado, estima que el Juez competente que deberá seguir conociendo de la presente causa por vía de acumulación lo es el Juzgado Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal.

**TERCERO.-** Remítase original de la presente causa al citado tribunal en términos de lo ordenado en el considerando quinto de esta resolución.

**CUARTO.-** Como esta ordenado en el considerando sexto de la presente resolución, transcríbase la presente al Agente del Ministerio Público de la Federación, para su conocimiento y efectos legales conducentes.

**NOTIFÍQUESE ÚNICAMENTE AL FISCAL FEDERAL ADSCRITO.**

Así lo proveyó y firma la licenciada Lourdes Minerva Cifuentes Bazán, Juez Segundo de Distrito en el Estado de México, asistida del licenciado Juan José Orozco Martínez, Secretario con quien actúa y da fe. DOY FE.

LA JUEZ EL SECRETARIO

CONTINUACIÓN Y CULMINACIÓN DE LA RESOLUCIÓN DE INCIDENTE DE ACUMULACIÓN DE AUTOS DE TRES DE JUNIO DE DOS MIL CINCO, DICTADA DENTRO DE LOS AUTOS DE LA CAUSA PENAL 42/05, INICIADA EN CONTRA DE **MARÍA DEL ROSARIO MORENO VÁZQUEZ, ARTEMIO BARRERA HERNÁNDEZ Y FRANCISCO JAVIER TOVAR MARTÍNEZ,** POR LA COMISIÓN DE LOS DELITOS DE FALSIFICACIÓN DE DOCUMENTO, USO DE DOCUMENTO FALSO Y VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN. CONSTE.

GENERAL
ICA
RAL DE

EN ____ DE junio DE DOS MIL cinco, SIENDO LAS ____ HORAS CON — MINUTOS, SE NOTIFICÓ PERSONALMENTE A LA (EL) AGENTE DEL MINISTERIO PÚBLICO FEDERAL DE LA ADSCRIPCIÓN ____ QUIEN MANIFIESTA QUE QUEDA DEBIDAMENTE ENTERADA (O) DE SU CONTENIDO Y FIRMA PARA CONSTANCIA.

762

JUEZ TERCERO DE DISTRITO EN MATERIA DE PROCESOS PENALES FEDERALES EN EL DISTRITO FEDERAL.

P R E S E N T E .

2005 JUN -7 P 2:27

OF: 1859
SECC: PENAL.
EXP: 42/2005

En cumplimiento a la resolución dictada el día de hoy, me permito remitir a usted el original de la causa penal 42/2005, seguida en contra de **MARÍA DEL ROSARIO MORENO VÁZQUEZ,** por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO Y USO DE DOCUMENTO FALSO**, previstos por el artículo 244, fracción II en relación con el artículo 246, fracción VII y sancionado por el artículo 243, primer párrafo, todos ellos del Código Penal Federal, así como el de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN,** previsto y sancionado por el artículo 138 de la Ley General de Población, en contra de **ARTEMIO BARRERA HERNÁNDEZ,** por su probable responsabilidad en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO,** previsto por el artículo 244, fracciones I y V y sancionado por el artículo 243, primer párrafo del Código Penal Federal, y en contra de **FRANCISCO JAVIER TOVAR MARTÍNEZ**, por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO Y USO DE DOCUMENTO PÚBLICO FALSO**, previstos por el artículo 244, fracciones V y X y sancionado por el diverso 243, primer párrafo, del Código Penal Federal, para la aceptación de acumulación planteado de oficio por este Juzgado a la diversa causa penal radicada con motivo de la consignación hecha al Juzgado Tercero de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, de la averiguación previa número SIEDO/UETMIO/13/2004, según número de orden 964/2004, de la Oficina de Correspondencia de los Juzgados de Distrito en Materia de Procesos Penales Federales en el Distrito Federal, seguida en contra de MARÍA DEL ROSARIO MORENO VÁZQUEZ, por la comisión del delito de Tráfico de Menores, previsto y sancionado por el artículo 366 quater, segundo párrafo, en relación con el diverso 366 Ter, fracción III, del Código Penal Federal.

Solicitándole se tenga a bien remitir el acuse de recibo de estilo.

Atentamente.
Naucalpan de Juárez, Estado de México,
8 de junio de 2005.
La Juez Segundo de Distrito
en el Estado de México.

Lic. Lourdes Minerva Cifuentes Bazán.

Ajmo

# PRUEBA 10

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

EN SIETE DE JUNIO DE DOS MIL CINCO, EL SECRETARIO DEL JUZGADO TERCERO DE DISTRITO DE PROCESOS PENALES FEDERALES EN EL DISTRITO FEDERAL, **CERTIFICA:** QUE A LAS CATORCE HORAS CON VEINTISIETE MINUTOS DEL DÍA DE LA FECHA, SE RECIBIÓ POR OFICIALÍA DE PARTES DE ESTE JUZGADO EL OFICIO 1859, PROVENIENTE DEL JUZGADO SEGUNDO DE DISTRITO EN EL ESTADO DE MÉXICO, CON RESIDENCIA EN NAUCALPAN DE JUÁREZ, MEDIANTE EL CUAL REMITE EL ORIGINAL DE LA CAUSA PENAL NÚMERO **42/2005,** SEGUIDA EN ESE JUZGADO CONTRA **ARTEMIO BARRERA HERNÁNDEZ, FRANCISCO JAVIER TOVAR MARTÍNEZ** Y **MARIA DEL ROSARIO MORENO VÁZQUEZ,** POR EL DELITO DE **FALSIFICACIÓN DE DOCUMENTO Y OTROS,** DE LA CUAL SE APRECIA QUE CON FECHA TRES DE JUNIO DE DOS MIL CINCO, RESOLVIÓ VÍA INCIDENTE DE ACUMULACIÓN REMITIR LA MISMA A ESTE JUZGADO; LO QUE SE CERTIFICA PARA LOS EFECTOS LEGALES CORRESPONDIENTES.**- DOY FE.**

En la misma fecha, el Secretario da cuenta al Juez, con la certificación que antecede para que se provea lo que en derecho corresponda.**- Conste.**

**MÉXICO, DISTRITO FEDERAL, A SIETE DE JUNIO DE DOS MIL CINCO.**

Vista la certificación de cuenta, se advierte que a las catorce horas con veintisiete minutos del día de la fecha, se recibió por oficialía de partes de este Juzgado el oficio 1859, proveniente del Juzgado Segundo de Distrito en el Estado de México, con residencia en Naucalpan de Juárez, mediante el cual, en cumplimiento a la resolución de fecha tres de junio de dos mil cinco, remite únicamente el original de la causa penal número **42/2005,** seguida en ese juzgado contra **MARIA DEL ROSARIO MORENO VÁZQUEZ,** por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO** y **USO DE DOCUMENTO FALSO,** previstos en el artículo 244, fracción II, en relación con el artículo 246, fracción VII, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal, así como el de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN,** previsto y sancionado por el artículo 138, de la Ley General de Población; en contra de **ARTEMIO BARRERA HERNÁNDEZ,** por su probable responsabilidad en la comisión de delito de **FALSIFICACIÓN DE DOCUMENTO,** previsto por el



artículo 244, fracciones I y V, y sancionado por el artículo 243, primer párrafo, del Código Penal Federal; y, contra **FRANCISCO JAVIER TOVAR MARTÍNEZ,** por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO** y **USO DE DOCUMENTO PÚBLICO FALSO,** previstos por el artículo 244, fracciones V y X, y sancionados por el diverso 243, primer párrafo, del Código Penal Federal; por considerar la acumulación de la causa penal referida, a la diversa **108/2004,** del índice de este Juzgado, instruida contra la referida inculpada; no obstante, que uno de los delitos por los cuales el Agente del Ministerio Público de la Federación consignador solicitó orden de aprehensión contra los referidos inculpados, se encuentra considerado como grave por el artículo 194, del Código Federal de Procedimientos Penales, incumpliendo lo establecido en el diverso numeral 142, párrafo tercero, del referido ordenamiento legal, esto es, proveer sobre la solicitud de aprehensión dentro del término de veinticuatro horas contadas a partir de su radicación.

Efectivamente, el ordinal 142, párrafo tercero, establece:

*"(...)*

*(...)*

***Tratándose de los delitos que el artículo 194 señala como graves, la radicación se hará de inmediato y el juez ordenará o negará la aprehensión o cateo solicitados por el Ministerio Público, dentro las veinticuatro horas contadas a partir del momento en que se haya acordado la radicación".***

JUZGADO SEPTI
EN EL ESTADO
NAUCALPAN

Asimismo, el artículo 432, ídem, dispone: ***"la competencia por declinatoria no podrá resolverse hasta después de que se practiquen las diligencias que no admitan demora, y en caso de que haya detenido de haberse dictado el auto de formal prisión o el de libertad por falta de elementos para procesar."***

Por lo anterior, sin prejuzgar sobre la competencia de este Órgano Jurisdiccional, para que este Juzgador no incurra en responsabilidad alguna, toda vez que el delito de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN,** previsto y sancionado en el artículo 138 de la misma ley, esta previsto como grave por la fracción V, del numeral 194, del Código Federal de Procedimientos Penales (tal como se advierte de la papeleta de fecha dos de junio de dos mil cinco, con número de

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ______
MESA ______
NUMERO ______

registro 00178/2005, con la cual la Oficina de Correspondencia Común de los Juzgados de Distrito en el Estado de México con residencia en Naucalpan, le envía la averiguación previa PGR/MEX/NAU-II/87/2005, al órgano jurisdiccional declinante), es decir, se trata de una medida urgente; con fundamento en los numerales arriba transcritos, regístrese la presente causa penal con el número **66/2005**; dése el aviso de inicio al Magistrado del Tribunal Unitario en Materia Penal del Primer Circuito en Turno; la intervención que legalmente le compete a la Agente del Ministerio Público de la Federación adscrita, y procédase inmediatamente a resolver lo que en derecho corresponda en relación a las órdenes de aprehensión solicitadas; asimismo, hágase lo anterior del conocimiento de la Encargada de la Oficina de Correspondencia Común a los Juzgados de Distrito de Procesos Penales Federales en el Distrito Federal, a afecto de que se sirva registrar el presente asunto en las cargas de trabajo de este Juzgado, ya que como se advierte, el oficio de cuenta indebidamente viene dirigido a este Órgano Jurisdiccional, no obstante de encontrarse en horario de labores la correspondencia común, ya que en todo caso, correspondía conocer al Juzgado en turno (por tratarse de medida urgente), de conformidad con el artículo 8°, del Acuerdo General 23/2002, que regula el funcionamiento de las Oficinas de Correspondencia de esta naturaleza de los Tribunales de Circuito y Juzgados de Distrito del Poder Judicial de la Federación.

Por las razones expuestas, resulta improcedente que este órgano jurisdiccional se pronuncie sobre el incidente de acumulación que refiere la titular del Juzgado Segundo de Distrito en el Estado de México, con residencia en Naucalpan de Juárez; sin embargo, como lo solicita ésta última, acúsese recibo del original de la causa penal número 42/2005, de su índice.

**NOTIFÍQUESE ÚNICAMENTE A LA AGENTE DEL MINISTERIO PÚBLICO FEDERAL ADSCRITA.**

Así, lo acordó y firma el licenciado **ARTURO CÉSAR MORALES RAMÍREZ**, Juez Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, ante el Secretario que autoriza y da fe, licenciado **Marco Antonio Ortiz Mejía.- DOY FE.**

# PRUEBA 11





PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

**MÉXICO, DISTRITO FEDERAL, A OCHO DE JUNIO DE DOS MIL CINCO.**

Vistos, los autos de la causa penal número **66/2005,** para resolver sobre la procedencia de la **orden de aprehensión** solicitada en su oportunidad por el Agente del Ministerio Público de la Federación, de la Procuraduría General de la República, al Juzgado de Distrito en turno, en el Estado de México, con residencia en Naucalpan de Juárez, que por razón de ello, tocó conocer al Segundo, contra **MARIA DEL ROSARIO MORENO VÁZQUEZ**, por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO y USO DE DOCUMENTO FALSO**, previstos en el artículo 244, fracción II, en relación con el artículo 246, fracción VII, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal, así como el de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN**, previsto y sancionado por el artículo 138, de la Ley General de Población; contra **ARTEMIO BARRERA HERNÁNDEZ**, por su probable responsabilidad en la comisión de delito de **FALSIFICACIÓN DE DOCUMENTO**, previsto por el artículo 244, fracciones I y V, y sancionado por el artículo 243, primer párrafo, del Código Penal Federal; y, contra **FRANCISCO JAVIER TOVAR MARTÍNEZ**, por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO y USO DE**

**DOCUMENTO PÚBLICO FALSO**, previstos por el artículo 244, fracciones V y X, y sancionados por el diverso 243, primer párrafo, del Código Penal Federal (sic); y,

**RESULTANDO**

**PRIMERO.-** Por oficio número 1859, de fecha tres de junio de dos mil cinco, recibido en la oficialía de partes de este órgano jurisdiccional, la titular del Juzgado Segundo de Distrito en el Estado de México, con residencia en Naucalpan de Juárez, en cumplimiento a la resolución de fecha tres de junio de dos mil cinco, remitió únicamente el original de la causa penal número **42/2005**, seguida en ese juzgado contra **MARIA DEL ROSARIO MORENO VÁZQUEZ, ARTEMIO BARRERA HERNÁNDEZ** y **FRANCISCO JAVIER TOVAR MARTÍNEZ**, por su probable responsabilidad en la comisión de los delitos antes referidos; por considerar la acumulación de la causa penal referida, a la diversa **108/2004**, del índice de este Juzgado, instruida contra la referida inculpada; no obstante, que uno de los delitos por los cuales el Agente del Ministerio Público de la Federación consignador solicitó orden de aprehensión contra los referidos inculpados, se encuentra considerado como grave por el artículo 194, del Código Federal de Procedimientos Penales, incumpliendo lo establecido en el diverso numeral 142, párrafo tercero,

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

del referido ordenamiento legal, esto es, proveer sobre la solicitud de aprehensión dentro del término de veinticuatro horas contadas a partir de su radicación.

**SEGUNDO.-** Una vez radicada la averiguación de referencia con el número **66/2005**, mediante proveído de fecha siete de junio de dos mil cinco, se le dio el trámite legal correspondiente, dándose aviso de inicio al Magistrado del Tribunal Unitario en Materia Penal del Primer Circuito en turno, y a la Agente del Ministerio Público de la Federación adscrita, la intervención que legalmente le compete.

**CONSIDERANDO**

**PRIMERO.-** Este Juzgado Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, procederá a conocer hasta está etapa procedimental del presente asunto, por tratarse de una consignación que no admite demora, de conformidad con el artículo 432, en relación con el numeral 142, párrafo tercero, del Código Federal de Procedimientos Penales.

El primero de los numerales dispone:

***"La competencia por declinatoria no podrá resolverse hasta después que se practiquen las diligencias que no admitan demora y en caso de que haya detenido, de haberse dictado el Auto de Formal Prisión o el de Libertad por Falta de Elementos para Procesar".***

De la sola lectura de dicho numeral, se advierte que no podrá declinarse la competencia, sino hasta en

tanto se resuelvan aquellas diligencias que no admitan demora; en la especie, la petición de Orden de Aprehensión, en la que habrá de determinarse lo que en derecho proceda.

Por lo anterior, resulta evidente que la presente resolución encuadra en esa hipótesis, de donde radica la competencia provisional para tal efecto de este Órgano Jurisdiccional; ello, sin perjuicio de que, dentro del cuerpo de la presente resolución, en términos de lo que establece el capítulo I, Sección Segunda, del Título Décimo Primero, del Código Federal de Procedimientos Penales, se analice adecuadamente la competencia.

**SEGUNDO.-** El artículo 16, de la Constitución Política de los Estados Unidos Mexicanos, en su parte conducente establece:

***"Nadie puede ser molestado en su persona, familia domicilio papeles o posesiones, sino en virtud del mandamiento escrito de la autoridad competente, que funde y motive la causa legal del procedimiento. No podrá librarse orden de aprehensión sino por la autoridad judicial y sin que preceda denuncia o querella de un hecho que la ley señale como delito, sancionado cuando menos con pena privativa de libertad y existan datos que acrediten el cuerpo del delito y que hagan probable la responsabilidad del indiciado".***

De acuerdo con tal precepto Constitucional, se desprende que para el dictado de la orden de aprehensión es necesario que concurran los siguientes

ESTADOS UNIDOS MEXICANOS
PODER JUDICIAL DE LA FEDERACION

SECCION ______
MESA ______
NUMERO ______

requisitos: **a).-** Que exista denuncia o querella, **b).-** Que se refieran a un hecho que la ley sancione por lo menos con pena corporal, **c).-** Que existan datos que acrediten el cuerpo del delito, y, **d).-** Hagan probable la responsabilidad del indiciado.

Por su parte el numeral 195, del Código Federal de Procedimientos Penales, instituye:

***"Cuando estén reunidos los requisitos del artículo 16 Constitucional, el tribunal librará orden de aprehensión, reaprehensión o comparecencia, según el caso, contra el inculpado, a pedimento del Ministerio Público. La resolución respectiva contendrá una relación sucinta de los hechos que la motiven, sus fundamentos legales y la clasificación provisional que se haga de los hechos delictuosos, y se transcribirá inmediatamente al Ministerio Público, para que éste ordene a la policía su ejecución."***

Finalmente, el artículo 168, del Código Federal de Procedimientos Penales, dispone:

***"El Ministerio Público acreditará el cuerpo del delito de que se trate y la probable responsabilidad del indiciado, como base del ejercicio de la acción penal; y la autoridad judicial, a su vez, examinará sí ambos requisitos están acreditados en autos. Por cuerpo del delito se entiende el conjunto de elementos objetivos o externos que constituyen la materialidad del hecho que la ley señale como delito, así como los normativos, en el caso de que la descripción típica lo requiera. La probable responsabilidad del indiciado se tendrá por acreditada cuando, de los medios probatorios***

***existentes, se deduzca su participación en el delito, la comisión dolosa o culposa del mismo y no exista acreditada en favor del indiciado alguna causa de licitud o alguna excluyente de culpabilidad. El cuerpo del delito de que se trate y la probable responsabilidad se acreditarán por cualquier medio probatorio que señale la ley."***

Conforme al texto de los artículos transcritos, lo procedente a continuación, es el análisis de cada una de las constancias que aparecen agregadas en la indagatoria, para determinar la existencia de datos que acrediten tanto los elementos del cuerpo del ilícito de que se trata, así como la probable responsabilidad de los indiciados en su comisión, y decretar lo que en derecho proceda.

**TERCERO.-** En el expediente existen entre otras, las siguientes constancias:

**1.-** Declaración del querellante **JOSÉ FERNANDO CASTILLO TAPIA,** ante el Agente del Ministerio Público de la Federación, el veintidós de marzo de dos mil cuatro, en donde manifestó que con la señora **MARÍA DEL ROSARIO MORENO VÁZQUEZ**, procreó a sus menores hijos de nombres [redacted] [redacted] respectivamente, quienes vivían con su madre después que se había divorciado de ella, según la sentencia definitiva dictada por el Juez Décimo de los Familiar en el Distrito Federal; pero el

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

veintiocho de febrero de dos mil cuatro, aproximadamente a las diecisiete horas, se dirigió a recoger a sus hijos al domicilio donde vivía la señora **MORENO VÁZQUEZ** y su menores hijos, [redacted] Naucalpan, Estado de México, [redacted] recibiendo de la señora María Elena Vázquez Saucedo, madre de ROSARIO, una carta de la señora **MARÍA DEL ROSARIO MORENO VÁZQUEZ**, en la cual le decía que había sustraído a sus hijos de ese domicilio para salir de la Ciudad, sin mencionar el destino de ellos, **teniendo la sospecha de que se había trasladado a otro país, posiblemente a los Estados Unidos de América, ya que la señora MORENO VÁZQUEZ, le había comentado que en el mes de octubre de dos mil tres, se había casado con una persona norteamericana que conoció por Internet**, solicitándole permiso para sacar a sus hijos del país, a lo cual él se negó, indicándole que era mejor, que primero se estabilizara como pareja y luego, convendrían el permiso y las visitas recíprocas, situación que tampoco ella aceptó; por lo que el día veintinueve de febrero de dos mil cuatro, él se presentó ante el Agente del Ministerio Público del Fuero Común, en Naucalpan, en el Estado de México, iniciándose el acta NJ/II/816/04-02, en donde refirió lo anterior, señalando ante esa autoridad, que él no dio autorización ni el consentimiento

para que sus menores hijos [redacted] salieran del país y tampoco extendió ningún conducto ni beneplácito para que obtuvieran el pasaporte de la Secretaría de Relaciones Exteriores.

Asimismo, el día uno de marzo del año pasado, se presentó en la escuela donde estudiaban sus hijos, que era el Colegio La Salle en el Estado de México, donde entabló comunicación con los compañeros de sus hijos, enterándose que la señora **MARÍA DEL ROSARIO MORENO VÁZQUEZ** y sus menores hijos, **habían abandonado el país por vía aérea, el día veintisiete de febrero de dos mil cuatro, utilizando los servicios de la empresa Aereoméxico en el vuelo** [redacted] **con destino a Atlanta Georgia, comentándoles sus hijos que su destino final era la Ciudad de Salem Alabama,** [redacted], registrado a nombre del señor **RONALD COONLEY**, persona con la que se había casado la señora **ROSARIO MORENO VÁZQUEZ**, quien pudiese tener como domicilios: [redacted] Smiths, AL, y [redacted] Phenix City AL, [redacted]. Columbus GA [redacted] así como Berrien Springs Michigan, además del ubicado [redacted] Albano, NY, [redacted] todos en los

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

Estados Unidos de América; del mismo modo, por platicas que había tenido con compañeros de su hijo, quien se comunicaba con ellos a través de internet, comentándoles que posiblemente viajarían fuera de los Estados Unidos de América, pero sin conocer el destino, ni cuando sería efectuado ese viaje.

Posteriormente, indicó que se constituyó ante el Juzgado Décimo de lo familiar en el Distrito Federal, donde solicitó se le concediera la custodia, de sus menores hijos [redacted] y ante sus dudas sobre si sus hijos habían salido del país, se presentó en la ventanilla de informes de la Delegación Naucalpan, en el Estado de México de la Secretaría de Relaciones Exteriores, para saber si se había expedido algún pasaporte a favor de ellos, y una persona de esa oficina, le informó, que el veintisiete de febrero de dos mil cuatro, se expidieron dichos documentos a favor de [redacted] que la documentación legal que amparaba su permiso, se encontraba en ese domicilio, por lo cual solicitó se verificara lo anterior, al indicar el compareciente que él no extendió su permiso de manera verbal ni por escrito, ni a través de cualquier documento y por ese motivo desconocía cualquier firma o autorización existente en los archivos de esa dependencia.

Finalmente, en dicho acto, presentó formal querella

por el delito de tráfico de menores, contra de María del Rosario Moreno Vázquez, en agravio de sus hijos, y su persona (fojas 178 a 181).

**2.-** Diligencia de **inspección** practicada por el Agente del Ministerio Público de la Federación, el veintidós de marzo de dos mil cuatro, en donde dio fe de tener a la vista:

a).- Copias simples de la **demanda** presentada ante el Juez Décimo de lo familiar, donde FERNANDO CASTILLO TAPIA demandó a la señora MARIA DEL ROSARIO MORENO VÁZQUEZ, el **cambio de custodia de persona para la guarda y custodia** del menor [redacted], la custodia total de la menor [redacted] constante de seis fojas.

JUZGADO SEPTIMO
EN EL ESTADO
NAUCALPAN

b).- Copia simple de la **denuncia de hechos** que presentó JOSÉ FERNANDO TAPIA en el Estado de México, ante el Agente del Ministerio Público en Naucalpan, Estado de México, constante de dos fojas.

c).- Hoja de la carta dirigida a "Fernando", suscrita por "Rosario".

d).- fotocopia simple del **convenio** realizado entre **JOSÉ FERNANDO CASTILLO TAPIA y MARIA DEL ROSARIO MORENO VÁZQUEZ**, presentado a la consideración del Juez de lo Familiar en el Juicio de Divorcio Voluntario, **referente a la custodia relacionada con su menor hijo** [redacted]

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

**MORENO, constante de dos fojas.**

e).- fotocopia simple de la carta de fecha dieciséis de marzo de dos mil cuatro, expedida por la Directora del Colegio La Salle, suscrita por Ana Cecilia Esquivel Hernández, en el cual menciona que [redacted] estuvo inscrita en el ese colegio durante el curso 2003-2003, en segundo grado y en 2003 y 2004, en tercer grado, hasta el día veintiséis febrero de dos mil cuatro, apareciendo en los registros oficiales como su padre JOSÉ FERNANDO CASTILLO TAPIA.

f).- Copia simple de la **sentencia de divorcio** de fecha veintinueve de enero de mil novecientos noventa y dos, a favor de la señora **MARÍA DE ROSARIO MORENO VÁZQUEZ** y el querellante de mérito, expedida por el Juzgado Décimo de lo Familiar en el Distrito Federal;.

g).- **Acta de nacimiento** en original, número [redacted] a favor de [redacted], expedida por el Juez Central del Registro Civil en el Distrito Federal.

h).- **Acta de nacimiento** en original número [redacted] de fecha doce de marzo de dos mil tres, a favor de [redacted] expedida por la oficial número cero dos del Registro Civil, la licenciada Margarita Mariscal De Olvera, del Gobierno del Estado de México.

ACTUACIONES

i).- Tres fotografías láser a color de LUIS FERNANDO CASTILLO MORENO.

j).- Dos fotografías a color de MARÍA DEL ROSARIO.

k).- tres fotografías láser a color de MARÍA DE FÁTIMA.

**3.-** Declaración de **MARÍA ELENA VÁZQUEZ SAUCEDO** de fecha siete de abril de dos mil cuatro, quien ante el Agente del Ministerio Público de la Federación, manifestó que era madre de **MARÍA DEL ROSARIO MORENO VÁZQUEZ**, quien estuvo casada con el señor JOSÉ FERNANDO CASTILLO TAPIA, procreando dos hijos de nombres [redacted] quienes en esa época estaban divorciados; **que efectivamente el día veintiocho de febrero de dos mil cuatro, aproximadamente a las diecisiete horas o las dieciocho horas,** llegó a su domicilio el señor FERNANDO CASTILLO TAPIA, ya que al parecer ese día iba a ver a sus hijos [redacted] pues al parecer cada quince días los visitaba, **al llegar le preguntó por ellos, refiriéndole que no estaban, entregándole una carta en un sobre cerrado, del trabajo de su hija, al parecer tenía el logotipo de la compañía donde trabajaba, sin percatarse del contenido, misma que le entregó su hija MARÍA DEL ROSARIO, el día veintiséis de**

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

**febrero de dos mil cuatro, sin decirle a dónde se iba, y se entendía que se llevaba a sus hijos, indicándole ésta, que la carta se la entregara a FERNANDO; por su parte, el veintisiete de marzo de dos mil cuatro, aproximadamente a las siete horas, ella se fue, llevándose a sus hijos, reiterando que en ningún momento le dijo a qué lugar se iba, señalando que cuando le preguntó a dónde iba, le contestó de mala gana "ese es mi asunto", se fue y ya no regresó,** después de esa ocasión ha tenido comunicación en dos o tres ocasiones en el mes de marzo de dos mil cuatro, únicamente para saber cómo estaba, pero no le indicó en el lugar donde se encontraban (fojas 218 a 220).

**4.- Oficio número DGAPII/3818/04/0550/04-AAH** de fecha doce de abril de dos mil cuatro, suscrito por el Agente del Ministerio Público de la Federación adscrito a la Dirección General de Asuntos Policiales Internacionales INTERPOL, dependiente de la Procuraduría General de la República, en el cual señala entre otras cosas lo siguiente: " *Al respecto me permito hacer de su conocimiento que esta Unidad administrativa cuenta con un expediente administrativo relacionado con la ubicación de los menores de edad Castillo Moreno mismo que dio inicio el dos de marzo del año en curso, con motivo de la solicitud que presentara en esta oficina el C. FERNANDO CASTILLO TAPIA, padre de los niños quien manifestó tener la presunción de que sus hijos*

*habían sido trasladados a los Estados Unidos de América por su madre **MARÍA DEL ROSARIO MORENO VÁZQUEZ**. En virtud de lo antes descrito esta oficina inició las investigaciones correspondientes, lográndose detectar que los menores y su madre arribaron a la ciudad de Atlanta, Georgia, Estados Unidos de América el veintisiete de febrero de dos mil cuatro, en el vuelo seiscientos treinta y seis de la línea aérea Aeroméxico, motivo por el cual se entabló comunicación con Interpol - Washigton, a fin de solicitar su colaboración para la ubicación de la señora **MARÍA DEL ROSARIO MORENO**, y sus menores hijos [redacted] El pasado veintiséis de marzo la Interpol Washington informó a esta Unidad Administrativa, que la policía Estatal de Alabama envió un Agente investigador para entrevistar a la señora **MARÍA DEL ROSARIO MORENO**, quien acreditó tener la custodia de sus menores hijos, asimismo refirió que el padre de los menores ha llamado para amenazarla, por lo que decidió cambiar de domicilio y de número telefónico, motivo por el cual las autoridades estadounidenses refieren que por seguridad y bienestar de la familia no están autorizadas para revelar su paradero"* (foja 224).

**5.-** Mediante oficio sin número de fecha catorce de abril de dos mil cuatro, el Director de Normatividad de la

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

Secretaría de Relaciones Exteriores, remitió copia certificada de los siguientes documentos:

a).- **Copia certificada** de la solicitud de pasaporte ordinario Mexicano, a nombre **MORENO VÁZQUEZ MARIA DEL ROSARIO**, donde aparece una fotografía ilegible (foja 231);

b).- Copia certificada del pasaporte ilegible número 6706408, a nombre de MARIA DEL ROSARIO MORENO VÁZQUEZ (foja 232);

c).- Dos **solicitudes de pasaporte ordinario, Mexicano (OP-5)**, número 6290 y 6289, a nombre de los menores [redacted], **donde en la primera de ellas, en el recuadro que dice FIRMA DEL SOLICITANTE aparece el nombre de LUIS FERNANDO CASTILLO MORENO, en el recuadro que dice: FIRMA DE CONFORMIDAD CON LOS DATOS CONTENIDOS EN EL PASAPORTE AL RECIBIRLO, una firma ilegible,** con fecha dieciséis de febrero de dos mil cuatro; señalando como lugar, Naucalpan, Estado de México; **en la siguiente foja, donde aparecen datos del Padre o Tutor, se encuentra marcada con una "x", el recuadro que dice "Como Padre"; para realizar el trámite se identificó como el pasaporte 03340032358, expedido por la Secretaría de Relaciones Exteriores de fecha seis de noviembre de dos mil tres**, apareciendo una firma ilegible, así como

las huellas dactilares, del dedo índice izquierdo e índice derecho y; en lo relativo a los datos de la madre o Tutora, aparece en el recuadro señalado como Madre una "x", para realizar el trámite se identificó con el pasaporte número [redacted] expedido por la Secretaría de Relaciones Exteriores el veintidós de septiembre de dos mil tres, aparece una firma ilegible y la huella de los dedos índice izquierdo e índice derecho (fojas 234 a 240).

d).- Copia certificada del acta de nacimiento número [redacted] a nombre [redacted] (foja 236)

e).- Copia certificada del pasaporte número [redacted] a nombre de CASTILLO TAPIA JOSÉ FERNANDO, expedido por la Secretaría de Relaciones Exteriores (foja 237).

f).- Copia certificada del pasaporte número [redacted] a NOMBRE DE MORENO VÁZQUEZ MARIA DEL ROSARIO (foja 238);

g).- copia certificada del acta de nacimiento número [redacted], a nombre de [redacted] (foja 241);

h).- Copia certificada del **pasaporte** número [redacted] a nombre de [redacted] expedido el diecisiete de diciembre de mil novecientos noventa y siete y con fecha de caducidad diecisiete de diciembre de dos mil dos, en

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

Naucalpan, México (fojas 242).

6.- Declaración ministerial de [redacted] e veintitrés de abril de dos mil cuatro, donde dijo que tal y como lo señaló en comparecencia de veintidós de marzo del año dos mil cuatro, no otorgó ninguna autorización para que se emitiera pasaporte a favor de los menores; al tener a la vista la documentación que remitió la Secretaría de Relaciones Exteriores, **donde se aprecia que existe el nombre y la rúbrica de la persona que solicitó la expedición de pasaporte a favor de los menores** [redacted] **así como la copia del pasaporte donde se lee el nombre de JOSÉ FERNANDO CASTILLO TAPIA, quien supuestamente autorizó la expedición del citado documento, al revisar los documentos que constan en el expediente, dijo que desconoce quien firmó por él, así también desconoce de quién es la firma y huella dactilar que aparece e en ambas solicitudes, de los menores y en consecuencia, no estuvo físicamente presente para presentar la solicitud o firmar o autorizar la expedición de los pasaportes de sus menores hijos, aclarando que sólo reconoce que la copia del pasaporte a favor de su menor hija** [redacted] **con fecha de expedición diecisiete de diciembre de mil**

**novecientos noventa y siete, lo tramitó junto con la señora MARIA DEL ROSARIO MORENO VÁZQUEZ,** por lo que desconoce cualquier otro permiso firmado por su puño y letra, del mismo modo refiere que la letra que existe en las solicitudes es de la señora MARIA DEL ROSARIO MORENO VÁZQUEZ, refiriendo que recordaba, que unos días antes que sus hijos fueran sustraídos por la madre, su pasaporte él lo tenía guardado en la recamara de su domicilio particular y que lo encontró en otro lugar, sin darle importancia, pero su hijo [REDACTED] tenía copia de las llaves de la casa, por lo que pensaba que su hija o su hijo, o la madre de estos pudo haber sustraído el pasaporte, y volverlo a dejar, ya que tenían acceso a su casa de él y por motivos de trabajo no se encontraba en el día, pero no se dio cuenta cuando pudieron sacarlo, desconociendo que se hubiera utilizado para que se tramitara la expedición de pasaportes, a favor de los menores; asimismo, en cuanto a lo manifestado en el documento de INTERPOL de fecha doce de abril del año dos mil cuatro, sólo acepta en parte, ya que efectivamente se presentó a solicitar ayuda, pues resentía que a sus hijos los había sacado del país la señora MARÍA DEL ROSARIO MORENO VÁZQUEZ, como también lo señaló ante el Ministerio Público del Estado de México, **el día que conoció que sus hijos ya no estaban habitando en la casa de Plaza de San**

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

**Jorge 15, Alteña Dos de Lomas Verdes, considerando que hace unos meses MARÍA DEL ROSARIO MORENO, le comentó que se había casado con una persona de nombre RONALD COONLEY, de nacionalidad americana y que pensaba llevarse a sus hijos a vivir a los Estados Unidos, entonces él le dijo que no estaba de acuerdo, por lo que no les daría permiso para irse, en una primera instancia, ya que la señora MARIA ROSARIO MORENO le había dicho, que al señor COONLEY lo había conocido por Internet, además, éste era el segundo matrimonio, después del suyo, que realizaba con gentes que conocía por Internet** (fojas 247 a 249).

**7.-** Oficio sin número de fecha veintidós de abril de dos mil cuatro, recibido en la Oficialía de partes de la Subprocuraduría de Investigación Especializada en Delincuencia Organizada, el veintiséis de ese mismo mes y año, suscrito por el licenciado Antonio Jáuregui Quintana, Gerente de Asuntos Contenciosos y Flota de Aerovías de México, mediante el cual anexa **copias simples de cupones de viaje a favor de "MORENO/ MARÍA"; "[redacted] [redacted] utilizados en la ruta México-Atlanta, vuelo seiscientos treinta y seis, del día veintisiete de febrero del dos mil cuatro (fojas 274 y 275).**

**8.-** Dictamen en materia de **identificación en Grafoscopia**, de fecha diez de junio de dos mil cuatro,

suscrito por los peritos Praxedis Irma García Guerrero y Rosa Flores Vázquez, adscritos a la Dirección General de Coordinación de Servicios Periciales, dependiente de la Procuraduría General de la República, en el que obtuvieron como resultados:

**I).-** Al realizar el estudio correspondiente de la ficha decadactilar a nombre del C. Castillo Tapia José Fernando, la cual presenta la siguiente formulada dactiloscópica E-3343 I-2222, en la mano derecha, pulgar índice, medio, medio y meñique, pertenecen al tercer tipo fundamental presilla interna. Por su morfología, el anular derecho corresponde al cuarto tipo fundamental VERTICILO, SUBTIPO CONCÉNTRICO, por lo que únicamente se cotejo este, por corresponder al mismo tipo fundamental de los dactilogramas estampados en las formas OP7;

**II).-** Al realizar el estudio de los dactilogramas estampados en los formatos OP7, correspondientes al padre o tutor con la leyenda índice izquierdo corresponde al cuarto tipo fundamental VERTICILO, SUBTIPO ESPIRAL DESTROGIRO. Los dactilogramas con la leyenda índice derecho corresponden al cuarto tipo fundamental VERTICILO, SUBTIPO ESPIRAL SINESTROGIRO. **Al confrontar el dactilograma del anular derecho de la ficha decadactilar a nombre del C. CASTILLO TAPIA JOSÉ FERNANDO, contra los dactilogramas insertos en las formas OP7, no**

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ______

MESA ______

NUMERO ______

**corresponde a subtipo y por ende en puntos característicos. Las fotografías de las huellas dactilares, las formas OP7, fueron turnadas al sistema AFIS para realizar una confronta eliminatoria contra la base de datos de dicho sistema, arrojando resultados positivos con los siguientes datos: "BARRERA HERNÁNDEZ ARTEMIO", delito falsificación de documentos oficiales.** A.P., 9545/D/94 autoridad Agente del Ministerio Público de la Federación Titular de la Mesa IX-D, 39 años de edad, fecha de nacimiento veinte de octubre de 1955, con domicilio en la Calle de cantera No. 1 Santa Cruz Xochintepec, Xochimilco, D.F., cuyo registro decadactilar está integrado en el archivo de esta institución, por lo que se procedió a realizar el estudio comparativo, tomándose como base de cotejo los dedos medianos derecho e izquierdo en base al tipo fundamental, subtipo y ubicación de puntos característicos, se realizó tomas fotográficas de la ficha decadactilar así como amplificaciones fotográficas de los mismos para realizar comparativo con las huellas dactilares estampadas en los formatos OP7 de los menores [redacted]

[redacted]

De todo ello se concluyó: **Primero.- Los dactilogramas impresos en la ficha decadactilar a nombre de CASTILLO TAPIA JOSÉ FERNANDO, NO CORRESPONDEN, con las impresiones dactilares**

estampadas en las formas OP-7, con la leyenda índice derecho e izquierdo de los menores [redacted] SEGUNDA; Segundo.- Los dactilogramas estampados en la forma OP-7, con la leyenda índice derecho e izquierdo de los menores [redacted] CORRESPONDEN con las impresiones dactilares de los medios derecho e izquierdo de la ficha decadactilar a nombre de Barrera Hernández Artemio (fojas 311 a 323).

**9.-** Dictamen en **materia de Grafoscopia**, de fecha quince de junio de dos mil cuatro, suscrito por el perito L. Aldo Chisanto Molina, adscrito a la Dirección General de Coordinación de Servicios Periciales, dependiente de la Procuraduría General de la República, en el que concluyó:

"**PRIMERO.- NO CORRESPONDEN** POR SU EJECUCIÓN A **JOSÉ FERNANDO CASTILLO TAPIA**, LAS FIRMAS QUE SE ENCUENTRAN COMO DE ESTE, EN LOS DOCUMENTOS DESCRITOS COMO CUESTIONADOS EN EL PRESENTE DICTAMEN, CON RESPECTO A LAS FIRMAS PROPORCIONADAS COMO BASE DE COTEJO; **SEGUNDO.-** NO CORRESPONDEN POR SU EJECUCIÓN A **JOSÉ FERNANDO CASTILLO TAPIA**, LA ESCRITURA QUE SE ENCUENTRA, EN LOS DOCUMENTOS

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

DESCRITOS COMO CUESTIONADOS EN EL PRESENTE DICTAMEN, CON RESPECTO A LA ESCRITURA PROPORCIONADA COMO BASE DE COTEJO"; anexando imágenes fotográficas a color, la Muestra de Escritura de José Fernando Castillo Tapia, constante de dos fojas (fojas 327 a 334).

**10.-** Comparecencia de **JOSÉ FERNANDO CASTILLO TAPIA**, ante la autoridad investigadora, el dieciocho de junio de dos mil cuatro, en la que manifestó que una vez que se percató del resultado de los dictámenes en Grafoscopia e identificación, donde se concluyó que las firmas, escritura y huellas dactilares, en las formas OP-7, no pertenecían al compareciente, y sin embargo correspondían a Artemio Barrera Hernández, por lo que en dicho acto, presentó formal denuncia por el delito de falsificación de documento, en su agravio, contra de aquel (foja 342).

**11.-** Declaración Ministerial del inculpado **FRANCISCO JAVIER TOVAR MARTÍNEZ**, quien entre lo más relevante manifiesta que se desempeñaba como empleado de la Secretaría de Relaciones Exteriores, del Municipio de Naucalpan de Juárez, en el cargo de recepción de documentos para el tramite de pasaportes, y su función era principalmente la de recibir la documentación en originales y fotocopias por parte de los usuarios, en la cual tenía que checar y verificar que los documentos fuesen originales y que correspondiesen

con los datos asentados con lo manifestado por los peticionarios. Así como verificar que las identificaciones de los peticionarios concordaran con los rasgos fisonómicos de quienes las presentaban, y ya integrado el expediente con fotocopias, se les pedía que firmaran la solicitud y la toma de huellas dactilares, para posteriormente pasar a revisión con el Delegado o Subdelegado de la Secretaría de Relaciones Exteriores, por lo anterior y en especifico con los pasaportes de los menores de edad que se encuentran anexos a este expediente, aclara que se hizo el mismo procedimiento, pues el día dieciséis de febrero del año dos mil cuatro, atendió a los señores JOSÉ FERNANDO CASTILLO TAPIA Y MARIA DEL ROSARIO MORENO VÁZQUEZ, aclarando que la señora le manifestó que tramitarían los pasaportes de los menores, lo cual atendió, pidiendo la documentación consistente en acta de nacimiento, identificación de los menores e identificación de los padres, en el cual hacen una revisión de los documentos para que estos sean correctos y al mismo tiempo estar revisando que las identificaciones concuerden fielmente con los rasgos fisonómicos de quien la presenta, así como la firma que aparece en la identificación, dándose cuenta en esos momentos que los menores jugaban con su padre, para posteriormente que integró los expedientes, **les pidió a los papas que pusieran sus firmas y huellas dactilares, y ya que firmaron los**



ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

**papas se acercaron los menores para que el declarante les tomara las huellas y firmaran la solicitud, indicándoles que tomaran asiento,** pues pasaría la documentación con el Delegado, para su verificación, y continuación del proceso de expedición de pasaportes en las diferentes etapas del mismo, en las cuales intervienen diferentes funcionarios de esa oficina, siendo lo anteriormente narrado su función, y lo acontecido en el caso particular, en el trámite de los menores de edad, [REDACTED] eso es todo lo que le compete en relación con su función dentro de la Secretaría de relaciones Exteriores, y a preguntas que le hizo dicha Autoridad, A LA PRIMERA, Que diga el declarante, si reconoce la fotografía que aparece en el pasaporte número [REDACTED] expedido a favor de JOSÉ FERNANDO CASTILLO TAPIA, el cual se encuentra anexo a al presente indagatoria, y que dicha persona fuera la misma que acudió en compañía de MARIA DEL ROSARIO MORENO VÁZQUEZ, para la expedición de los pasaportes de sus menores hijos, en la Delegación de la Secretaría de Relaciones Exteriores, en el Municipio de Náucalpan de Juárez, Estado de México, RESPUESTA: Si es la misma persona que se presentó conmigo, pues en la fila que se forma para atención y recepción de documentos, se encontraban los señores [REDACTED]

a los cuales reconozco plenamente y como las mismas personas que atendió. A LA SEGUNDA. Que diga el declarante como es físicamente JOSÉ FERNANDO CASTILLO TAPIA, RESPUESTA.- es una persona de aproximadamente un metro con setenta centímetros de alto, de complexión mediana, y vistiendo de traje y teniendo buen estado físico, A LA TERCERA.- Que diga el declarante como es físicamente MARIA DEL ROSARIO MORENO VÁZQUEZ. RESPUESTA No recuerdo bien su estado físico. Al respecto, el Ministerio Público de la Federación dio fe que el denunciante JOSÉ FERNANDO CASTILLO TAPIA tiene rasgos físicos notablemente diferentes a los asentados como ciertos por FRANCISCO JAVIER TOVAR MARTÍNEZ (fojas 603 a 606).

12. Declaración ministerial de **JUAN ARAMONI BURGETE**, rendida el doce de noviembre de dos mil cuatro, donde en lo que interesa, entre otras cosas, manifestó que se desempeñaba como delegado de la Secretaría de Relaciones Exteriores, en el Municipio de Naucalpan, Estado de México; además indicó que en relación a los documentos que sustentaban la expedición de los pasaportes de [redacted] [redacted], era correcta, al reunir los extremos de la normatividad establecida por dicha Secretaría, y contenido en el Reglamento de Pasaportes vigente, habiendo agregado que su

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

participación dentro del proceso de expedición, consistía en verificar la correcta integración del expediente base de la expedición para los pasaportes; que no recordaba haber tenido a la vista a los padres de los menores en cita (fojas 609 611).

**13.-** Declaración ministerial de **ANA LUISA LOZANO GUTIÉRREZ,** rendida el doce de noviembre de dos mil cuatro, donde en esencia indicó que se desempeñaba como capturista de datos en la delegación de la Secretaría de Relaciones Exteriores, en el Municipio de Naucalpan, Estado de México, además de haber precisado que en relación a los hechos investigados, los desconocía, en virtud a que sus funciones consistían en el ingreso de datos al sistema de los expedientes previamente integrados, y revisados, lo cual no le permitía tener contacto con los usuarios (fojas 613 a 615).

**14.-** Declaración ministerial de **VIRIDIANA MOLINA OLVERA,** rendida el mismo doce de noviembre de dos mil cuatro, donde en esencia indicó que se desempeñaba como digitalizadora de expedientes en la Secretaría de Relaciones Exteriores, en el Municipio de Naucalpan, Estado de México, lo que consistía en verificar los datos del expediente, integrado y verificado previamente, posterior a la captura, también indicó que dada sus labores, estaba apartada de los usuarios (fojas 617 a 619).

**15.-** Comparecencia de **NATIVIDAD CARRERA SANTIAGO,** de dieciséis de mayo de dos mil cinco, ante la autoridad investigadora, en su carácter de Subdirectora de Regulación y Control Migratorio, de la Secretaría de Gobernación, donde en dicho acto, presentó oficio datado el dieciséis de mayo de dos mil cinco, **donde formuló querella contra María Rosario Vázquez Moreno, por su probable responsabilidad en el delito de Violación a la Ley General de Población, previsto por el numeral 138, de dicho ordenamiento; oficio de que se trata, que fue debidamente ratificado** (fojas 720 a 723).

**COMPROBACIÓN DEL DELITO.**

**CUARTO.-** La autoridad investigadora ejerció acción penal contra **MARÍA DEL ROSARIO MORENO VÁZQUEZ,** por su probable responsabilidad en la comisión del delito de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN,** previsto y sancionado por el artículo 138, de la Ley General de Población; ilícito sobre el cual, versará el primer análisis, sin importar se afecte el orden en que la autoridad consignadora consignó los presentes hechos.

Antes de entrar al estudio de los medios de prueba, es necesario verificar que se haya dado cumplimiento al requisito de procedibilidad, por ser de estudio oficioso y preferente, como lo establece el artículo 143, de la Ley

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ____________

MESA ____________

NUMERO ____________

General de Población; cuyo texto dice:

*"El ejercicio de la acción penal por parte del Ministerio Público Federal, en los casos de delito a que esta Ley se refiere, estará sujeto a la querella que en cada caso formule la Secretaría de Gobernación".*

Del precepto transcrito se colige que el delito materia del ejercicio de la acción penal, sólo será perseguible ***a petición*** de la Secretaría de Gobernación.

En cuanto a la querella y los requisitos de procedibilidad equivalentes, el artículo 113 del Código Federal de Procedimientos Penales, dispone:

***"Artículo 113.*** *El Ministerio Público y sus auxiliares, de acuerdo con las órdenes que reciban de aquéllos, están obligados a proceder de oficio a la investigación de los delitos de que tengan noticia. La averiguación previa no podrá iniciarse de oficio en los casos siguientes:*

***"I. Cuando se trate de delitos en los que solamente se pueda proceder por querella necesaria, si ésta no se ha presentado.***

***"II. Cuando la ley exija algún requisito previo, si éste no se ha llenado.***

*"Si el que inicia una investigación no tiene a su cargo la función de proseguirla, dará inmediata cuenta al que corresponda legalmente practicarlas.*

*"Cuando para la prosecución de un delito se requiera querella u otro acto equivalente, a título de requisito de procedibilidad, el Ministerio Público de la Federal actuará según lo previsto en la Ley Orgánica de la Procuraduría General de la República, para conocer si formula querella o satisface el requisito de procedibilidad equivalente".*

IA GENERAL PUBLICA ENERAL DE IONES Y JURIDICA

ACTUACIONES

Ahora bien, es evidente que la petición que la Secretaría de Gobernación debe presentar ante el Ministerio Público de la Federación para dar inicio a la averiguación previa, constituye un requisito previo al ejercicio de la acción penal, sin el cual no podría llegar a ejercerse válidamente ésta; en consecuencia, tal petición constituye un verdadero requisito de procedibilidad, equivalente a la querella de parte legitimada.

Así, de las constancias que constan en autos, se observa que se encuentra satisfecho el requisito de procedibilidad, con la comparecencia de **NATIVIDAD CARRERA SANTIAGO,** de dieciséis de mayo de dos mil cinco, ante la autoridad investigadora, en su carácter de Subdirectora de Regulación y Control Migratorio, de la Secretaría de Gobernación, donde en dicho acto, presentó oficio datado el dieciséis de mayo de dos mil cinco, donde formuló querella contra María del Rosario Moreno Vásquez, por su probable responsabilidad en el delito Violación a la Ley General de Población, previsto por el numeral 138, de dicho ordenamiento; oficio de que se trata, que fue debidamente ratificado.

Esto es así, en función de que el servidor público que presentó la querella, está debidamente facultado para hacerlo, como Subdirectora de Regulación y Control Migratorio, de la Secretaría de Gobernación, calidad que acreditó con copia certificada del nombramiento de fecha quince de abril de dos mil dos.

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

Tiene aplicación a lo anterior, la Jurisprudencia 48/2003, de la actual Primera Sala de la Suprema Corte de Justicia de la Nación, que emitió al resolver la contradicción de Tesis 143/2002-PS, consultable en la página 225, Tomo XVIII, del mes de Septiembre de 2003, Novena Época del Semanario Judicial de la Federación y su Gaceta, intitulada:

***"QUERELLA PRESENTADA POR ESCRITO. ES NECESARIA SU RATIFICACIÓN CUANDO SE FORMULE EN REPRESENTACIÓN DE LA SECRETARÍA DE GOBERNACIÓN, POR DELITOS PREVISTOS EN LA LEY GENERAL DE POBLACIÓN.*** *Cuando la querella se formule por escrito en los casos de delitos a que la Ley General de Población se refiere, debe ratificarse por el funcionario que la suscriba, en representación de la Secretaría de Gobernación; lo anterior es así, pues cuando se presenta verbalmente, de acuerdo con lo dispuesto en los artículos 118 y 119 del Código Federal de Procedimientos Penales, en relación con el artículo 143 de la ley señalada, el Ministerio Público debe cerciorarse de que el servidor público que la formula es representante de la Secretaría de Gobernación y que tiene facultades para presentarla en su nombre, hacer constar que se hizo de manera verbal en el acta que levante y recabar la firma o huella digital de quien la presente, por lo que en este caso resulta ociosa la ratificación. En cambio, cuando la querella es presentada ante el Ministerio Público por escrito, éste debe cerciorarse de la legitimación del funcionario que la suscribe, recabar la firma o huella digital de quien la presente, y sobre todo, asegurarse de la identidad del querellante, así como de la autenticidad de los documentos en que aparezca formulada y requerir*

*al signante para que se conduzca bajo protesta de decir verdad, con el apercibimiento de las penas en que incurre quien declara falsamente ante las autoridades, lo cual sólo será posible llevar a cabo a través de la ratificación del escrito ante el órgano investigador, con la presencia del querellante, con lo que incluso se da certeza sobre la persona en quien habrá de fincarse la responsabilidad correspondiente, en el supuesto de que resulten falsos los hechos afirmados en el escrito de querella.*

Ponderado lo anterior, procede el estudio del cuerpo del delito previsto y sancionado por el párrafo primero, del artículo 138, de la Ley General de Población, haciéndose necesario para tal efecto, la transcripción del mencionado normativo:

***"Artículo 138.-*** *Se impondrá pena de seis a doce años de prisión y multa de cien a diez mil días de salario mínimo general vigente en el Distrito Federal en el momento de consumar la conducta, a quien por sí o por interpósita persona, con propósito de tráfico, pretenda llevar o lleve mexicanos o extranjeros a internarse a otro país, sin la documentación correspondiente.*

*Igual pena se impondrá a quien por sí o por medio de otro u otros introduzca, sin la documentación correspondiente expedida por autoridad competente, a uno o varios extranjeros a territorio mexicano o, con propósito de tráfico, los albergue o transporte por el territorio nacional con el fin de ocultarlos para evadir la revisión migratoria.*

*A quien a sabiendas proporcione los medios, se preste o sirva para llevar a cabo las conductas descritas en los párrafos anteriores, se le impondrá pena de uno a*



PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

*cinco años de prisión y multa hasta el equivalente a cinco mil días de salario mínimo conforme al que esté vigente en el Distrito Federal.*

*Se aumentarán hasta en una mitad las penas previstas en los párrafos precedentes, cuando las conductas descritas se realicen respecto de menores de edad; o en condiciones o por medios que pongan en peligro la salud, la integridad o la vida de los indocumentados; o bien cuando el autor del delito sea servidor público".*

De la anterior cita textual, inciden diversos elementos normativos, tales como: **"interpósita persona", "llevar", "tráfico", "extranjeros"**, "**internar a otro país**", y "**sin la documentación correspondiente**"; mismos que en particular, son susceptibles de valorarse ya sea jurídica o culturalmente.

Así, en relación con el primero de los elementos de referencia *"interpósita persona"*, tal concepto, deviene de una simple interpretación del numeral 13, fracción IV, del Código Penal Federal; esto es, relativo al grado de participación llevándose a cabo sirviéndose de otro (autor mediato).

Por su parte, la expresión *"tráfico"*, se constituye por el elemento subjetivo específico que caracteriza el desarrollo de la acción y su contexto proviene de una valoración de tipo cultural, referida al comercio en general (negociar o comerciar), ilícito clandestino que lleva a cabo el sujeto activo en relación con aquellas personas que pretenden introducir a otro país, sin contar

con la documentación correspondiente.

Resulta aplicable la tesis XIX.1o. J/11, sostenida por el Primer Tribunal Colegiado del Décimo Noveno Circuito, visible en la página 941, Tomo XI, del mes de Marzo de 2000, Novena Época del Semanario Judicial de la Federación y su Gaceta, intitulada:

***"TRÁFICO DE INDOCUMENTADOS. PARA LA CONFIGURACIÓN DEL TIPO PENAL NO SE EXIGE QUE HAYA UNA CONDUCTA REITERADA.*** *Del análisis del artículo 138 de la Ley General de Población se advierte que, aun cuando hace referencia al "tráfico" de indocumentados, no se exige como elemento típico de dicha figura jurídica una conducta reiterada, pues gramaticalmente esa expresión no es sinónimo de habitualidad, sino que, de acuerdo con el Diccionario de Derecho de Rafael de Pina y Rafael de Pina Vara, tal vocablo significa "negociar o comerciar", por lo que es obvio que el ilícito en comento,* ***sólo implica el traslado ilegal de personas de un país a otro con la intención de cobrar o pretender cobrar una cantidad de dinero****; máxime que de la exposición de motivos presentada por la Cámara de Diputados del Congreso de la Unión el diecinueve de septiembre de mil novecientos noventa y seis, publicada en el Diario Oficial de la Federación el ocho de noviembre del mismo año, no se advierte que la finalidad del legislador haya sido precisamente la de exigir una conducta reiterada para que se configure el tipo penal del delito que nos ocupa (pues si así hubiera sido, lo habría plasmado de manera precisa), sino la de combatir con mayor rigor las conductas vinculadas con el traslado ilegal de seres humanos".*

En relación con el vocablo *"llevar"*, corresponde al

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

verbo núcleo rector del tipo penal, y su conceptualización proviene de una valoración de tipo cultural, siendo aquella como el dar causa suficiente para su traslado, sin contar con la documentación correspondiente.

Por su parte, el contenido semántico de la palabra *"extranjeros"*, se constituye por una calidad específica de los sujetos que son motivo de la acción, y su contexto proviene de una valoración de tipo jurídica, derivada de lo que dispone el artículo 2, fracción IV, de la Ley de Nacionalidad, y se le concibe como aquél que no tiene la nacionalidad mexicana.

Ahora, en lo relativo a *"internarse a otro país"*, se refiere a una circunstancia espacial derivada del tránsito de nuestra República a otra, se trata así mismo, de un elemento normativo de valoración cultural, cuya conceptualización es la de cruzar nuestras fronteras territoriales hacia diversa Nación.

En lo inherente al último elemento normativo *"sin la documentación correspondiente"*, su contexto dimana de una valoración de tipo jurídica, derivada del contenido de la Ley General de Población y su Reglamento, de los cuales se desprende como concepto genérico la serie de trámites y requisitos migratorios que se deben satisfacer para poder ingresar o en su caso, salir del país.

Ahora bien, en el caso a estudio, en términos de los artículos 168 y 180, del Código Federal de Procedimientos Penales y de las constancias que

integran la causa, reseñadas en el considerando que antecede, se advierte que no se encuentran debidamente acreditados los requisitos y condiciones a que aluden tales preceptos.

Así, los elementos que integran el cuerpo del delito a estudio son:

*La conducta, constituida por diferentes actividades; a saber:*

*a) Que alguien, por sí, o por interpósita persona pretenda llevar o lleve a mexicanos o extranjeros a internarse a otro país, con propósito de tráfico;*

*b) Que por sí, o por medio de otro u otros, introduzca a uno o varios extranjeros a territorio mexicano;*

*Que lo estipulado en los dos incisos, se efectúe sin que aquéllos cuenten con la documentación correspondiente expedida por autoridad competente.*

*O bien,*

*c) Que los albergue o transporte en territorio nacional con el fin de ocultarlos para evadir la revisión migratoria, con el propósito de tráfico;*

De la anterior descripción, se observa también que contiene las expresiones semánticas, así, en relación con el elemento normativo *"territorio mexicano"*, le corresponde una valoración de tipo cultural y se asimila a la locución *"República"*, comprendida no sólo como las

ESTADOS UNIDOS MEXICANOS
PODER JUDICIAL DE LA FEDERACION
SECCION
MESA
NUMERO

partes integrantes de la Federación, sino también el territorio insular, el mar territorial, la plataforma continental, los zócalos submarinos, las aguas de los mares territoriales e inclusive, el espacio situado sobre el mismo territorio nacional.

Ahora, el elemento normativo *"transporte" y "albergue",* que corresponden los verbos alternativos que conforman el tipo penal en cita, su contexto proviene de una valoración de tipo cultural, lo cual, el primero, se entiende como trasladar o llevar de un área geográfica a otra a uno o varios extranjeros, específicamente, dentro del territorio nacional; mientras que el segundo, significa dar hospedaje o resguardo en un lugar a una persona.

El vocablo *"ocultar"*, está constituido por el elemento subjetivo específico que caracteriza el desarrollo de la acción y su contexto proviene de una valoración de tipo cultural, que se traduce en impedir que una persona sea vista.

La expresión *"evadir la revisión migratoria",* se refiere a la finalidad de la acción y se traduce en una valoración de tipo jurídica cultural, con base en el artículo 7°, fracción II de la Ley General de Población, que establece la facultad de la Secretaría de Gobernación, de vigilar la entrada y salida de los nacionales y extranjeros y revisar la documentación de los mismos, en apego a la Ley y su Reglamento, en relación con el artículo 11°, que refiere que el tránsito internacional de personas por

puertos, aeropuertos y fronteras, sólo puede realizarse por los lugares designados para ello con la intervención de las autoridades migratorias.

En la especie, los referidos elementos objetivos y normativos, quedaron acreditados en autos; en lo referente al primero, es decir, ***que el activo, por sí, pretenda llevar o lleve a mexicanos o extranjeros a internarse a otro país,*** se demuestra con la declaración de **JOSÉ FERNANDO CASTILLO TAPIA,** quien ante el Agente del Ministerio Público de la Federación, el veintidós de marzo de dos mil cuatro, en lo que interesa manifestó que el veintiocho de febrero de dos mil cuatro, aproximadamente a las diecisiete horas, se dirigió al domicilio de la señora **MORENO VÁZQUEZ** y su menores hijos, [redacted] Naucalpan, Estado de México, [redacted] a fin de recogerlos, lo recibió la señora María Elena Vázquez Saucedo, madre de ROSARIO, quien le entregó una carta de **MARÍA DEL ROSARIO MORENO VÁZQUEZ,** en la cual le decía que había sustraído a sus hijos de ese domicilio para salir de la Ciudad, sin mencionar el destino de ellos, **teniendo la sospecha de que se había trasladado a otro país, posiblemente a los Estados Unidos de América, ya que la señora MORENO VÁZQUEZ, le había comentado que en el mes de octubre de dos mil tres, se había casado con una**

PODER JUDICIAL DE LA FEDERACION

SECCION ____
MESA ____
NUMERO ____

**persona norteamericana que conoció por Internet**, solicitándole permiso para sacar a sus hijos del país, a lo cual él se negó, indicándole que era mejor, que primero se estabilizara como pareja y luego, convendrían el permiso y las visitas recíprocas, situación que tampoco ella aceptó.

Asimismo, el día uno de marzo del año pasado, se presentó en la escuela donde estudiaban sus hijos, que era el Colegio La Salle en el Estado de México, donde entabló comunicación con los compañeros de sus hijos, enterándose que la señora **MARÍA DEL ROSARIO MORENO VÁZQUEZ** y sus menores hijos, **habían abandonado el país por vía aérea, el día veintisiete de febrero de dos mil cuatro, utilizando los servicios de la empresa Aereoméxico en el vuelo seiscientos treinta y seis, con destino a Atlanta Georgia, comentándoles sus hijos que su destino final era la Ciudad de Salem Alabama,** [redacted] [redacted] **registrado a nombre del señor RONALD COONLEY,** persona con la que se había casado la señora **ROSARIO MORENO VÁZQUEZ**, quien pudiese tener como domicilios: [redacted] Smiths, AL, y [redacted] Phenix City AL, [redacted] Columbus GA [redacted] así como Berrien Springs Michigan, además del ubicado

ACTUACIONES

en [redacted] Albano, NY, [redacted] todos en los Estados Unidos de América; del mismo modo, por platicas que había tenido con compañeros de su hijo, quien se comunicaba con ellos a través de internet, comentándoles que posiblemente viajarían fuera de los Estados Unidos de América, pero sin conocer el destino, ni cuando sería efectuado ese viaje.

Posteriormente, indicó que se constituyó ante el Juzgado Décimo de lo familiar en el Distrito Federal, donde solicitó se le concediera la custodia, de sus menores hijos [redacted], y ante sus dudas sobre si sus hijos habían salido del país, se presentó en la ventanilla de informes de la Delegación Naucalpan, en el Estado de México de la Secretaría de Relaciones Exteriores, para saber si se había expedido algún pasaporte a favor de ellos, y una persona de esa oficina, le informó, que el veintisiete de febrero de dos mil cuatro, se expidieron dichos documentos a favor de [redacted]; que la documentación legal que amparaba su permiso, se encontraba en ese domicilio, por lo cual solicitó se verificara lo anterior, al indicar el compareciente que él no extendió su permiso de manera verbal ni por escrito, ni a través de cualquier documento y por ese motivo desconocía cualquier firma o autorización existente en los archivos de esa dependencia.

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

Lo que se adminicula con lo declarado por **MARÍA ELENA VÁZQUEZ SAUCEDO** de fecha siete de abril de dos mil cuatro, quien ante el Agente del Ministerio Público de la Federación, manifestó que era madre de **MARÍA DEL ROSARIO MORENO VÁZQUEZ**, y **efectivamente el día veintiocho de febrero de dos mil cuatro, aproximadamente a las diecisiete horas o las dieciocho horas,** llegó a su domicilio el señor [REDACTED] ya que al parecer ese día iba a ver a sus hijos [REDACTED] pues al parecer cada quince días los visitaba, **al llegar le preguntó por ellos, refiriéndole que no estaban, entregándole una carta en un sobre cerrado, del trabajo de su hija, al parecer tenía el logotipo de la compañía donde trabajaba, sin percatarse del contenido, misma que le entregó su hija MARÍA DEL ROSARIO, el día veintiséis de febrero de dos mil cuatro, sin decirle a dónde se iba, y se entendía que se llevaba a sus hijos, indicándole ésta, que la carta se la entregara a FERNANDO; por su parte, el veintisiete de marzo de dos mil cuatro, aproximadamente a las siete horas, ella se fue, llevándose a sus hijos, reiterando que en ningún momento le dijo a qué lugar se iba, señalando que cuando le preguntó a dónde iba, le contestó de mala gana "ese es mi asunto", se fue y ya no regresó,** después de esa ocasión ha tenido comunicación en dos

o tres ocasiones, en el mes de marzo de dos mil cuatro, únicamente para saber cómo estaba, pero no le indicó en el lugar donde se encontraban.

Aunado a la declaración ministerial del inculpado **FRANCISCO JAVIER TOVAR MARTÍNEZ**, quien entre lo más relevante manifiesta que se desempeñaba como empleado de la Secretaría de Relaciones Exteriores, del Municipio de Naucalpan de Juárez, en el cargo de recepción de documentos para el tramite de pasaportes, y su función era principalmente la de recibir la documentación en originales y fotocopias por parte de los usuarios, siendo el caso, entre otras cosas, indicó que el día dieciséis de febrero del año dos mil cuatro, atendió a los señores JOSÉ FERNANDO CASTILLO TAPIA Y MARIA DEL ROSARIO MORENO VÁZQUEZ, aclarando que la señora le manifestó que tramitarían los pasaportes de los menores, lo cual atendió.

Declaraciones que por su naturaleza procesal se les otorga valor probatorio de indicio, conforme a la regla contenida en el artículo 285, del Código Federal de Procedimientos Penales, pues reúnen los requisitos del precepto 289, de ese ordenamiento, que regula la prueba testimonial, por su edad, probidad, capacidad e instrucción, tienen el criterio suficiente para juzgar el acto con imparcialidad; que el hecho de que se trata lo conocieron directamente y no por inducciones o referencias de terceros; sus declaraciones son claras y

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ____
MESA ____
NUMERO ____

precisas, sin dudas ni reticencias, convienen en la esencia del hecho y sus circunstancias, no se advierte que hayan sido impulsados por error, engaño o soborno; y por ende revelan imparcialidad.

Con lo anterior, se infiere que **MARIA DEL ROSARIO MORENO VÁZQUEZ**, internó a sus dos menores hijos [redacted] en otro país, específicamente en la ciudad de Atlanta, en los Estados Unidos de América.

Es aplicable al caso el criterio jurisprudencial sustentado tesis número 376, publicada a fojas 376 y 377, de la compilación y partes citadas, que dice:

***"TESTIGOS. APRECIACIÓN DE SUS DECLARACIONES.*** *Las declaraciones de quienes atestiguan en un proceso penal deben valorarse por la autenticidad jurisdiccional teniendo en cuenta tanto los elementos de justipreciación concretamente especificados en las normas positivas de la Legislación aplicable, como todas las demás circunstancias objetivas y subjetivas que, mediante un proceso lógico y un correcto raciocinio, conduzcan a determinar la mendacidad o veracidad del testimonio subjúdice".*

Lo que se adminicula con el oficio sin número de fecha veintidós de abril de dos mil cuatro, recibido en la Oficialía de partes de la Subprocuraduría de Investigación Especializada en Delincuencia Organizada, el veintiséis de ese mismo mes y año, suscrito por el

licenciado Antonio Jáuregui Quintana, Gerente de Asuntos Contenciosos y Flota de Aerovías de México, mediante el cual anexa **copias simples de cupones de viaje a favor de "MORENO/ MARÍA";** [redacted] **utilizados en la ruta México-Atlanta, vuelo seiscientos treinta y seis, del día veintisiete de febrero del dos mil cuatro.**

Documentales que si bien es cierto constan en copia fotostática simple, y ello les resta valor probatorio, ya que éstas se obtienen mediante métodos técnicos y científicos a través de los cuales es posible lograr la composición, arreglo o alteración de los objetos reproducidos, no puede descartarse la posibilidad de que aquélla corresponda de una manera real o auténtica al contenido exacto o fiel del documento o documentos de los que se toma, por lo que en esta etapa procesal se les concede valor de indicio al encontrarse adminiculados con diversas probazas como son el oficio sin número de fecha catorce de abril de dos mil cuatro, el Director de Normatividad de la Secretaría de Relaciones Exteriores, remitió copia certificada de los siguientes documentos:

a).- **Copia certificada** de la solicitud de pasaporte ordinario Mexicano, a nombre **MORENO VÁZQUEZ MARIA DEL ROSARIO**, donde aparece una fotografía ilegible;

b).- Copia certificada del pasaporte ilegible número 6706408, a nombre de MARIA DEL ROSARIO MORENO

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

VÁZQUEZ;

c).- Dos **solicitudes de pasaporte ordinario, Mexicano (OP-5)**, número [redacted], a nombre de los menores [redacted]

d).- Copia certificada del acta de nacimiento número [redacted] a nombre [redacted]

e).- Copia certificada del pasaporte número [redacted] a nombre de [redacted] expedido por la Secretaría de Relaciones Exteriores;

f).- Copia certificada del pasaporte número [redacted] a NOMBRE DE MORENO VÁZQUEZ MARIA DEL ROSARIO;

g).- copia certificada del acta de nacimiento número [redacted], a nombre de [redacted]

h).- Copia certificada del **pasaporte** número [redacted] a nombre de [redacted], expedido el diecisiete de diciembre de mil novecientos noventa y siete y con fecha de caducidad diecisiete de diciembre de dos mil dos, en Naucalpan, México.

Constancias que dada su calidad, adquieren el carácter de prueba documental pública, ya que su formación esta encomendada por la ley, dentro del

marco de su competencia a funcionarios públicos y fedatarios en ejercicio de sus funciones; por lo que en términos de los artículos 280 y 281 del Código Federal de Procedimientos Penales, se les asigna valor probatorio pleno.

Sobre el particular, cabe citar la siguiente Tesis, visible a página 227, Tomo XV-Enero, del Semanario Judicial de la Federación, sustentada por el Tribunal Colegiado del Vigésimo Circuito, bajo el siguiente texto:

***"DOCUMENTO PÚBLICO. QUE DEBE ENTENDERSE POR.*** *Se entiende por documento público el testimonio expedido por funcionario público, en ejercicio de sus funciones, el cual tiene valor probatorio y hace prueba plena, ya que hace fe respecto del acto contenido en el".*

Si bien estos señalamientos, tienen valor de indicio, en términos del artículo 285 del Código Federal de Procedimientos Penales; sólo resultan eficaces, para evidenciar que el veintisiete de febrero de dos mil cuatro, **MARÍA DEL ROSARIO MORENO VÁZQUEZ** , internó a sus hijos a los Estados Unidos de América, específicamente a la ciudad de Atlanta, por vía aérea, a través del vuelo seiscientos treinta y seis de la línea aérea, Flota de Aerovías de México.

Sin embargo, en relación al **elemento subjetivo**, consistente en el propósito de **tráfico**; es decir, que se lleva a cabo de manera ilícita y clandestinamente, en

792

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

relación con aquellas personas que pretenden introducir a otro país a mexicanos sin la documentación correspondiente, con la intención de cobrar o pretender cobrar una cantidad de dinero, no se encuentra acreditado, **ya que no existe en autos elemento alguno que nos permita establecer ni de manera indiciaria que MARÍA DEL ROSARIO MORENO VÁZQUEZ, obtuvo o pretendiera obtener un lucro por la introducción de sus hijos** [redacted] **territorio de los Estados Unidos de América,** en ese tenor, no se advierte comercialización o explotación alguna a la condición humana o económica de los inmigrantes que amerite la reprimenda enérgica con que se sanciona el delito en comento, además de que no existe indicador de que la activo hiciera del tráfico de indocumentados su modo de vida, ni tampoco la intención de explotar la condición humana y económica de sus menores hijos, sometiéndose a situaciones indignantes al llevarlos a internar en los Estados Unidos de América.

Al respecto, resulta aplicable la tesis sustentada por el Tercer Tribunal Colegiado del Quinto Circuito, consultable en la página 583, Tomo VIII, del mes de Noviembre de 1998, Novena Época, visible en el Semanario Judicial de la Federación y su Gaceta, cuyo texto dice:

***"TRÁFICO, PROPÓSITO DEL. ALCANCE DE***

***ESE TÉRMINO, EN CUANTO AL DELITO PREVISTO EN EL ARTÍCULO 138 DE LA LEY GENERAL DE POBLACIÓN.*** *El artículo 138 de la Ley General de Población, establece: "Se impondrá pena de seis a doce años de prisión y multa de cien a diez mil días de salario mínimo general vigente en el Distrito Federal en el momento de consumar la conducta, a quien por sí o por interpósita persona, con propósito de tráfico, pretenda llevar o lleve mexicanos o extranjeros a internarse a otro país, sin la documentación correspondiente ...". Dicho precepto, hasta antes del ocho de noviembre de mil novecientos noventa y seis, fecha en que fue reformado por decreto publicado en el Diario Oficial de la Federación, establecía en el primero de sus párrafos: "Se impondrá pena de dos a diez años de prisión y multa hasta el equivalente a diez mil días de salario mínimo conforme al que esté vigente en el Distrito Federal, a quien por sí o por medio de otros pretenda llevar o lleve nacionales mexicanos a internarse al extranjero en forma ilegal ...". La exposición de motivos que dio origen al decreto que reforma, adiciona y deroga diversas disposiciones de la Ley General de Población, consideró en este punto, que era necesario procurar un castigo mayor y severo a las personas que cometieran el delito de "tráfico de indocumentados"; por ello en el nuevo precepto se incluyó como el elemento subjetivo del ilícito en cuestión, lo relativo al "propósito de tráfico"* ***por parte del sujeto activo; la connotación que en la semántica tiene el término "tráfico", como lo consigna el Diccionario de la Real Academia de la Lengua Española, significa acción de "traficar"; y "traficar": comerciar, negociar con dinero y las mercaderías;*** *el distinto Diccionario Enciclopédico Larousse, respecto al término "tráfico" dice que es: comercio ilegal y clandestino; y "traficar", negociar, realizar operaciones comerciales generalmente ilícitas y clandestinas. De*

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

*manera que el término "propósito de tráfico" utilizado por la Ley General de Población, en el artículo de que se trata, se refiere al comercio en general, ilícito y clandestino que lleva a cabo el sujeto activo en relación con aquellas personas que pretenden introducirse en otro país, sin contar con la documentación correspondiente,* ***es decir que quien realiza esa acción obtiene necesariamente un lucro".***

Por ende, si falta este elemento, cuya función es hacer más comprensible la descripción objetiva de la conducta, entonces se estará ante la ausencia de uno de los elementos integrantes del ilícito descrito en el artículo 138, párrafo segundo, de la Ley General de Población, por lo que la conducta desplegada no daría nacimiento a la hipótesis delictiva de transportar por territorio nacional a uno o varios mexicanos o extranjeros indocumentados con propósito de tráfico y con el fin de ocultarlos para evadir la revisión migratoria.

En relación a las diversas hipótesis de la acción, consignadas en el numeral 138, ídem, atendiendo a que el sujeto activo ***por sí, o por medio de otro u otros, introduzca a uno o varios extranjeros a territorio mexicano, los albergue o transporte en territorio nacional***; no se demuestra toda vez que [redacted] son extranjeros, por el contrario se encuentra debidamente probado en autos que en términos del artículo 30, de la Constitución Política de los

Estados Unidos Mexicanos, son ciudadanos mexicanos por nacimiento en virtud de que nacieron en territorio de la República, aunado a que son hijos de padres mexicanos, por lo que en ellos no se reúne la calidad de extranjeros, por ende la hipótesis que nos ocupa no se colma.

Lo anterior se corrobora con los originales de las actas de nacimiento [redacted] expedidas respectivamente a nombre de [redacted] la primera de ellas por el Juez Central del Registro Civil en el Distrito Federal, y la segunda por la oficial número cero dos del Registro Civil, la licenciada Margarita Mariscal De Olvera, del Gobierno del Estado de México.

Medio de prueba al que se le confiere valor probatorio pleno, en términos del artículo 280, del Código Federal de Procedimientos Penales, por tratarse de una documental pública, emitida por funcionario público en ejercicio de sus funciones.

Sustenta lo anterior, la Tesis del Tribunal Colegiado del Vigésimo Circuito, publicada en el Semanario Judicial de la Federación, Tomo XV, Enero de 1995, Octava Época, visible en la página 227, del rubro siguiente:

***"DOCUMENTO PUBLICO. QUE DEBE ENTENDERSE POR."***

En consecuencia, al no ubicarse la conducta

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

atribuida a la indiciada en la hipótesis señalada, no es relevante estudiar el elemento subjetivo específico que requiere el tipo penal en cita, concerniente a que tal comportamiento típico **se realice con el fin de ocultarlos** para evadir la revisión migratoria.

En ese tenor, y sin que este órgano jurisdiccional se encuentre legalmente facultado para reclasificar los presentes hechos a diversa hipótesis delictiva, tal como **TRÁFICO DE MENORES,** puesto que no hay que perder de vista que con motivo de los mismos hechos, que originan el presente estudio, el Juzgado Séptimo de Distrito en el Estado de México, con sede en Naucalpan de Juárez, aceptó la competencia en su momento planteada a su favor por este órgano jurisdiccional, instruida por el ilícito citado con antelación, por ende, y sin que obste el desconocimiento de la etapa procedimental en que se encuentra la citada causa, es inconcuso que abordar de nueva cuenta el estudio del mismo delito, a consecuencia de los mismos hechos, se estaría recalificando la conducta, y con ello, sancionando dos veces por el mismo delito, lo cual está prohibido por el numeral 23, Constitucional, bajo el apotegma *non bis in idem*.

En ese orden de ideas, al no comprobarse la totalidad de los elementos que integran el ilícito de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN,** previsto en el artículo 138, párrafos primero y segundo

ACTUACIONES

de la Ley General de Población; por ende, no se acreditan los requisitos que para el dictado de una orden de aprehensión prevé el artículo 16, constitucional y 142, del Código Federal de Procedimientos Penales, resulta innecesario abordar el restante elemento del cuerpo del delito así como la probable responsabilidad de la inculpada, por lo que es **procedente negar la orden de aprehensión solicitada por el Agente del Ministerio Público consignador.**

Es aplicable la tesis de jurisprudencia publicada con el número 278, en la página 203, Tomo II, Materia Penal, del Apéndice al Semanario Judicial de la Federación, 1917 a 2000, que a la letra dice:

*"**PRUEBA INSUFICIENTE, CONCEPTO DE.-** La prueba insuficiente se presenta cuando del conjunto de datos que obran en la causa, no se llega ala certeza de las imputaciones hechas; por tanto, la sentencia con base en prueba insuficiente, es violatoria de garantías.*

**COMPROBACIÓN DEL DELITO**

**QUINTO.-** De igual manera, se ejerció acción penal contra **MARIA DEL ROSARIO MORENO VÁZQUEZ**, por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO y USO DE DOCUMENTO FALSO**, previstos en el artículo 244, fracción II, en relación con el artículo 246, fracción VII, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal; contra **ARTEMIO**

PODER JUDICIAL DE LA FEDERACION

SECCION ______
MESA ______
NUMERO ______

**BARRERA HERNÁNDEZ**, por su probable responsabilidad en la comisión de delito de **FALSIFICACIÓN DE DOCUMENTO**, previsto por el artículo 244, fracciones I y V, y sancionado por el artículo 243, primer párrafo, del Código Penal Federal; y, contra **FRANCISCO JAVIER TOVAR MARTÍNEZ**, por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO y USO DE DOCUMENTO PÚBLICO FALSO**, previstos por el artículo 244, fracciones V y X, y sancionados por el diverso 243, primer párrafo, del Código Penal Federal (sic), mismos que señalan lo siguiente:

*"**ARTICULO 243.-** El delito de falsificación se castigará, tratándose de documentos públicos, con prisión de cuatro a ocho años y de doscientos a trescientos sesenta días multa. En caso de documentos privados, con prisión de seis meses a cinco años y de ciento ochenta a trescientos sesenta días multa..."*

*"**ARTICULO 244.-** El delito de falsificación de documentos se comete por alguno de los medios siguientes:*

***I.- Poniendo una firma o rúbrica falsa, aunque sea imaginaria, o alterando una verdadera;***

***II.- Aprovechando indebidamente una firma o rúbrica en blanco ajena, extendiendo una obligación, liberación o cualquier otro documento que pueda comprometer los bienes, la honra, la persona o la reputación de otro, o causar un perjuicio a la sociedad, al Estado o a un tercero;***

*III.- Alterando el contexto de un documento verdadero, después de concluido y firmado, si esto cambiare su sentido sobre alguna circunstancia o punto*

*substancial, ya se haga añadiendo, enmendando o borrando, en todo o en parte, una o más palabras o cláusulas, o ya variando la puntuación;*

*IV.- Variando la fecha o cualquiera otra circunstancia relativa al tiempo de la ejecución del acto que se exprese en el documento;*

***V.- Atribuyéndose el que extiende el documento, o atribuyendo a la persona en cuyo nombre lo hace: un nombre o una investidura, calidad o circunstancia que no tenga y que sea necesaria para la validez del acto;***

*VI.- Redactando un documento en términos que cambien la convención celebrada en otra diversa en que varíen la declaración o disposición del otorgante, las obligaciones que se propuso contraer, o los derechos que debió adquirir;*

*VII.- Añadiendo o alterando cláusulas o declaraciones, o asentando como ciertos hechos falsos, o como confesados los que no lo están, si el documento en que se asientan, se extendiere para hacerlos constar y como prueba de ellos;*

*VIII.- Expidiendo un testimonio supuesto de documentos que no existen; dándolo de otro existente que carece de los requisitos legales, suponiendo falsamente que los tiene; o de otro que no carece de ellos, pero agregando o suprimiendo en la copia algo que importe una variación substancial, y*

*IX.- Alterando un perito traductor o paleógrafo el contenido de un documento, al traducirlo o descifrarlo.*

***X.- Elaborando placas, gafetes, distintivos, documentos o cualquier otra identificación oficial, sin contar con la autorización de la autoridad correspondiente.***

***"ARTICULO 246.-** También incurrirá en la pena señalada en el artículo 243:*

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ______

MESA ______

NUMERO ______

...

*VII.- El que a sabiendas hiciere uso de un documento falso o de copia, transcripción o testimonio del mismo, sea público o privado".*

Apuntado lo anterior, es de precisarse que por razón de método, se estudiará por separado el cuerpo del delito atribuido a cada uno de los inculpados; en ese tenor, primeramente se analizarán los delitos imputados a **MARIA DEL ROSARIO MORENO VÁZQUEZ**, a saber; **FALSIFICACIÓN DE DOCUMENTO PÚBLICO**, previsto en el artículo 244, fracción II, y **USO DE DOCUMENTO FALSO**, contemplado en el artículo 246, fracción VII, ambos sancionados por el artículo 243, primer párrafo, todos del Código Penal Federal.

Empero, de conformidad con lo previsto por el artículo 19, de la Constitución Política de los Estados Unidos Mexicanos, así como 134, párrafo tercero, y 168, del Código Federal de Procedimientos Penales, concernientes a que para que la autoridad judicial pueda dictar, en este caso, la orden de aprehensión, se debe precisar primeramente en que hipótesis delictiva encuadra la conducta o conductas atribuidas a la indiciada, para posteriormente verificar si con las pruebas que se aportaron en la averiguación previa, se demuestran o no los elementos del cuerpo del delito o los delitos en cuestión, así como la probable responsabilidad. Asimismo, en cumplimiento a lo

dispuesto por el artículo 163, del Código Federal de Procedimientos Penales, el Juez tiene la obligación de dictar su resolución (orden de aprehensión o auto de plazo constitucional, dado que los requisitos de fondo son los mismos para emitir ambas determinaciones), por el delito que realmente se tipifique; en consecuencia, este resolutor se encuentra facultado para modificar la clasificación hecha por la autoridad investigadora de la Federación consignadora, precisamente por que el legislador, al crear dicho precepto legal, tuvo como propósito el que existiera seguridad jurídica en todas las actuaciones de los órganos jurisdiccionales.

Al respecto, deviene aplicable la tesis emanada del Primer Tribunal Colegiado del Décimo Quinto Circuito, perteneciente al Primer Tribunal Colegiado del Décimo Quinto Circuito, consultable en el Semanario Judicial de la Federación, tomo XII, agosto de 1993, página 495, octava época, que a la letra dice:

***"ORDEN DE APREHENSIÓN. DELITO POR EL QUE DEBE GIRARSE. CORRESPONDE AL JUEZ DETERMINARLO.*** *Para obsequiarla, no es necesario que esta atienda solo al delito que el Ministerio Público que consigne estime que se dio, sino que para ello basta que el juez aprecie que los hechos consignados proyecten algún ilícito penal que se sancione con pena corporal y del que aparezca la presunta responsabilidad del indiciado, independientemente que el ilícito por el que la gire concuerde con el que consideró perpetrado el Ministerio Público, ya que este consigna hechos y sólo es al juez a quien corresponde ubicarlos en el derecho".*

ESTADOS UNIDOS MEXICANOS
PODER JUDICIAL DE LA FEDERACION
SECCION
MESA
NUMERO

Así pues, contrario a lo manifestado por la autoridad consignadora, de las constancias que integran la presente causa penal se advierte que no se está en presencia de dos delitos, sino únicamente el de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO,** previsto en el artículo 244, fracción I, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal, y no así del diverso de **USO DE DOCUMENTO FALSO,** contemplado en el artículo 246, fracción VII, ello por las razones siguientes:

En ese tenor, de la anterior transcripción se advierten los siguientes elementos para el delito citado en primer término:

***a).- La existencia de un documento público falso (elemento normativo);***

***b).- que se ponga una firma o rúbrica falsa, aunque sea imaginaria, o alterando una falsa;***

La descripción típica contiene como elementos normativos los términos ***"documento público o privado", "firma" o "rúbrica"*** los que se entienden de la siguiente manera: respecto al primero de esos conceptos, requiere de una valoración jurídica y cultural, ya que conforme al artículo 133, del Código Federal de Procedimientos Civiles, son documentos privados los que no reúnen las condiciones previstas en el artículo 129, del mencionado Código, esto es, que su formación esté encomendada por la ley, dentro de los límites de su

competencia, a un funcionario público en ejercicio de su encargo; la calidad de público se demuestra por la existencia regular sobre los documentos de los sellos, firmas u otros signos exteriores que en su caso prevengan las leyes. Por ende, serán *documentos públicos* falsos los que, carezcan de los requisitos anteriores; por su parte, el vocablo ***firma,*** se conceptualiza, según el Diccionario de la Real Academia de la Lengua Española, como el nombre y apellido, o título que una persona escribe de su propia mano en un documento para darle autenticidad o para expresar que aprueba su contenido; por su parte, ***rubrica,*** es el rasgo o conjunto de rasgos de forma determinada, que como parte de la firma pone cada cual después de su nombre o título, y que a veces va sola, esto es, no precedida del nombre o título de la persona que rubrica.

El **primero de los elementos del delito**, relativo a la existencia de documentos públicos falsos, queda debidamente colmado con el **dictamen en materia de Grafoscopia**, de fecha quince de junio de dos mil cuatro, suscrito por el perito L. Aldo Chisanto Molina, adscrito a la Dirección General de Coordinación de Servicios Periciales, dependiente de la Procuraduría General de la República, en el que previo examen de los documentos cuestionados, consistentes en: dos solicitudes de pasaporte ordinario, Mexicano (OP-5), números [redacted] [redacted] a nombre de los menores [redacted]



PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

respectivamente, de lugar de expedición, en Naucalpan de Juárez, Estado de México, datadas el dieciséis de febrero de dos mil cuatro, mismas que además presentan las siglas de la Secretaría de Relaciones Exteriores, en su margen superior izquierdo, y en cuyo reverso, se encuentra la forma OP-7, relativa al permiso que otorgan los padres o personas que ejercen la patria potestad o tutela, para la expedición de pasaporte, dicho experto concluyó que: **"PRIMERO.- NO CORRESPONDEN** POR SU EJECUCIÓN A **JOSÉ FERNANDO CASTILLO TAPIA**, LAS FIRMAS QUE SE ENCUENTRAN COMO DE ESTE, EN LOS DOCUMENTOS DESCRITOS COMO CUESTIONADOS EN EL PRESENTE DICTAMEN, CON RESPECTO A LAS FIRMAS PROPORCIONADAS COMO BASE DE COTEJO; **SEGUNDO.-** NO CORRESPONDEN POR SU EJECUCIÓN A **JOSÉ FERNANDO CASTILLO TAPIA**, LA ESCRITURA QUE SE ENCUENTRA, EN LOS DOCUMENTOS DESCRITOS COMO CUESTIONADOS EN EL PRESENTE DICTAMEN, CON RESPECTO A LA ESCRITURA PROPORCIONADA COMO BASE DE COTEJO".

Asimismo, es de relacionarse el dictamen en materia de **identificación en Grafoscopia**, de fecha diez de junio de dos mil cuatro, suscrito por los peritos Praxedis Irma García Guerrero y Rosa Flores Vázquez,

adscritos a la Dirección General de Coordinación de Servicios Periciales, dependiente de la Procuraduría General de la República, en el que obtuvieron como resultados:

**I).-** Al realizar el estudio correspondiente de la ficha decadactilar a nombre del C. Castillo Tapia José Fernando, la cual presenta la siguiente formulada dactiloscópica E-3343 I-2222, en la mano derecha, pulgar índice, medio, medio y meñique, pertenecen al tercer tipo fundamental presilla interna. Por su morfología, el anular derecho corresponde al cuarto tipo fundamental VERTICILO, SUBTIPO CONCÉNTRICO, por lo que únicamente se cotejó este, por corresponder al mismo tipo fundamental de los dactilogramas estampados en las formas OP7;

**II).-** Al realizar el estudio de los dactilogramas estampados en los formatos OP7, correspondientes al padre o tutor con la leyenda índice izquierdo corresponde al cuarto tipo fundamental VERTICILO, SUBTIPO ESPIRAL DESTROGIRO. Los dactilogramas con la leyenda índice derecho corresponden al cuarto tipo fundamental VERTICILO, SUBTIPO ESPIRAL SINESTROGIRO. **Al confrontar el dactilograma del anular derecho de la ficha decadactilar a nombre del C. CASTILLO TAPIA JOSÉ FERNANDO, contra los dactilogramas insertos en las formas OP7, no corresponde a subtipo y por ende en puntos**

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

**característicos. Las fotografías de las huellas dactilares, las formas OP7, fueron turnadas al sistema AFIS para realizar una confronta eliminatoria contra la base de datos de dicho sistema, arrojando resultados positivos con los siguientes datos: "BARRERA HERNÁNDEZ ARTEMIO", delito falsificación de documentos oficiales.** A.P., 9545/D/94 autoridad Agente del Ministerio Público de la Federación Titular de la Mesa IX-D, 39 años de edad, [redacted] con domicilio [redacted], Xochimilco, D.F., cuyo registro decadactilar está integrado en el archivo de esta institución, por lo que se procedió a realizar el estudio comparativo, tomándose como base de cotejo los dedos medianos derecho e izquierdo en base al tipo fundamental, subtipo y ubicación de puntos característicos, se realizó tomas fotográficas de la ficha decadactilar así como amplificaciones fotográficas de los mismos para realizar comparativo con las huellas dactilares estampadas en los formatos OP7 de los menores [redacted]

De todo ello se concluyó: **Primero.- Los dactilogramas impresos en la ficha decadactilar a nombre de CASTILLO TAPIA JOSÉ FERNANDO, NO CORRESPONDEN, con las impresiones dactilares estampadas en las formas OP-7, con la leyenda**

125

**índice derecho e izquierdo de los menores [redacted] A; Segundo.- Los dactilogramas estampados en la forma OP-7, con la leyenda índice derecho e izquierdo de los menores [redacted] CORRESPONDEN con las impresiones dactilares de los medios derecho e izquierdo de la ficha decadactilar a nombre de Barrera Hernández Artemio.**

Experticias con valor de indicio acorde a los artículos 285 y 288, del Código Federal de Procedimientos Penales, en razón a que fueron elaboradas por peritos oficiales, de acuerdo a las exigencias contempladas en los numerales 221 y 223, del mismo ordenamiento procesal; mismos que explicaron las técnicas empleadas que tomaron en consideración para llegar a esa determinación, y pusieron en contribución de la autoridad Investigadora, así como de quien ahora resuelve, los conocimientos especiales que tienen en sus respectivas materias; sin que hasta este momento hayan sido objetadas.

Es aplicable al respecto, la tesis emanada de la Primera Sala de la Suprema Corte de Justicia de la Nación, consultable en la página 20, tomo 49, segunda parte, del Semanario Judicial de la Federación, bajo el texto:

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

*"DICTÁMENES PERICIALES, VALORACIÓN DE LOS. Si bien es cierto que queda a criterio del juzgador darles a los dictámenes periciales el valor que estime tienen, ya que éstos sirven para ilustrarlo, pero sin que lo obliguen a aceptar el resultado de los mismos, también lo es que cuando en el proceso no existen otras constancias que desvirtúen lo asentado en dichos dictámenes, el Juez puede darles valor probatorio pleno".*

También tiene aplicación la Jurisprudencia 254, de la Primera Sala de la Suprema Corte de Justicia de la Nación, visible a página 143, Tomo II, parte SCJN, del Apéndice al Semanario Judicial de la Federación 1995, materia penal, que a la letra dice:

*"PERITOS. VALOR PROBATORIO DE SU DICTAMEN. Dentro del amplio arbitrio que la ley y la jurisprudencia reconocen a la autoridad judicial para justipreciar los dictámenes periciales, el juzgador puede negarles eficacia probatoria o concederles hasta el valor de prueba plena, eligiendo entre los emitidos en forma legal, o aceptando o desechando el único o los varios que se hubieran rendido, según la idoneidad jurídica que fundada y razonadamente determine respecto de unos y otros".*

De igual forma es aplicable la tesis XXI. 1o. 27 P, sustentada por el Primer Tribunal Colegiado del Vigésimo Primer Circuito, visible en la página 384, tomo XIV, septiembre de 1994, del Semanario Judicial de la Federación, octava época, bajo el texto:

*"PERITOS, DICTAMEN NO IMPUGNADO. Es*

*improcedente el concepto de violación constitucional por irregularidades sustantivas o adjetivas del dictamen pericial valorado en la sentencia reclamada, si dicho peritaje no fue legal y oportunamente impugnado ante el juez natural."*

Lo anterior encuentra sustento con lo declarado ministerialmente por **FERNANDO CASTILLO TAPIA**, el veintitrés de abril de dos mil cuatro, donde dijo que tal y como lo señaló en comparecencia de veintidós de marzo del año dos mil cuatro, no otorgó ninguna autorización para que se emitiera pasaporte a favor de los menores; al tener a la vista la documentación que remitió la Secretaría de Relaciones Exteriores, **donde se aprecia que existe el nombre y la rúbrica de la persona que solicitó la expedición de pasaporte a favor de los menores [REDACTED] así como la copia del pasaporte donde se lee el nombre de JOSÉ FERNANDO CASTILLO TAPIA, quien supuestamente autorizó la expedición del citado documento, al revisar los documentos que constan en el expediente, dijo que desconoce quien firmó por él, así también desconoce de quien es la firma y huella dactilar que aparece e en ambas solicitudes, de los menores y en consecuencia, no estuvo físicamente presente para presentar la solicitud o firmar o autorizar la expedición de los pasaportes**

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACIÓN

SECCION
MESA
NUMERO

de sus menores hijos, aclarando que sólo reconoce que la copia del pasaporte a favor de su menor hija [REDACTED], con fecha de expedición diecisiete de diciembre de mil novecientos noventa y siete, lo tramitó junto con la señora **MARIA DEL ROSARIO MORENO VÁZQUEZ,** por lo que desconoce cualquier otro permiso firmado por su puño y letra, del mismo modo refiere que la letra que existe en las solicitudes es de la señora MARIA DEL ROSARIO MORENO VÁZQUEZ, refiriendo que recordaba, que unos días antes que sus hijos fueran sustraídos por la madre, su pasaporte él lo tenía guardado en la recamara de su domicilio particular y que lo encontró en otro lugar, sin darle importancia, pero su hijo [REDACTED] tenía copia de las llaves de la casa, por lo que pensaba que su hija o su hijo, o la madre de estos pudo haber sustraído el pasaporte, y volverlo a dejar, ya que tenían acceso a su casa de él y por motivos de trabajo no se encontraba en el día, pero no se dio cuenta cuando pudieron sacarlo, desconociendo que se hubiera utilizado para que se tramitara la expedición de pasaportes, a favor de los menores; asimismo, en cuanto a lo manifestado en el documento de INTERPOL de fecha doce de abril del año dos mil cuatro, sólo acepta en parte, ya que efectivamente se presentó a solicitar ayuda, pues resentía que a sus hijos los había sacado del país la

señora MARÍA DEL ROSARIO MORENO VÁZQUEZ, como también lo señaló ante el Ministerio Público del Estado de México, **el día que conoció que sus hijos ya no estaban habitando en la casa** [redacted]

**considerando que hace unos meses MARÍA DEL ROSARIO MORENO, le comentó que se había casado con una persona de nombre RONALD COONLEY, de nacionalidad americana y que pensaba llevarse a sus hijos a vivir a los Estados Unidos, entonces él le dijo que no estaba de acuerdo, por lo que no les daría permiso para irse, en una primera instancia, ya que la señora MARIA ROSARIO MORENO le había dicho, que al señor COONLEY lo había conocido por Internet, además, éste era el segundo matrimonio, después del suyo, que realizaba con gentes que conocía por Internet.**

Declaración que se valora como indicio en términos del artículo 285, de Código Federal de Procedimientos Penales, y que al justipreciarse como lo dispone el diverso 289, del citado ordenamiento adquiere valor de testimonio, pues se advierte que el deponente es mayor de edad, con capacidad e instrucción necesaria para juzgar el acto, además conoció por sí mismo el hecho y no por inducciones o referencias de otros, por ende fue susceptible de apreciarlo por sus propios sentidos, siendo exposición clara y precisa, sin dudas ni



PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

reticencias, estimándose que al ser persona mayor de edad, tiene la capacidad e instrucción para juzgar el acto sobre el cual depone.

Es aplicable al respecto la tesis 1.8o.C.58C., consultable en el Semanario Judicial de la Federación, Novena Época, Tomo VI, septiembre de 1996, foja 759, cuyo texto dice:

***"TESTIMONIAL. ANÁLISIS Y VALORACIÓN DE LA PRUEBA.*** *Es de explorado derecho que las declaraciones de quienes atestiguan en un procedimiento judicial deben ser valoradas por el Juzgado, teniendo en cuenta tanto los elementos de justificación concretamente especificados en las normas positivas de la legislación aplicable, como todas las demás circunstancias, objetivas y subjetivas que, mediante un proceso lógico y un correcto raciocinio, conduzcan a determinar la mendacidad o veracidad del testigo, pues éste no sólo es un narrador de un hecho, sino ante todo de una experiencia que vio y escuchó y por ende, su declaración debe apreciarse con tal sentido crítico. Por otra parte, la valoración de la prueba testimonial implica siempre dos investigaciones, a saber: la primera relativa a la veracidad del testimonio en la que se investiga la credibilidad subjetiva del testigo; la segunda es sobre la credibilidad objetiva del testimonio, tanto de la fuente de la percepción que el testigo afirma haber recibido; como en relación al contenido y a la forma de la declaración".*

También la Jurisprudencia número 376, sustentada por la Primera Sala de la Suprema Corte de Justicia de la Nación, publicada en la página 275, del Apéndice al

Semanario Judicial de la Federación, 1917-2000, Tomo II, Materia Penal, con el rubro y texto siguientes:

*"**TESTIGOS. APRECIACIÓN DE SUS DECLARACIONES.**- Las declaraciones de quienes atestiguan en un proceso penal deben valorarse por la autoridad jurisdiccional teniendo en cuenta tantos los elementos de justipreciación concretamente especificados en las normas positivas de la legislación aplicable, como todas las demás circunstancias objetivas y subjetivas que, mediante un proceso lógico y un correcto raciocinio, conduzca a determinar la mendacidad o veracidad del testimonio subjúdice".*

Bajo este acervo probatorio, se advierte que se trata de documentos públicos, en términos del numeral 129, del Código Federal de Procedimientos Civiles, puesto que la solicitud de pasaporte ordinario, bajo la forma OP-5 y OP-7, es expedida por la Secretaría de Relaciones Exteriores, organismo de la Administración Pública Centralizada, acorde a la Ley Orgánica de la Administración Pública Federal.

Así, en cuando a su falsedad, según se desprende de dichas experticias, es inconcuso que la persona que se presentó en las oficinas de dicha Secretaría de Estado, situadas en el municipio de Naucalpan de Juárez, Estado de México, no era la legitimada para requisitar tales solicitudes, puesto del reverso de éstas, se advierte que quien realmente se apersonó lo hizo en nombre del padre de los menores [redacted]

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

, tal y como se advierte del recuadro marcado con una "x" en el campo relativo a datos del padre o tutor, además de haberse identificado con el pasaporte expedido por la Secretaría de Relaciones Exteriores, de fecha seis de noviembre de dos mil tres; circunstancias estas, que se encuentran contradichas al tenor de las probanzas señaladas con antelación, al haberse comprobado que el día dieciséis de febrero de dos mil cuatro; fecha en que se llenaron las aludidas solicitudes, tal conducta la realizó diversa persona a la que aparece su nombre, es decir, José Fernando Castillo Tapia.

Por otra parte, en relación con el **segundo de los elementos**, consistente en que se ponga una firma o rúbrica falsa, aunque sea imaginaria, o alterando una falsa, de igual manera se encuentra acreditado con los elementos convictivos reseñados y valorados con antelación, ya que de los dictámenes en Gafoscopía e identificación, se advirtió que tanto las huellas dactilares, como la firma apreciados en las dos solicitudes de pasaporte ordinario OP-5 y OP-7, no correspondían a la persona de José Fernando Castillo Tapia, sino que, al haberse hecho la compulsa con los archivos de la Agencia Federal de Investigación, se advirtió que las impresiones dactilares estampadas en dicha delegación de la Secretaría de Relaciones, correspondían a

ACTUACIONES

**"BARRERA HERNÁNDEZ ARTEMIO",** relacionado éste, con un **delito falsificación de documentos oficiales, bajo la averiguación previa** 9545/D/94; autoridad Agente del Ministerio Público de la Federación Titular de la Mesa IX-D.

Por todo lo indicado, las probanzas relatadas valoradas al tenor de lo dispuesto por los artículos 280, 285, 288 al 290 del Código Federal de Procedimientos Penales, son eficaces y aptas para tener por acreditados los elementos constitutivos del cuerpo del delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO,** previsto en el artículo 244, fracción I, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal, toda vez que unos sujetos activos, realizaron el hecho por su voluntad y fue comprobada la tipicidad a través de la regla genérica comprendida en el artículo 168 del Código Adjetivo de la materia, pues del contenido de esas constancias se llegó al conocimiento de que dichos sujetos activos, el dieciséis de febrero de dos mil cuatro, se presentaron ante la Secretaría de Relaciones Exteriores, delegación Naucalpan, Estado de México, a fin de requisitar solicitudes de pasaporte ordinario, OP-5 y OP-7, valiéndose para ello, de la circunstancia de que se estampó una firma falsa, acorde a los dictámenes de identificación y de grafoscopía, pues se concluyó que tanto las firmas como las huellas estampadas, bajo el nombre de José Fernando Castillo Tapia, realmente no

JUZGADO SEP
EN EL ESTAD
NAUCALPA

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ____
MESA ____
NUMERO ____

correspondían a éste; lesionando así el bien jurídico tutelado por los artículos 243 y 244, del Código Penal Federal, que lo es la confianza pública que debe revestir cualquier documento que se le repute al Estado, como emisor.

Por tanto, es aplicable la Jurisprudencia VI.2o. J/174 del Segundo Tribunal Colegiado del Sexto Circuito, publicada en el Semanario Judicial de la Federación, Tomo IX, Febrero de 1992, localizable en la página 96, Octava Época, que explica:

***"PRUEBA CIRCUNSTANCIAL. VALORACIÓN DE LA.*** *La prueba circunstancial se basa en el valor incriminatorio de los indicios y tiene, como punto de partida, hechos y circunstancias que están probados y de los cuales se trata de desprender su relación con el hecho inquirido, esto es, ya un dato por complementar, ya una incógnita por determinar, ya una hipótesis por verificar, lo mismo sobre la materialidad del delito que sobre la identificación del culpable y acerca de las circunstancias del acto incriminado."*

Apuntado lo anterior, resulta pertinente retomar lo relativo al hecho que en el presente estudio, no convergen en el mismo sujeto activo, la acreditación del delito de Falsificación de documento público falso, y uso del mismo, lo anterior por las siguientes consideraciones:

El numeral 246, fracción VII, del Código Penal Federal señala:

***"ARTICULO 246.-*** *También incurrirá en la pena señalada en el artículo 243:*

...

*VII.- **El que a sabiendas** hiciere uso de un documento falso o de copia, transcripción o testimonio del mismo, sea público o privado".*

En ese sentido, es conveniente acotar el alcance de los vocablos señalados en el último de los elementos, esto es, de que el sujeto activo lleve a cabo tal uso *"a sabiendas de que es falso"*, y al respecto, existe pronunciamiento de la Suprema Corte de Justicia de la Nación, en el sentido de a quiénes se les puede atribuir tal carácter de sujetos activos; así, conviene citar la tesis sustentada por la Primera Sala de nuestro máximo Tribunal, consultable en el Semanario Judicial de la Federación, tomo LXIV, visible en la página 3066, materia penal, quinta época, que a la letra dice:

***"DOCUMENTOS FALSOS, USO DE, ESTE DELITO SOLO PUEDE ATRIBUIRSE A TERCEROS EXTRAÑOS A LA FALSIFICACIÓN.*** *El artículo 246, fracción VII, del Código Penal vigente en el Distrito Federal, establece que también incurrirá en la pena señalada para el delito de falsificación de documentos públicos o privados, el que a sabiendas hiciere uso de un documento falso, sea público o privado.* ***Ahora bien, si al acusado se le motivó prisión por el delito de falsificación de un documento público, por la participación que tuvo en aquélla, es indudable que no pudo, conjuntamente, ser presunto responsable del delito de uso de documentos falsos; <u>pues este último delito solamente puede atribuirse a terceros extraños a la formación de los documentos falsificados, ya que no concibe que el mismo</u>***

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

***falsificador ignore la falsedad del documento, y sería redundante que la ley exigiera como requisito indispensable para castigar el uso de un documento falso, que se empleara con conocimiento de la falsedad;*** *y el auto de formal prisión dictado por ese delito, en las condiciones dichas, es violatorio de garantías.*

De igual manera apoya lo anterior, la tesis resuelta por la Primera Sala de la Suprema Corte de Justicia de la Nación, consultable en el Semanario Judicial de la Federación, tomo 187-192, segunda parte, visible a página 75, séptima época, que a la letra dice:

***"USO DE DOCUMENTO FALSO, INEXISTENCIA DEL.*** *La conducta realizada por la persona que falsifica un documento no está comprendida dentro de la hipótesis establecida en el artículo 246, fracción VII, del Código Penal Federal, ya que ésta se refiere a quienes usan un documento a sabiendas de su falsedad; por tanto, el falsario no queda comprendido en dicha norma, porque evidentemente tiene conocimiento de que el documento que usa es falso, es decir, si se imputa al acusado el uso de documentos apócrifos, con los que representó situaciones ficticias e intervino en la falsificación de los mismos, no puede ser responsable al mismo tiempo del uso de documentos falsos, sino solamente de la falsificación de éstos".*

Sentado lo anterior, se desprende que el sujeto activo que se encuentre dentro de la hipótesis delictiva de *uso de documento falso,* debe ser ajeno al diverso de *falsificación de documento,* puesto que de ser aquel sujeto uno de los implicados en este último ilícito, tendría con ello, un grado de participación, ya sea como autor,

cómplice, etcétera, tal y como lo señala el numeral 13, en sus distintas fracciones, del Código Penal Federal; así, de sostener que la indiciada además de tener algún grado de participación en la probable comisión de la fracción I, del numeral 244, ídem, relativo a falsificación de documento, también se le considere como autora en el diverso ilícito de uso de tal documento falso, ello implicaría indebidamente recalificar una conducta o sancionarla doblemente, transgrediendo con ello el apotegma *non bis in ídem,* recogido como garantía constitucional según lo establecido en el numeral 23, Constitucional.

En ese orden de ideas, de sancionar al falsificador de un documento por haberlo usado, se incurriría en un defectuoso encuadramiento de tipicidad, ya que no hay que perder de vista que aparte de que el sujeto activo debe ser un tercero extraño a la falsificación, en los términos apuntados, de igual manera, se tiene que para la aplicación del uso de documento, debe de lesionarse un bien jurídico distinto al de la confianza pública que es el tutelado por la falsificación, pues cuando el uso de documento falso entraña el agotamiento de la falsificación, no puede hablarse de dos conductas autónomas e independientes, sino que el relativo al uso, queda subsumido en el de falsificación, atendiendo al *principio de consunción o absorción.*

Así, al advertirse que si el dieciséis de febrero de

ESTADOS UNIDOS MEXICANOS
PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

dos mil cuatro; fecha en que se falsificaron las solicitudes de pasaporte ordinario OP-5 y OP-7, en los términos apuntados, la inculpada María del Rosario Moreno y Artemio Barrera Hernández, requisitaron dicha documentación, no obstante que al segundo no le correspondía hacerlo, dado que las formas en cita, limitaban dicho trámite al padre o tutor, en este caso de los menores en cita, es inconcuso, a la luz de una concatenación lógica y jurídica con los demás medios convictivos, que estos tenían conocimiento de la falsedad con que se estaban conduciendo, al haberse estampado una firma correspondiente únicamente al padre de dichos menores, José Fernando Castillo Tapia, por ende, y según lo abordado en párrafos precedentes, no se configura el cuerpo del delito de que **alguien a sabiendas hiciere uso de un documento falso,** ya que para que se acredite dicha circunstancia, es necesario que tal conducta la lleve quien no sea participe en la alteración de documentos.

Por su parte, sin que se inadvierta el contenido del numeral 251, del Código Penal Federal; precepto relativo a disposiciones comunes a los capítulos precedentes a donde pertenece dicho dispositivo, al estipular que si el falsario hiciere uso de los documentos u objetos falsos que se detallan en el título décimo tercero, se acumularan la falsificación y el delito que por medio de ella hubiere cometido el delincuente.

ACTUACIONES

En ese contexto, se desprende que la finalidad perseguida por el legislador, fue que se acumulen las sanciones correspondientes a la falsificación y al delito que a través de ella se cometa mediante el uso del documento hecho por falsario, lo que se conoce como *ratio legis*; en tanto que la conducta de la inculpada no puede catalogarse dentro de la expresada fracción VII del artículo 246, ya que éste último dispositivo se refiere a uso por persona distinta al falsario; así, si el propio falsario hace uso del documento, se le sancionará de acuerdo con la directriz del 251, únicamente cuando se cometa delito distinto al de la sola falsificación documentaria, cualquiera que sea el grado del mismo, excluyendo, la conducta objetiva que le es propia, al usar tal documento, como medio comisivo.

Apoya lo anterior, la jurisprudencia sustentada por el Tribunal Colegiado en Materia Penal del Séptimo Circuito, consultable en el Semanario Judicial de la Federación y su Gaceta, tomo II, septiembre de 1995, página 497, novena época, con el texto siguiente:

***"USO DE DOCUMENTO FALSO Y FALSIFICACIÓN DE DOCUMENTOS. CASO EN EL QUE EL PRIMERO SE SUBSUME EN EL SEGUNDO.*** *Cuando una persona falsifica un documento y* ***lo usa a sabiendas de ello****, no puede hablarse de la existencia de dos delitos autónomos, ya que en esa hipótesis el uso de documento falso se subsume en el de falsificación de documentos.*

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ____

MESA ____

NUMERO ____

En efecto, se reitera que el numeral 246, fracción VII, del Código Penal Federal, al establecer como elemento subjetivo específico, el relativo que *el activo a sabiendas haga uso de tal documento reputado como falso*, se tiene la nota característica y distintiva de tal figura delictiva, es decir, resulta lógico que el autor del delito de falsificación sabe lo apócrifo del documento, por lo que sería redundante la ley, si exigiera como uno de sus requisitos, contemplado como elemento, que se empleara con conocimiento de la falsedad.

Así pues, debe decirse que no están demostrados los elementos del cuerpo del ilícito de **USO DE DOCUMENTO FALSO, previsto en el artículo 246, fracción VII, y sancionado por el 243, primer párrafo, todos del Código Penal Federal;** por tanto, se actualiza la causa de **exclusión del delito** previsto en la fracción II, del artículo 15, del Código Penal Federal, y, por ende, **tampoco la probable responsabilidad** de **MARIA DEL ROSARIO MORENO VÁZQUEZ, en su comisión, por lo que en mérito de lo anterior, procede negar la orden solicitada en su contra por este último ilícito.**

**COMPROBACIÓN DE DELITO**

**SEXTO.-** Por otra parte, en relación al diverso ilícito imputado a **ARTEMIO BARRERA HERNÁNDEZ**, relativo al de **FALSIFICACIÓN DE DOCUMENTO**, previsto por el artículo 244, fracciones I y V, y sancionado por el

artículo 243, primer párrafo, del Código Penal Federal, resulta colmado.

Del contenido de dicho numeral se desprenden los siguientes elementos para el delito citado en primer término:

***a).- La existencia de un documento público falso (elemento normativo);***

***b).- que se ponga una firma o rúbrica falsa, aunque sea imaginaria, o alterando una falsa (fracción I) ; o bien,***

***c).- que se atribuya el que extienda el documento, o atribuyendo a la persona en cuyo nombre lo hace; un nombre o investidura, calidad o circunstancia que no tenga y que sea necesaria para la validez del acto (fracción V).***

El **primero de los elementos** del cuerpo del delito, quedó debidamente acreditado en autos, tal y como detalladamente se abordó al momento de estudiar dicha figura delictiva, imputada a la acusada María del Rosario Moreno, en virtud a que dada la íntima relación de los hechos, al colmarse ese elemento en aquel análisis, de igual manera el presente, puesto que las solicitudes de pasaporte ordinario OP-5 y OP-7, según se advierte de las mismas, son expedidas por la Secretaría de Relaciones Exteriores, esto es, a cargo de una dependencia perteneciente a la Administración Pública Centralizada, de conformidad con la Ley Orgánica de la Administración Pública, tienen el carácter de públicas, en términos del numeral 129, del Código Federal de

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

Procedimientos Civiles.

En relación al **segundo de los elementos,** relativo a la fracción I, de dicho numeral, de igual suerte se encuentra actualizado, ya que de los dictámenes en Gafoscopía e identificación, signados el diez y quince de junio de dos mil cuatro, respectivamente, por peritos oficiales adscritos a la Procuraduría General de la República, a los cuales se les confirió valor probatorio de indicio, en párrafos precedentes, de conformidad con el numeral 285, en relación con el 288, del Código Federal de Procedimientos Penales, se advirtió que tanto las huellas dactilares, como la firma apreciadas en las dos solicitudes de pasaporte ordinario OP-5 y OP-7, no correspondían a la persona de José Fernando Castillo Tapia, sino que, al haberse hecho la compulsa con los archivos de la Agencia Federal de Investigación, se advirtió que las impresiones dactilares estampadas en esa delegación de la Secretaría de Relaciones, correspondían a **"BARRERA HERNÁNDEZ ARTEMIO",** relacionado éste, con un **delito falsificación de documentos oficiales, bajo la averiguación previa** 9545/D/94; autoridad Agente del Ministerio Público de la Federación Titular de la Mesa IX-D, mientras que se concluyó que las firmas ahí estampadas, no fueron realizadas por José Fernando Castillo Tapia.

Por otra parte, y no obstante que con la acreditación de los dos elementos en cita, se configura

ya el cuerpo del delito en estudio, en relación con la fracción I, es de señalarse que se advierte colmado también, la diversa hipótesis contenida en la fracción V, del citado numeral 244, ídem, consistente en que *se atribuya el que extienda el documento, o atribuyendo a la persona en cuyo nombre lo hace; un nombre o investidura, calidad o circunstancia que no tenga y que sea necesaria para la validez del acto.*

Así, sirve para tal efecto las multialudidas experticias en Documentoscopía e Identificación, ya que de las mismas se desprende que la persona que el día dieciséis de febrero de dos mil cuatro, ante la Secretaría de Relaciones Exteriores, delegación Naucalpan de Juárez, Estado de México, se presentó a llenar con su firma, huellas, y demás datos, las solicitudes de pasaportes ordinarios [REDACTED], quien además se identificó con el pasaporte número [REDACTED] expedido por la Secretaría de Relaciones Exteriores de fecha seis de noviembre de dos mil tres, no fue el legitimado para ello, es decir, el señor José Fernando Castillo Tapia, ya que, según se ve de las actas de nacimiento originales, que fueron objeto de inspección por parte de la autoridad investigadora, el veintidós de marzo de dos mil cuatro, la número [REDACTED] a favor de [REDACTED] expedida por el Juez Central del Registro Civil en el Distrito Federal, y la diversa número A2929095, de fecha doce de marzo de

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

dos mil tres, a favor de [redacted] expedida por la oficial número cero dos del Registro Civil, del Gobierno del Estado de México, se advierte que José Fernando Castillo, es el padre de ambos, y por ende, según la restricción de dichos formularios, de solicitudes, el autorizado para su requisitación, al visualizarse en su reverso, el campo relativo al llenado por parte del padre o tutor; calidad específica que tenía únicamente éste último, por lo que, al haberse apersonado diverso sujeto, que según el resultado del dictamen de identificación, versado entre otras cuestiones, sobre las huellas dactilares ahí estampadas, fue el indiciado Artemio Barrera Hernández, es claro que se atribuyó, al haber extendido el documento, un nombre que no tenía, lo cual era necesario para la validez del acto, puesto que únicamente lo podía hacer, como se indicó, el padre o tutor.

Por todo lo indicado, las probanzas relatadas valoradas al tenor de lo dispuesto por los artículos 280, 285, 288 al 290 del Código Federal de Procedimientos Penales, son eficaces y aptas para tener por acreditados los elementos constitutivos del cuerpo del delito de **FALSIFICACIÓN DE DOCUMENTO,** previsto en el artículo 244, fracción I, y V, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal, toda vez que un sujeto activo, realizó el hecho por su

ACTUACIONES

voluntad y fue comprobada la tipicidad a través de la regla genérica comprendida en el artículo 168 del Código Adjetivo de la materia, pues del contenido de esas constancias se llegó al conocimiento de que dicho sujeto, el dieciséis de febrero de dos mil cuatro, se presentó junto con otra, ante la Secretaría de Relaciones Exteriores, delegación Naucalpan, Estado de México, a fin de requisitar solicitudes de pasaporte ordinario, OP-5 y OP-7, lo cual exteriorizó al estampar una firma falsa, acorde a los dictámenes de identificación y de grafoscopía, pues se concluyó que las firmas estampadas, bajo el nombre de José Fernando Castillo Tapia, realmente no correspondían a éste, al tiempo que dicho sujeto activo, quien fue uno de los que extendieron los documentos aludidos, con tal conducta, se atribuyó el nombre de José Fernando Castillo, al firmar y estampar las huellas digitales como si se hubiera tratado de éste, lo cual fue ilegal; lesionando así el bien jurídico tutelado por los artículos 243 y 244, fracción I y V, del Código Penal Federal, que lo es la confianza pública que debe revestir cualquier documento que se le repute al Estado, como emisor.

Por tanto, es aplicable la Jurisprudencia VI.2o. J/174 del Segundo Tribunal Colegiado del Sexto Circuito, publicada en el Semanario Judicial de la Federación, Tomo IX, Febrero de 1992, localizable en la página 96, Octava Época, que explica:

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

*"PRUEBA CIRCUNSTANCIAL. VALORACIÓN DE LA. La prueba circunstancial se basa en el valor incriminatorio de los indicios y tiene, como punto de partida, hechos y circunstancias que están probados y de los cuales se trata de desprender su relación con el hecho inquirido, esto es, ya un dato por complementar, ya una incógnita por determinar, ya una hipótesis por verificar, lo mismo sobre la materialidad del delito que sobre la identificación del culpable y acerca de las circunstancias del acto incriminado."*

**COMPROBACIÓN DEL DELITO**

**SÉPTIMO.-** Finalmente, también se ejerció acción penal contra **FRANCISCO JAVIER TOVAR MARTÍNEZ**, por su probable responsabilidad en la comisión de los delitos **FALSIFICACIÓN DE DOCUMENTO y USO DE DOCUMENTO PÚBLICO FALSO**, previstos por el artículo 244, fracciones V y X, y sancionados por el diverso 243, primer párrafo, del Código Penal Federal (sic), lo que se procede a su respectivo estudio.

Los elementos del cuerpo del delito del primero de los ilícitos, son:

***a).- La existencia de un documento público falso (elemento normativo);***

***b).- que se atribuya el que extienda el documento, o atribuyendo a la persona en cuyo nombre lo hace; un nombre o investidura, calidad o circunstancia que no tenga y que sea necesaria para la validez del acto (fracción V) o bien,***

**La diversa hipótesis contenida en la fracción X, de dicho numeral, como único elemento se**

**desprende:**

***Único.- que el sujeto activo elabore placas, gafetes, distintivos, documentos o cualquier otra identificación oficial, sin contar con la autorización de la autoridad correspondiente.***

Sentado lo anterior, como ya se ha abordado, el **primero de los elementos** del cuerpo del delito de la fracción V, del numeral 244, ídem, quedó acreditado en autos, al revestir las solicitudes de pasaportes OP-5 y PO-7, el carácter de documentos públicos, en términos del precepto 129, del Código Federal de Procedimientos Civiles, al tenerlos controlados la Secretaría de Relaciones Exteriores, siendo ésta, una dependencia de la Administración Pública Federal Centralizada.

Sin embargo, **el diverso elemento, no se encuentra acreditado en autos**, en virtud a que, según lo analizado en párrafos precedentes, se acreditó que un sujeto activo, indebidamente se atribuyó un nombre que no le correspondía, a fin de darle validez al acto de requisitar la solicitud de pasaportes, por ello, del caudal convictivo, solamente se advierte que fue uno solamente, por ende, no puede atribuírsele tal hecho a dos personas, máxime si se parte de la base que, dada la naturaleza y características peculiares de los documentos públicos sobre los cuales recayó la falsificación, en su reverso aparecen datos del Padre o Tutor, donde en el espacio de llenado correspondiente



ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

se encuentra marcada con una "x", el recuadro que dice "Como Padre"; además de que para realizar el trámite, un sujeto activo, se identificó con el pasaporte [redacted] expedido por la Secretaría de Relaciones Exteriores de fecha seis de noviembre de dos mil tres, esto es, dicho en otras palabras, su llenado permitía solamente al padre o tutor, sin existir la posibilidad de que concurrieran con ese carácter, diversa o diversas personas, por lo que al haberse suplantado la persona de José Fernando Castillo, es jurídicamente inadmisible que se le atribuya paralelamente ese hecho, a otra persona.

Finalmente, en relación con la diversa hipótesis contenida en la fracción X, del precepto 244, del Código Federal de Procedimientos Penales, cuyo único elemento es *que el sujeto activo elabore placas, gafetes, distintivos, documentos o* ***cualquier otra identificación oficial****, sin contar con la autorización de la autoridad correspondiente,* tales extremos no se encuentran acreditados en autos.

Al efecto, conviene relacionar las declaraciones ministeriales de **JUAN ARAMONI BURGETE,** el doce de noviembre de dos mil cuatro, entre otras cosas manifestó que se desempeñaba como delegado de la Secretaría de Relaciones Exteriores, en el Municipio de Naucalpan, Estado de México; además indicó que en relación a los documentos que sustentaban la expedición de los



pasaportes de [REDACTED] [REDACTED], era correcta, al reunir los extremos de la normatividad establecida por dicha Secretaría, y contenido en el Reglamento de Pasaportes vigente, habiendo agregado que su participación dentro del proceso de expedición, consistía en verificar la correcta integración del expediente base de la expedición para los pasaportes; que no recordaba haber tenido a la vista a los padres de los menores en cita.

También se relaciona la declaración ministerial de **ANA LUISA LOZANO GUTIÉRREZ**, rendida el doce de noviembre de dos mil cuatro, donde en esencia indicó que se desempeñaba como capturista de datos en la delegación de la Secretaría de Relaciones Exteriores, en el Municipio de Naucalpan, Estado de México, además de haber precisado que en relación con los hechos investigados, los desconocía, en virtud a que sus funciones consistían en el ingreso de datos al sistema de los expedientes previamente integrados, y revisados, lo cual no le permitía tener contacto con los usuarios.

Finalmente, la declaración ministerial de **VIRIDIANA MOLINA OLVERA,** rendida el mismo doce de noviembre de dos mil cuatro, donde en esencia indicó que se desempeñaba como digitalizadora de expedientes en la Secretaría de Relaciones Exteriores, en el Municipio de Naucalpan, Estado de México, lo que consistía en verificar los datos del expediente, integrado

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

y verificado previamente, posterior a la captura, también indicó que dada sus labores, estaba apartada de los usuarios.

Declaraciones que constituyen verdaderos testimonios, en relación a la materia a que se circunscriben, esto es, lo relativo a sus funciones, y procedimiento para la expedición de pasaportes, ya que en ese sentido, reúnen los requisitos del artículo 289, del ordenamiento legal invocado, pues provienen de personas que por su edad e instrucción, tienen la capacidad necesaria para juzgar el acto; que el hecho de que se trata lo conocieron por medio de sus sentidos y no por inducciones o referencias de terceros, además sus declaraciones son claras y precisas sin dudas ni reticencias, en cuanto a la sustancia del hecho, así como las circunstancias esenciales y no se advierte que hubieran sido impulsados por error, engaño o soborno; por tanto, sus respectivos atestos adquieren valor de indicio, en términos del artículo 285, del Código Adjetivo del fuero y materia.

ACTUACIONES

Es aplicable al caso, la Jurisprudencia número 376, sustentada por la Primera Sala de la Suprema Corte de Justicia de la Nación, publicada en la página 275, del Apéndice al Semanario Judicial de la Federación, 1917-2000, Tomo II, Materia Penal, con el texto:

***"TESTIGOS. APRECIACIÓN DE SUS DECLARACIONES.-*** *Las declaraciones de quienes*

*atestiguan en un proceso penal deben valorarse por la autoridad jurisdiccional teniendo en cuenta tantos los elementos de justipreciación concretamente especificados en las normas positivas de la legislación aplicable, como todas las demás circunstancias objetivas y subjetivas que, mediante un proceso lógico y un correcto raciocinio, conduzca a determinar la mendacidad o veracidad del testimonio subjúdice".*

En ese tenor, se advierte de cada uno de los atestes en cita, que participó de una forma u otra en la elaboración y expedición de los pasaportes solicitados, al laborar en la Secretaría de Relaciones Exteriores, delegación en Naucalpan de Juárez, Estado de México, según su dicho, y tal como consta de sus credenciales expedidas por esa dependencia, es claro que al estar dentro de sus atribuciones y facultades tal encomienda, no se puede reputar, en la especie, que la elaboración de una identificación oficial, en este caso, pasaportes, se haya concebido *"sin la autorización de la autoridad correspondiente"*, por lo que más bien, tal hipótesis es aplicable a terceros extraños a la dependencia, pues en cuyo caso de haberse incurrido en una irregularidad en su expedición, pudiese catalogarse como una falta administrativa.

Abundado en lo anterior, las facultades y atribuciones para la encomienda citada en el párrafo que antecede, tiene apoyo en el numeral 1, del Reglamento de Pasaportes, donde se confiere las facultades a la

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

Secretaría de Relaciones Exteriores, para expedir pasaportes mexicanos.

Por su parte, del numeral 10, de dicho Reglamento, se estipulan los requisitos que deberán ser cubiertos por los interesados, entre los cuales se encuentra el comparecer personalmente al trámite, llenar y firmar la solicitud, comprobar la nacionalidad mexicana, etcétera; de ahí que se desprenda que, al haberse cubierto tales, el personal actuante en el proceso de la expedición de pasaportes, los tuvo por requisitados, lo que se evidencía con los pasaportes mismos, expedidos por dicha dependencia, tal y como expresamente se asentó en el oficio de nueve de noviembre de dos mil cuatro, signado por el Director de Normatividad dependiente de la Secretaría de Relaciones Exteriores, al detallarse el personal que intervino en el proceso de su expedición, por ende, **sí existió la autorización correspondiente,** independientemente de los vicios de origen que presenta su expedición, en los términos ampliamente abordados.

Por su parte, sin que se inadvierta la externación rendida por el inculpado **FRANCISCO JAVIER TOVAR MARTÍNEZ**, quien entre lo más relevante manifiesta que se desempeñaba como empleado de la Secretaría de Relaciones Exteriores, del Municipio de Naucalpan de Juárez, en el cargo de recepción de documentos para el tramite de pasaportes, y su función era principalmente la de recibir la documentación en originales y fotocopias

por parte de los usuarios, en la cual tenía que checar y verificar que los documentos fuesen originales y que correspondiesen con los datos asentados con lo manifestado por los peticionarios. Así como verificar que las identificaciones de los peticionarios concordaran con los rasgos fisonómicos de quienes las presentaban, y ya integrado el expediente con fotocopias, se les pedía que firmaran la solicitud y la toma de huellas dactilares, para posteriormente pasar a revisión con el Delegado o Subdelegado de la Secretaría de Relaciones Exteriores, por lo anterior y en especifico con los pasaportes de los menores de edad que se encuentran anexos a este expediente, aclara que se hizo el mismo procedimiento, pues el día dieciséis de febrero del año dos mil cuatro, atendió a los señores JOSÉ FERNANDO CASTILLO TAPIA Y MARIA DEL ROSARIO MORENO VÁZQUEZ, aclarando que la señora le manifestó que tramitarían los pasaportes de los menores, lo cual atendió, pidiendo la documentación consistente en acta de nacimiento, identificación de los menores e identificación de los padres, en el cual hacen una revisión de los documentos para que estos sean correctos y al mismo tiempo estar revisando que las identificaciones concuerden fielmente con los rasgos fisonómicos de quien la presenta, así como la firma que aparece en la identificación, dándose cuenta en esos momentos que los menores jugaban con su padre, para posteriormente que integró los

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

expedientes, **les pidió a los papas que pusieran sus firmas y huellas dactilares, y ya que firmaron los papas se acercaron los menores para que el declarante les tomara las huellas y firmaran la solicitud, indicándoles que tomaran asiento,** pues pasaría la documentación con el Delegado, para su verificación, y continuación del proceso de expedición de pasaportes en las diferentes etapas del mismo, en las cuales intervienen diferentes funcionarios de esa oficina, siendo lo anteriormente narrado su función, y lo acontecido en el caso particular, en el trámite de los menores de edad, [REDACTED] eso es todo lo que le compete en relación con su función dentro de la Secretaría de relaciones Exteriores, y a preguntas que le hizo dicha Autoridad, A LA PRIMERA, Que diga el declarante, si reconoce la fotografía que aparece en el pasaporte número [REDACTED] expedido a favor de JOSÉ FERNANDO CASTILLO TAPIA, el cual se encuentra anexo a al presente indagatoria, y que dicha persona fuera la misma que acudió en compañía de MARIA DEL ROSARIO MORENO VÁZQUEZ, para la expedición de los pasaportes de sus menores hijos, en la Delegación de la Secretaría de Relaciones Exteriores, en el Municipio de Naucalpan de Juárez, Estado de México, RESPUESTA: Si es la misma persona que se presentó conmigo, pues en la fila que se forma para atención y

recepción de documentos, se encontraban los señores FERNANDO CASTILLO TAPIA Y MARIA DEL ROSARIO MORENO VÁZQUEZ, a los cuales reconozco plenamente y como las mismas personas que atendió. A LA SEGUNDA. Que diga el declarante como es físicamente JOSÉ FERNANDO CASTILLO TAPIA, RESPUESTA.- es una persona de aproximadamente un metro con setenta centímetros de alto, de complexión mediana, y vistiendo de traje y teniendo buen estado físico, A LA TERCERA.- Que diga el declarante como es físicamente MARÍA DEL ROSARIO MORENO VÁZQUEZ. RESPUESTA No recuerdo bien su estado físico. Al respecto, el Ministerio Público de la Federación dio fe que el denunciante JOSÉ FERNANDO CASTILLO TAPIA tiene rasgos físicos notablemente diferentes a los asentados como ciertos por FRANCISCO JAVIER TOVAR MARTÍNEZ.

Declaración en trato, que se le confiere valor de indicio, en términos del numeral 285, del Código Federal de Procedimientos Penales, puesto que como se consideró en párrafos precedentes, en cuyo caso de haber incurrido en alguna inobservancia relacionada con la normatividad que regía su actuar en tales expediciones, ello resultaría en todo caso, una responsabilidad administrativa, sin embargo, se reitera, que la autorización correspondiente sí se llevó a cabo por la delegación de la Secretaría de Relaciones

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ______
MESA ______
NUMERO ______

Exteriores.

Por las razones expuestas, ante la incomprobación del cuerpo del delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO**, previsto por el artículo 244, fracciones V y X, sancionado por el diverso 243, primer párrafo, del Código Penal Federal, debe negarse la orden de aprehensión solicitada en su contra, al actualizarse la causa de **exclusión del delito** previsto en la fracción II, del artículo 15, del Código Penal Federal, y, por ende, **tampoco la probable responsabilidad** de **FRANCISCO JAVIER TOVAR MARTÍNEZ, en su comisión.**

**COMPROBACIÓN DEL DELITO**

**OCTAVO.-** La autoridad consignadora, ejerció acción penal por el referido **FRANCISCO JAVIER TOVAR MARTÍNEZ**, por su probable responsabilidad en la comisión del delito de **USO DE DOCUMENTO PÚBLICO FALSO**, previsto por el artículo 246, fracción VII, del Código Penal Federal, y sin que se inadvierta la circunstancia relativa a que en los puntos resolutivos de la consignación en trato, se haya omitido precisar el dispositivo que prevé el ilícito en cita, ya que al estudiarse la averiguación previa de manera íntegra, se desprende que al inicio de la consignación, la autoridad investigadora, ya tipifica la probable comisión del ilícito en comento, encuadrándola en el precepto 246, fracción VII, y como precepto sancionador, el diverso 243, del

ACTUACIONES

157

Código Penal Federal.

Sentado lo anterior, de dicho precepto regulador, se advierten los siguientes elementos:

***a).- La existencia de un documento público o privado falso (elemento objetivo); o bien,***

***b).- La existencia de una copia; o***

***c) La existencia de una transcripción, o***

***d) La existencia de testimonio, todos de tal documento;***

***e) Que el sujeto activo use ese documento, o bien, copia, trascripción, o testimonio del mismo (elemento normativo) y;***

***f).- Lo anterior, según corresponda, a sabiendas de que es falso (elemento subjetivo específico).***

La descripción típica contiene como elementos normativos los términos ***"usar", "documento público o privado", "copia", transcripción" y "testimonio",*** los que se entienden de la siguiente manera: respecto al primero de esos conceptos, además de constituir el núcleo del tipo, requiere de una valoración cultural, cuya connotación se refiere a que alguien se haga servir de algo; el segundo elemento, requiere de una valoración jurídica y cultural, ya que conforme al artículo 133, del Código Federal de Procedimientos Civiles, son documentos privados los que no reúnen las condiciones previstas en el artículo 129, del mencionado Código, esto es, que su formación esté encomendada por la ley, dentro de los límites de su competencia, a un funcionario

ESTADOS UNIDOS MEXICANOS
PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

público en ejercicio de su encargo; la calidad de público se demuestra por la existencia regular sobre los documentos de los sellos, firmas u otros signos exteriores que en su caso prevengan las leyes. Por ende, serán *documentos públicos* falsos los que, carezcan de los requisitos anteriores; por su parte, el vocablo *copia,* se conceptualiza como la reproducción literal de un escrito o de una partidura; *la transcripción,* significa la representación de elementos fonéticos, fonológicos, léxicos o morfológicos de una lengua o dialecto mediante un sistema de escritura; finalmente, la frase *testimonio,* es el instrumento autorizado por un escribano o notario, en que se dá fe de un hecho, se traslada total o parcialmente un documento, o se le resume por vía de relación.

Ahora según el contexto probatorio debidamente valorado en los considerandos que preceden, se tiene que el presente estudio se ha ceñido a documentos públicos, por lo que el elemento en estudio, es el relativo a la *existencia del documento público falso,* mismo que queda debidamente colmado, por las razones y consideraciones derecho que se tienen por reproducidas, en obvio de dilaciones y por economía procesal.

En lo que concierne al diverso elemento consistente en que el *sujeto activo use ese documento, y el diverso relativo a que tal circunstancia sea a sabiendas de que es falso,* su estudio se hará de manera integral, dada su

íntima relación así como flexibilidad en su comprobación.

Al respecto, tales elementos no se encuentran colmados, toda vez que si bien se advierte de la testimonial a cargo de Francisco Javier Tovar Martínez, la cual se valora como indicio, conforme al numeral 285, del Código Federal de Procedimientos Penales, que éste, dada la naturaleza de su trabajo, tuvo indefectiblemente que hacer uso de las solicitudes para pasaporte OP-5 y OP-7, que se reputan falsas, al haber precisado que al desempeñarse como empleado de la Secretaría de Relaciones Exteriores, del Municipio de Naucalpan de Juárez, en el cargo de recepción de documentos para el tramite de pasaportes, su función era principalmente la de recibir la documentación.

En ese tenor, si bien el sujeto activo usó los aludidos documentos falsos, en razón de su encargo, también lo es que el elemento subjetivo distinto al dolo, relativo a que su conducta fuese a sabiendas de su falsedad, no se encuentra acreditado; así, partiendo de la dificultad de comprobar dicho elemento, tal acreditación no puede alcanzarse de un modo objetivo, pues no es algo que se pueda apreciar aisladamente de un modo material, ya que por estar inmerso en la conciencia, no se puede advertir directa y objetivamente, al ser intangible para los sentidos, sino a través de operaciones intelectuales que parten del análisis de hechos plenamente demostrados en autos por otros

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

medios convictivos, conforme a las reglas de la prueba circunstancial previstas por el artículo 286, del Código Federal de Procedimientos Penales, es por ello, la necesidad de que primeramente se deban demostrar los elementos de carácter objetivo, para arribar a la verdad buscada.

En ese tenor, en la especie no se desprenden elementos que hagan considerar lo anterior, puesto que si bien, según el dicho del indicado Francisco Javier Tovar, se encargaba de recepcionar la documentación relativa al trámite de pasaportes, así como verificar la identidad de los comparecientes en relación a las identificaciones que presentaban, la inobservancia de la normatividad aplicable en ese tópico, no necesariamente nos debe llegar a concluir que el autor de la conducta, al habérsele presentado un documento falso, obligatoriamente sabía de ello, pues, cabe la posibilidad de que a razón de una torpeza o falta de precaución se suscitó ello.

En ese sentido, no se aprecia ni aún indiciariamente, que el sujeto activo tuviese alguna relación, vínculo o amistad con los diversos coinculpados, a fin de que tal circunstancia pudiese ser indiciaria para arribar al conocimiento de que tenía conocimiento del uso de un documento falso, puesto que es de considerar que, en el supuesto de conocerse personalmente los implicados, no se puede alegar por

parte de ellos, que se les presentase una persona suplantando a uno de sus conocidos, y dicha irregularidad no sea apreciada; ahora bien, sin que se inadvierta la certificación hecha por la autoridad investigadora, al momento de rendir su declaración el inculpado en trata, en el sentido de que al haber dado éste, las características físicas de la persona que se presentó ante la delegación aludida, a requisitar los formatos de pasaporte, las mismas, eran diferentes a las presentadas por José Fernando Castillo, ello, como se indicó líneas arriba, no lleva inexorablemente a concluir que lo hizo con conocimiento de su falsedad, toda vez que se estaría partiendo de inferencias meramente subjetivas, sin sustento creditic io alguno.

Así pues, debe decirse que no están demostrados los elementos del cuerpo del ilícito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO Y USO DE DOCUMENTO FALSO**, previsto por el artículo 244, fracciones V y X, y 246, fracción VII, respectivamente, ambos sancionados por el diverso 243, primer párrafo, del Código Penal Federal; por tanto, se actualiza la causa de **exclusión del delito** previsto en la fracción II, del artículo 15, del Código Penal Federal, y, por ende, **tampoco la probable responsabilidad** de **FRANCISCO JAVIER TOVAR MARTÍNEZ, en su comisión, por lo que en mérito de lo anterior, procede negar la orden solicitada en su contra.**

ESTADOS UNIDOS MEXICANOS
PODER JUDICIAL DE LA FEDERACION
SECCION
MESA
NUMERO

Es aplicable la tesis de jurisprudencia publicada con el número 278, en la página 203, Tomo II, Materia Penal, del Apéndice al Semanario Judicial de la Federación, 1917 a 2000, que a la letra dice:

*"PRUEBA INSUFICIENTE, CONCEPTO DE.- La prueba insuficiente se presenta cuando del conjunto de datos que obran en la causa, no se llega ala certeza de las imputaciones hechas; por tanto, la sentencia con base en prueba insuficiente, es violatoria de garantías.*

**PROBABLE RESPONSABILIDAD PENAL**

**NOVENO.-** La probable responsabilidad penal de **MARIA DEL ROSARIO MORENO VÁZQUEZ**, en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO**, previsto en el artículo 244, fracción I, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal, así como la relativa a **ARTEMIO BARRERA HERNÁNDEZ**, en la comisión de delito de **FALSIFICACIÓN DE DOCUMENTO,** previsto por el artículo 244, fracciones I y V, y sancionado por el artículo 243, primer párrafo, del Código Penal Federal, se encuentra acreditada en términos del artículo 13, fracción IV, del Código Penal Federal, en relación con la inculpada, mientras que en lo concerniente a el encausado, de conformidad con la fracción II, del precepto 13, ídem, como enseguida se abordará, con todos y cada uno de los elementos reseñados en el considerando que antecede.

ACTUACIONES

Efectivamente, el cuerpo del delito y la responsabilidad son conceptos diferentes, ya que el primero se refiere a cuestiones impersonales, relativas a la verificación de un hecho tipificado por la ley, y la segunda radica en la atribución de la causación del resultado a una persona; los mismos medios de convicción sirven para acreditar ambos extremos, ya que en ese caso, por un lado puede revelar la existencia de un hecho determinado como delito y por el otro la atribuibilidad de la acción a un sujeto determinado; por tanto, tener por justificadas ambas premisas con los mismos datos probatorios no trae como consecuencia infracción a las formalidades del procedimiento.

Sirve de apoyo a lo anterior la Jurisprudencia número 500, visible en la página trescientos ochenta y cuatro del Apéndice al Semanario Judicial de la Federación 1917-2000, Tomo II, Materia Penal, Segunda Parte, que a la letra dice:

***"CUERPO DEL DELITO Y PRESUNTA RESPONSABILIDAD, PRUEBA POR LOS MISMOS ELEMENTOS.-*** *Si bien es cierto que cuerpo del delito y la presunta responsabilidad resultan ser conceptos diferentes, en virtud de que el primero se refiere a cuestiones impersonales relativas a la verificación de un hecho tipificado por la ley como delito, independientemente de la autoría de la conducta, y la segunda radica en la atribución de la causación del resultado a una persona; también lo es que, puede suceder que un medio de convicción sirva para acreditar ambos extremos, ya que en ese caso, por un lado puede*

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

*revelar la existencia de un hecho determinado como delito y por el otro atribuir la comisión del suceso a un sujeto específico; por tanto, tener por justificadas ambas premisas con los mismos datos probatorios no trae como consecuencia una violación de garantías."*

Al respecto, destacan por su relevancia demostrativa, el **dictamen en materia de Grafoscopia**, de fecha quince de junio de dos mil cuatro, suscrito por el perito L. Aldo Chisanto Molina, adscrito a la Dirección General de Coordinación de Servicios Periciales, dependiente de la Procuraduría General de la República, en el que previo examen de los documentos cuestionados, consistentes en: dos solicitudes de pasaporte ordinario, Mexicano (OP-5), números 6290 y 6289, a nombre de los menores [REDACTED] respectivamente, de lugar de expedición, en Naucalpan de Juárez, Estado de México, datadas el dieciséis de febrero de dos mil cuatro, mismas que además presentan las siglas de la Secretaría de Relaciones Exteriores, en su margen superior izquierdo, y en cuyo reverso, se encuentra la forma OP-7, relativa al permiso que otorgan los padres o personas que ejercen la patria potestad o tutela, para la expedición de pasaporte, dicho experto concluyó que: **"PRIMERO.- NO CORRESPONDEN** POR SU EJECUCIÓN A **JOSÉ FERNANDO CASTILLO TAPIA**, LAS FIRMAS QUE SE

ENCUENTRAN COMO DE ESTE, EN LOS DOCUMENTOS DESCRITOS COMO CUESTIONADOS EN EL PRESENTE DICTAMEN, CON RESPECTO A LAS FIRMAS PROPORCIONADAS COMO BASE DE COTEJO; **SEGUNDO.-** NO CORRESPONDEN POR SU EJECUCIÓN A **JOSÉ FERNANDO CASTILLO TAPIA**, LA ESCRITURA QUE SE ENCUENTRA, EN LOS DOCUMENTOS DESCRITOS COMO CUESTIONADOS EN EL PRESENTE DICTAMEN, CON RESPECTO A LA ESCRITURA PROPORCIONADA COMO BASE DE COTEJO".

Asimismo, es de relacionarse el dictamen en materia de **identificación en Grafoscopia**, de fecha diez de junio de dos mil cuatro, suscrito por los peritos Praxedis Irma García Guerrero y Rosa Flores Vázquez, adscritos a la Dirección General de Coordinación de Servicios Periciales, dependiente de la Procuraduría General de la República, en el que obtuvieron como resultados:

**I).-** Al realizar el estudio correspondiente de la ficha decadactilar a nombre del C. Castillo Tapia José Fernando, la cual presenta la siguiente formulada dactiloscópica E-3343 I-2222, en la mano derecha, pulgar índice, medio, medio y meñique, pertenecen al tercer tipo fundamental presilla interna. Por su morfología, el anular derecho corresponde al cuarto tipo fundamental VERTICILO, SUBTIPO CONCÉNTRICO,



PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

por lo que únicamente se cotejo este, por corresponder al mismo tipo fundamental de los dactilogramas estampados en las formas OP7;

II).- Al realizar el estudio de los dactilogramas estampados en los formatos OP7, correspondientes al padre o tutor con la leyenda índice izquierdo corresponde al cuarto tipo fundamental VERTICILO, SUBTIPO ESPIRAL DESTROGIRO. Los dactilogramas con la leyenda índice derecho corresponden al cuarto tipo fundamental VERTICILO, SUBTIPO ESPIRAL SINESTROGIRO. **Al confrontar el dactilograma del anular derecho de la ficha decadactilar a nombre del C. CASTILLO TAPIA JOSÉ FERNANDO, contra los dactilogramas insertos en las formas OP7, no corresponde a subtipo y por ende en puntos característicos. Las fotografías de las huellas dactilares, las formas OP7, fueron turnadas al sistema AFIS para realizar una confronta eliminatoria contra la base de datos de dicho sistema, arrojando resultados positivos con los siguientes datos: "BARRERA HERNÁNDEZ ARTEMIO", delito falsificación de documentos oficiales.** A.P., 9545/D/94 autoridad Agente del Ministerio Público de la Federación Titular de la Mesa IX-D, 39 años de edad, [redacted] 1955, con domicilio [redacted] [redacted] Xochimilco, D.F., cuyo registro decadactilar

está integrado en el archivo de esta institución, por lo que se procedió a realizar el estudio comparativo, tomándose como base de cotejo los dedos medianos derecho e izquierdo en base al tipo fundamental, subtipo y ubicación de puntos característicos, se realizó tomas fotográficas de la ficha decadactilar así como amplificaciones fotográficas de los mismos para realizar comparativo con las huellas dactilares estampadas en los formatos OP7 de los menores [REDACTED]

De todo ello se concluyó: **Primero.- Los dactilogramas impresos en la ficha decadactilar a nombre de CASTILLO TAPIA JOSÉ FERNANDO, NO CORRESPONDEN, con las impresiones dactilares estampadas en las formas OP-7, con la leyenda índice derecho e izquierdo de los menores** [REDACTED] **SEGUNDA; Segundo.- Los dactilogramas estampados en la forma OP-7, con la leyenda índice derecho e izquierdo de los menores** [REDACTED] **CORRESPONDEN con las impresiones dactilares de los medios derecho e izquierdo de la ficha decadactilar a nombre de Barrera Hernández Artemio.**

Experticias con valor de indicio acorde a los artículos 285 y 288, del Código Federal de

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

Procedimientos Penales, en razón a que fueron elaboradas por peritos oficiales, de acuerdo a las exigencias contempladas en los numerales 221 y 223, del mismo ordenamiento procesal; mismos que explicaron las técnicas empleadas que tomaron en consideración para llegar a esa determinación, y pusieron en contribución de la autoridad Investigadora, así como de quien ahora resuelve, los conocimientos especiales que tienen en sus respectivas materias; sin que hasta este momento hayan sido objetadas.

Es aplicable al respecto, la tesis emanada de la Primera Sala de la Suprema Corte de Justicia de la Nación, consultable en la página 20, tomo 49, segunda parte, del Semanario Judicial de la Federación, bajo el rubro:

***"DICTÁMENES PERICIALES, VALORACIÓN DE LOS...".***

También tiene aplicación la Jurisprudencia 254, de la Primera Sala de la Suprema Corte de Justicia de la Nación, visible a página 143, Tomo II, parte SCJN, del Apéndice al Semanario Judicial de la Federación 1995, materia penal, con el epígrafe:

***"PERITOS. VALOR PROBATORIO DE SU DICTAMEN...".***

De igual forma es aplicable la tesis XXI. 1o. 27 P, sustentada por el Primer Tribunal Colegiado del

Vigésimo Primer Circuito, visible en la página 384, tomo XIV, septiembre de 1994, del Semanario Judicial de la Federación, octava época, intitulado:

***"PERITOS, DICTAMEN NO IMPUGNADO...".***

Lo anterior encuentra sustento con lo declarado ministerialmente por **FERNANDO CASTILLO TAPIA**, el veintitrés de abril de dos mil cuatro, donde dijo que tal y como lo señaló en comparecencia de veintidós de marzo del año dos mil cuatro, no otorgó ninguna autorización para que se emitiera pasaporte a favor de los menores; al tener a la vista la documentación que remitió la Secretaría de Relaciones Exteriores, **donde se aprecia que existe el nombre y la rúbrica de la persona que solicitó la expedición de pasaporte a favor de los menores** [redacted] [redacted] **así como la copia del pasaporte donde se lee el nombre de JOSÉ FERNANDO CASTILLO TAPIA, quien supuestamente autorizó la expedición del citado documento, al revisar los documentos que constan en el expediente, dijo que desconoce quien firmó por él, así también desconoce de quien es la firma y huella dactilar que aparece e en ambas solicitudes, de los menores y en consecuencia, no estuvo físicamente presente para presentar la solicitud o firmar o autorizar la expedición de los pasaportes**

PODER JUDICIAL DE LA FEDERACION

SECCION ____
MESA ____
NUMERO ____

**de sus menores hijos, aclarando que sólo reconoce que la copia del pasaporte a favor de su menor hija [REDACTED], con fecha de expedición diecisiete de diciembre de mil novecientos noventa y siete, lo tramitó junto con la señora MARIA DEL ROSARIO MORENO VÁZQUEZ,** por lo que desconoce cualquier otro permiso firmado por su puño y letra, del mismo modo refiere que la letra que existe en las solicitudes es de la señora MARIA DEL ROSARIO MORENO VÁZQUEZ, refiriendo que recordaba, que unos días antes que sus hijos fueran sustraídos por la madre, su pasaporte él lo tenía guardado en la recamara de su domicilio particular y que lo encontró en otro lugar, sin darle importancia, pero su hijo [REDACTED] tenía copia de las llaves de la casa, por lo que pensaba que su hija o su hijo, o la madre de éstos pudo haber sustraído el pasaporte, y volverlo a dejar, ya que tenían acceso a su casa de él y por motivos de trabajo no se encontraba en el día, pero no se dio cuenta cuando pudieron sacarlo, desconociendo que se hubiera utilizado para que se tramitara la expedición de pasaportes, a favor de los menores; asimismo, en cuanto a lo manifestado en el documento de INTERPOL de fecha doce de abril del año dos mil cuatro, sólo acepta en parte, ya que efectivamente se presentó a solicitar ayuda, pues resentía que a sus hijos los había sacado del país la

ACTUACIONES



171

señora MARÍA DEL ROSARIO MORENO VÁZQUEZ, como también lo señaló ante el Ministerio Público del Estado de México, **el día que conoció que sus hijos ya no estaban habitando en la casa de Plaza de San Jorge 15, Alteña Dos de Lomas Verdes, considerando que hace unos meses MARÍA DEL ROSARIO MORENO, le comentó que se había casado con una persona de nombre RONALD COONLEY, de nacionalidad americana y que pensaba llevarse a sus hijos a vivir a los Estados Unidos, entonces él le dijo que no estaba de acuerdo, por lo que no les daría permiso para irse, en una primera instancia, ya que la señora MARIA ROSARIO MORENO le había dicho, que al señor COONLEY lo había conocido por Internet, además, éste era el segundo matrimonio, después del suyo, que realizaba con gentes que conocía por Internet.**

Declaración que se valora como indicio en términos del artículo 285, de Código Federal de Procedimientos Penales, y que al justipreciarse como lo dispone el diverso 289, del citado ordenamiento adquiere valor de testimonio, pues se advierte que el deponente es mayores de edad, con capacidad e instrucción necesaria para juzgar el acto, además conoció por sí mismo el hecho y no por inducciones o referencias de otros, por ende fue susceptible de apreciarlo por sus propios sentidos, siendo exposición clara y precisa, sin dudas ni

PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

reticencias, estimándose que al ser persona mayor de edad, tiene la capacidad e instrucción para juzgar el acto sobre el cual depone.

Es aplicable al respecto la tesis 1.8o.C.58C., consultable en el Semanario Judicial de la Federación, Novena Época, Tomo VI, septiembre de 1996, foja 759, cuyo rubro dice:

***"TESTIMONIAL. ANÁLISIS Y VALORACIÓN DE LA PRUEBA....".***

También la Jurisprudencia número 376, sustentada por la Primera Sala de la Suprema Corte de Justicia de la Nación, publicada en la página 275, del Apéndice al Semanario Judicial de la Federación, 1917-2000, Tomo II, Materia Penal, con el rubro y texto siguientes:

***"TESTIGOS. APRECIACIÓN DE SUS DECLARACIONES...".***

ACTUACIONES

En ese tenor, se advierte la pertenencia de la conducta ilícita con sus autores, consistente en haber falsificado las formas de solicitud de pasaportes ordinarios OP-5 y OP7, números 6289 y 6290, ya que María del Rosario Moreno Vázquez y Artemio Barrera Hernández, al haber acudido ante la Secretaría de Relaciones Exteriores, delegación Naucalpan, en el Estado de México, el acusado puso una firma falsa en dichas formas, ya que él no era el padre o tutor de los menores, según se advierte de los originales de las actas

de nacimiento [redacted] expedidas respectivamente a nombre de [redacted] ya que se lee que el padre es José Fernando Castillo Tapia; por su parte, se relaciona también, el convenio exhibido en copia simple, signado por José Fernando Castillo Tapia y María del Rosario Moreno Vázquez, sobre el cual, la autoridad investigadora dio fe, advirtiéndose del mismo que dichos signantes convinieron en que la patria potestad del menor [redacted] sería ejercida por ambos.

En ese contexto, resulta inconcuso que Artemio Barrera, sirvió de instrumento para la indiciada María del Rosario Moreno, a fin de que está, al no haber contado con el consentimiento de su ex esposo José Fernando Castillo Tapia, a fin de que sus menores hijos salieran al extranjero, tuvo que valerse de aquel, para requisitar falsamente el formato de solicitud de pasaporte, y suplantar ilegalmente, el consentimiento que de tales trámites, le era propio únicamente al referido denunciante Castillo Tapia, en virtud a ser el padre de aquellos, estampando el primero, sus huellas digitales, tal y como lo concluyó el dictamen en identificación, por parte de peritos de la Procuraduría General de la República, al indicar que esas impresiones en dichos formatos, no correspondían al denunciante, sino al inculpado en trato.

JUZGADO SEPT EN EL ESTADO NAUCALPA

ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ______

MESA ______

NUMERO ______

Por todo lo indicado, las probanzas relatadas valoradas al tenor de lo dispuesto por los artículos 280, 285, 288 al 290 del Código Federal de Procedimientos Penales, **son eficaces y aptas para tener por acreditada la probable responsabilidad de la indiciada MARÍA DEL ROSARIO MORENO VÁZQUEZ,** en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO,** previsto en el artículo 244, fracción I, y sancionado por el artículo 243, primer párrafo, en relación con el precepto 13, fracción IV, todos del Código Penal Federal, **al igual que la probable responsabilidad de ARTEMIO BARRERA HERNÁNDEZ,** por el delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO,** previsto en el artículo 244, fracción I y V, y sancionado por el artículo 243, primer párrafo, en relación con la fracción II, del numeral 13, todos del Código Penal Federal, toda vez que se advirtió que aquellos fueron los sujetos activos que realizaron el hecho criminoso por su voluntad y fue comprobada la tipicidad a través de la regla genérica comprendida en el artículo 168 del Código Adjetivo de la materia, pues del contenido de esas constancias se llegó al conocimiento el dieciséis de febrero de dos mil cuatro, se presentaron ante la Secretaría de Relaciones Exteriores, delegación Naucalpan, Estado de México, a fin de requisitar solicitudes de pasaporte ordinario, OP-5 y OP-7, valiéndose para ello, de la circunstancia de que se

estampó una firma falsa por parte de Artemio Barrera, así como sus huellas dactilares, lo que esto último se constató con los dictámenes de identificación, con la finalidad de colmar ilegalmente, el consentimiento para realizar tales trámites, cuyo derecho a darlo le era dable únicamente al padre de los menores, por lo que al haberse hecho pasar por aquel, se reputa falso las solicitudes donde se asentaron firmas que no eran del denunciante, y con ello además, el indiciado Artemio, se atribuyó un nombre que no le correspondía, lo cual era necesario para la validez del acto propio del llenado de las solicitudes, al exigirse el consentimiento de ambos padres; lesionando así el bien jurídico tutelado por los artículos 243 y 244, del Código Penal Federal, que lo es la confianza pública que debe revestir cualquier documento que se le repute al Estado, como emisor.

Por tanto, es aplicable la Jurisprudencia VI.2o. J/174 del Segundo Tribunal Colegiado del Sexto Circuito, publicada en el Semanario Judicial de la Federación, Tomo IX, Febrero de 1992, localizable en la página 96, Octava Época, que explica:

***"PRUEBA CIRCUNSTANCIAL. VALORACIÓN DE LA.*** *La prueba circunstancial se basa en el valor incriminatorio de los indicios y tiene, como punto de partida, hechos y circunstancias que están probados y de los cuales se trata de desprender su relación con el hecho inquirido, esto es, ya un dato por complementar, ya una incógnita por determinar, ya una hipótesis por verificar, lo mismo sobre la materialidad del delito que*

PODER JUDICIAL DE LA FEDERACION

SECCION ______
MESA ______
NUMERO ______

*sobre la identificación del culpable y acerca de las circunstancias del acto incriminado."*

Así como la tesis de Jurisprudencia IV.2o. J/29, de publicada en la Gaceta del Semanario Judicial de la Federación, Tomo 72, Diciembre de 1993, Octava Época, página 77, con el rubro y texto, siguientes:

***"PRUEBA CIRCUNSTANCIAL, IMPORTANCIA DE LA.*** *La moderna legislación en materia penal ha relegado a segundo término la declaración confesora del acusado, a la que concede un valor indiciario que cobra relevancia sólo cuando está corroborado con otras pruebas, y, por el contrario, se ha elevado al rango de "reina de las pruebas", la circunstancial, por ser más técnica y porque ha reducido los errores judiciales. En efecto, dicha prueba está basada sobre la inferencia o el razonamiento, y tiene, como punto de partida, hechos o circunstancias que están probados y de los cuales se trata de desprender su relación con el hecho inquirido; esto es, ya un dato por completar, ya una incógnita por determinar, ya una hipótesis por verificar, lo mismo sobre la materialidad del delito que sobre la identificación del culpable y acerca de las circunstancias del acto incriminado."*

Los inculpados actuaron **dolosamente,** en términos del párrafo primero, del artículo 9º, del Código Penal Federal, esto es, la inculpada la realizó **sirviéndose de otro,** en términos del artículo 13, fracción IV, del Código Penal Federal, puesto que se advierte del caudal probatorio que el propósito de aquella era el de llevarse a sus dos hijos, a vivir al extranjero con

su nuevo esposo de nombre Ronald Coonley, hecho que no podía llevar a cabo, dada la oposición expresa de su ex marido, por lo que tuvo que valerse de Artemio Barrera Hernández, para que se hiciera pasar por su esposo al momento de hacer los trámites de expedición de pasaporte, y con ello, habiéndose falseado el llenado correspondiente de los formularios; por su parte, Artemio Barrera, realizó la conducta reprochada por sí mismo, en términos del numeral 13, fracción II, pues le bastó su propia persona para ello, al haber estampado sus huellas digitales, así como las firmas, además, dada la naturaleza de la diversa hipótesis imputada, esto es, que se haya atribuido un nombre que no tenga, también le fue suficiente su persona.

En ese sentido, realizaron la conducta típica, respecto de la cual, mantuvieron el dominio funcional del hecho, conociendo los elementos del delito y queriendo el resultado prohibido por la ley; consideración a la que se llega en atención a la forma de realización de los hechos, pero principalmente por la circunstancia de que dada la interacción diaria con el mundo exterior por parte de los inculpados, supieron lo ilícito de su actuar, así como quisieron el resultado, y sobre todo que no hay ningún dato que indique que los sujetos activos se encontraran en el supuesto contemplado por el inciso a), de la fracción VIII, del artículo 15, del Código Penal Federal, relativo al error del tipo, que es aquél que incide





PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

sobre el conocimiento de los elementos, y que en caso de haberse presentado hubiere tenido como consecuencia jurídica, la de excluir al dolo y por tanto, la tipicidad de la conducta, sin embargo, al no presentarse el error de referencia ésta subsiste.

De igual forma no existe a su favor alguna de las causas de exclusión del delito a que se refiere el artículo 15, del Código Penal Federal, en este sentido, al no existir ninguna causa que tornara lícita su conducta, se puede señalar válidamente que es antijurídica, la que realizó en pleno estado de imputabilidad, toda vez que los referidos inculpados tenían y tienen la capacidad de comprender el carácter jurídico del hecho y de motivarse de acuerdo a esa comprensión, pues no existe prueba que al momento de los hechos padeciesen de algún trastorno mental permanente o transitorio que lo hiciera carecer de dicha capacidad, actuando con plena conciencia del carácter antijurídico del hecho, ya que se condujeron de manera tal que no deja lugar a dudas que sabían de lo contrario que era su conducta con el régimen legal existente, la que realizaron con plena libertad de autodeterminación.

Es importante destacar que para el dictado de una orden de aprehensión, no se requiere de pruebas plenas que acrediten la responsabilidad penal de los indiciados, sino únicamente es necesario que se reúnan los requisitos a que se refiere el artículo 16, de la

Constitución Política de los Estados Unidos Mexicanos, y que se desprendan datos que hagan probable la responsabilidad de los inculpados.

Apoya lo anterior, la Jurisprudencia 619, del Segundo Tribunal Colegiado del Sexto Circuito, publicada en el Apéndice al Semanario Judicial de la Federación 1917-2000, Tomo II, Materia Penal, Segunda Parte, visible en la página 504, bajo el rubro y texto siguiente:

***"ORDEN DE APREHENSIÓN. SU LIBRAMIENTO NO REQUIERE DE PRUEBAS PLENAS PARA ACREDITAR LA RESPONSABILIDAD DEL INCULPADO.*** *Para dictar una orden de aprehensión no se requiere de pruebas plenas que acrediten la responsabilidad del inculpado, sino únicamente es necesario que se reúnan los requisitos a que se refiere el artículo 16 constitucional, y que se desprendan datos que hagan probable la responsabilidad del inculpado."*

En este orden de ideas, debe tenerse por demostrada la probable responsabilidad penal de **MARIA DEL ROSARIO MORENO VÁZQUEZ**, en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO,** previsto en el artículo 244, fracción I, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal, así como contra de **ARTEMIO BARRERA HERNÁNDEZ**, por su probable responsabilidad en la comisión de delito de **FALSIFICACIÓN DE DOCUMENTO**, previsto por el artículo 244, fracciones I y



PODER JUDICIAL DE LA FEDERACION

SECCION ____
MESA ____
NUMERO ____

V, y sancionado por el artículo 243, primer párrafo, del Código Penal Federal.

**DÉCIMO.-** En ese contexto y en términos del artículo 195, del Código Federal de Procedimientos Penales, en el presente caso se reúnen los requisitos contemplados en el artículo 16, Constitucional, para librar una orden de aprehensión, toda vez que existe en autos la denuncia correspondiente; los hechos que se imputan a los indiciados se encuentran previstos como delitos y se sancionan con pena privativa de libertad; además de que se encuentran acreditados los elementos del cuerpo del delito a estudio y la probable responsabilidad de los activos en su comisión y no se advierte que exista causa que extinga la acción penal, en términos del artículo 195, del Código Federal de Procedimientos Penales; **en tales condiciones lo procedente es librar ORDEN DE APREHENSIÓN, contra MARIA DEL ROSARIO MORENO VÁZQUEZ**, en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO**, previsto en el artículo 244, fracción I, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal, así contra de **ARTEMIO BARRERA HERNÁNDEZ**, por su probable responsabilidad en la comisión de delito de **FALSIFICACIÓN DE DOCUMENTO**, previsto por el artículo 244, fracciones I y V, y sancionado por el artículo 243, primer párrafo, del Código Penal Federal.



**DÉCIMO PRIMERO.-** Ahora bien, este Juzgado Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, **no es legalmente competente para continuar en el conocimiento del presente asunto**, porque de la lectura de las constancias que conforman la averiguación previa PGR/NAU/87/2004, enviada indebidamente a este órgano jurisdiccional, por la titular del Juzgado Segundo de Distrito en el Estado de México, con residencia en Naucalpan de Juárez, bajo el argumento de una supuesta acumulación entre la presente causa y la diversa 108/2004, recibida por este órgano jurisdiccional el diecinueve de julio de dos mil cuatro; no obstante que el delito previsto en el artículo 138 de la Ley General de Población, está previsto como grave por la fracción V, del artículo 194 del Código Federal de Procedimientos Penales, tal como incluso se lo hizo saber la encargada de la Oficialía de Partes Común de esos Juzgados de Distrito en el Estado de México, con residencia en Naucalpan, en la papeleta de dos de junio de dos mil cinco, con número de registro 00178/2005, por lo que se omitió dar cumplimiento a lo que disponen los artículos 142 y 432 del Código Adjetivo de la Materia que disponen:

***"Artículo 142.-... Tratándose de los delitos que el artículo 194 señala como graves, la radicación se hará de inmediato y el juez ordenará o negará la aprehensión o cateo solicitados por el Ministerio Público, dentro las veinticuatro horas contadas a***





PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

*partir del momento en que se haya acordado la radicación".*

*"Artículo 432.- La competencia por declinatoria no podrá resolverse hasta después de que se practiquen las diligencias que no admitan demora, y en caso de que haya detenido de haberse dictado el auto de formal prisión o el de libertad por falta de elementos para procesar."*

Trascripciones que de su simple lectura, se advierte que cuando se trate de delito grave señalado por el artículo 194 (como en el presente caso), el asunto debe radicase de inmediato y resolver la solicitud de orden dentro del término de veinticuatro horas contadas a partir del momento en que se haya radicado; además el último de los numerales transcritos ordena que no se puede declinar competencia hasta después de que se practiquen las diligencias que no admitan demora, por tanto no es correcto que las cuestiones de competencia se reserven para después, pues se reitera, se trata de un delito grave.

A mayor abundamiento, de la sola lectura de las mismas constancias que tomó en cuenta la titular del Juzgado Segundo de Distrito en el Estado de México con residencia en Naucalpan, al resolver el supuesto incidente de acumulación (como si se tratara de delitos no graves), se advierte claramente que los hechos se dieron en Naucalpan de Juárez Estado de México, ya que los hechos acaecieron en la Secretaría de Relaciones Exteriores del Municipio de Naucalpan de

Juárez; lugar donde se alega se falsificó y usó el documento falso, que sirvió para tramitar sendos pasaportes de los menores hijos de la aquí indiciada, al haberse puesto algunas firmas y huellas digitales como si fuesen del padre de aquellos infantes. Es decir, todo lo anterior sucedió en el territorio en el que el Juzgado Segundo de Distrito en Naucalpan de Juárez, Estado de México ejerce su jurisdicción, por ende, se soslayó la jurisprudencia sustentada por la Primera Sala de la Suprema Corte de Justicia de la Nación, consultable en el Semanario Judicial de la Federación y su Gaceta, Tomo IX, Mayo de 1999, página 267, novena época, que a la letra dice:

***"ORDEN DE APREHENSIÓN. DEBE PROVENIR DE AUTORIDAD JUDICIAL COMPETENTE.*** *El artículo 16, segundo párrafo constitucional, establece respecto de la orden de aprehensión, entre otros requisitos, que debe ser emitida por autoridad judicial; a su vez, el primer párrafo del citado precepto constitucional, garantiza la protección de la persona, al exigir que todo acto que implique una afectación a ésta, debe provenir de autoridad competente, es decir, aquella que esté facultada legalmente para emitir el acto de que se trate. Por ello, si la orden de aprehensión es un acto que afecta a la persona, pues tiene por efecto restringir de manera provisional su libertad personal o ambulatoria, con el objeto de sujetarla a un proceso penal, el juzgador que la emita, también debe ser legalmente competente para conocer del proceso penal que en su caso llegare a instruirse por el o los delitos por los que la libra, atendiéndose desde luego, a los criterios para fijar la*





PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

*competencia esto es, por territorio, materia, cuantía o conexidad".*

Destacándose que aún en el supuesto sin conceder, de que la Juez Segundo de Distrito en el Estado de México, con sede en Naucalpan, fuere incompetente para el libramiento de la orden de aprehensión, debió cumplir con lo dispuesto con los mencionados numerales 142 y 432 del Código Federal de Procedimientos Penales, porque son casos de excepción a dicha jurisprudencia, por salvaguardar el orden público, por que como ya se dijo no admiten dilación.

Precisado lo anterior, como ya se dijo, este Juzgado Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, no es competente para conocer de la causa penal 66/2005 del índice de este órgano jurisdiccional, por la cual la representación social de la Federación ejerció acción penal contra MARIA DEL ROSARIO MORENO VÁZQUEZ, por su probable responsabilidad en la comisión de los delitos de FALSIFICACIÓN DE DOCUMENTO PÚBLICO y USO DE DOCUMENTO FALSO, así como el de VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN; en contra de ARTEMIO BARRERA HERNÁNDEZ, por su probable responsabilidad en la comisión de delito de FALSIFICACIÓN DE DOCUMENTO; y, contra

ACTUACIONES

FRANCISCO JAVIER TOVAR MARTÍNEZ, por su probable responsabilidad en la comisión de los delitos de FALSIFICACIÓN DE DOCUMENTO y USO DE DOCUMENTO PÚBLICO FALSO; toda vez que de éstas actuaciones, se advierte que los hechos consignados son los mismos que originaron el inicio de la causa penal 108/2004, radicada ante este órgano jurisdiccional, contra la citada inculpada, pero por los delitos de TRÁFICO DE MENORES, respecto de la cual, mediante resolución de tres de agosto de dos mil cuatro, se resolvió declinar competencia a favor de un Juez de Distrito en turno, en el Estado de México, con residencia en Naucalpan de Juárez, en razón de haber ocurrido los hechos en dicho municipio; razón por la cual, el veintiséis de agosto de dos mil cuatro, el Juzgado Séptimo de Distrito en el Estado de México, con sede en Naucalpan, que por razón de turno le tocó conocer, informó que había aceptado la competencia planteada.

En esa tesitura, al advertirse que ésta última causa, se encuentra relacionada con la que ahora se resuelve; circunstancia que impide a este órgano jurisdiccional continuar conociendo de los hechos delictuosos de que se trata, tomándose en cuenta que el espíritu del Acuerdo General 23/2002, del Pleno del Consejo de la Judicatura Federal, tratándose de asuntos en materia penal, es el de evitar resoluciones contradictorias, que en su caso llegasen a darse, y con ello dividir la



ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION

MESA

NUMERO

continencia de la causa.

En este sentido, resulta inconcuso que el Juez Séptimo de Distrito en cita, tuvo conocimiento previo de los hechos delictuosos investigados.

Al respecto, conviene precisar que el Acuerdo General 23/2002, del Pleno del Consejo de la Judicatura Federal, que regula el funcionamiento de las oficinas de correspondencia común de los Tribunales de Circuito y Juzgados de Distrito, del Poder Judicial de la Federación, en su artículo 6º establece:

*"**Artículo 6.** Del Turno de los Asuntos Relacionados. Cuando ante las Oficinas de Correspondencia Común se presente algún asunto que tenga relación con otro resuelto o en trámite, por la intervención en ambos asuntos de las mismas partes en el procedimiento natural o constitucional y por tratarse de actos derivados del propio procedimiento, las referidas oficinas lo turnarán al órgano jurisdiccional que resolvió o en el que se trámite el anterior.*

*Para tales efectos, no se considerará que un órgano jurisdiccional federal tuvo conocimiento previo de un asunto cuando haya declarado su incompetencia por razón de la vía, o bien cuando declare el desechamiento del recurso de que se trate.*

*Tratándose de la materia penal, se considerará que un asunto es relacionado cuando se refiera a los mismos hechos, por lo que deberá turnarse al mismo órgano jurisdiccional a fin de evitar resoluciones contradictorias.*

*Fuera de los casos antes señalados, para determinar si un asunto está relacionado con otro bastará cualquier resolución que en el anterior se haya pronunciado, sin importar su sentido.*

ACTUACIONES

***En el supuesto de que en dos o más órganos jurisdiccionales federales existan asuntos relacionados en los términos antes señalados, la Oficina de Correspondencia Común deberá turnar el asunto nuevo relacionado al tribunal de Circuito o juzgado de Distrito que haya dictado la resolución más próxima en tiempo a la fecha de su presentación.***

***Si los asuntos relacionados se encuentran en trámite, el asunto nuevo se turnará al órgano jurisdiccional que haya prevenido.***

*Con el fin de evitar retraso en la impartición de justicia, los titulares de los órganos jurisdiccionales federales podrán plantear que no les corresponde el conocimiento del asunto, por razón de turno, hasta antes de la celebración de la audiencia constitucional en amparo indirecto; de que se haya listado el asunto; o bien, tratándose de algún supuesto similar a los anteriores.*

*A fin de equilibrar las cargas de trabajo, en todos los casos el sistema computarizado de turno deberá compensar de asuntos".*

Atento a lo anterior, es evidente que este Juzgado de Distrito, no es legalmente competente para seguir conociendo del presente asunto no solo por razón de territorio, sino también por conocimiento previo, porque como se razonó anteriormente, los hechos por los cuales se ejerció acción penal en esta causa, son idénticos a los hechos por los cuales el Juez Séptimo de Distrito en el Estado de México, con sede en Naucalpan de Juárez, aceptó la competencia pero por diverso delito.





ESTADOS UNIDOS MEXICANOS

PODER JUDICIAL DE LA FEDERACION

SECCION ___
MESA ___
NUMERO ___

Por tanto, se satisface plenamente el supuesto previsto en el artículo 6° del Acuerdo General 23/2002 ídem, cuya finalidad principal es la expedición de justicia pronta y expedita, y evitar el pronunciamiento de resoluciones en diversos sentidos.

Por los motivos antes expuestos, en términos del referido Acuerdo General, remítase por conducto de la Oficialía de Correspondencia Común a los Juzgados de Distrito en el Estado de México, con residencia en Naucalpan de Juárez, el presente expediente únicamente original, (dado que así se recepcionó) al Juez Séptimo de Distrito en el Estado de México, con sede en Naucalpan de Juárez, solicitándole el acuse de recibo correspondiente.

**En la inteligencia que una vez lograda la aprehensión de los indiciados de mérito, deberán ser internados en el Reclusorio Preventivo que según corresponda a la circunscripción territorial del Juzgado Séptimo de Distrito en el Estado de México, con sede en Naucalpan de Juárez, a disposición de éste.**

ACTUACIONES

Así, con fundamento en la fracción I, del artículo 468, y 472, del Código Federal de Procedimientos Penales, se **suspende el procedimiento** en la presente causa, hasta en tanto se logre la aprehensión de los indiciados, y se pronuncie al respecto el Juzgado en cita

En consecuencia, con fundamento en el artículo

41, del Código Federal de Procedimientos Penales, por conducto de la Representante Social de la Federación adscrita, gírese atento oficio al Titular de la Agencia Federal de Investigación, comunicándole lo anterior. De igual forma, en términos de lo expuesto en el artículo 17 del Código Federal de Procedimientos Penales, expídase por duplicado copia autorizada de esta resolución a dicha Agente, para los efectos legales conducentes.

En tales condiciones, déjese cuaderno de antecedentes como constancia, asimismo, háganse las anotaciones pertinentes en el libro de gobierno de este Juzgado.

En mérito de lo expuesto y con fundamento en lo señalado por los artículos 1, 14, 16, 20, 21, 104 y 133 de la Constitución Política de los Estados Mexicanos en relación con los numerales 1, 4, 6, 94, 95, 104, 142 y 168 del Código Federal de Procedimientos Penales, es de resolverse y se;

JUZGADO SEPTIM
EN EL ESTADO
NAUCALPAN

**RESUELVE**

**PRIMERO.-** Por las razones expuestas en el considerando cuarto de esta resolución, a estas que son las **CATORCE HORAS DEL DÍA DE LA FECHA, se NIEGA LA ORDEN DE APREHENSIÓN** solicitada **contra MARIA DEL ROSARIO MORENO VÁZQUEZ,** por su probable responsabilidad en la comisión del delito



PODER JUDICIAL DE LA FEDERACION

SECCION
MESA
NUMERO

de **USO DE DOCUMENTO FALSO**, previstos en el artículo 246, fracción VII, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal; asimismo, por el ilícito de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN**, previsto y sancionado por el artículo 138, de la Ley General de Población; de igual manera **se NIEGA LA ORDEN DE APREHENSIÓN solicitada contra FRANCISCO JAVIER TOVAR MARTÍNEZ,** por su probable responsabilidad en la comisión de los delitos de **FALSIFICACIÓN DE DOCUMENTO y USO DE DOCUMENTO PÚBLICO FALSO**, previstos por el artículo 244, fracciones V y X, y 246, fracción VII, respectivamente, y sancionados por el diverso 243, primer párrafo, del Código Penal Federal.

**SEGUNDO.- SE LIBRA ORDEN DE APREHENSIÓN CONTRA MARIA DEL ROSARIO MORENO VÁZQUEZ,** por su probable responsabilidad en la comisión del delito de **FALSIFICACIÓN DE DOCUMENTO PÚBLICO,** previstos en el artículo 244, fracción I, y sancionado por el artículo 243, primer párrafo, todos del Código Penal Federal; asimismo, se **LIBRA ORDEN DE APREHENSIÓN CONTRA ARTEMIO BARRERA HERNÁNDEZ,** por su probable responsabilidad en la comisión de delito de **FALSIFICACIÓN DE DOCUMENTO**, previsto por el artículo 244, fracciones I y V, y sancionado por el artículo 243, primer párrafo, del Código Penal Federal.



**TERCERO.-** Por haberse resuelto la diligencia que **no admite demora** (por tratarse, como ya se dijo en el cuerpo de esta resolución de un delito grave), **remítase de inmediato** los autos que comprenden la presente causa penal, al **Juzgado Séptimo de Distrito en el Estado de México, con sede en Naucalpan de Juárez,** por conducto de la Oficialía de Partes Común a los Juzgados de Distrito en el Estado de México, con residencia en Naucalpan de Juárez, por haberse actualizado la hipótesis de *conocimiento previo* a que alude el artículo 6, del Acuerdo General 23/2002, del Pleno del Consejo de la Judicatura Federal, en términos del considerando décimo primero de la presente resolución.

**CUARTO.-** Para el cumplimiento de esta determinación, entréguese copia certificada por duplicado a la Agente del Ministerio Público de la Federación adscrita, para que por su conducto la haga llegar al Titular de la Agencia Federal de Investigación, y designe elementos a su cargo, procedan a la localización y aprehensión, **y una vez hecho lo anterior, los dejen a disposición del Juzgado Séptimo de Distrito en el Estado de México, con sede en Naucalpan de Juárez, el interior del Reclusorio Preventivo que según corresponda.**

**QUINTO.-** Con fundamento en la fracción I, del artículo 468, y 472, del Código Federal de





833

129

PODER JUDICIAL DE LA FEDERACION

SECCION ______
MESA ______
NUMERO ______

Procedimientos Penales; se **suspende el procedimiento de la presente causa**, hasta en tanto se logre la aprehensión de los indiciados referidos y sean puestos a disposición del **Juzgado en trato.**

**SEXTO.-** Lo anterior hágase del conocimiento de la Jueza Segundo de Distrito en Estado de México, con residencia en Naucalpan de Juárez.

**SÉPTIMO.-** Háganse las anotaciones pertinentes en el Libro de Gobierno respectivo; repórtese lo anterior en la Estadística de este Juzgado.

**NOTIFÍQUESE ÚNICAMENTE A LA AGENTE DEL MINISTERIO PÚBLICO DE LA ADSCRIPCIÓN Y CÚMPLASE.**

Así lo resolvió y firma el licenciado **ARTURO CÉSAR MORALES RAMÍREZ**, Juez Tercero de Distrito de Procesos Penales Federales en el Distrito Federal, ante el Secretario que autoriza y da fe.

ACTUACIONES

La presente foja corresponde a la parte final de la resolución de fecha ocho de junio de dos mil cinco, dictada en la causa penal 66/2005, seguida contra **MARÍA DEL ROSARIO MORENO VÁZQUEZ Y OTROS,** por el delito de **VIOLACIÓN A LA LEY GENERAL DE POBLACIÓN Y OTROS.- Doy Fe.**

08 de Junio de 2005 13:30
... este Juzgado al C. Agente ... Público y dijo: que lo oye.

# PRUEBA 12

# PODER EJECUTIVO

## SECRETARIA DE GOBERNACION

**DECRETO por el que se reforman, adicionan y derogan diversos artículos del Código Penal para el Distrito Federal en Materia de Fuero Común y para toda la República en Materia de Fuero Federal, del Código Fiscal de la Federación, del Código de Procedimientos Penales para el Distrito Federal y del Código Federal de Procedimientos Penales.**

Al margen un sello con el Escudo Nacional, que dice: Estados Unidos Mexicanos.- Presidencia de la República.

**ERNESTO ZEDILLO PONCE DE LEON**, Presidente de los Estados Unidos Mexicanos, a sus habitantes sabed:

Que el Honorable Congreso de la Unión, se ha servido dirigirme el siguiente

**DECRETO**

"EL CONGRESO DE LOS ESTADOS UNIDOS MEXICANOS, D E C R E T A:

SE REFORMAN, ADICIONAN Y DEROGAN DIVERSOS ARTICULOS DEL CODIGO PENAL PARA EL DISTRITO FEDERAL EN MATERIA DE FUERO COMUN Y PARA TODA LA REPUBLICA EN MATERIA DE FUERO FEDERAL, DEL CODIGO FISCAL DE LA FEDERACION, DEL CODIGO DE PROCEDIMIENTOS PENALES PARA EL DISTRITO FEDERAL Y DEL CODIGO FEDERAL DE PROCEDIMIENTOS PENALES

**ARTICULO PRIMERO.-** Se reforman los artículos 7o., fracción III, 64, segundo y tercer párrafo, 65, 70 fracciones I, II y III, 185, 189, 243, 253 párrafo primero y la fracción I, en sus incisos e) segundo párrafo y g), 289, 364 párrafo primero y fracción I, 366 párrafos primero con sus fracciones segundo y tercero, y 400 bis; se adicionan un tercer párrafo al artículo 63, un segundo y tercer párrafo al artículo 65, un párrafo final al artículo 70 y otro al artículo 158, el artículo 196 ter, un segundo párrafo al artículo 243, el inciso l) a la fracción I del artículo 253, las fracciones VII y VIII al artículo 254, el artículo 254 ter, un segundo y tercer párrafo a la fracción I del artículo 364, un nuevo artículo 366 bis, hecho lo cual se recorre en su orden el actual artículo 366 bis, para ser el artículo 366 ter, la fracción III al artículo 368, los artículos 368 bis y 368 ter, un tercer párrafo al artículo 371, el artículo 377 y un último párrafo al artículo 400; se modifica la denominación del Título Vigésimo Tercero del Libro Segundo y se le divide en dos capítulos; y se deroga el artículo 321 del Código Penal para el Distrito Federal en Materia de Fuero Común, y para toda la República en Materia de Fuero Federal, para quedar como sigue:

**Artículo 7o.-** ...

I. a II. ...

III. Continuado, cuando con unidad de propósito delictivo, pluralidad de conductas y unidad de sujeto pasivo, se viola el mismo precepto legal.

**Artículo 63.-** ...

...

En los casos de tentativa punible de delito grave así calificado por la ley, la autoridad judicial impondrá una pena de prisión que no será menor a la pena mínima y podrá llegar hasta las dos terceras partes de la sanción máxima prevista para el delito consumado.

**Artículo 64.-** ...

En caso de concurso real, se impondrá la pena del delito que merezca la mayor, la cual podrá aumentarse con las penas que la ley contempla para cada uno de los delitos restantes, sin que exceda del máximo señalado en el Título Segundo del Libro Primero. Cuando el concurso real se integre por lo menos con un delito grave, la autoridad judicial impondrá la pena del delito que merezca la mayor, la cual deberá aumentarse con cada una de las penas de los delitos restantes, sin que exceda del máximo señalado antes mencionado.

En caso de delito continuado, se aumentará de una mitad hasta las dos terceras partes de la pena que la ley prevea para el delito cometido, sin que exceda del máximo señalado en el Título Segundo del Libro Primero.

**Artículo 65.-** La reincidencia a que se refiere el artículo 20 será tomada en cuenta para la individualización judicial de la pena, así como para el otorgamiento o no de los beneficios o de los sustitutivos penales que la ley prevé.

En caso de que el inculpado por algún delito doloso calificado por la ley como grave, fuese reincidente por dos ocasiones por delitos de dicha naturaleza, la sanción que corresponda por el nuevo delito cometido se incrementará en dos terceras partes y hasta en un tanto más de la pena máxima prevista para éste, sin que exceda del máximo señalado en el Título Segundo del Libro Primero.

En el caso del párrafo anterior, el sentenciado no podrá gozar de los beneficios o de los sustitutivos penales que la ley prevé.

**Artículo 70.-** ...

I. Por trabajo en favor de la comunidad o semilibertad, cuando la pena impuesta no exceda de cuatro años;

II. Por tratamiento en libertad, si la prisión no excede de tres años, o

III. Por multa, si la prisión no excede de dos años.

La sustitución de la pena de prisión no podrá aplicarse por el juzgador cuando se trate de un sujeto al que anteriormente se le hubiere condenado en sentencia ejecutoriada por delito doloso que se persiga de oficio.

**Artículo 158.-** ...

I. a II. ...

Si el sentenciado lo fuere por delito grave así calificado por la ley, la sanción antes citada será de uno a cuatro años de prisión.

**Artículo 185.-** Cuando varias personas de común acuerdo procuren impedir la ejecución de una obra o trabajos públicos, o la de los destinados a la prestación de un servicio público, mandados a hacer con los requisitos legales por autoridad competente, o con su autorización, serán castigadas con tres meses a un año de prisión, si sólo se hiciere una simple oposición material sin violencia. En caso de existir violencia, la pena será hasta de dos años.

**Artículo 189.-** Al que cometa un delito en contra de un servidor público o agente de la autoridad en el acto de ejercer lícitamente sus funciones o con motivo de ellas, se le aplicará de uno a seis años de prisión, además de la que le corresponda por el delito cometido.

**Artículo 196 ter.-** Se impondrá de cinco a quince años de prisión y de cien a trescientos días multa, así como decomiso de los instrumentos, objetos y productos del delito, al que:

I. Produzca, posea o realice cualquier acto u operación con precursores químicos, máquinas o elementos, con el propósito de cultivar, producir o preparar narcóticos a los que se refiere el artículo 193, en cualquier forma prohibida por la ley, o

II. Financie cualquiera de las conductas señaladas en la fracción anterior.

La misma pena de prisión y multa, así como la inhabilitación para ocupar cualquier empleo, cargo o comisión públicos hasta por cinco años, se impondrá al servidor público que, en ejercicio de sus funciones, permita o autorice cualquiera de las conductas comprendidas en este artículo.

Se consideran precursores químicos las sustancias líquidas, sólidas y gaseosas que sirven para la preparación de narcóticos, como el ácido lisérgico, efedrina, ergometrina, ergotamina, 1-fenil-2-propanona, seudoefedrina, acetona, ácido antranílico, ácido fenilacético, anhídrido acético, éter etílico, piperidina y, en su caso, sus sales, o cualquier otra sustancia con efectos semejantes.

**Artículo 243.-** El delito de falsificación se castigará, tratándose de documentos públicos, con prisión de cuatro a ocho años y de doscientos a trescientos sesenta días multa. En el caso de documentos privados, con prisión de seis meses a cinco años y de ciento ochenta a trescientos sesenta días multa.

Si quien realiza la falsificación es un servidor público, la pena de que se trate, se aumentará hasta en una mitad más.

**Artículo 253.-** Son actos u omisiones que afectan gravemente al consumo nacional y se sancionarán con prisión de tres a diez años y con doscientos a mil días multa, los siguientes:

I. ...

**a)** al **d)** ...

**e)** ...

Si se depone la conducta ilícita dentro de los dos días hábiles siguientes al momento en que la autoridad administrativa competente lo requiera, la sanción aplicable será de seis meses a tres años de prisión, o de cien a quinientos días multa;

**f)** ...

**g)** La venta con inmoderado lucro, por los productores, distribuidores o comerciantes en general. En los casos de que el lucro indebido sea inferior al equivalente a sesenta días del salario mínimo general vigente en la región y en el momento donde se consuma el delito, se sancionará con prisión de dos a seis años y de sesenta a trescientos días multa;

**h)** ...

**i)** Impedir o tratar de impedir la generación, conducción, transformación, distribución o venta de energía eléctrica de servicio público.

II. a V. ...

...

...

...

**Artículo 254.-** ...

I. a VI. ...

**VII.** Al que sin derecho realice cualquier sustracción o alteración a equipos o instalaciones de la industria petrolera a que se refiere la Ley Reglamentaria del Artículo 27 Constitucional en el Ramo del Petróleo, y

**VIII.** Al que sin derecho realice cualquier sustracción o alteración de equipos o instalaciones del servicio público de energía eléctrica.

**Artículo 254 ter.-** Se impondrá de tres meses a un año de prisión o de cien a trescientos días multa a quien, sin derecho, obstruya o impida en forma total o parcial, el acceso o el funcionamiento de cualesquiera de los equipos, instalaciones o inmuebles afectos de la industria petrolera a que se refiere la Ley Reglamentaria del Artículo 27



195

# SEGUNDA SECCION

## SECRETARIA DE GOBERNACION

**DECRETO que reforma, adiciona y deroga diversos artículos del Código Penal para el Distrito Federal en Materia de Fuero Común y para toda la República en Materia de Fuero Federal, del Código Federal de Procedimientos Penales, del Código de Procedimientos Penales para el Distrito Federal, de la Ley de Amparo Reglamentaria de los artículos 103 y 107 de la Constitución Política de los Estados Unidos Mexicanos, de la Ley de Extradición Internacional, del Código Civil para el Distrito Federal en Materia Común y para toda la República en Materia Federal, de la Ley Federal de Responsabilidades de los Servidores Públicos, de la Ley Orgánica del Tribunal Fiscal de la Federación, de la Ley del Tribunal de lo Contencioso Administrativo del Distrito Federal, de la Ley Federal para Prevenir y Sancionar la Tortura y de la Ley de Presupuesto, Contabilidad y Gasto Público Federal y de la Ley Orgánica del Poder Judicial de la Federación.**

Al margen un sello con el Escudo Nacional, que dice: Estados Unidos Mexicanos.- Presidencia de la República.

CARLOS SALINAS DE GORTARI, Presidente Constitucional de los Estados Unidos Mexicanos, a sus habitantes sabed:

Que el H. Congreso de la Unión, se ha servido dirigirme el siguiente

DECRETO

"EL CONGRESO DE LOS ESTADOS UNIDOS MEXICANOS, D E C R E T A :

SE REFORMA, ADICIONA Y DEROGA DIVERSOS ARTICULOS DEL CODIGO PENAL PARA EL DISTRITO FEDERAL EN MATERIA DE FUERO COMUN Y PARA TODA LA REPUBLICA EN MATERIA DE FUERO FEDERAL, DEL CODIGO FEDERAL DE PROCEDIMIENTOS PENALES, DEL CODIGO DE PROCEDIMIENTOS PENALES PARA EL DISTRITO FEDERAL, DE LA LEY DE AMPARO REGLAMENTARIA DE LOS ARTICULOS 103 Y 107 DE LA CONSTITUCION POLITICA DE LOS ESTADOS UNIDOS MEXICANOS, DE LA LEY DE EXTRADICION INTERNACIONAL, DEL CODIGO CIVIL PARA EL DISTRITO FEDERAL EN MATERIA COMUN Y PARA TODA LA REPUBLICA EN MATERIA FEDERAL, DE LA LEY FEDERAL DE RESPONSABILIDADES DE LOS SERVIDORES PUBLICOS, DE LA LEY ORGANICA DEL TRIBUNAL FISCAL DE LA FEDERACION, DE LA LEY DEL TRIBUNAL DE LO CONTENCIOSO ADMINISTRATIVO DEL DISTRITO FEDERAL, DE LA LEY FEDERAL PARA PREVENIR Y SANCIONAR LA TORTURA Y DE LA LEY DE PRESUPUESTO, CONTABILIDAD Y GASTO PUBLICO FEDERAL Y DE LA LEY ORGANICA DEL PODER JUDICIAL DE LA FEDERACION.

ARTICULO PRIMERO.- Del Código Penal para el Distrito Federal en Materia de Fuero Común y para toda la República en Materia de Fuero Federal, **se reforman** los artículos: 8, 9, 12 párrafos primero y segundo, 13 primer párrafo y fracciones V, VI y VIII, 15, 16, 17, 29 párrafo segundo, 30 fracciones II y III, 32 fracción VI, 34 párrafo primero, 35 párrafo cuarto, 37, 52, 60 primero y segundo párrafo y la fracción II, 61, 62, 64 segundo párrafo, 64 bis, 65, 66, 71 párrafo primero, 85 párrafo primero, 86 fracción II, 90 inciso b) de la fracción I, y fracciones VII y VIII, 93 párrafo primero, 107 párrafo segundo, 111, 115, 153, 158 primer párrafo, 164 segundo párrafo, 170, 172 bis, 173 primer párrafo, 178, 187, 193, 194, 195, 196, 197, 198, 199, 201 párrafos primero y segundo, 209, 210, 225 fracciones IX, X, XII, XVII y XX, 228 fracción I, 231 párrafo primero, 340, 341, 247 párrafo primero y fracciones II y IV en su primer párrafo, 249 primer párrafo, 250 primer párrafo y fracciones II y IV, 284, 303, 310, 323, 368 fracción I, 388 y 390. Del mismo Código **se adicionan**: Un párrafo segundo al artículo 7, dos últimos párrafos al artículo 13, un párrafo cuarto al artículo 27, recorriéndose en su orden los actuales párrafos cuarto, quinto y sexto, pasando a ser los párrafos quinto, sexto y séptimo, un artículo 31 bis, un segundo párrafo al artículo 34, recorriéndose en su orden los actuales párrafos segundo y tercero pasando a ser tercero y cuarto, al artículo 35 un último párrafo, un artículo 69 bis, un segundo y quinto párrafos del artículo 93 recorriéndose los actuales párrafos segundo y tercero para ser los párrafos tercero y cuarto, un párrafo tercero y un párrafo cuarto del artículo 110, un artículo 195 bis, un artículo 196 bis, las fracciones III y IV al artículo 231, un artículo 248 bis, un segundo párrafo al artículo 286, un artículo 321 bis, un artículo 336 bis, un artículo 388 bis; y un párrafo segundo del artículo 390 y el apéndice 1; **se derogan**: los artículos 59 bis, la fracción VI del artículo 60, el último párrafo del artículo 70, el inciso e) de la fracción I del artículo 90, una fracción XXVII al artículo 225, 299, la fracción II del artículo 303, 311, 324, 325, 326, 327, 328, el segundo párrafo de la fracción X del artículo 387; se modifican las denominaciones de los Capítulos Segundo y Cuarto del Título Tercero del Libro Primero; Capítulo I del Título Séptimo del Libro Segundo; del Capítulo Primero del Título Decimonoveno del Libro Segundo, para quedar como sigue:

**Artículo 7.**- ..................................................

En los delitos de resultado material también será atribuible el resultado típico producido al que omita impedirlo, si éste tenía el deber jurídico de evitarlo. En estos casos se considerará que el resultado es consecuencia de una conducta omisiva, cuando se determine que el que omite impedirlo tenía el deber de actuar para ello, derivado de una ley, de un contrato o de su propio actuar precedente.

..................................................

I a III.- ..................................................

**Artículo 8.**- Las acciones u omisiones delictivas solamente pueden realizarse dolosa o culposamente.

**Artículo 9.**- Obra dolosamente el que, conociendo los elementos del tipo penal, o previniendo como posible el resultado típico, quiere o acepta la realización del hecho descrito por la ley, y

Obra culposamente el que produce el resultado típico, que no previó siendo previsible o previó confiando en que no se produciría, en virtud de la violación a un deber de cuidado, que debía y podía observar según las circunstancias y condiciones personales.

**Artículo 12.**- Existe tentativa punible, cuando la resolución de cometer un delito se exterioriza realizando en parte o totalmente los actos ejecutivos que deberían producir el resultado, u omitiendo los que deberían evitarlo, si aquél no se consuma por causas ajenas a la voluntad del agente.

Para imponer la pena de la tentativa el juez tomará en cuenta, además de lo previsto en el

Artículo 107.- ........................................................

Pero una vez llenado el requisito de procedibilidad dentro del plazo antes mencionado, la prescripción seguirá corriendo según las reglas para los delitos perseguibles de oficio.

Artículo 110.- ........................................................

La prescripción de las acciones se interrumpirá también por el requerimiento de auxilio en la investigación del delito o del delincuente, por las diligencias que se practiquen para obtener la extradición internacional, y por el requerimiento de entrega del inculpado que formalmente haga el Ministerio Público de una entidad federativa al de otra donde aquél se refugie, se localice o se encuentre detenido por el mismo o por otro delito. En el primer caso también causarán la interrupción las actuaciones que practique la autoridad requerida y en el segundo subsistirá la interrupción hasta en tanto la autoridad requerida niegue la entrega o en tanto desaparezca la situación legal del detenido, que dé motivo al aplazamiento de su entrega.

La interrupción de la prescripción de la acción penal, sólo podrá ampliar hasta una mitad los plazos señalados en los artículos 105, 106 y 107 de este Código.

**Artículo 111.-** Las prevenciones contenidas en los dos primeros párrafos y en el primer caso del tercer párrafo del artículo anterior, no operarán cuando las actuaciones se practiquen después de que haya transcurrido la mitad del lapso necesario para la prescripción.

Se exceptúa de la regla anterior el plazo que el artículo 107 fija para que se satisfaga la querella u otro requisito equivalente.

**Artículo 115.-** La prescripción de la sanción privativa de libertad sólo se interrumpe aprehendiendo al reo, aunque la aprehensión se ejecute por otro delito diverso, o por la formal solicitud de entrega que el Ministerio Público de una entidad federativa haga al de otra en que aquél se encuentre detenido, en cuyo caso subsistirá la interrupción hasta en tanto la autoridad requerida niegue dicha entrega o desaparezca la situación legal del detenido que motive aplazar el cumplimiento de lo solicitado.

La prescripción de las demás sanciones se interrumpirá por cualquier acto de autoridad competente para hacerlas efectivas. También se interrumpirá la prescripción de la pena de reparación del daño o de otras de carácter pecuniario, por las promociones que el ofendido o persona a cuyo favor se haya decretado dicha reparación haga ante la autoridad fiscal correspondiente y por las actuaciones que esa autoridad realice para ejecutarlas, así como por el inicio de juicio ejecutivo ante autoridad civil usando como título la sentencia condenatoria correspondiente.

**Artículo 153.-** Si la reaprehensión del prófugo se lograre por gestiones del responsable de la evasión, se aplicarán a éste de diez a ciento ochenta jornadas de trabajo en favor de la comunidad, según la gravedad del delito imputado al preso o detenido.

**Artículo 158.-** Se impondrán de quince a noventa jornadas de trabajo a favor de la comunidad:

I y II.- ........................................................

Artículo 164.- ........................................................

Cuando el miembro de la asociación sea o haya sido servidor público de alguna corporación policial, la pena a que se refiere el párrafo anterior se aumentará en una mitad y se le impondrá, además, la destitución del empleo, cargo o comisión públicos e inhabilitación de uno a cinco años para desempeñar otro. Si el miembro de la asociación pertenece a las Fuerzas Armadas Mexicanas en situación de retiro, de reserva o en activo, de igual forma la pena se aumentará en una mitad y se le impondrá, además la baja definitiva de la Fuerza Armada a que pertenezca y se le inhabilitará de uno a cinco años para desempeñar cargo o comisión públicos.

**Artículo 170.-** Al que empleando explosivos o materias incendiarias, o por cualquier otro medio destruya total o parcialmente una nave, aeronave, u otro vehículo de servicio público federal o local, o que proporcione servicios al público, si se encontraren ocupados por una o más personas, se le aplicarán de veinte a treinta años de prisión.

Si en el vehículo de que se trate no se hallare persona alguna se aplicará prisión de cinco a veinte años.

Asimismo se impondrán de tres a veinte años de prisión y de cien a cuatrocientos días multa, sin perjuicio de la pena que corresponda por otros delitos que cometa, al que mediante violencia física, amenazas o engaño, se apodere de una nave, aeronave, máquina o tren ferroviarios, autobuses o cualquier otro medio de transporte público colectivo, interestatal o internacional, o los haga desviar de su ruta o destino.

Cuando se cometiere por servidor público de alguna corporación policial, cualquiera de los delitos que contemplan este artículo y el 168, se le impondrán, además de las penas señaladas en estos artículos, la destitución del empleo y se le inhabilitará de uno a diez años para desempeñar cargo o comisión públicos. Si quien cometiere los delitos mencionados fuere miembro de las Fuerzas Armadas Mexicanas en situación de retiro, de reserva o en activo, se le impondrá además, la baja definitiva de la Fuerza Armada a que pertenezca y, se le inhabilitará de uno a diez años para desempeñar cargo o comisión públicos.

**Artículo 172 bis.-** Al que para la realización de actividades delictivas utilice o permita el uso de aeródromos, aeropuertos, helipuertos, pistas de aterrizaje o cualquiera otra instalación destinada al tránsito aéreo que sean de su propiedad o estén a su cargo y cuidado, se le impondrá prisión de dos a seis años y de cien a trescientos días multa y decomiso de los instrumentos, objetos o productos del delito, cualquiera que sea su naturaleza. Si dichas instalaciones son clandestinas, la pena se aumentará hasta en una mitad.

Las mismas penas se impondrán a quienes realicen vuelos clandestinos, o proporcionen los medios para facilitar el aterrizaje o despegue de aeronaves o den reabastecimiento o mantenimiento a las aeronaves utilizadas en dichas actividades.

Si las actividades delictivas a que se refiere el primer párrafo se relacionan con delitos contra la salud, las penas de prisión y de multa se duplicarán.

Al que construya, instale, acondicione o ponga en operación los inmuebles e instalaciones a que se refiere el párrafo primero, sin haber observado las normas de concesión, aviso o permiso contenidas en la legislación respectiva, se le impondrá de tres

# PODER EJECUTIVO

## SECRETARIA DE GOBERNACION

**DECRETO por el que se reforma el Código Penal para el Distrito Federal en Materia de Fuero Común, y para toda la República en Materia de Fuero Federal.**

Al margen un sello con el Escudo Nacional, que dice: Estados Unidos Mexicanos.—Presidencia de la República.

**MIGUEL DE LA MADRID H.**, Presidente Constitucional de los Estados Unidos Mexicanos, a sus habitantes, sabed:

Que el H. Congreso de la Unión se ha servido dirigirme el siguiente

DECRETO:

"El Congreso de los Estados Unidos Mexicanos, decreta:

SE REFORMA EL CODIGO PENAL PARA EL DISTRITO FEDERAL EN MATERIA DE FUERO COMUN, Y PARA TODA LA REPUBLICA EN MATERIA DE FUERO FEDERAL

ARTICULO PRIMERO.—Se reforman los artículos 15, fracciones I, III, IV, V, VI, 24, inciso 8, 40, 56, 102, primer párrafo, 103, 104, 105, 106, 107, primer párrafo, 108, 109, 110, 112, 113, 114, 115, 116, 117, 118, 208 y 400, fracciones I, III y parte final del artículo, para quedar como sigue:

ARTICULO 15.—..........................................

I.—Incurrir el agente en actividad o inactividad involuntarias.

II.—..........................................

III.—Repeler el acusado una agresión real, actual o inminente y sin derecho, en defensa de bienes jurídicos propios o ajenos, siempre que exista necesidad racional de la defensa empleada y no medie provocación suficiente e inmediata por parte del agredido o de la persona a quien se defiende.

..........................................

IV.—Obrar por la necesidad de salvaguardar un bien jurídico propio o ajeno, de un peligro real, actual o inminente, no ocasionado intencionalmente ni por grave imprudencia por el agente, y que éste no tuviere el deber jurídico de afrontar, siempre que no exista otro medio practicable y menos perjudicial a su alcance.

V.—Obrar en forma legítima, en cumplimiento de un deber jurídico o en ejercicio de un derecho, siempre que exista necesidad racional del medio empleado para cumplir el deber o ejercer el derecho.

VI.—Obrar en virtud de miedo grave o temor fundado e irresistible de un mal inminente y grave en bienes jurídicos propios o ajenos, siempre que no exista otro medio practicable y menos perjudicial al alcance del agente.

..........................................

..........................................

IX.—SE DEROGA.

..........................................

ARTICULO 24.—..........................................

7.—..........................................

8.—Decomiso de instrumentos, objetos y productos del delito.

9.—..........................................

ARTICULO 40.—Los instrumentos del delito, así como las cosas que sean objeto o producto de él, se decomisarán si son de uso prohibido. Si son de uso lícito, se decomisarán cuando el delito sea intencional. Si pertenecen a un tercero, sólo se decomisarán cuando el tercero que los tenga en su poder o los haya adquirido bajo cualquier título, esté en alguno de los supuestos a los que se refiere el Artículo 400 de este Código, independientemente de la naturaleza jurídica de dicho tercero propietario o poseedor y de la relación que aquel tenga con el delincuente, en su caso. Las autoridades competentes procederán al inmediato aseguramiento de los bienes que podrían ser materia del decomiso, durante la averiguación o en el proceso. Se actuará en los términos previstos por este párrafo cualquiera que sea la naturaleza de los instrumentos, objetos o productos del delito.

Si los instrumentos o cosas decomisados son sustancias nocivas o peligrosas, se destruirán a juicio de la autoridad que esté conociendo, en los términos previstos por el Código de Procedimientos Penales, pero aquélla, cuando lo estime conveniente, podrá determinar su conservación para fines de docencia o investigación. Respecto de los instrumentos del delito, o cosas que sean objeto o producto de él, la autoridad competente determinará su destino, según su utilidad, para beneficio de la administración de justicia.

ARTICULO 56.—Cuando entre la comisión de un delito y la extinción de la pena o medida de seguridad entrare en vigor una nueva ley, se estará a lo dispuesto en la más favorable al inculpado o sentenciado. La autoridad que esté conociendo del asunto o ejecutando la sanción, aplicará de oficio la ley más favorable. Cuando el reo hubiese sido sentenciado al término mínimo o al término máximo de la pena prevista y la reforma disminuya dicho término, se estará a

Case 3:06-cv-00761-CSC Document 8-4 Filed 09/25/2006 Page 196 of 205

198

la ley más favorable. Cuando el sujeto hubiese sido sentenciado a una pena entre el término mínimo y el término máximo, se estará a la reducción que resulte en el término medio aritmético conforme a la nueva norma.

ARTICULO 102.—Los plazos para la prescripción de la acción penal serán continuos; en ellos se considerará el delito con sus modalidades, y se contarán:

..........................................................................

ARTICULO 103.—Los plazos para la prescripción de las sanciones serán igualmente continuos y correrán desde el día siguiente a aquel en que el condenado se sustraiga a la acción de la justicia, si las sanciones son privativas o restrictivas de la libertad, y si no lo son, desde la fecha de la sentencia ejecutoria.

ARTICULO 104.—La acción penal prescribe en un año, si el delito sólo mereciere multa; si el delito mereciere, además de esta sanción, pena privativa de libertad o alternativa, se atenderá a la prescripción de la acción para perseguir la pena privativa de libertad; lo mismo se observará cuando corresponda imponer alguna otra sanción accesoria.

ARTICULO 105.—La acción penal prescribirá en un plazo igual al término medio aritmético de la pena privativa de la libertad que señala la ley para el delito de que se trate, pero en ningún caso será menor de tres años.

ARTICULO 106.—La acción penal prescribirá en dos años, si el delito sólo mereciere destitución, suspensión, privación de derecho o inhabilitación, salvo lo previsto en otras normas.

ARTICULO 107.—Cuando la ley no prevenga otra cosa, la acción penal que nazca de un delito que sólo pueda perseguirse por querella del ofendido o algún otro acto equivalente, prescribirá en un año, contado desde el día en que quienes puedan formular la querella o el acto equivalente tengan conocimiento del delito y del delincuente, y en tres, fuera de esta circunstancia.

..........................................................................

ARTICULO 108.—En los casos de concurso de delitos, las acciones penales que de ellos resulten prescribirán cuando prescriba la del delito que merezca pena mayor.

ARTICULO 109.—Cuando para ejercitar o continuar la acción penal sea necesaria una resolución previa de autoridad jurisdiccional, la prescripción comenzará a correr desde que se dicte la sentencia irrevocable.

ARTICULO 110.—La prescripción de las acciones se interrumpirá por las actuaciones que se practiquen en averiguación del delito y de los delincuentes, aunque por ignorarse quiénes sean éstos no se practiquen las diligencias contra persona determinada.

Si se dejare de actuar, la prescripción empezará a correr de nuevo desde el día siguiente al de la última diligencia.

ARTICULO 112.—Si para deducir una acción penal exigiere la ley previa declaración o resolución de alguna autoridad, las gestiones que con ese fin se practiquen, antes del término señalado en el artículo precedente, interrumpirán la prescripción.

ARTICULO 113.—Salvo que la ley disponga otra cosa, la pena privativa de libertad prescribirá en un tiempo igual al fijado en la condena y una cuarta parte más, pero no podrá ser inferior a tres años; la pena de multa prescribirá en un año; las demás sanciones prescribirán en un plazo igual al que deberían durar y una cuarta parte más, sin que pueda ser inferior a dos años; las que no tengan temporalidad, prescribirán en dos años. Los plazos serán contados a partir de la fecha en que cause ejecutoria la resolución.

ARTICULO 114.—Cuando el reo hubiere extinguido ya una parte de su sanción, se necesitará para la prescripción tanto tiempo como el que falte de la condena y una cuarta parte más, pero no podrá ser menor de un año.

ARTICULO 115.—La prescripción de la sanción privativa de libertad, sólo se interrumpe aprehendiendo al reo, aunque la aprehensión se ejecute por otro delito diverso. Si se dejare de actuar, la prescripción comenzará a correr de nuevo desde el día siguiente al de la última diligencia.

La prescripción de las demás sanciones se interrumpirá, por cualquier acto de autoridad competente para hacer las efectivas.

ARTICULO 116.—La pena y la medida de seguridad se extinguen, con todos sus efectos, por cumplimiento de aquéllas o de las sanciones por las que hubiesen sido sustituidas o conmutadas. Asimismo, la sanción que se hubiese suspendido se extinguirá por el cumplimiento de los requisitos establecidos al otorgarla, en los términos y dentro de los plazos legalmente aplicables.

ARTICULO 117.—La ley que suprime el tipo penal o lo modifique, extingue, en su caso, la acción penal o la sanción correspondiente, conforme a lo dispuesto en el artículo 56.

ARTICULO 118.—Nadie puede ser juzgado dos veces por el mismo delito, ya sea que en el juicio se le absuelva o se le condene. Cuando se hubiese dictado sentencia en un proceso y aparezca que existe otro en relación con la misma persona y por los mismos hechos considerados en aquél, concluirá el segundo proceso mediante resolución que dictará de oficio la autoridad que esté conociendo. Si existen dos sentencias sobre

199

los mismos hechos, se extinguirán los efectos de la dictada en segundo término.

ARTICULO 208.—Cuando la persona cuyo cuerpo sea explotado por medio del comercio carnal, sea menor de edad, se aplicará al que encubra, concierte o permita dicho comercio, pena de seis a diez años de prisión y de diez a veinte días multa.

ARTICULO 400.—..........................................

I.—..........................................

..........................................

Para los efectos del párrafo anterior, los adquirentes de vehículos de motor deberán tramitar la transferencia o regularización de vehículo, cerciorándose de su legítima procedencia;

II.—..........................................

III.—Oculte o favorezca el ocultamiento del responsable de un delito, los efectos, objetos o instrumentos del mismo o impida que se averigüe;

IV.—..........................................

V.—..........................................

No se aplicará la pena prevista en este artículo en los casos de las fracciones III, en lo referente al ocultamiento del infractor, y IV cuando se trate de:

a) Los ascendientes y descendientes consanguíneos o afines;

b) El cónyuge, la concubina, el concubinario y parientes colaterales por consanguinidad hasta el cuarto grado, y por afinidad hasta el segundo; y

c) Los que estén ligados con el delincuente por amor, respeto, gratitud o estrecha amistad derivados de motivos nobles.

ARTICULO SEGUNDO.—Se adiciona una fracción X al artículo 244, para quedar como sigue:

ARTICULO 244.—..........................................

X.—Elaborando placas, gafetes, distintivos, documentos o cualquier otra identificación oficial, sin contar con la autorización de la autoridad correspondiente.

ARTICULO TERCERO.—Se derogan la fracción IX del artículo 15 y los artículos 57, 78, 7 81, 82, 83, 88, 89, 296, 309, 344, 345, 346, 347, 349.

ARTICULO CUARTO.—En el Libro Prin se incorporan, en los términos y con la ubica que a continuación se indican, las denom ciones de los Capítulos VI del Título Segundo los Capítulos VII, VIII, IX y X del Título Qui

LIBRO PRIMERO

TITULO SEGUNDO

CAPITULO VI

**Decomiso de Instrumentos, Objetos y Productos del Delito**

ARTICULO 40.—..........................................

TITULO QUINTO

CAPITULO VII

**Cumplimiento de la Pena o Medida de Seguridad**

ARTICULO 116.—..........................................

CAPITULO VIII

**Vigencia y Aplicación de una Nueva Ley más Favorable**

ARTICULO 117.—..........................................

CAPITULO IX

**Existencia de una Sentencia Anterior Dictada en Proceso Seguido por los Mismos Hechos**

ARTICULO 118.—..........................................

CAPITULO X

**Extinción de las Medidas de Tratamiento de Inimputables**

ARTICULO 118 bis.—..........................................

TRANSITORIOS

ARTICULO PRIMERO.—Las presente reformas, adiciones y derogaciones entrarán en vigor treinta días después de su publicación en el **Diario Oficial de la Federación.**

ARTICULO SEGUNDO.—Se concede un plazo de seis meses, a partir de la fecha de vi-

Case 3:06-cv-00761-CSC Document 8-4 Filed 09/25/2006 Page 198 of 205 200

Oficio por el que se comunica a la empresa Tele Comunicación de Tehuacán, S. A. de C. V., la concesión para instalar, operar y explotar un sistema de Televisión por cable en la ciudad de Tehuacán, Pue. (Primera Publicación)........ 25

SECRETARIA DE DESARROLLO URBANO Y ECOLOGIA

Decreto por el que se declara de utilidad pública la Construcción de la Presa de Almacenamiento Peña Colorada y para tal efecto se expropian en favor del Gobierno Federal terrenos de propiedad particular con superficie de 9-19-13 Has., ubicada en el Municipio de Tula de Allende, Hgo........ 25

Decreto por el que se autoriza a la Secretaría de Desarrollo Urbano y Ecología proceder a realizar los actos necesarios a efecto de extinguir el Fideicomiso traslativo de dominio y de administración, con el inmueble conocido como Ex-Refinería de Arbol Grande, ubicado en Ciudad Madero, Tamps........ 26

SECRETARIA DE SALUBRIDAD Y ASISTENCIA

Relación de Productos de Belleza y Artículos de Tocador que se registraron en el mes de abril de 1983........ 27

CONVOCATORIAS PARA CONCURSOS DE OBRAS Y ADQUISICIONES

SECRETARIA DE LA CONTRALORIA GENERAL DE LA FEDERACION

Convocatoria a todos los Proveedores de la Administración Pública Federal que tengan interés en participar en el Concurso Nacional Mayor No. 1/84, relativo a la Adquisición de los bienes que se indican........

AERONAVES DE MEXICO, S. A.

Convocatoria a las personas físicas o morales mexicanas que tengan interés en participar en el Concurso No. AMSA-047/83, relativo a las obras que se indican, en el Aeropuerto Internacional de la Ciudad de México........ 4

CONSEJO DE RECURSOS MINERALES

Convocatoria a todos los Proveedores de la Administración Pública Federal que tengan interés en participar en el Concurso Nacional Mayor No. 01/84, relativo a la adquisición de Partes, Refacciones y Accesorios para Perforadora........ 4

FERROCARRILES NACIONALES DE MEXICO

Convocatoria a todos los Proveedores de la Administración Pública Federal que tengan interés en participar en el Concurso Nacional Mayor No. 26/84-V, relativo a la adquisición de los bienes que se indican........ 4[illegible]

Avisos Judiciales y Generales........ 42 a 4[illegible]

# PODER EJECUTIVO

## SECRETARIA DE GOBERNACION

Decreto por el que se reforma, adiciona y deroga diversas disposiciones del Código Penal para el Distrito Federal en Materia de Fuero Común, y para toda la República en Materia de Fuero Federal.

MIGUEL DE LA MADRID HURTADO, Presidente Constitucional de los Estados Unidos Mexicanos, a sus habitantes, sabed:

Que el H. Congreso de la Unión se ha servido dirigirme el siguiente.

DECRETO:

"EL Congreso de los Estados Unidos Mexicanos decreta:

SE REFORMA, ADICIONA Y DEROGA DIVERSAS DISPOSICIONES DEL CODIGO PENAL PARA EL DISTRITO FEDERAL EN MATERIA DE FUERO COMUN, Y PARA TODA LA REPUBLICA EN MATERIA DE FUERO FEDERAL.

"ARTICULO PRIMERO.—Se reforman los artículos 7o., 8o., 9o., 13, 15, 16, 18, 19, 24, 27, 29, 30, 31, 33, 34, 39, 40, 41, 43, 44, 52, 54, 55, 60, 62, 64, 67, 68, 69, 70, 71, 72, 73, 74, 93, 96, 98, 101, 102, 160, 205, 225, 226, 228, 230, 265, 267, 268, 269, 281, 289, 295, 366, 381, 381 bis, 387, 388 y 390 del Código Penal para el Distrito Federal en Materia de Fuero Común, y para toda la República en Materia de Fuero Federal, para quedar como sigue:

ARTICULO 7o.—Delito es el acto u omisión que sancionan las leyes penales.

El delito es:

I.—Instantáneo, cuando la consumación se agota en el mismo momento en que se han realizado todos sus elementos constitutivos;

II.—Permanente o continuo, cuando la consumación se prolonga en el tiempo, y

III.—Continuado, cuando con unidad de propósito delictivo y pluralidad de conductas se viola el mismo precepto legal.

ARTICULO 8o.—Los delitos pueden ser:

I.—Intencionales;

I.—..................................................., y

II.—Si fuere la de confinamiento, se conmutará por multa, a razón de un día de aquél por un multa.

ARTICULO 74.—El reo que considere que al dictarse sentencia reunía las condiciones para el disfrute de la sustitución o conmutación de la sanción y que por inadvertencia de su parte o del juzgador no le hubiera sido otorgada, podrá promover ante éste que se le conceda, abriéndose el incidente respectivo en los términos de la fracción X del artículo 90.

ARTICULO 93.—El perdón del ofendido o del legitimado para otorgarlo, extingue la acción penal respecto de los delitos que solamente pueden perseguirse por querella, siempre que se conceda antes de pronunciarse sentencia en segunda instancia y el reo no se oponga a su otorgamiento.

Cuando sean varios los ofendidos y cada uno pueda ejercer separadamente la facultad de perdonar al responsable del delito y al encubridor, el perdón sólo surtirá efectos por lo que hace a quien lo otorga.

El perdón sólo beneficia al inculpado en cuyo favor se otorga, a menos que el ofendido o el legitimado para otorgarlo, hubiese obtenido la satisfacción de sus intereses o derechos, caso en el cual beneficiará a todos los inculpados y al encubridor.

ARTICULO 96.—Cuando aparezca que el sentenciado es inocente, se procederá al reconocimiento de su inocencia, en los términos previstos por el Código de Procedimientos Penales aplicable y se estará a lo dispuesto en el artículo 49 de este Código.

ARTICULO 98.—El indulto en ningún caso extinguirá la obligación de reparar el daño causado.

ARTICULO 101.—...........................................

Los plazos para la prescripción se duplicarán respecto de quienes se encuentren fuera del territorio nacional, si por esta circunstancia no es posible integrar una averiguación previa, concluir un proceso o ejecutar una sanción.

La prescripción producirá su efecto, aunque no la alegue como excepción el acusado. Los jueces la suplirán de oficio en todo caso, tan luego como tengan conocimiento de ella, sea cual fuere el estado del proceso.

ARTICULO 102.—Los términos para la prescripción de la acción penal serán continuos y se contarán:

I.—A partir del momento en que se consumó el delito, si fuere instantáneo;

II.—A partir del día en que se realizó el último acto de ejecución o se omitió la conducta debida, si el delito fuere en grado de tentativa;

III.—Desde el día en que se realizó la última conducta, tratándose de delito continuado; y

IV.—Desde la cesación de la consumación en el delito permanente.

ARTICULO 160.—A quien porte, fabrique, importe o acopie sin un fin lícito instrumentos que sólo puedan ser utilizados para agredir y que no tengan aplicación en actividades laborales o recreativas, se le impondrá prisión de tres meses a tres años y hasta cien días multa y decomiso.

Los servidores públicos podrán portar las armas necesarias para el ejercicio de su cargo, sujetándose a la reglamentación de las leyes respectivas.

Estos delitos, cuyo conocimiento compete al fuero común, se sancionarán sin perjuicio de lo previsto por la Ley Federal de Armas de Fuego y Explosivos, de aplicación federal en lo que conciernen a estos objetos.

ARTICULO 205.—Al que promueva, facilite, consiga o entregue a una persona para que ejerza la prostitución dentro o fuera del país, se le impondrá prisión de seis meses a seis años y hasta quinientos días multa.

Si se emplease violencia o el agente se valiese de una función pública que tuviere, la pena se agravará hasta en una mitad más.

ARTICULO 225.—Son delitos contra la administración de justicia, cometidos por servidores públicos los siguientes:

I.—Conocer de negocios para los cuales tengan impedimento legal o abstenerse de conocer de los que les corresponda, sin tener impedimento legal para ello;

II.—Desempeñar algún otro empleo oficial o un puesto o cargo particular que la ley les prohíba;

III.—Litigar por sí o por interpósita persona, cuando la ley les prohíba el ejercicio de su profesión;

IV.—Dirigir o aconsejar a las personas que ante ellos litiguen;

V.—No cumplir una disposición que legalmente se les comunique por su superior competente, sin causa fundada para ello;

VI.—Dictar, a sabiendas, una resolución de fondo o una sentencia definitiva que sean ilícitas por violar algún precepto terminante de la ley; o ser contrarias a las actuaciones seguidas en juicio o al veredicto de un jurado; u omitir dictar

SECRETARIA DE GOBERNACION

Viernes 14 de agosto de 1931

DIARIO OFICIAL

# CODIGO PENAL

## PARA EL DISTRITO Y TERRITORIOS FEDERALES

EN MATERIA DE FUERO COMUN,

Y PARA TODA LA REPUBLICA EN

MATERIA DE FUERO FEDERAL

TALLERES GRAFICOS DE LA NACION.—TOLSA Y ENRICO MARTINEZ

MEXICO, D. F.—1931.

LACIÓN Y
ACIONAL

MEXICANO

A GENERA
JBLICA
ENERAL DE
ONES Y
JURIDICA

## CAPITULO V

### Rehabilitación

ARTICULO 99.—La rehabilitación tiene por objeto reintegrar al condenado en los derechos civiles, políticos o de familia que había perdido en virtud de sentencia dictada en un proceso o en cuyo ejercicio estuviere suspenso.

## CAPITULO VI

### Prescripción

ARTICULO 100.—Por la prescripción se extinguen la acción penal y las sanciones, conforme a los siguientes artículos.

ARTICULO 101.—La prescripción es personal y para ella bastará el simple transcurso del tiempo señalado por la ley.

La prescripción producirá su efecto, aunque no la alegue como excepción el acusado. Los jueces la suplirán de oficio en todo caso, tan luego como tengan conocimiento de ella, sea cual fuere el estado del proceso.

ARTICULO 102.—Los términos para la prescripción de la acción penal serán continuos y se contarán desde el día en que se cometió el delito, si fuere consumado; desde que cesó, si fuere continuo, o desde el día en que se hubiere realizado el último acto de ejecución, si se tratare de tentativa.

ARTICULO 103.—Los términos para la prescripción de las sanciones serán igualmente continuos y correrán desde el día siguiente a aquel en que el condenado se substraiga a la acción de la autoridad, si las sanciones son corporales, y si no lo son, desde la fecha de la sentencia ejecutoria.

ARTICULO 104.—La acción penal prescribe en un año, si el delito sólo mereciere multa. Si el delito mereciere, además de esta sanción, la corporal, o fuere alternativa, se atenderá en todo caso a la prescripción de la pena corporal, y lo mismo se observará cuando corresponda alguna otra sanción accesoria.

ARTICULO 105.—La acción penal prescribirá en un plazo igual al tiempo de la sanción corporal que corresponda al delito; pero en ningún caso bajará de tres años.

ARTICULO 106.—Si el delito sólo mereciere destitución, suspensión, privación de derechos o inhabilitación, la prescripción se consumará en el término de dos años.

ARTICULO 107.—La acción penal que nazca de un delito, sea o no continuo, que sólo puede perseguirse por queja de parte, pres-




cribirá en un año, contado desde el día en que la parte ofendida tenga conocimiento del delito y del delincuente, y en tres, independientemente de esta circunstancia.

ARTICULO 108.—Cuando haya acumulación de delitos, las acciones penales que de ellos resulten se prescribirán separadamente en el término señalado a cada uno. Pero si llenado el requisito inicial de la querella, ya se hubiese deducido la acción ante los tribunales, se observarán las reglas señaladas por el Código para los delitos que se persiguen de oficio.

ARTICULO 109.—Cuando para deducir una acción penal sea necesario que antes se termine un juicio diverso, civil o criminal, no comenzará a correr la prescripción sino hasta que en el juicio previo se haya pronunciado sentencia irrevocable.

ARTICULO 110.—La prescripción de las acciones se interrumpirá por las actuaciones que se practiquen en la averiguación del delito y delincuentes, aunque, por ignorarse quiénes sean éstos, no se practiquen las diligencias contra persona determinada.

Si se dejara de actuar, la prescripción comenzará de nuevo desde el día siguiente a la última diligencia.

ARTICULO 111.—Lo prevenido en la parte final del artículo anterior, no comprende el caso en que las diligencias se practiquen después que haya transcurrido la cuarta parte del término de la prescripción; pues entonces ya no se podrá interrumpir ésta, sino por la aprehensión del acusado. Si desde que se cometió el delito, o desde que cesó, si fuere continuo, ó desde que se realizó el último acto de ejecución en la tentativa, hubiere transcurrido un tiempo igual a la tercera parte del término de la prescripción, tampoco se interrumpirá ésta, sino por la aprehensión del acusado.



ARTICULO 112.—Si para deducir una acción penal exigiere la ley previa declaración de alguna autoridad, las gestiones que a ese fin se practiquen interrumpirán la prescripción.

ARTICULO 113.—La sanción pecuniaria prescribirá en un año; las demás sanciones se prescriben por el transcurso de un término igual al que debían durar y una cuarta parte más; pero nunca excederá de quince años.

ARTICULO 114.—Cuando el reo hubiere extinguido ya una parte de su sanción, se necesitará para la prescripción tanto tiempo como el que falte de la condena y una cuarta parte más de ese tiempo; pero estos dos períodos no excederán de quince años.

ARTICULO 115.—La prescripción de las sanciones corporales, sólo se interrumpe aprehendiendo al reo, aunque la aprehensión se ejecute por otro delito diverso.



**CERTIFICACIÓN**

***EDUARDO DE JESÚS CASTELLANOS HERNÁNDEZ, Director General de Compilación y Consulta del Orden Jurídico Nacional, de la Subsecretaría de Asuntos Jurídicos y Derechos Humanos, de la Secretaría de Gobernación, con fundamento en los artículos 9° fracción XIII y 22 Fracción XII del Reglamento Interior de la Secretaría de Gobernación-------***

***-----------------------------------C E R T I F I C A-----------------------------------***

***Para los efectos a que haya lugar, que la presente copia fotostática en doce (12) fojas útiles, que van debidamente selladas y rubricadas, concuerdan fielmente con el texto publicado en diferentes fechas en el Diario Oficial de la Federación correspondiente, que se tuvo a la vista, y que obra en los archivos de esta Dirección General.***

***En la Ciudad de México, Distrito Federal, a veintidós de marzo de dos mil seis.***

***En virtud de que la presente certificación fue solicitada formalmente por la Suprema Corte de Justicia de la Nación, en asunto oficial de su competencia, con fundamento en el Artículo 5° de la Ley Federal de Derechos, publicada en el Diario Oficial de la Federación el 31 de diciembre de 1981, se exenta el pago de derechos por expedición de copias certificadas.***

...IA GENERAL
...JURÍDICA
...ERAL DE
...IONES Y
JURIDICA

SECRETARÍA DE GOBERNACIÓN
UNIDAD DE GOBIERNO

POR ACUERDO DEL C. SECRETARIO DE GOBERNACIÓN, EL **C. LIC. MIGUEL ÁNGEL DE HARO PAYÁN**, SUBDIRECTOR DE FORMALIZACIÓN Y CONTROL DE LA DIRECCIÓN DE COORDINACIÓN POLÍTICA CON LOS PODERES DE LA UNIÓN **CERTIFICA:** QUE EL C. DR. EDUARDO DE JESÚS CASTELLANOS HERNÁNDEZ, ERA DIRECTOR GENERAL DE COMPILACIÓN Y CONSULTA DEL ORDEN JURÍDICO NACIONAL DE LA SUBSECRETARÍA DE ASUNTOS JURÍDICOS Y DERECHOS HUMANOS DE LA SECRETARÍA DE GOBERNACIÓN, EL DIA 22 DE MARZO DE 2006, Y SUYA LA FIRMA QUE APARECE EN EL PRESENTE DOCUMENTO.

MÉXICO, D.F. A 23 DE MARZO DE 2006.

REGISTRO No. **4180**
DERECHOS PAGADOS **$ 0.00**
S/PAGO DE DERECHOS:



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

- - - - En la Ciudad de México, Distrito Federal, a los veinte (20) días del mes de junio de dos mil seis (2006), el que suscribe, licenciado en derecho Leopoldo Velarde Ortiz, Director General de Extradiciones y Asistencia Jurídica de la Procuraduría General de la República y Agente del Ministerio Público de la Federación, de conformidad con los artículos 2 y 4 fracción VIII, inciso d) del Reglamento de la Ley Orgánica de la Procuraduría General de la República, en ejercicio de las facultades previstas en el numeral 35 fracción I en relación con el artículo 12 fracción X del propio Reglamento de la Ley Orgánica de la Procuraduría General de la República, actuando de manera legal y en compañía de testigos de asistencia que al final firman y dan fe. - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - **C E R T I F I C A**: - - - - - - - - - - - - - - - - - - - - - - - -

- - Que las presentes copias fotostáticas constantes de doscientas cinco (205) fojas útiles son reproducción fiel y concuerdan en todos sus términos con la documentación que obra en el expediente de extradición internacional radicado en esta área en contra de **MARÍA DEL ROSARIO MORENO VÁZQUEZ,** misma que se tuvo a la vista y se hizo la compulsa correspondiente, lo que se hace constar para todos los efectos legales a que haya lugar. - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - **DAMOS FE** - - - - - - - - - - - - - - - - - - - - - - - - -

Testigo de Asistencia.

Lic. Ma Elmina Meixueiro Herrera

Testigo de Asistencia.

Lic. Gerardo Ruiz Terroba

9357

PROCURADURIA GENERAL
DE LA REPUBLICA
DIRECCION GENERAL DE
EXTRADICIONES Y
ASISTENCIA JURIDICA



SECRETARÍA DE GOBERNACIÓN
UNIDAD DE GOBIERNO

POR ACUERDO DEL C. SECRETARIO DE GOBERNACIÓN, LA **C. LIC. MARÍA DEL ROCÍO GARFIAS AGUILAR**, JEFE DEL DEPARTAMENTO DE PROCESOS DE LEGALIZACIÓN DE LA SUBDIRECCIÓN DE FORMALIZACIÓN Y CONTROL DE LA DIRECCIÓN DE COORDINACIÓN POLÍTICA CON LOS PODERES DE LA UNIÓN **CERTIFICA:** QUE EL C. LIC. LEOPOLDO VELARDE ORTÍZ, ERA DIRECTOR GENERAL DE EXTRADICIONES Y ASISTENCIA JURÍDICA DE LA SUBPROCURADURÍA JURÍDICA Y DE ASUNTOS INTERNACIONALES DE LA PROCURADURÍA GENERAL DE LA REPÚBLICA, EL DIA 20 DE JUNIO DE 2006, Y SUYA LA FIRMA QUE APARECE EN EL PRESENTE DOCUMENTO.

MÉXICO, D.F. A 27 DE JUNIO DE 2006.

REGISTRO No. **9357**
DERECHOS PAGADOS $ 0.00
S/PAGO DE DERECHOS:

ESTA SECRETARÍA NO SE HACE RESPONSABLE DEL CONTENIDO DEL DOCUMENTO.

*CFL/GOT

SECRETARÍA DE GOBERNACIÓN
UNIDAD DE GOBIERNO

**F.8**

372580.

**LA SECRETARIA DE RELACIONES EXTERIORES CERTIFICA:**

que *LA C. LIC. MARIA DEL ROCIO GARFIAS AGUILAR, ERA JEFE DEL DEPARTAMENTO DE PROCESOS DE LEGALIZACION DE LA SUBDIRECCION DE FORMALIZACION Y CONTROL DE LA DIRECCION DE COORDINACION POLITICA CON LOS PODERES DE LA UNION DE LA SECRETARIA DE GOBERNACION EL DIA* 27 JUN. 2006

**y que es suya la firma que antecede.**

Tlatelolco, D.F. *30* de *JUNIO* de 20*2006*

P.O. DEL C. SECRETARIO
El Delegado de la
Secretaría de Relaciones Exteriores

Myrna Granados Hernández

**ESTA SECRETARIA NO ASUME RESPONSABILIDAD ALGUNA POR EL CONTENIDO DEL DOCUMENTO QUE SE LEGALIZA**