## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **In the Matter of the Extradition of** | ) | |
| **MARIA del ROSARIO MORENO-VAZQUEZ** | ) | **3:06-CV-761-MEF-CSC** |
| **a/k/a MARIA COONLEY** | ) | |
|  | ) | |

### United States's Supplemental Extradition Memorandum

The United States files this supplemental extradition memorandum to assist the Court concerning the background and law pertaining to the Government of Mexico's second request for the extradition of Maria Del Rosario Moreno-Vazquez ("Moreno-Vazquez").    Previously, on August 23, 2006, the United States filed an Initial Extradition Memorandum, which included the background and law pertaining to Mexico's first request for Moreno-Vazquez's extradition for the trafficking of minors. That memorandum included a general discussion of extradition procedure, the unique features of extradition proceedings, the standard of proof, the necessary elements, and evidentiary and procedural rules.    This memorandum will focus on the background of the new charges, provide a condensed legal discussion, and include a discussion of why Moreno-Vazquez should be extradited.

The second request for extradition includes a new charge for forging a public document. The straightforward elements of extradition mandate that Moreno-Vazquez be extradited on this new charge too.    Despite the fact that Moreno-Vazquez's situation is admittedly sympathetic, international rules of comity, sovereignty, reciprocity, and non-inquiry require that Moreno-Vazquez be extradited without further delay.

## I. <u>Overview of the Additional Criminal Charges</u>

1.      According to the information provided by the requesting state in the form authorized by the extradition treaty, Moreno-Vazquez is charged in Mexico with forgery of a Public Document. The offense is set forth under Article 244, Section I, and is punishable under the first paragraph of Article 244 of the Federal Penal Code of Mexico.  On June 8, 2005, the Third District Judge in Federal Criminal Proceedings, residing in the Federal District, issued a warrant for the arrest of Moreno-Vazquez in criminal case number 66/2005.  The undersigned has reviewed the arrest warrant in this matter, located at Exhibit 11 of the formal extradition packet,[1] a translated copy of which is attached as Exhibit A.

2.      As set forth in Mexico's formal request for the extradition of Moreno-Vazquez, while Moreno-Vazquez was married to Jose Fernando Castillo-Tapia, the two of them had one child, known in this proceeding as L.F.C.M., born in 1989.  After they were divorced, they had another child, known in this proceeding as M.F.C.M., born in 1994.  The children lived with Moreno-Vazquez after the divorce at San Jorge, N° 15, Lomas Verdes, Naucalpan, Mexico, 53120.

3.      On October 1, 1991, Moreno-Vazquez and Castillo-Tapia entered into a child custody agreement whereby they each had certain custody rights, referred to as "*patria potestad*," relating to L.F.C.M.  After the birth of M.F.C.M., both parents applied all of the benefits and guarantees of the custody agreement to M.F.C.M.

4.      On February 28, 2004, Castillo-Tapia went to visit his children at Moreno-Vazquez's home per their custody agreement.   When Castillo-Tapia arrived at the residence, Moreno-

---

[1] The original of the formal extradition was filed by hand with the Court.  The redacted version is located at Doc. # 8-3, pp. 85-171.

Vazquez's mother, Maria Elena Vazquez-Saucedo, informed Castillo-Tapia that the children were not at home, and she did not know where they were located.  Vazquez-Saucedo then handed Castillo-Tapia a letter from Moreno-Vazquez in which Moreno-Vazquez stated that she and the children had left the city. She did not mention where they were going.

5.      Previously, in October 2003, Moreno-Vazquez informed Castillo-Tapia that she had married an American that she had met on the Internet.  At that time, Moreno-Vazquez asked Castillo-Tapia if she could take the children out of the country with her.  Castillo-Tapia denied her request and told her that he would reconsider it after her relationship had stabilized.  Based upon this conversation, his children's disappearance, and the note, Castillo-Tapia suspected that Moreno-Vazquez had taken the children to the United States.

6.      Later, on March 1, 2004, Castillo-Tapia learned from his children's schoolmates that his children had left on a plane to the United States.  It was later learned that on February 27, 2004, Moreno-Vazquez, L.F.C.M., and M.F.C.M. had flown from Mexico to Atlanta, Georgia, on Aeromexico flight number 636.

7.      In Mexico, in to order apply for a passport, both birth parents must sign a child's application documents. Castillo-Tapia never consented to his children leaving the country and never signed any documents related to his children's passport applications.  According to the investigation carried out by the federal attorney assigned to the case in Mexico, however, the regular Mexican passport applications (OP-5) numbered 6290 and 6289 filed for L.F.C.M. and M.F.C.M. included what purported to be Castillo-Tapia's signature and digital fingerprint.  Further expert analysis and reports confirmed that the signature and the digital fingerprint were forged.

8.      Forgery of a Public Document is punishable by the laws of both the United States and

3

Mexico by a maximum prison sentence of no less than one year. As a result, it constitutes an extraditable offense under Article 2, paragraphs 1 and 3, and Appendix, paragraph 10 of the extradition treaty between the United States and Mexico. *See Extradition Treaty Between the United States of America and Mexico*, May 4, 1978, 31 U.S.T. 5059, 1978 U.S.T. Lexis 317.

9. Moreno-Vazquez is a Mexican citizen born in 1961 in the Federal District of Mexico. Deputy United States Marshal Robert Wood is familiar with the identity of the fugitive.

## II. Application of the Extradition Elements to the Supplemental Charge

### A. Legal Standards

Although discussed in much greater detail in the United States's Initial Extradition Memorandum, some highlighting of certain concepts is necessary for this supplemental brief. First, it bears repeating that courts have recognized that the statutory hearing required by 18 U.S.C. § 3184 is of a unique nature.[2] The purpose of the extradition hearing is limited to a determination of whether a person is to be surrendered to a requesting country to answer criminal charges or to carry out a criminal sentence. The hearing is not to try the underlying case.[3] Moreover, an extradition hearing is not a criminal trial; its purpose is merely to decide

---

[2] *See, e.g., Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir.) (extradition hearing is *sui generis*), *cert. denied*, 439 U.S. 932 (1978).

[3] The Supreme Court has twice cited with approval the district court's reasoning in *In re Wadge*, 15 F.Supp. 864, 866 (S.D. N.Y. 1883). In that case, the district court rejected the argument that a respondent in an extradition hearing should be given an extensive hearing in the extradition proceedings:

> If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such

4

probable cause, not guilt or innocence.[4]  These general propositions have resulted in special

procedural and evidentiary principles that apply to extradition hearings explained in this

footnote[5] and more fully explained in the United States's Initial Extradition Memorandum.

---

a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here.  This would be in plain contravention of the intent and meaning of the extradition treaties.

*Collins v. Loisel*, 259 U.S. 309, 316 (1922) and *Charlton v. Kelly*, 229 U.S. 447, 461 (1913) (both citing *In re Wadge*, 15 F.Supp. 864, 866 (S.D. N.Y. 1883)); *see also United States v. Linson*, 88 F. Supp. 2d 1123, 1126 (D. Guam 2000) ("Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing . . . ."; citing *Charlton v. Kelly*, 229 U.S. 447, 457-458 (1913)); *accord Sindona v. Grant*, 619 F.2d 167, 175 (2nd Cir. 1980) (no magistrate error in refusal to hold hearing on fugitive's claim that he would be killed if extradited to Italy).

    [4] *Neely v. Henkel*, 180 U.S. 109 (1901); *Benson v. McMahon*, 127 U.S.  457, 463 (1888); *Simmons v. Braun*, 627 F.2d 635 (2nd Cir. 1980); *Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977).  Thus, the person whose extradition is sought is not entitled to the rights available in a criminal trial at common law.  *Charlton v. Kelly*, 229 U.S. 447, 461 (1931); *Glucksman v. Henkel*, 221 U.S. 508, 512 (1911); *United States v. Stockinger*, 269 F.2d 681, 687 (2nd Cir. 1959), *cert. denied*, 361 U.S. 913 (1959).  For example: the fugitive has no right to discovery or to cross-examination witnesses who might testify at the hearing, *Messina v. United States*, 728 F.2d 77, 80 (2nd Cir. 1984); his or her right to present evidence is severely limited, *Id.*; and the Sixth Amendment's guarantee to a speedy trial, being limited by its terms to criminal prosecutions, does not pertain to extradition proceedings.  *Jhirad v. Ferrandina*, 536 F.2d 478, 485 n.9 (2nd Cir. 1976).

    [5] The Federal Rules of Criminal Procedure do not apply to extradition proceedings.  Fed. R. Crim. P. 54(b)(5) ("[t]hese rules are not applicable to extradition and rendition of fugitives").  Also, the Federal Rules of Evidence do not apply to extradition proceedings.  Fed. R. Evid. 1101(d)(3) ("[t]he rules (other than with respect to privileges) do not apply . . . [to p]roceedings for extradition or rendition").  Moreover, a fugitive's right to challenge the evidence introduced against him is very circumscribed; it is "limited to testimony which explains rather than contradicts the demanding country's proof."  *Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir.), *cert. denied*, 439 U.S. 932 (1978).

    The district court in *Sindona* discussed the distinction between contradictory and explanatory evidence and cited the established authority for the proposition that an extradition hearing should not be transformed into a full trial on the merits:

        The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate.  However, the purpose behind the rule is reasonably clear.  In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause.  The scope of this evidence is restricted to what is appropriate to an extradition hearing.  The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.

Because of these rules–as well as a long line of Supreme Court and Circuit Court cases–extradition treaties do not contemplate the introduction of testimony of live witnesses at extradition proceedings.[6]

---

*Matter of Sindona*, 450 F.Supp. 672, 685 (S.D. N.Y. 1978), *aff'd*, 619 F.2d 167 (2nd Cir. 1980).

[6] To do otherwise "would defeat the whole object of the treaty." *Yordi v. Nolte*, 215 U.S. 227, 231 (1909); *accord Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

In *Bingham*, the Supreme Court rejected the respondent's claim that *ex parte* witness affidavits submitted in support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses. The Court referred to the applicable treaty language, which obligated the United States to extradite "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offense had there been committed." *Bingham v. Bradley*, 241 U.S. at 517. As 18 U.S.C. § 3190 does today, its predecessor, applicable in *Bingham*, provided for the admissibility at the extradition hearing of depositions, warrants and similar documents upon proper certification by the U.S. diplomatic or consular officer. In holding that the documents in *Bingham* were authenticated in accordance with the statute, the Court also said:

> It is one of the objects of § 5170 [today, § 3190] to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty.

*Id.* In *Yordi*, the Supreme Court earlier formulated the same principle when it decided a question slightly different from the one presented in *Bingham*. In *Yordi*, the Court decided a matter of the extradition hearing court's jurisdiction. In doing so, it observed:

> We do not wish, however, to be understood as holding that, in extradition proceedings, the complaint must be sworn to by persons having actual knowledge of the offense charged. This would defeat the whole object of the treaty, as we are bound to assume that no foreign government possesses greater power than our own to render its citizens to go to another country to institute legal proceedings. This is obviously impossible. The ordinary course is to send an officer or agent of the government for that purpose . . . . This obviates the necessity which might otherwise exist of confronting the accused with the witnesses against him."

*Yordi*, 215 U.S. at 231. That principle of extradition law is as firmly-rooted today as it was in 1916 when the Supreme Court decided *Bingham*. *See United States v. Zanazanian*, 729 F.2d 624, 626-627 (9th Cir. 1984) (applying *Bingham* to extradition to Sweden); *Shapiro* v. *Ferrandina*, 478 F.2d 894, 902 (2nd Cir. 1973) (obviating necessity of confronting accused with witnesses against him is "one of the prime objects of bi-lateral extradition agreements"); *In the Matter of Surrender of Ntakirutimana*, 988 F. Supp. 1038, 1042 (S.D. Tex. 1997), *aff'd*, 184 F.3d 419 (5th Cir. 1999).

B.     <u>Elements & Application Based on Legal Principles</u>

The elements for extradition are straightforward and have not changed over the last one-hundred years.[7]

1.     Jurisdiction (personal and subject matter);

2.     Existence of a Current Treaty in Force;

3.     Existence of Charges;

4.     An Extraditable Offense;

5.     Probable Cause (Including Identity).[8]

An application of these elements to the second request for extradition mandate that Moreno-Vazquez be extradited to Mexico.

First, the Court has jurisdiction.  Moreno-Vazquez was arrested and is currently residing within the Middle District of Alabama.  Moreover, 18 U.S.C. § 3184 provides federal courts with the subject matter jurisdiction over extradition matters.

---

[7] *Ornelas v. Ruiz*, 161 U.S. 502 (1896); *accord Bingham v. Bradley*, 241 U.S. 511 (1916); *McNamara v. Henkel*, 226 U.S. 520 (1913); *Zanazanian v. United States*, 729 F.2d 624 (9th Cir. 1980).

[8]   Probable cause is evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused.  *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973).  In *Benson v. McMahon*, 127 U.S. 457, 462-463 (1888), the Supreme Court held:

> the proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

*See also Collins v. Loisel*, 259 U.S. 309, 316 (1922); *Sindona v. Grant*, 619 F.2d 167 (2nd Cir. 1980); *Jimenez v. Aristeguieta*, 311 F.2d 547, 562  (5th Cir. 1962) ("the extradition magistrate merely determines probable cause, making an inquiry like that of a committing magistrate and no more"); *accord Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977).

Second, a current and valid extradition treaty exists between the United States and Mexico.[9]  Third, there are forgery of a public document charges currently pending against Moreno-Vazquez in Mexico.  On June 8, 2005, the Third District Judge in Federal Criminal Proceedings, residing in the Federal District, issued a warrant for the arrest of Moreno-Vazquez for forgery of a public document in criminal case number 66/2005.[10] This is an extraditable offense.  Forgery of a Public Document is punishable by the laws of both the United States and Mexico by a maximum prison sentence of no less than one year.  As a result, it constitutes an extraditable offense under Article 2, paragraphs 1 and 3, and Appendix, paragraph 10 of the extradition treaty between the United States and Mexico.

Finally, there is probable cause to believe that the person arrested for this charge is Moreno-Vazquez[11] and that she committed the offense charged in the arrest warrant.  In Mexico, in order apply for a passport, both birth parents must sign a child's application documents. Castillo-Tapia never consented to his children leaving the country and never signed any documents related to his children's passport applications.  According to the investigation carried out by the federal attorney assigned to the case in Mexico, however, the regular Mexican passport applications (OP-5) numbered 6290 and 6289, filed for L.F.C.M. and M.F.C.M. were applied for and included what purported to be Castillo-Tapia's signature and digital fingerprint.[12]

---

[9] *Extradition Treaty Between the United States of America and Mexico*, May 4, 1978, 31 U.S.T. 5059, 1978 U.S.T. Lexis 317.

[10] *See* Exhibit A.

[11] To the extent identity is an issue, Deputy United States Marshal Robert Wood is familiar with the fugitive and can identify her.

[12] *See* Ex. 2-5 of the Second Formal Extradition Packet.

Further expert analysis and reports confirmed that the signature and the digital fingerprint were forged.[13] Additional evidence supporting this charge is located in the second formal extradition packet and will be presented at the extradition hearing.

### III.  Conclusion

In the end, this extradition is a rather straightforward matter.  Based upon the evidence and the applicable law to extradition matters, Moreno-Vazquez must be extradited.  She applied for passports for her children so that they could come to America.  She then forged her ex-husband's signature and fingerprint in these public documents.   Because all the elements for extradition have been met, under the terms of the treaty Moreno-Vazquez must be extradited to Mexico as soon as possible to faces these charges.

Respectfully submitted this the 18th of April, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: christopher.a.snyder@usdoj.gov

---

[13] *See* Ex. 6-7 of the Second Formal Extradition Packet.

9

**<u>Certificate of Service</u>**

I hereby certify that on April 18, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:  Ben Elton Bruner.

<div align="right">

<u>/s/ Christopher Snyder</u>
CHRISTOPHER A. SNYDER

</div>

# EXHIBIT A



PROCURADURIA GENERAL
DE LA
REPUBLICA

[SEAL : UNITED MEXICAN STATES
COAT OF ARMS
JUDICIARY POWER
SECTION_____
DESK_____
NUMBER_____ ]

**MEXICO, FEDERAL DISTRICT, ON JUNE EIGHT, TWO THOUSAND AND FIVE.**

Once seen the court resolutions of the criminal case number **66/2005** to solve the legitimacy of the **arrest warrant** requested by the Federal Public Prosecutor of the Mexican Attorney General's Office to the District Judge of the moment at Estado de Mexico with residence at Naucalpan de Juarez that for that reason the Second knew about against **MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility for committing the crimes of **FORGERY OF PUBLIC DOCUMENT and USE OF FALSE DOCUMENT,** provided by Article 244 (II) related to the Article 246 (VII) and sanctioned by the Article 243, first paragraph, all in the Federal Criminal Code as well as the crime of **VIOLATION TO THE GENERAL IMMIGRATION LAW** provided and sanctioned by Article 138 of the General Immigration Law against **ARTEMIO BARRERA HERNANDEZ** for his alleged responsibility for committing the crime of **FORGERY OF DOCUMENT** provided by the Article 244 (I and V) and sanctioned by the Article 243, first paragraph of the Federal Criminal Code, and against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility for committing the crimes of **FORGERY OF DOCUMENT and USE OF FALSE DOCUMENT** provided by Article 244 (V and X) and sanctioned by 243, first paragraph of the Federal Criminal Code (sic), and



PROCURADURIA GENERAL
DE LA
REPUBLICA

## FINDINGS

**FIRST.-** By official letter number 1859 with date of June 3, 2005 received at the filing office of this jurisdictional organ, the holder of the Second District Court at Estado de Mexico with residence at Naucalpan de Juarez in compliance with the resolution of June 3, 2005, only sent the original of the criminal case number **42/2005** followed in this Court against **MARIA DEL ROSARIO MORENO VAZQUEZ, ARTEMIO BARRERA HERNANDEZ and FRANCISCO JAVIER TOVAR MARTINEZ** for their alleged responsibility for committing the aforementioned crimes; for considering the joint of the aforementioned criminal case to another **108/2004** of the index of this Court against the aforementioned accused; in spite of one of the crimes for which the consignor Federal Public Prosecutor requested an arrest warrant against the aforementioned accused it is considered as serious by the Article 194 of the Federal Code of Criminal Procedure, violating the other numeral 142, third paragraph of the previous legal statute, this is in order to provide over the arrest warrant petition within twenty four hours form its ruling.

**SECOND.-** Once the preliminary investigation number **66/2005** is settled through the provided on June 7, 2005, the respective legal procedure was made notifying to the Judge of the Unitary Court in Criminal Matter of the First Circuit in the moment, and to the attached Federal Public Prosecutor about the intervention that is its legal responsibility.





PROCURADURIA GENERAL
DE LA
REPUBLICA

### WHEREAS

**FIRST.-** This Third District Court of Federal Criminal Procedure at the Federal District, shall know until this proceeding stage about this case because it is a filing of charges that does not allow delay, according to the Article 432 related to the numeral 142, third paragraph of the Federal Code of Criminal Procedure.

The first of the numerals stipulates:

*"The questions of jurisdiction for improper venue shall not be solved until the proceedings that do not allow delay are made, and in case of being arrested, pronounced an order for the committal of the defendant, or liberation because of the lack of elements to prosecute."*

From the reading of said numeral, it is warned that the question of jurisdiction shall not be declined until those proceedings that do not allow delay are solved, and in the instant case, the request of the Order of committal of the defendant in which it shall be determined what is legally pertinent.

For the aforementioned, it is evident that this resolution is placed within that hypothesis, from the provisional question of jurisdiction lies for the effects of this Jurisdictional Organ; this, without prejudice of, within this resolution, in terms of what the Chapter 1 (II) of the Eleventh Title of the Federal Code of Criminal Procedure the question of jurisdiction is analyzed.

**SECOND.-** The Article 16 of the United Mexican States Constitution, in its relevant part establishes:



PROCURADURIA GENERAL
DE LA
REPUBLICA

*"Nobody can be bothered individually, in its family, at its address, in its papers or possessions, but by virtue of a written order from the competent authority who grounds and motivates the legal action of the proceeding. An arrest warrant shall not be passed, but through the judicial authority and without preceding a report or complaint of a fact that the law considers as a crime, sanctioned at least with a prison sentence and exist data that prove the corpus delicti and that make provable the responsibility of the defendant."*

According to the Constitutional precept, it comes out that in order to pronounce the arrest warrant it is necessary that the following requirements come together: **a).-** That a report or complaint exists, **b).-** That they refer to a fact that the law sanctions at least with incarceration, **c).-** That exist data that prove the corpus delicti, and **d).-** That the alleged responsibility of the defendant is provable.

For its part, the numeral 195 of the Federal Code of Criminal Procedure establishes:

*"When the requirements of Article 16 of the Constitution, the Court will issue an arrest warrant, rearrest or subpoena, according to the case in question, for the offender, by means of a request of the Public Prosecutor. The corresponding decision shall contain a brief list of the facts that cause it, their legal grounds and the provisional definition of the crime(s)*



PROCURADURIA GENERAL
DE LA
REPÚBLICA

*and, it shall be immediately sent to the Public Prosecutor so that he orders its execution to the police."*

Finally, the Article 168 of the Federal Code of Criminal Procedure provides:

*"The Public Prosecutor shall prove the corpus delicti and the probable responsibility of the defendant, as a ground for exercising criminal action; and the judicial authority shall verify if both requirements are met in the court records. Corpus delicti is the series of physical or external components constituting the perpetration of the conduct that the Law defines as a crime, as well as regulatory, in case the crime description requires it. Probable responsibility of the defendant shall be proven when from existent evidentiary elements; involvement in the crime is deducted, as well as the negligence or intentional conduct, and when there is no proven any legality cause favoring the accused or any cause that excludes the defendant's responsibility. Corpus delicti in question and the probable responsibility shall be proven by means of any evidentiary element admitted according to law".*

According to the text of the transcribed articles, the following is the analysis of each of the evidence attached in the statement in order to determine the existence of the data that prove the elements of the corpus delicti as well as



PROCURADURIA GENERAL
DE LA
REPUBLICA

the alleged responsibility of the defendants in their committing and decree what legally proceeds.

**THIRD.-** In the file exist, among others, the following evidence:

**1.-** Statement of the plaintiff **JOSE FERNANDO CASTILLO TAPIA** before the Federal Public Prosecutor on March 22, 2004, where he stated that he had two children named ████████████████████████ ██████████████████ with **MARIA DEL ROSARIO MORENO VAZQUEZ;** they are ████████ and ████████████ respectively and lived with their mother after getting divorced, according to the definitive sentence pronounced by the Tenth Family Judge, but on February 28, 2004, about seventeen hours, he went to pick up his kids at the house of MRS. **MORENO VAZQUEZ** at ████████████ ████████████████ fraccionamiento Lomas Verdes, Naucalpan, Estado de Mexico Zipcode ████████ getting from Maria Elena Vazquez Saucedo, ROSARIO'S mother, a letter from **MARIA DEL ROSARIO MORENO VAZQUEZ** where it said that she had taken her kids away from that address to go away from the city without telling him where, **having the suspicion that she has gone to another country, maybe the United States of America, since Mrs. MORENO VAZQUEZ had told him that on October, 2003, she got married with an American person who she met by Internet,** asking his permission to take her kids away from the country and he denied and told her that it was better to settle as a couple and then they would established the permission and visits and she didn´t accept, so on February 29, 2004 he appeared before the

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

State Jurisdiction Public Prosecutor at Naucalpan, Estado de Mexico begining

the document NJ/II/816/04-02 where he said the previous indicating before this

authority that he did not give his permission or consent for his kids, ████

████████████████████████████████████to get away from

the country and neither did he issue any instrument or approval to get their

passport from the Foreign Affairs Ministry.

Likewise, on March 1of last year, he went to his kids' school,

Colegio La Salle at Estado de Mexico where he talked to their classmates and

he noticed that Mrs. **MARIA DEL ROSARIO MORENO VAZQUEZ** and his kids

**had left the country by airplane on February 27, 2004 through**

**Aereomexico in the 636 flight with destiny to Atlanta Georgia and their**

**kids told them that their last destiny was Ciudad de Salem Alabama at**████

████████████████**registered under RONALD COONLEY** whom Mrs.

**ROSARIO MORENO VAZQUEZ**  got married with and they could probably live

at████████████Smiths, AL and ████████████Phenix

City AL,████████████Columbus GA████as well as Berrien

Springs Michigan besides the located at████████Albano, NY, ████all of

them at the United States of America; in this way, through talking with his son's

classmates, who comunicates with his friends by Internet, told them that they

would probably go to the United States of America, but they didn't know the

destiny and when would they travel.



PROCURADURIA GENERAL
DE LA
REPUBLICA

Later on, he told us that he appeared before the Tenth Family Judge at the Federal District where he asked for the custody of his children ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and regarding his doubts about his kids going away from the country, he presented himself at the window of information of the Local office of Naucalpan, Estado de Mexico of the Foreing Affairs Department in order to know if a passport was issued in favor of them, and a person of this office told him that on February 27, 2004, said documents were issued in favor of ▮▮▮▮▮▮▮and ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ and the legal documents that kept the permission was in that address, that is the reason why he asked to verify the aforementioned indicating the appearing party that he didn't give the oral permission or written and neither through any documents, and for that reason he didn't acknowledge any signatures or authorization in the files of that department.

Finally, in said action, que presented a complaint for the crime of Children Trafficking against Maria del Rosario Moreno Vazquez en agravio of his kids and he himself (pages 178 to 181.)

**2.- Inspection** made by the Federal Public Prosecutor on March 22, 2004 where he testified seeing:

a).- Simple copies of the accusation presented before the Tenth Family Judge where FERNANDO CASTILLO TAPIA reported Mrs. MARIA DEL ROSARIO MORENO VAZQUEZ the **change of custody of person to take**



PROCURADURÍA GENERAL
DE LA
REPÚBLICA

**care of** the minor ███████████████ and the total custody of ██████████████████ it is testified within six pages.

b).- Simple copy of the **report of the facts** that presented JOSE FERNANDO TAPIA at Estado de Mexico before the Public Prosecutor at Naucalpan, Estado de Mexico, testified within two pages.

c).- Page of the letter addressed to "Fernando" asigned by "Rosario".

d).- Simple copy of the **agreement** made among **JOSE FERNANDO CASTILLO TAPIA** and **MARIA DEL ROSARIO MORENO VAZQUEZ** presented according to the Family Judge in the Voluntary Divorce Judgement **regarding the custody related to the minor son** ███████████ ███████████████ **estified within two pages.**

e).- Simple copy of the letter of March 16, 2004 issued by the Colegio La Salle Principal undersigned by Ana Cecilia Esquivel Hernandez, where it is mentioned that ███████████████████ was registered at that school during 2003-2003 course in second grade and in 2003 and 2004 in third grade until February 26, 2004 appearing in the official registers as his father JOSE FERNANDO CASTILLO TAPIA.

f).- Simple copy of the **divorce sentence** of January 29, 1992 in favor of Mrs. **MARIA DE [SIC] ROSARIO MORENO VAZQUEZ** and the complaint party issued by the Tenth Family Judge at the Federal District.



PROCURADURIA GENERAL
DE LA
REPUBLICA

g).- **Birth Certificate** in original number ████████ in favor of ████

████████████████ issued by the Central Judge of the Bureau

of Vital Statistics at the Federal District.

h).- **Birth Certificate** in original number ████████ of March 12, 2003 in

favor of ████████████████████████ issued by the official

number zero two at the Registro Civil, attorney at law Margarita Mariscal De

Olvera of the Government of Estado de Mexico.

i).- Three laser coloured photos of ████████████████

████

j).- Two coloured photos of ████████████████

k).- Three laser coloured photos of ████████████

**3.-** Statement made by **MARIA ELENA VAZQUEZ SAUCEDO** on April 7,

2004, who before the Federal Public Prosecutor, she stated that she is mother

of **MARIA DEL ROSARIO MORENO VAZQUEZ** who was married with Mr.

JOSE FERNANDO CASTILLO TAPIA having two children named ████

████████████████████████ and who in that

time were divorced, and **that on February 28, 2004 about seventeen or**

**eighteen hours** arrived to the address of Mr. FERNANDO CASTILLO TAPIA

since that day he was going to see his kids ████████ and ████████

████ because every fifteen days he visited them. **When he arrived, he**

**asked for them and he was told that they were not there, and gave him a**

**letter in a closed envelope of her daughter's work, it aparently had the**



PROCURADURIA GENERAL
DE LA
REPUBLICA

**logotype of the company where she worked at, and she didn't know what it said, which her daugther, MARIA DEL ROSARIO, gave to her on February 26, 2004 without telling her where she was going to, and she understood that she was taking her kids and asked him to give it to FERNANDO. Besides, on March 27, 2004, about seven hours, she went away taking her kids and she said that she never told her where she was going to and when she asked her, she answered in a bad way "that is my business" and she went and didn't return.** After that moment, she had communication in two or three ocassions on March, 2004 only to know how was she, but she didn't say the place where they were at (pages 218 to 220).

    **4.- Official Letter DGAPII/3818/04/0550/04-AAH** with date of April 12, 2004 undersigned by the Federal Public Prosecutor attached to the INTERPOL dependent of the Mexican Attorney General's Office in which indicates among other things the following: *"In regard of this, I notify that this Administrative Unit has an administrative file related with the location of the minors* ▮▮▮▮▮▮ *which began on March 2, of this year because of the request made to this office by FERNANDO CASTILLO TAPIA, who is the minors' father, and stated that he suspected that his kids had been taken to the United States of America by their mother **MARIA DEL ROSARIO MORENO VAZQUEZ**. Regarding the aforementioned, this office began the pertinent investigations, and he could know that his kids and their mother were at Atlanta, Georgia, United States of America on February 27, 2004 in the 630 flight of Aeromexico, reason why he*



PROCURADURIA GENERAL
DE LA
REPUBLICA

*could communicate with the Interpol – Washigton(sic) in order to ask for its colaboration to locate Mrs. **MARIA DEL ROSARIO MORENO** and his minors* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *On March 26, the Interpol- Washigton (sic) informed to this Administrative Unit that the State police of Alabama send an investigating agent to interview Mrs. **MARIA DEL ROSARIO MORENO** who stated that she had the custody of the minors; likewise, she stated that their father had called her to threatened her so she decided to change her address and telephone number, and the American authorities state that for security and wellcare of the family they are not authorized to say where are they"* (page 224).

**5.-** Through the official letter without number of April 14, 2004, the Regulation Director of the Ministry of Foreign Affairssend a certified copy of the following documents:

a).- **Certified copy** of the request of ordinary Mexican passport made to **MORENO VAZQUEZ MARIA DEL ROSARIO** where an illegible copy appears (page 231).

b).- Certified copy of the illegible passport number ▇▇▇▇▇▇made to MARIA DEL ROSARIO MORENO VAZQUEZ (page 232).

c).- Two **ordinary Mexican passport requests (OP-5)** number▇▇▇▇and ▇▇▇▇made to the minors▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇and▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ **where in the first of it says SIGNATURE OF THE APPLICANT and appears the name of** ▇▇▇▇▇▇▇▇▇▇▇▇▇



PROCURADURIA GENERAL
DE LA
REPUBLICA

████████ **where it says: CONSENT SIGNATURE WITH THE DATA IN THE PASSPORT WHEN IT IS RECEIVED, an illegible signature,** with date of February 16, 2004 indicating as place Naucalpan, Estado de Mexico; **in the following page appear the data of the Father or Guardian and it is marked with an "x" in the box where it says "As Father". To make the procedure, it was identified as the passport** ████████**issued by the Ministry of Foreign Affairson November 6, 2003,** appearing an illegible signature as well as the fingerprints of the left and right forefingers and regarding the mother's data, appears in an indicated box as Mother an "x". In order to make the procedure, she was identified with the passport number ████████issued by the Ministry of Foreign Affairson September 22, 2003, an illegible signature and a fingerprint of the left and right forefinger (pages 234 to 240).

d).- Certified copy of the birth certificate number ████ of ████ ████████(page 236).

e).- Certified copy of the passport number████████ of CASTILLO TAPIA JOSE FERNANDO issued by the Ministry of Foreign Affairs(page 237).

f).- Certified copy of the passport number████████of MORENO VAZQUEZ MARIA DEL ROSARIO (page 238).

g).- Certified copy of the birth certificate number████████of ████ ████████ (page 241).



PROCURADURIA GENERAL
DE LA
REPUBLICA

h).- Certified copy of the **passport** number ▮▮▮▮▮▮ of ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮ issued on December 17, 1997 and with expiring
date of December 17, 2002 at Naucalpan, Estado de Mexico (pages 242).

**6.-** Ministerial Statement of **FERNANDO CASTILLO TAPIA** on April 26,
2004 where he said that in the way he showed in the appearance of March 22,
2004, he didn't give his permission for issuing the passports in favor of the
minors; having at his sight the documents that he sent to the Foreign Affairs
Ministry, **where it can be seen the name and signing of the person that
requested the passports issuing in favor of the minors** ▮▮▮▮▮▮
**and** ▮▮▮▮▮▮▮▮▮▮ **as well as the copy of the
passport where it is read the name of JOSE FERNANDO CASTILLO TAPIA,
who suposedely authorized the issuing of said document when checking
the documents that are in the file. He says that he didn't sign and he didn't
know who is the signature of and the fingerprint that appears in both
requests of the minors, he wasn't there fisically to present the request or
sign, or authorize the passports issuing of his kids, making clear that he
only recognizes that the passport copy in favor of his daughter** ▮▮▮▮
▮▮▮▮▮▮▮▮▮ **with date of December 16, 1997, was issued
by him and Mrs. MARIA DEL ROSARIO MORENO VAZQUEZ;** so he doesn't
recognize any permissions signed by him, in the same way, he states that the
letter in the applications is of Mrs. MARIA DEL ROSARIO MORENO
VAZQUEZ, and he stated that he remembered that days before his kids were





PROCURADURIA GENERAL
DE LA
REPUBLICA

taken away by their mother, he had his passport kept in his room at his house

and that he found it in other place and he didn't paid much attention to it, but his

son ███████████████████ had the keys copy so he thought that his

daughter or son could probably take it away and return it because they could

enter his house and because he was working, he wasn't at home and he didn't

know that they used it to issue the passports in favor of the minors; likewise,

regarding the aforementioned in the document of INTERPOL on April 12, 2004,

he only partially accepts, since he presented himself to ask for help because he

suspected that Mrs. MARIA DEL ROSARIO MORENO VAZQUEZ had taken

away his kids, as he stated before the Public Prosecutor's Office of Estado de

Mexico **the day he knew that his kids weren't living in the house of ███**

**████████████████of Lomas Verdes considering that months**

**ago, MARIA DEL ROSARIO MORENO told him that she married a person**

**named RONALD COONLEY, he was an American and that she was**

**thinking about taking her kids to the United States of America, so he told**

**her that he didn't agree with that, so he wouldn't give his permission**

**because Mrs. MARIA DEL ROSARIO MORENO told him that she met Mr.**

**COONLEY by Internet; besides, this was the second marriage after theirs**

**that she had with people met by Internet** (pages 247 to 249).

7.- Official letter without number on April 22, 2004 received at the Filing

Office of the Deputy Prosecutor's Office of  Specialized Investigation on

Organized Crime on the day 26 of the same month and year suscribed by the



PROCURADURIA GENERAL
DE LA
REPUBLICA

attorney at law Antonio Jauregui Quintana, Manager of Litigious Affairs and Air Fleet of Mexico through which are attached **the simple copies of travel cupons in favor of "MORENO/MARIA";** ██████████████ **and** ██████████████████ **used in the Mexico-Atlanta route, 636 flight on February 27, 2004 (pages 274 and 275).**

8.- Results in **identification in Graphoscopy** matter on June 10, 2004 undersigned by the experts Praxedis Irma Garcia Guerrero and Rosa Flores Vazquez attached to the General Division of Coordination of Experts Services dependant of the Mexican Attorney General's Offoce where the following results were gotten:

I).- Making the respective study of the ten-finger card of Castillo Tapia Jose Fernando, which presents the following dactiloscopy E-3343 I-2222 in the right hand, thumb forefinger middle finger, middle finger (sic), and little finger belong to the third basic type of the internal loop. For its morphology, the right ring finger belongs to the fourth basic type WHORL, CONCENTRIC SUBTYPE, and only this was compared due to its correspondence to the same basic type of the dactylograms printed in the OP7 forms;

II).- Making the study of the printed dactylograms in the OP7 forms belonging to the father of guardian with the caption left forefinger belongs to the fourth basic type WHORL, SPIRAL DEXTROGYRATION SUBTYPE. The dacylograms with the caption right forefinger belong to the fourth basic WHORL SPIRAL LEVOGYRATE SUBTYPE. **Comparing the dactylogram of the right**



PROCURADURIA GENERAL
DE LA
REPUBLICA

**ring finger of the ten-finger card of CASTILLO TAPIA JOSE FERNANDO**

**with the inserted dactylograms in the OP7 forms do not belong to the**

**subtype and therefore, in characteristic points. The photos of the**

**FINGERPRINTs, the OP7 forms were sent to the AFIS system in order to**

**make a qualifying round comparison against the data base of said system**

**giving positive results with the following data:**

**"BARRERA HERNANDEZ ARTMEIO" crime of forgery of official**

**documents.** Preliminary investigation 9545/D/94, authority Federal Public

Prosecutor holder of the Desk IX-D, 39 years old, he was born on ▮▮▮▮▮▮

1955, lives at ▮▮▮▮▮▮▮▮▮▮▮Santa Cruz Xochintepec, Xochimilco,

Federal District, whose ten-finger register is in the files of this institution so they

proceed to make the comparative study taking as a comparison base the right

and left middle fingers based on the basic type, subtype and location of the

characteristic points, the photo shoot of the ten-FINGERPRINT was made as

well as the photographic amplifications of the aforementioned in order to make

a comparison with the ten-fingerprints printed on the OP7 forms of the minors

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

From all of these it was concluded that: **First.- the printed**

**dactylograms on the ten-finger card of CASTILLO TAPIA JOSE**

**FERNANDO, DO NOT BELONG to the FINGERPRINTs in the OP-7 forms,**

**with the caption right and left forefingers of the minors** ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **SECOND; The printed**



PROCURADURIA GENERAL
DE LA
REPUBLICA

**dactylograms on the OP-7 form with the caption right and left finger of the**

**minors** ████████████████████████████████████████████

**BELONG to the FINGERPRINTs of the right and left middle fingers of**

**Barrera Hernandez Artemio** (pages 311 to 323).

**9.-** Report in **Graphoscopy matter** of June 15, 2004 undersigned by the

expert L.Aldo Chisanto Molina, attached to the General Division of Coordination

of Expert Services dependant to the Mexican Attorney General's Office, in

which he concluded:

**"FIRST.-** FOR ITS EXECUTION, **THE FINGERPRINTS DO NOT**

**BELONG** TO **JOSE FERNANDO CASTILLO TAPIA** IN THE QUESTIONED

DOCUMENTS IN THIS REPORT REGARDING THE GIVEN SIGNATURES AS

BASE OF COMPARISON; **SECOND.-** FOR ITS EXECUTION, THE WRITING

IN THE QUESTIONED DOCUMENTS IN THIS REPORT DOES NOT BELONG

TO **JOSE FERNANDO CASTILLO TAPIA** AS BASE OF COMPARISON";

attaching photographic images in color, the Writing Sample of Jose Fernando

Castillo Tapia in two pages (pages 327 to 334).

**10.-** Appearance in court of **JOSE FERNANDO CASTILLO TAPIA**

before the investigating authority on June 18, 2004 where he stated that once

he saw the result of the reports of Graphoscopy and identification, where he

concluded that the signatures, writing, and fingerprints on the OP-7 forms do

not belong to the appearing party and however, they belonged to Artemio



PROCURADURIA GENERAL
DE LA
REPUBLICA

Barrera Hernandez so in said document, he presented the formal report for the crime of forgery of document in his grievance against that (page 342).

**11.-** Ministerial Statement of the accused **FRANCISCO JAVIER TOVAR MARTINEZ** who among the most relevant he states that he was employee in the Ministry of Foreign Affairsof the Municipality of Naucalpan de Juarez receiving the documents for the issuing of passports and his function was mainly to receive the original documents and copies from the users and he had to verify and check that the documents were original and fit with the settled data with the stated by the petitioners. As well as verifying that the identifications of the petitioners agree with the physical features of the persons that presented them and once integrated the file with copies, they were asked to sign the request and the fingerprint gathering in order to verify it with the Delegate or Deputy Delegate of the Foreign Affairs Ministry. For the aforementioned, and specifically with the passports of the minors that are attached to this file, he makes clear that the same procedure was made because on February 16, 2004, he saw JOSE FERNANDO CASTILLO TAPIA AND MARIA DEL ROSARIO MORENO VAZQUEZ making clear that the lady stated that they would issue the passports of the minors, and he gave them the following documents: birth certificate, identification of the minors and identification of the parents in which a checking of the documents is made so that they are correct and the same time, checking that the identifications exactly coincides with the physical features from whom presents them, as well as the signature that





PROCURADURIA GENERAL
DE LA
REPUBLICA

appears in the identification realizing in that moment that the minors were playing with their father, then the files were gathered and **the parents were asked to sign and print their fingerprints, and once they did it, the children came close so that the deponent took the fingerprints and sign the request and told them to sit down,** because he would pass the documents to the Delegate for its verification and continuing the process of issuing the passports in the different stages of it, in which different government employees took place in the procedure of the minors ████████████████████ ████████████████████████████████████ This is all the responsibility related to the function within the Ministry of Foreign Affairsand to questions made by said Authority, TO THE FIRST ONE, that the deponent states if he recognizes the photo that appears in the passport number ████████████issued in favor of JOSE FERNANDO CASTILLO TAPIA which is attached to this investigation and that said person was the same that came with MARIA DEL ROSARIO MORENO VAZQUEZ to issue the passports for her kids at the Ministry of Foreign AffairsOffice at Naucalpan de Juarez, Estado de Mexico, ANSWER: It is the same person that appeared before me because in the customer service line there were FERNANDO CASTILLO TAPIA AND MARIA DEL ROSARIO MORENO VAZQUEZ, and he fully recognizes as the persons that he attended to. TO THE SECOND ONE. So that the deponent states how is JOSE FERNANDO CASTILLO TAPIA physically, ANSWER.- he is a person of one meter and seventy centimeters tall, medium constitution and he



PROCURADURIA GENERAL
DE LA
REPUBLICA

wears a suit and he has good physical shape, TO THE THIRD ONE.- So the deponent states how is MARIA DEL ROSARIO MORENO VAZQUEZ physically. ANSWER.- I don't remember well her features. In respect of it, the Federal Public Prosecutor testified that the accuser JOSE FERNANDO CASTILLO TAPIA has physical features outstandingly different from the mentioned as true by FRANCISCO JAVIER TOVAR MARTINEZ (pages 603 to 606).

**12.-** Ministerial Statement made by **JUAN ARAMONI BURGETE** rendered on November 12, 2004 where interests, among other things, he stated that he was delegate at the Ministry of Foreign Affairsat Naucalpan, Estado de Mexico; besides, he stated that regarding the documents that supported the issuing of the passports of ████████████████████████████ ███████████ was correct gathering the ends of the established regulations by said Ministry and in the Regulations of Passports in force having added that their participation within the issuing consisted in verifying the correct incorporation of the file base of the issuing of the passports, that he didn't remember that he had seen the minors' parents. (pages 609  611).

**13.-** Ministerial statement made by **ANA LUISA LOZANO GUTIERREZ** rendered on November 12, 2004 where she mainly stated that she was typist in the office of the Ministry of Foreign Affairsat Naucalpan, Estado de Mexico; besides having stated that regarding that the facts being investigated consisted in the capture of the data in the system of files previously incorporated and





PROCURADURIA GENERAL
DE LA
REPUBLICA

checked, which didn't allow her to be in contact with the costumers (pages 613 to 615).

14.- Ministerial statement made y **VIRIDIANA MOLINA OLVERA,** rendered the same November 12, 2004 where she stated that she was digitalizer of files in the Ministry of Foreign Affairsat Naucalpan, Estado de Mexico that consisted in verifying the file data previously incorporated and verified after its capture; she also stated that due to her work, she stayed out of the customers (pages 617 to 619).

15.- Appearance in court of **NATIVIDAD CARRERA SANTIAGO** on May 16, 2005 before the investigating authority in her Deputy Director of Regulation and Migratory Control of the Ministry of the Interior where in said action, she presented an official letter of May 16, 2005 **where she brought a complaint against Maria Rosario Vazquez Moreno for her alleged responsibility for committing the crime of Violation of the General Immigration Law provided by the numeral 138 of said regulation; official letter duly ratified** (pages 720 and 723).

## VERIFICATION OF THE CRIME.

FOURTH.- The investigating authority filed an indictment against **MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility for committing the crime of **VIOLATION OF THE GENERAL IMMIGRATION LAW** provided and sanctioned by the Article 138 of the General Immigration Law,



PROCURADURIA GENERAL
DE LA
REPUBLICA

crime over which the first analysis shall be about without caring about if it affects the order in which the consigner authority paid this facts into court.

Before beginning the study of the evidence means, it is necessary to verify that the requirement of procedure have been carried out due to the fact of being an indispensable and preferential study as it is established by the Article 143 of the General Immigration Law which text says:

*"The exercise of the criminal action by the Federal Public Prosecutor which this Law refers to, shall be subjected to the complaint that in each case the Ministry of the Interior formulates."*

From the transcribed rule, it is deduced that the crime, exercise of the criminal action matter shall only be able to pursue ***as a request*** of the Ministry of the Interior.

Regarding the complaint and the equivalent requirements of procedure; Article 113 of the Federal Code of Criminal Procedure, it stipulates:

***"Article 113.*** *The Public Prosecutor's Office and its assistants according to the orders received by those, are obliged to officially investigate the known crimes. The preliminary investigation could not be officially initiated in the following cases:*

***"I. When it is about crimes in which only can be proceeded by needed complaint if it hasn't been presented.***

***"II. When the law demands some previous requirement if it hasn't been fulfilled.***





PROCURADURIA GENERAL
DE LA
REPUBLICA

*"If the person who begins an investigation isn't responsible of prosecute it, he/she shall immediately notify to the legally respective person.*

*"When a complaint or other equivalent action is needed for the prosecution of a crime, the Federal Public Prosecutor shall act according to what it is provided by the Organic Law of the Mexican Attorney General's Office in order to know if the complaint is filed or it satisfies the equivalent procedure requirement."*

However, it is obvious that the request that the Ministry of the Interior has to be presented before the Federal Public Prosecutor in order to begin the preliminary investigation is a previous requirement of the criminal action without which it couldn't be exerted; consequently, said request is a true requirement of procedure equivalent to the authenticated complaint.

In this way, from the written evidence that are in the proceedings it can be seen that the requirement is fulfilled with the appearance of **NATIVIDAD CARRERA SANTIAGO** on May 16, 2005 before the investigating authority in its character of Deputy Director of Regulation and Migratory Control of the Ministry of the Interior where in said action, an official letter of May 16, 2005 was presented, where a complaint against Maria del Rosario Moreno Vazquez was made for her alleged responsibility for committing the crime of Violation of the General Immigration Law provided by the numeral 138 of said code; official letter in question that was duly ratified.



PROCURADURIA GENERAL
DE LA
REPUBLICA

According to the public servant who presented the complaint, she is duly able to do it as Deputy Director of Regulation and Migratory Control of the Ministry of the Interior, quality authorized with certified copy of the appointment of April 15, 2002.

It is applicable to the aforementioned, the Jurisprudence 48/2003 of the First Chamber of Mexico's Supreme Court of Justice that it was announced solving the contradiction of Theory 143/2002-PS which can be consulted on page 225, Volume XVIII of September, 2003, Ninth Epoch of the Weekly Federal Court Report and its Gazette entitled:

*"COMPLAINT PRESENTED IN WRITING. IT'S NECESSARY ITS RATIFICATION WHEN IT IS MADE BEFORE THE REPRESENTATIVE OF THE MINISTRY OF THE INTERIOR.*

*When the complaint is made in writing in the cases of crimes that the General Immigration Law refers to, it has to be ratified by the government employee who subscribe it in representation of he Ministry of the Interior. The aforementioned is like this, because when it is orally presented, according to the provided in the Articles 118 and 119 of the Federal Code of Criminal Procedure related with the Article 143 of said law, the Public Prosecutor should make certain of the government employee being the representative of the Ministry of the Interior and that has the abilities to present it on his behalf, to state that it was orally made in the report being filed and gather the signature and fingerprint of whom it presents it, so makes the ratification pointless. Whereas, when the complaint*



FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPÚBLICA

is presented before the Public Prosecutor in writing, he should make certain of

the legitimacy of the government employee who subscribes it, gather the

signature and fingerprint of who is presenting it and above all, to make sure of

the identity of the plaintiff as well as the authenticity of the instruments in which

it is formulated and require the signing party in order to duly sworn in knowing

about the penalties that could be committed if perjury before the authorities is

committed, which could only be possible to carry out through the ratification of

the written before the investigating organ with the presence of the plaintiff, and

with it, it would be certain the responsible person in the supposition of the stated

facts in the writing of the complaint that turn to be false.


Stated the aforementioned, the study of the corpus delicti provided and

sanctioned by the first paragraph of the Article 138 of the General Immigration

Law, making the necessary for its effect, the transcription of the aformentioned

regulation:

*"Article 138.-* A penalty of six to twelve years of prison and a multa to

100 to 10,000 days of minimum salary in force in the Federal District in the

moment of committing the fault, to whom by himself or through a third party with

a trafficking purpose pretends to take or takes away Mexican people or

foreigners to another country without the corresponding documents.

The same penalty shall be imposed over whom by himself or by other or

others introduces, without the corresponding documents issued by the

The header



PROCURADURIA GENERAL
DE LA
REPUBLICA

*competent authority to one or many foreigners to Mexican territory or with a trafficking purpose, to shelter them or take them through national territory with the purpose of hidding them in order to avoid the migratory review.*

*To whom knowing the means, presents or serves to carry out the described conducts of the previous paragraphs, a penalty of one or five years of prison shall be imposed and a equivalent fine of five thousand days of minimum salary according to what is in force at the Federal District.*

*The penalties provided in the precedent paragraph shall be increased when the described conducts are carried out regarding the minors, or in conditons, or by means that jeopardize health, integrity or life of the indocumentados, or when the author of the crime is a government employee."*

From the textual quote, the diverse normative documents fall into the following, such as: **"third party", "take away", "trafficking", "foreigners", "penetrate into other country",** and **"without the corresponding documents"** which in particular, are capable of being value legally as well as culturally.

In this way, regarding the first elements of reference "third party", becomes a simple interpretation of the other 13 (IV) of the Federal Criminal Code; this is regarding the participation degree carrying it out through another (mediate author).

For its part, the expression "trafficking" its constitued by the subjective specific element that makes the carrying out of the action and its context comes





PROCURADURIA GENERAL
DE LA
REPUBLICA

from the cultural assessment that refers to the general trade (to negotiate and to trade), clandestine crime that the active subject makes regarding those persons that want to introduce to another country without taking into account the corresponding documents.

It is applicable thesis XIX. 1o. J/11 supported by the First Collegiate Circuit Court of the Nineteenth Circuit on page 941, Volume XI of March 2000 Ninth Epoch of the Weekly Federal Court Report and its Gazette titled:

*"**TRAFFICKING OF PEOPLE WITHOUT IDENTITY PAPERS. FOR THE CONFIGURACION OF CRIMINAL TYPE OF REPEATED CONDUCT IS NOT REQUIRED.** From the analysis of the Article 138 of the General Immigration Law it is warned that even though reference to the "trafficking" of people without identity papers is made, it is not demanded as typical element of said legal figure a repeated conduct, because grammatically that expression is not a synonim of usual, on the contrary, according to the Dictionary of Law of Rafael de Pina Vara such term means "to negotiate or to trade" so it is obvious that the crime **just implies the illegal transfer of persons from one country to another with the purpose of charging or trying to charge money;** maxime that the exposicion of reasons presented by the Chamber of Deputies of the Federal Congress on September 19, 1996 published in the Federal Official Gazette on November of the same year, it is not noticed  that the purpose of the legislator had been precisely to demand a repeated conduct in order to make up the criminal type we are talking about (if it were, it would have been expressed in a precise way) but to fight with greater rigor the conducts linked to the illegal transfer of human beings."*

In regard to the term *"taking away"* belongs to the nuclear verb of the criminal type and its conceptualization comes from an assessment of cultural



PROCURADURIA GENERAL
DE LA
REPUBLICA

type, being that as giving an enough cause for its transfer without the corresponding documents.

For its part, the semantic content of the word *"foreigners"* is made up for an specific quality of the subjects that are the action reason and its context comes from a legal valoracion derived from what the Article 2 (IV) of the Nationality Law and it is conceive as the person who does not has the Mexican nationality.

Now, regarding *"penetrating into another country"* refers to a special circumstance derived from the traffic from our Republic to another; it is about itself, of a regulation element of cultural assessment which conceptualization is to cross our territroy limits to another Nation.

In accordance to the last regulation element *"without the corresponding documents"* its context comes from the legal type assessment derived from the content of the General Immigration Law and its Regulation from which emerges as a generic concept the series of procedure and migratory requirements that have to fulfill in order to come in, or in its case, come out the country.

Now, in the case of a study in terms of Articles 168 and 180 of the Federal Code of Crimina Procedure and the written evidence that form the case in the legal reason that precedes, it can be noticed that the requirements and conditions that refer to said rules are not duly accredited.

In this way, the elements that make the corpus delicti a study are:

*The conduct made by the different activities:*

a) *That somebody or by itself, or by another person wants to take or takes Mexicans or foreigners to live in another country with a trafficking purpose;*

b) *That by itself or by other or others, introduces one or many foreigners into Mexican territory;*

*That the estipulated in two points, is carry out without those that have the corresponding documents issued the the competent authority.*





PROCURADURIA GENERAL
DE LA
REPUB ICA

*Or*

c) *That the persons are sheltered or transported into national territory in order to hide them to avoid the migratory revision with the trafficking purpose;*

From the previous description, it is seen that it has semantic expressions; in this way, regarding the regulation element *"Mexican territory"* a cultural type valoracions corresponds and it is similar to the term *"Republic"* understood not only as the members of the Federation, but also the insular territory, the territorial ocean, the continental platform, submarine bases, the waters of the territorial oceans and also the space over the national territory itself.

Now, the regulation element *"transport"* and *"shelter"* that belongs to the alternative verbs that made the criminal type aforementioned, its context comes from the cultural assessment which the first is understood as transfering or taking from one geographic area to another to one or many foreigners, specifically, within the national territory whereas the second one, means to put up or to shelter a person in a place.

The term *"to hide"* is made by the specific subjective element that characterizes the fulfillment of the action and its context comes from a cultural assessment that translates itself as a person being seen.

The expression *"to avoid the migratory inspection"* refers to the action purpose and it translates itself into a legal assessment based on the Article 7(II) of the Geneal Immigration Law that establishes the hability of the Ministry of the Interior of watching the entrance or exit of the locals and foreigners and check the documents of them according to the Law and its Regulations in accordance with the Article 11 that refers to the international traffic of people through harbors, airports, and boundaries, it just can be made through the set places with the intervention of the migratory authorities.



PROCURADURIA GENERAL
DE LA
REPUBLICA

The referred objective and regulative elements were accredited in the proceedings; in regard of the first one, that is *that the active for itself wants to take or takes Mexican people or foreigners to another country,* it is demonstrated with the statement made by **JOSE FERNANDO CASTILLO TAPIA** who before the Federal Public Prosecutor on March 22, 2004 regarding the stated on February 28, 2004, about 17 hours, went to Mrs. **MORENO VAZQUEZ'es** and her kids' address at ███████████████████ fraccionamiento Lomas Verdes, Naucalpan, Estado de Mexico, Zip code ████ to pick them up, Mrs. Maria Elena Vazquez Saucedo, ROSARIO's mother, gave him the letter from **MARIA DEL ROSARIO MORENO VAZQUEZ** where she said that she had taken her kids away from that address to get out of the city without saying their destiny, **having the suspision that she had taken them to another country, maybe to the United States of America since Mrs. MORENO VAZQUEZ had told him that on October, 2003 she married an American person who knew in Internet,** and she asked his permission to take her kids away to another country, so he denied telling her that it was better to establish with her partner and then they would talk about the permission and the visits, thing that she didn't accept it. Likewise, on March 1 of last year, he presented himself at his childrens' school, Colegio La Salle in the Estado de Mexico, where he talked to their classmates, noticing that Mrs. **MARIA DEL ROSARIO MORENO VAZQUEZ** and his minors, **had left the country by airplane on February 27, 2004 using the services of Aereomexico (sic) in 636 flight with destiny Atlanta Georgia, to Salem Alabama City at ████** ████████████ **registered under RONALD COONLEY, ROSARIO MORENO VAZQUEZ'es** partner who could probably live at ████ █████████Smiths, AL and ████████████Phenix City AL, ███ ████████Columbus GA███ as well as Berrien Springs  Michigan  also





PROCURADURIA GENERAL
DE LA
REPUBLICA

in ██████████ Albano, NY, ██████ all of them in the United States of America. Likewise, through some conversations he had with his son's friends, and he was in touch with them through the Internet, and told them that they might travel to a place outside from the United States, but without specifying a destiny or a date for the trip.

Then, he indicated he had appeared before the Tenth Family Court in the Federal District, where he requested the custody of his children ████ ██████████████████████ and ██████████████████████ and about the doubts he had about his children leaving the country, he went to the information window in Naucalpan Local Offices, in the Ministry of Foreign Affairs area in the State of Mexico, to find out if that office had issued passports for them, and one person in that office told him that on February twenty seven, two thousand and four, such documents were issued for ██████████████████ ██████████████████, that person also said that the legal documents supporting the passports were there, and he requested their verification because he stated he hadn't given his verbal or written consent for those matters and he did not sign any documents for such purpose.

The above is linked to the statement given by **MARIA ELENA VAZQUEZ SAUCEDO**, on April seven, two thousand and four, who stated before the Federal Public Prosecutor she was the mother of **MARIA DEL ROSARIO MORENO VAZQUEZ**, and it was confirmed that on **February twenty eight, two thousand and four, at approximately seventeen or eighteen hours,** FERNANDO CASTILLO TAPIA went to her house because he was going to see his children ██████████████████████, he visited every fortnight. **When he arrived and asked her where they were, she said they weren't there and gave him a letter in a closed envelope, the envelope was from her daughter's workplace, apparently it had the company's logo, and this letter had been given to her by her daughter MARIA DEL ROSARIO on**





PROCURADURIA GENERAL
DE LA
REPUBLICA

February twenty six two thousand and four, but she didn't tell her where she was going, it was understood that she was taking her children with her, and asked her mother to give the letter to FERNANDO; on the other hand, on March twenty seven two thousand and four, around seven, he left with her children and I repeat she never said where she was going, she said that when she asked her where she was going she answered rudely "that is not of your business" and she left and never came back, they talked to each other two or three times, on March two thousand and four, and she only talked about how she was but she never said where she was.

During his statement, **FRANCISCO JAVIER TOVAR MARTINEZ** said, among other things, that he works for the Ministry of Foreign Relations in the Municipality of Naucalpan de Juarez and his job is to receive all the documents requested to obtain a passport; what he mainly does is receiving the original documents and their copies. So, among other things he said that on February sixteen two thousand and four, he received JOSE FERNANDO CASTILLO TAPIA and MARIA DEL ROSARIO MORENO VAZQUEZ, and he said that lady told him they wanted to obtain their children's passports and he helped them.

These statements have legal weight as a piece of evidence, in compliance with the provisions set forth in Article 285 of the Federal Code of Criminal Procedure, since they fulfill the requirements contained in rule 289 of such body of law, which regulates testimonies, for the deponents' age, probity, capacity and education, which makes them capable to judge impartially; that they directly knew the facts and not through inductions or third parties; their statements are clear and precise, without doubts or reluctance, they express the essence of the facts and the circumstances, they don't seem to have been driven by mistake, deception or bribery and therefore they reveal impartiality.

With all the information above, it may be deduced that **MARIA DEL ROSARIO MORENO VAZQUEZ** took her children to another country, specifically to Atlanta City in the United States of America.



PROCURADURIA GENERAL
DE LA
REPUBLICA

The legal precedent number 376 can be applied to this case, published in pages 376 and 377 of the compilation and quoted parts, and it states:

*"WITNESSES. APPRECIATION OF THEIR STATEMENTS". The statements rendered by witnesses during a criminal process shall be assessed by jurisdictional authenticity having in mind the valuation elements specified in the positive standards of the applicable Law as well as all the objective and subjective circumstances which determine the mendacity or veracity of the testimony subject to litigation".*

This is linked to the official letter without registration number but dated April twenty two, two thousand and four, received in the Filing Office of the Deputy Attorney General's Office for Organized Crime on the twenty sixth day of the same month and year, signed by Antonio Jauregui Quintana, Manager of Administrative Affairs for Flota de Aerovias de Mexico, accompanied by **simple copies of travel coupons in the name of "MORENO/ MARIA";** ████████████ **and** ████████████████████**", used from Mexico to Atlanta for the flight six hundred and thirty six on February twenty seven, two thousand and four.**

These documents are recorded in simple copies, which reduces their evidentiary weight because they are obtained through technical and scientific methods, easy to manipulate or change its composition; however, the possibility of having a real or authentic value of the exact contents of the copied document or documents cannot be discarded, that is why they will be considered as evidence since they are linked to other evidentiary elements like the official letter dated April fourteen, two thousand and four. The Director of Regulation Matters of the Ministry of Foreign Relations submitted a certified copy of the following documents:



PROCURADURIA GENERAL
DE LA
REPUBLICA

a).- **Certified copy** of the application for Mexican ordinary passport, in the name of **MORENO VAZQUEZ MARIA DEL ROSARIO,** with an illegible photograph;

b).- Certified copy of an illegible passport, number ████████ in the name of **MORENO VAZQUEZ MARIA DEL ROSARIO;**

c).- Two **applications for Mexican ordinary passport (OP-5),** number ████ and ████ in the name of the minors ██████████████ ██████and████████████████;

d).- Certified copy of the birth certificate number████, in the name of ██████████████████

e) Certified copy of the passport number█████████, in the name of CASTILLO TAPIA JOSE FERNANDO, issued by the Ministry of Foreign Relations;

f).- Certified copy of the passport number█████████ in the name of MORENO VAZQUEZ MARIA DEL ROSARIO;

g).- Certified copy of the birth certificate number█████████, in the name of ██████████████████;

h).- Certified copy of the **passport** number█████████ in the name of ██████████████████████, issued on December seventeen, nineteen ninety seven, with expiration date December two thousand and two, in Naucalpan, Mexico.

Due to their quality, these documents acquire the degree of documentary public evidence since by law they are included in the competence of government employees and certifying public officers; therefore, in compliance with articles 280 and 281 of the Federal Code of Criminal Procedure, the aforementioned documents receive full evidentiary weight.

In this matter it is important to mention the following legal precedent, on page 227, Volume XV-January, of the Weekly Federal Court Report, supported by the Collegiate Court of the Twentieth Circuit, with the following text:



PROCURADURIA GENERAL
DE LA
REPUBLICA

*"PUBLIC DOCUMENT. WHAT TO CONSIDER AS SO."* A public document is the statement given by a government employee while performing his duties, which has weight of evidence and fully proves the act contained in it".

Despite the fact that these elements are considered as evidence in compliance with the provisions set forth in Article 285 of the Federal Code of Criminal Procedure, they can only be useful to prove that on February twenty seven two thousand and four, **MARIA DEL ROSARIO MORENO VAZQUEZ** took her children to the United States of America, specifically to Atlanta City, on the flight six hundred and thirty six of the airline Flota de Aerovias de Mexico.

However, in relation to the ***mens rea*** regarding **trafficking**, performed illegally and clandestinely, specifically with regard to those who try to introduce Mexicans to another country without the corresponding documents with the intention of charging a certain amount of money, it is not acknowledged, **since there are no elements in the records which prove that MARIA DEL ROSARIO MORENO VAZQUEZ obtained a profit for introducing her children** ▆▆▆▆▆▆▆▆▆ **and** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ **into the United States of America.** In this case, there is no evidence of commercialization or exploitation of the human or economic condition of immigrants which merits the severe sanctions applied to those who commit such crime and there is no evidence that the aforementioned person worked as an immigrant trafficker or that she exploited the human or economic condition of her children subjecting them to outrageous conditions by taking them to the United States of America.

In this matter, there is an applicable legal precedent supported by the Third Collegiate Court of the Fifth Circuit, page 583, Volume VIII, of November 1998, Ninth Period, visible in the Weekly Federal Court Report and its Gazette, that says:





PROCURADURIA GENERAL
DE LA
REPUBLICA

*"TRAFFICKING, PURPOSE. SCOPE OF THE CRIME FORESEEN IN ARTICLE 138 OF THE GENERAL IMMIGRATION LAW.* Article 138 of the General Immigration Law establishes: "Upon whomever or by means of a third party, for the purpose of trafficking, attempts to take or takes Mexican or foreigners into another country, without the corresponding documentation there shall be imposed an imprisonment penalty from six to twelve years and a fine from one hundred to ten thousand days of minimum daily general wage in force in the Federal District at the time when the conduct is perpetrated..." Until November eight, nineteen ninety six, when it was reformed by the decree published in the Official Gazette of the Federation, such precept said in its first paragraph: "Upon whomever or by means of a third party, for the purpose of trafficking, attempts to take or takes Mexican or foreigners into another country, without the corresponding documentation there shall be imposed an imprisonment penalty from two to ten years and a fine up to ten thousand days of minimum daily general wage in force in the Federal District at the time when the conduct is perpetrated..." The reasons that gave rise to the decree that reforms, adds and repeals several provisions of the General Immigration Law, considered in this regard that it was necessary to  apply a greater and more severe punishment for offenders who commit the crime of "illegal alien trafficking"; therefore, the new precept was included as the mens rea of the aforementioned crime, the "trafficking purpose" **of the offender; the semantic connotation of the word "trafficking", as described in the Dictionary of the Royal Academy of Spanish, is to "traffic"; "traffic": to trade, negotiate with money and merchandise;** on the other hand, Larrouse Encyclopedic Dictionary defines the word "trafficking" as: illegal and clandestine commerce; and the verb "traffic", to negotiate, carry our commercial operations, usually illegal and clandestine. So, the term "purpose of trafficking" used by the General Immigration Law refers to illegal and clandestine commerce, in general, carried out by the offender while introducing people into another country, without the

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

*corresponding documentation, **whoever performs such action obtaining a profit".***

Therefore, if that element is missing and its function is to understand the objective description of a conduct, then one of the constituting elements of the crime will be missing as described in Article 138, second paragraph, of the General Immigration Law and the behavior shown would not give rise to the criminal hypothesis of transporting one or several Mexican or foreign people with the <u>purpose of trafficking</u> and hiding them to avoid a migratory revision.

Regarding the different hypothesis of the crime, included in Article 138 of the aforementioned Law, saying that if the offender ***in person or by means of a third party enters, without the corresponding documentation issued by the jurisdictional authority, one or several foreigners into Mexican territory or, for the purpose of trafficking, lodges or transports them within Mexican territory*** is not proven since ███████████████████ both with the last names ███████████████ are not foreigners and, on the contrary, it is duly recorded that in compliance with Article 30 of the Political Constitution of the Mexican United States, they are Mexican citizens by birth since they were born in Mexican territory and their parents are also Mexican, so this hypothesis cannot be acknowledged.

This element receives full evidentiary weight, in compliance with Article 280 of the Federal Code of Criminal Procedure, since it is a public document issued by a public officer in the fulfillment of his duties.

The above is supported by the legal precedent of the Collegiate Court of the Twentieth Circuit published in the Weekly Federal Court Report, Volume XV, January 1995, Eight Period, page 227, in the following section:

***"PUBLIC DOCUMENT. WHAT TO CONSIDER AS SO."***

Consequently, since the behavior attributed to the suspect in the aforementioned hypothesis is not acknowledged, it is not important to study the



PROCURADURIA GENERAL
DE LA
REPUBLICA

specific *mens rea* required for the quoted criminal definition, which specifies that such behavior **must have the purpose to hide them** so as to avoid a migratory revision.

In this regard, this court is not empowered to reclassify the present facts into a different criminal definition, such as **CHILD TRAFFICKING,** since it cannot be ignored that in relation to the facts that gave rise to the present study, the Seventh District Court in the State of Mexico, sitting in Naucalpan de Juarez, accepted the competence given in that moment on behalf of that court, regarding the aforementioned crime; therefore, considering that the stage of the case is acknowledged, studying the same crime based on the same facts would reclassify the behavior and the same crime would be punished twice, which is forbidden by Article 23 of the Constitution under the apothegm *non bis in idem.*

In this respect, since not all the elements that integrate the crime of **VIOLATION TO THE GENERAL IMMIGRATION LAW** are proven, as set forth in article 138, first and second paragraphs of the General Immigration Law, the requirements for an arrest warrant are not gathered as foreseen in Article 16 of the Constitution and 142 of the Federal Code of Criminal Procedure, so it is not necessary to deal with the remaining element of the *corpus delicti* or with the alleged responsibility of the accused, therefore **the arrest warrant requested by the Public Prosecutor submitting the indictment is denied.**

The core legal precedent number 278, page 203, Volume II, Criminal Matters, of the Appendix of the Weekly Federal Court Report, 1917 to 2000, which states:

*"INSUFFICIENT EVIDENCE, CONCEPT.-* Insufficient evidence is considered when the recorded information does not fully prove the accusations made; a decision based upon insufficient evidence violates constitutional rights."

**PROVING THE CRIMES**



PROCURADURIA GENERAL
DE LA
REPUBLICA

**FIFTH.-** Likewise, criminal action was applied against **MARIA DEL ROSARIO MORENO VAZQUEZ,** for her alleged responsibility in the perpetration of the crimes of **FORGERY OF PUBLIC DOCUMENT** and **USE OF FALSE DOCUMENT,** foreseen in Article 244 (II), in relation to Article 246 (VII) and sanctioned by Article 243, paragraph one, of the Federal Criminal Code; against **ARTEMIO BARRERA HERNANDEZ** for his alleged responsibility in the perpetration of the crime of **FORGERY OF DOCUMENTS,** foreseen in Article 244 (I) and (V), sanctioned by Article 243, paragraph one, of the Federal Criminal Code, and against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility in the perpetration of the crimes of **FORGERY OF DOCUMENTS** and **USE OF FALSE DOCUMENT,** foreseen in Article 244 (V)(X), and sanctioned by Article 243, paragraph one, of the Federal Criminal Code [sic], which state the following:

*"ARTICLE 243.- The crime of falsifying public documents shall be punished with imprisonment ranging from four to eight years and a fine ranging from two hundred to three hundred and sixty days. As for private documents, imprisonment ranging from six months to five years and a fine ranging from one hundred and eighty to three hundred and sixty days..."*

*"ARTICLE 244.- The crime of forgery of documents is committed by any of the following means.*

*I.- By stamping a false signature, even if the signature is fictitious or if an original signature is modified.*

*II.- By unduly obtaining a benefit from another's blank endorsement, issuing a debenture, or any other document that may compromise the assets, honor, the physical integrity or reputation of another third person, or that cases a harm to society, the State or a third party,*

M



PROCURADURIA GENERAL
DE LA
REPUBLICA

III.- By altering the text of the original after it has been concluded and signed, if said alternation changes the meaning of the document with respect to some material circumstance or issue, either by partially or completely adding, correcting or erasing, one or more words or clauses or by changing the punctuation.

IV.- By varying the date or any other circumstance related to the time that the act stated in the document was executed.

**V. - By attributing to the person who issues the document, or by attributing to the person in whose name the perpetrator issues the document a name or office, capacity or condition that they do not have and which is necessary to the validity of the act.**

VI.- By drafting a document on terms that modify the agreement executed to another that varies the representations or will of the grantor, the obligations which the latter wished to undertake, or the rights that the latter should have been acquired.

VII.- By adding or altering clauses or statements, or recording as true false facts, or as admission what has not be admitted, if the document in which these are manifested is issued as a record and proof of the same.

VIII.- By extending a supposed official copy of non-existent documents, extending a copy of a document that lack the legal requirements when these have allegedly been fulfilled, or by extending a copy of a document that meets the legal requirements but in the copy the contents of the original document have been added to or suppressed and these changes import a substantial variation,



PROCURADURIA GENERAL
DE LA
REPUBLICA

*IX.- By altering an expert translator or paleographer the contents of the document translated or decoded.*

*X.-* ***"By making plates, identification badges, emblems, documents or any other official identification without the authorization of the pertinent authority".***

***"Article 246****. The penalty referred on Article 243 shall be also incurred by:*

...

*VII.- Whoever, knowingly, makes use of a forged document or copy, transcript or notarial certificate of it, be it public or private."*

After pointing out the above, it has to be clarified that according to the method used, the *corpus delicti* will be studied separately for each one of the accused; in this regard, the first crimes to analyze are the ones attributed to **MARIA DEL ROSARIO MORENO VAZQUEZ,** which are: **FORGERY OF PUBLIC DOCUMENTS,** foreseen in Article 246 (II), and **USE OF FALSE DOCUMENT** foreseen in Article 246 (VII), both sanctioned by Article 243, paragraph one, of the Federal Criminal Code.

In accordance with the provisions set forth in Article 19 of the Political Constitution of the United Mexican States, as well as 134, paragraph three and 168 of the Federal Code of Criminal Procedure, concerning the requirements for an arrest warrant, the first step is to decide which criminal definition corresponds to the behavior of the accused and then to verify if the evidence gathered during the preliminary investigation proves the elements of the *corpus delicti* or the corresponding crimes, and the alleged responsibility. Likewise, in compliance with the provisions set forth in Article 163 of the Federal Code of Criminal Procedure, the judge has the obligation of rendering a resolution (an



PROCURADURIA GENERAL
DE LA
REPUBLICA

arrest warrant or indictment with detainee within the constitutional term, since both have the same basic requirements), for the classified crime; as a result, this judge is empowered to modify the classification made by the investigating federal authority because the legislator created this rule considering juridical security in all actions of the court.

In this regard, the legal precedent of the First Collegiate Court of the Fifteenth Circuit can be applied, which can be found in the Weekly Federal Court Report, Volume XII, August 1993, page 495, eight period, which states:

*"ARREST WARRANT. CRIMES THAT MERIT ITS ISSUANCE. DETERMINED BY A JUDGE" In order to grant it, it is not necessary to only consider the crime deemed by the Public Prosecutor; the judge can also find some criminal action in the facts analyzed by the court which merits imprisonment and some indication of responsibility from the accused, apart from the fact that the crime that gave rise to the warrant coincides with the crime considered by the Public Prosecutor; his job is to submit the facts and only the judge can place them within the Law".*

Contrary to the opinion of the prosecuting authority about the documents that integrate the present criminal case, it can be seen that only one crime was committed, **FORGERY OF PUBLIC DOCUMENT**, foreseen in article 244 (I) and penalized by Article 243, paragraph one, both from the Federal Criminal Code and there is no evidence of **USE OF FALSE DOCUMENT**, foreseen in Article 246 (VII), due to the following reasons:

On this matter, the transcription above shows the following elements for the first crime mentioned:

    a) *The existence of a false public document (regulating element);*

    b) *Making a false signature or false initials, even if they are fictitious, or modifying a false signature;*

The typical description contains as regulating elements the terms "**public or private document**", "**signature**" or "**initials**" understood as follows: the





PROCURADURIA GENERAL
DE LA
REPUBLICA

first concept requires a legal and cultural assessment since, in compliance with Article 133 of the Federal Code of Civil Procedure, private documents do not gather the conditions foreseen in Article 129 of the aforementioned Code, which specifies the document must be created by law, within the limits of its competence, to a government employee; a public document has seals, signatures or other external signs required by law. Therefore, false *public documents* shall not present the foregoing elements. On the other hand, the word *signature* is defined in the Royal Spanish Academy Dictionary as the name and last name of a person or the title a person manually writes on a document in order to give it authenticity or to express that the content is approved, while *initials* are the strokes each one adds to the name or title, sometimes used by themselves, without using the name or title of the signing person.

The **first element of the crime,** regarding the existence of false public documents is duly fulfilled with the **expert opinion on graphology**, dated June fifteen two thousand and four, signed by the expert L.Aldo Chisanto Molina, assigned to the General Division for Expert Services Coordination, dependent of the Attorney General's Office, which was made after analyzing the following documents: two ordinary passport applications, Mexican (OP-5), number ▮▮▮ and ▮▮▮ in the name of the minors ▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮ respectively, issued in Naucalpan de Juarez, State of Mexico, dated February sixteen, two thousand and four, which have the acronym of the Ministry of Foreign Affairs on the left upper corner and with the OP-7 form at the back, regarding the authorization of parents or guardians to issue such passport. The expert concluded that: "**FIRST**.- THE SIGNATURES IN THE DOCUMENTS ANALYZED DURING THE FIRST OPINION **DO NOT TALLY WITH** THE SIGNATURE OF **JOSE FERNANDO CASTILLO TAPIA** IN COMPARISON WITH THE SIGNATURES GIVEN FOR   COLLATING. **SECOND**.- THE HANDWRITING IN THE

FORMA C G . 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

DOCUMENTS ANALYZED DURING THE FIRST OPINION **DO NOT TALLY WITH** THAT OF **JOSE FERNANDO CASTILLO TAPIA** IN COMPARISON WITH THE HANDWRITING GIVEN FOR COLLATING".

Likewise, we shall consider the **expert opinion on graphology**, dated June ten two thousand and four, signed by experts Praxedis Irma Garcia Guerrero and Rosa Flores Vazquez, assigned to the General Division of Expert Services Coordination, dependent of the Attorney General's Office, which presented the following results:

I).- When the study of the fingerprint file in the name of Castillo Tapia José Fernando was analyzed, it presented the following dactylographic pattern E-3343 I-2222, on the right hand, thumb, forefinger, middle finger and little finger, which belong to the third fundamental type internal loop. Due to its morphology, the right ring finger belongs to the fourth fundamental type WHORL, CONCENTRIC SUBTYPE, and it was the only one analyzed since it corresponds to the same fundamental type of the fingerprints stamped on the forms OP7;

II).- When we made the study of the fingerprints stamped on the forms OP7, from the parent or guardian with the legend "left index finger" we found that it belongs to the fourth fundamental type WHORL, SPIRAL SUBTYPE, RIGHT DIRECTION. The fingerprints with the legend "right index finger" belong to the fourth fundamental type WHORL, SPIRAL SUBTYPE, LEFT DIRECTION. **After comparing the fingerprint of the right ring finger in the fingerprint file of CASTILLO TAPIA JOSE FERNANDO with the fingerprints stamped on the forms OP7, we found that the subtype does not coincide as well as other features. The photographs of the fingerprints and the OP7 forms were entered into the AFIS system in order to compare them to the information in the system and a positive match was found for: "BARRERA HERNANDEZ ARTEMIO, for forgery of official documents.** Preliminary Investigation 9545/D/94, Federal Public Prosecutor, Head of the



PROCURADURIA GENERAL
DE LA
REPUBLICA

Desk IX-D, 39 years old, born on ▉▉▉▉▉▉ 1955, with address on▉▉▉▉▉
▉▉▉▉Santa Cruz Xochintepec, Xochimilco, D.F., with a fingerprint file attached
to this file. Then we made a comparative study, taking as a reference the right
and left middle fingers, based on the fundamental type, subtype and
characteristic point location, the fingerprint file was photographed and the
pictures were amplified in order to compare them with the fingerprints stamped
on the OP7 formats of the minors ▉▉▉▉▉▉▉▉▉▉▉▉▉, both
▉▉▉▉▉▉▉▉

Conclusions. **First.- The fingerprints stamped on the
fingerprint file in the name of CASTILLO TAPIA JOSÉ FERNANDO, DO
NOT MATCH the fingerprints stamped on the OP-7 applications, with the
legend "right and left index fingers of the minors▉▉▉▉▉▉▉▉▉
▉▉▉▉▉, both with the last names ▉▉▉▉▉▉▉▉SECOND.-
The fingerprints stamped on the OP-7 application with the legend "right
and left index fingers of the minors▉▉▉▉▉▉▉▉▉▉▉▉▉,
both with the last names ▉▉▉▉▉▉▉ MATCH the fingerprints
stamped of the right and left middle fingers of the fingerprint file in the
name of Barrera Hernandez Artemio.**

These expert opinions comply with Articles 285 and 288 of the
Federal Code of Criminal Procedure, since they were made by official experts in
accordance with the requirements set forth in Articles 221 and 223 of the same
Code, which also explain the techniques used and considered to draw their
conclusions. These documents were submitted to the investigating authority
and their content has not been objected.

In this regard, we can apply the legal precedent made by the First
Room of the Supreme Court of Justice of this country, page 20, volume 49,
second part, of the Weekly Federal Court Report, which states:

*"EXPERT'S OPINION, ASSESSMENT"* *The judge shall grant the value
he considers reasonable for the expert's opinions, since they are useful*



FORMA CG-1A

PROCURADURIA GENERAL
DE LA
REPUBLICA

*information; however, they do not oblige to accept their results. When there are no other elements that distort the contents of such opinions, the Judge can give them full weight of evidence".*

We can apply the court precedent 254 of the First Room of the Supreme Court of Justice of this country, page 143, volume II, part SCJN, of the Appendix to the Weekly Federal Court Report 1995, criminal matters, which states:

***"EXPERTS. EVIDENTIARY WEIGHT OF THEIR OPINION.*** *Within the broad scope given by law and jurisprudence to the judicial authority so as to value expert's opinions, the judge can deny them full evidentiary efficiency, choosing those issued legally, accepting or discarding one or several opinions in accordance with the legal capacity determined for each one of them".*

Likewise, we can apply the legal precedent XXI. 1o. 27 P, supported by the First Collegiate Court of the Twenty First Circuit, visible on page 384, volume XIV, September 1994, of the Weekly Federal Court Report, eighth period, with the text:

***"EXPERTS. NOT CHALLENGED OPINION.*** *The concept of constitutional violation is inadmissible for substantive or adjective irregularities of an expert's opinion valuated in the claimed sentence if such opinion is not legal or if it was not properly challenged before the natural judge".*

The foregoing is supported by the statement given by FERNANDO CASTILLO TAPIA, on April twenty three, two thousand and four, when he said that, as he had said on his appearance of March twenty two, two thousand and four, he did not consent to the issuance of a passport in favor of the minors; after he saw the documents submitted by the Ministry of Foreign Affairs, **which presented the name and initials of the person who requested a passport for the minors** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **both with the last names** ▓▓▓▓▓▓▓▓▓▓▓▓ **as well as the copy of the passport with the**

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

name of **JOSE FERNANDO CASTILLO TAPIA, who supposedly authorized the issuance of the aforementioned document; after revising the documents included in the file, he said he does not know who signed for him and he does not know who the signature and the fingerprint on both applications belongs to; therefore, he was not physically there to present the application or sign the authorization for the issuance of the passport of his children, he only recognizes the copy of the passport of her daughter** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **issued on December seventeen, nineteen ninety seven, since he requested it with MARIA DEL ROSARIO MORENO VAZQUEZ.** He does not know about any other authorization documents signed by his own hand; he also mentioned that the handwriting on the applications belongs to MARIA DEL ROSARIO MORENO VAZQUEZ. He remembered that some days before his children were abducted by their mother, he had his passport in his bedroom and then he found it somewhere else, but he did not pay attention to this fact; his son, ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ has a copy of the keys to his house, and he thought maybe his daughter, his son or their mother could have taken the passport and then placed it there again, since they had access to his house and he was working that day, but he did not notice someone had taken it and he did not know it was used to request a passport for the minors. Likewise, in relation to the contents of the document by INTERPOL dated April twelve, two thousand and four, he only accepts part of it; he requested help from that institution because he had the feeling that his children had been taken to another country by MARIA DEL ROSARIO MORENO VAZQUEZ, as it was also stated before the Public Prosecutor of the State of Mexico, **the day he learned that his children were no longer living in the house located at** ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓ **Alteña Dos Lomas Verdes, considering that some months before, MARIA DEL ROSARIO MORENO told him she had married a man named RONALD COONLEY, American, and that she was planning to move with**



PROCURADURIA GENERAL
DE LA
REPUBLICA

**her children to the United States; then he said he did not agree with that and he was not going to authorize such thing, first of all because MARIA ROSARIO MORENO told him she had met Mr. COONLEY on the Internet and this was her second marriage, after his own, with someone she met on the Internet.**

Statement valued as evidence in compliance with Article 285 of the Federal Code of Criminal Procedure, determined in accordance to Article 289 of the aforementioned document; the deponent is of age, he has the necessary capacity and education to judge the fact, and he witnessed the fact, he did not learn about it through inductions or references given by others, he was able to appreciate it through his own senses through a clear and precise exposure, without any doubts or reluctances, considering that as an adult, he has the capacity and education to judge the fact that gave rise to his statement.

The legal precedent 1.8o.C.58C of the Weekly Federal Court Report, Ninth Period, Volume VI, September 1996, page 759, with the text:

*"TESTIMONY. ANALYSIS AND VALUATION OF EVIDENCE. The statements given by witnesses during a judicial procedure must be valuated by the court, considering the justification elements specified in the positive standards of the applicable legislation as well as all the other objective and subjective circumstances useful to determine the mendacity or veracity of witnesses through a logical process and a correct reasoning, since they are not only narrators of an isolated fact, but of an experience they lived and heard; therefore, their statements must be appreciated through such critical sense. On the other hand, the valuation of a testimony always entails two investigations: the first one regarding the truthfulness of the testimony, considering the subjective credibility of the witness; the second one analyzes the objective credibility of the testimony, considering the perception source the witness received as well as the content and form of the statement".*



PROCURADURIA GENERAL
DE LA
REPUBLICA

The core legal precedent 376 can also be applied, supported by the First Room of the Supreme Court of Justice of this country, published on page 275 of the Appendix of the Weekly Federal Court Report, 1917-2000, Volume II, Criminal Matters, with the following heading and text:

*"WITNESSES. APPRECIATION OF THEIR STATEMENTS.- The statements rendered by witnesses during a criminal process shall be assessed by the jurisdictional authenticity having in mind the valuation elements specified in the positive standards of the applicable Law as well as all the objective and subjective circumstances which determine the mendacity or veracity of the testimony subject to litigation".*

Considering the foregoing, we have to mention that we are talking about public documents, in compliance with Article 129 of the Federal Code of Civil Procedure, since the application for ordinary passport OP-5 and OP-7 is issued by the Ministry of Public Affairs, an agency of the Centralized Public Administration, in accordance with the Organic Law of the Federal Public Administration.

As for falseness, it is concluded that the person who went to the offices of such Ministry located in the municipality of Naucalpan de Juarez, State of Mexico, was not entitled to fill such applications since, at the back, it can be seen that the person who appeared was there in the name of the father of the minors ████████████ and ████████████ both with the last names ████████████ at that time, as seen in the box marked with an "x" in the space regarding the information of the parent or guardian, and he identified himself with the passport ████████ issued by the Ministry of Foreign Affairs, on November the sixth, two thousand and three. These circumstances are contradicted in relation to the aforementioned evidence, since it was proven that on February sixteen two thousand and four the applications were filled by a person different from the name recorded in the documents, Jose Fernando Castillo Tapia.

FORMA CG-1A



PROCURADURIA GENERAL
DE LA
REPUBLICA

On the other hand, about the **second element** regarding the use of a false signature or false initials, even if it is fictitious, or altering a false one; it is also proven with the convicting elements, previously reported and valuated, since the expert's opinion on Graphology and identification showed that the fingerprints and the signature on the two ordinary passport applications OP-5 and OP-7 did not belong to Jose Fernando Castillo Tapia; when they were compared to the files of the Federal Investigation Agency, it was seen that the fingerprints stamped at the office of the Ministry of Foreign Affairs belonged to **"BARRERA HERNANDEZ ARTEMIO"**, who is now related to the **crime of forgery of official documents, under the preliminary investigation** 9545/D/94; authority, Federal Public Prosecutor, Head of Desk IX-D.

Due to the above, the evidence valuated in compliance with Articles 280, 285, 288 to 290 of the Federal Code of Criminal Procedure is suitable to prove the elements that make the criminal definition of **FORGERY OF PUBLIC DOCUMENTS**, foreseen in Article 244, section I and penalized by Article 243, first paragraph, of the Federal Criminal Code, since some active individuals carried out the facts voluntarily and the crime was proven through the generic rule set forth in Article 168 of the Code of Procedures in this matter, since the evidence showed that such active individuals, on February sixteen two thousand and four, appeared in the Ministry of Foreign Affairs offices located in Naucalpan, State of Mexico, so as to fill ordinary passport applications OP-5 and OP-7, and with such purpose they used a false signature, as proven by the graphology and identification studies, since it was concluded that such signatures and the stamped fingerprints in the name of Jose Fernando Castillo Tapia were not his; such actions attempt against the public trust of documents issued by the state, as foreseen in Articles 243 and 244 of the Federal Criminal Code.



PROCURADURIA GENERAL
DE LA
REPUBLICA

Therefore, the legal precedent VI.2o.J/174 of the Second Collegiate Court of the Sixth Circuit, published in the Weekly Federal Court Report, Volume IX, February 1992, page 96, Eighth Period, which explains:

*"CIRCUMSTANTIAL EVIDENCE. ASSESSMENT. The circumstantial evidence is based on the incriminatory value of evidence and it takes, as a starting point, proven facts and circumstances which have to be linked to the inquired fact; it can be a missing piece of information or an uncertainty, a hypothesis that needs verification, applied to the materiality of the crime and to the identification of the offender and the circumstances of the offense".*

After highlighting the above, it is important to resume that in the present study, the offender, the evidence of the crime of Forgery of false public document [sic] and use of such document do not concur, considering the following:

Article 246 (VII) of the Federal Criminal Code foresees:

*"**Article 246**. The penalty referred on Article 243 shall be also incurred by:*

*. . .*

*VII.- **Whoever, knowingly,** makes use of a forged document or copy, transcript or notarial certificate of it, be it public or private."*

In that sense, it is important to mention the scope of the words used in the last element, *"**knowingly"**,* and in that regard, the Supreme Court of Justice of the Nation describes who can be blamed for that offense. It is now important to consider the legal precedent supported by the First Room of our main Court, which can be consulted in the Weekly Federal Court Report, volume LXIV, page 3066, criminal matters, fifth period, which says:

*"**FALSE DOCUMENTS, USE, THIS CRIME CAN ONLY BE ATTRIBUTED TO THIRD PARTIES, NOT INVOLVED IN THE FORGERY"** Article 246, section VII of the Criminal Code in force in the Federal District establishes that public or private forgery will also be considered when a person uses a document, private or public, knowing it is false. **If the accused was imprisoned for forgery of public document, it is unquestionable that he could not be responsible for***



PROCURADURIA GENERAL
DE LA
REPUBLICA

*the crime of use of false documents at the same time, since <u>that crime can only be attributed to third parties, not involved in the forgery of documents, since the forger cannot ignore the document is false and it would be redundant to demand by law as an exclusive requirement to punish the use of false documents only when the person is aware of the falseness,</u> and the order of formal imprisonment for this crime with the aforementioned conditions contravenes constitutional rights.*

Likewise, the above is supported by the legal precedent of the First Room of the Supreme Court of Justice of the Nation, which can be consulted in the Weekly Federal Court Report, volume 187-192, second part, page 75, seventh period, which states:

*"USE OF FALSE DOCUMENT, INEXISTENCE. The act carried out by the person who falsifies a document is not included in the precedent established in Article 246 (VII) of the Federal Criminal Code, since it refers to whoever uses a document knowing it is false; therefore, the forger is not included in such standard, since the knowledge of the falseness is evident; if the use of apocryphal documents is attributed to the accused, representing fictitious situations and participating in their forgery, he cannot be liable for use of false documents at the same time, he will only be liable for their forgery".*

Due to the above, it is inferred that the offender included in the criminal hypothesis of *use of false document* shall have nothing to do with the person liable for *use of false document*. If that person was one of the participants of the latter crime, they would have some participation in the crime, as an author, accomplice, etcetera, as set forth in Article 13 and all its fractions of the Federal Criminal Code. If it is held that the accused participated in the possible commission of the crime described in Section I of Article 244, regarding document forgery, and that she also committed the crime of use of such false document, that would entail improperly re-qualifying an action or punishing it

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

twice, which would infringe the apothegm *non bis in idem* established as a constitutional right in Article 23 of the Constitution.

In this regard, if the forger of a document is punished for using the document, the action would be classified incorrectly, since we must not forget that the offender cannot be involved in the forgery and, in compliance with the specified terms, using that document should damage a legal asset other than public trust; when the use of a false document involves depletion of forgery, we cannot talk about two independent and autonomous behaviors, the use is subsumed in the act of forgery in accordance with the *mergence or absorption principle*.

If we consider that on February sixteen, two thousand and four, when the ordinary passport applications OP-5 and OP-7 were forged in the aforementioned terms, the accused Maria del Rosario Moreno and Artemio Barrera Hernandez filled out such documents despite the fact that Artemio Barrera was not entitled to do so since the applications have to be filled out by the parent or guardian, in this case of the aforementioned minors.   It is undeniable, in the light of a logical and legal concatenation of all the convictive elements, they were aware of the falseness of their acts since a signature was stamped which should have only be written by the father of the minors, Jose Fernando Castillo Tapia. In accordance with the descriptions given in the paragraphs above, the corpus delicti for **intentional use of false document** is not formed, because in order to prove such thing, the person involved shall not have participated in the forgery.

On the other hand, without ignoring the contents of Article 251 of the Federal Criminal Code, there are several common provisions in the previous chapters which stipulate that if the forger used the false documents or objects described in section thirteen, forgery shall be added to the crime committed by the offender using false elements.



PROCURADURIA GENERAL
DE LA
REPUBLICA

In this context we can deduce that the purpose of the legislator was to accumulate sanctions for forgery and the crime committed through the use of a false document, known as *ratio legis*. The behavior of the accused cannot be classified in Section VII of Article 246, since such text refers to the use of a false document by a person other than the forger and it shall be punished in compliance with 251, only when a crime other than document forgery is committed, excluding the use of such document for the commission of the crime.

The above is supported by the legal precedent of the Collegiate Court for Criminal Matters of the Seventh Circuit, which can be consulted in the Weekly Federal Court Report and its Gazette, volume II, September 1995, page 497, ninth period, with the following text:

*"USE OF FALSE DOCUMENT AND FORGERY OF DOCUMENTS. WHEN THE FIRST IS SUBSUMED IN THE SECOND. When a person falsifies a document and **uses it intentionally**, two autonomous crimes cannot be considered, since the hypothesis of use of false document is subsumed in document forgery."*

Once again, Article 246 (VII) of the Federal Criminal Code establishes as specific *mens rea* that the offender *knowingly, makes use of a forged document,* so the criminal figure is defined. Therefore, it is evident that the forger knows about the falseness of the document, so it would be redundant if the law demanded as one of the requirements that the false document was used knowing it is false.

So, it is important to highlight that the elements of **USE OF FALSE DOCUMENT, foreseen in Article 246 (VII) and sanctioned by 243, first paragraph, all of them of the Federal Criminal Code** are not proven; therefore, the standards of **crime exclusion** foreseen in section II of Article 15 of the Federal Criminal Law are considered and the **alleged responsibility** of **MARIA DEL ROSARIO MORENO VAZQUEZ in the commission of such**



PROCURADURIA GENERAL
DE LA
REPUBLICA

crime is excluded; due to the above, the warrant requested against her for such crime is denied.

## PROVING THE CRIME

**SIXTH.-** On the other hand, in relation to the crime attributed to **ARTEMIO BARRERA HERNANDEZ** relating to **FORGERY OF DOCUMENTS**, foreseen in Article 244 (I)(V) and sanctioned by Article 243, paragraph one, of the Federal Criminal Code, it is fulfilled.

Considering such article, we take several elements applicable to the first crime:

*a).- The existence of a false public document (normative element):*

*b).- stamping a false signature, even if the signature is fictitious or if an original signature is modified (section I)*

*c).- attributing to the person who issues the document, or by attributing to the person in whose name the perpetrator issues the document a name or office, capacity or condition that they do not have and which is necessary to the validity of the act (section V).*

The **first element** of the corpus delicti has been duly recorded, as it was tackled when the criminal definition attributed to Maria del Rosario Moreno was studied, due to the fact that there is a link between the events, once such element is met in that analysis, as well as this element, since the ordinary passport applications OP-5 and OP-7 are issued by the Ministry of Foreign Affairs, an office of the Centralized Public Administration in accordance with the Organic Law of the Public Administration and they are public documents, in compliance with Article 129 of the Federal Code of Civil Procedure.

In relation to the **second element** regarding Section I of such article, it is also fulfilled, since in the Graphology and Identification expert's opinions, signed by experts assigned to the Mexican Attorney General's Office on June ten and fifteen, two thousand and four, respectively, considered as evidence in





PROCURADURIA GENERAL
DE LA
REPUBLICA

compliance with Article 285, in relation to 288 of the Federal Code of Criminal Procedure, it was seen that the fingerprints and the signature on the two ordinary passport applications OP-5 and OP-7 were not made by Jose Fernando Castillo Tapia; when they were compared to the files of the Federal Investigation Agency it was seen that the fingerprints stamped on such Ministry of Foreign Affairs office belonged to "**BARRERA HERNANDEZ ARTEMIO**", who was related to the **crime of forgery of official documents, under the preliminary investigation** 9545/D/94 carried out by the Federal Public Prosecutor, Head of the IX-D Desk, while it was concluded that the signatures on such documents were not made by Jose Fernando Castillo Tapia.

Despite the fact that the two elements mentioned above exist, the corpus delicti is formed in relation to Section I; it is important to mention that the hypothesis contained in Article 244 (V) is also present, which considers *attributing to the person who issues the document, or by attributing to the person in whose name the perpetrator issues the document a name or office, capacity or condition that they do not have and which is necessary to the validity of the act.*

In this regard, the aforementioned expert's opinions of Graphology and Identification are used since through them it is proven that on February sixteen, two thousand and four, before the Ministry of Foreign Affairs in Naucalpan de Juarez, State of Mexico, a person appeared in order to fill out with his signature, fingerprints and other information the ordinary passport applications ███ and ███, and he identified himself with the passport number ███████ issued by the Ministry of Foreign Affairs on November six, two thousand and three, but it was not Jose Fernando Castillo Tapia, since, in accordance with the original birth certificates analyzed by the investigating authority, on March twenty two, two thousand and four, number ██████ for ████████████ ████████ issued by the Central Registrar of Vital Statistics in the Federal District, and number ███████ dated March twelve two thousand and three for

FORMA CG-1A



PROCURADURIA GENERAL
DE LA
REPUBLICA

████████████████████████ issued by officer zero two of the Registry of Vital Statistics in the State of Mexico, and it is seen that Jose Fernando Castillo is the father of both children and therefore, in accordance with the restrictions of such applications, he is the person authorized to fill them since at the back it is specified that the application must be filled out by a minor's parent or guardian. This person is the only one entitled to do so and another person took his place and, according to the results of the identification study based on the stamp fingerprints and other elements, Artemio Barrera Hernandez claimed, by filling out such document, the name of the person authorized to do so, the parent or guardian.

Due to the foregoing, the aforementioned evidence valued in compliance with Articles 280, 285, 288 to 290 of the Federal Code of Criminal Procedure, is effective and suitable for the criminal definition of **FORGERY OF DOCUMENTS**, foreseen in Article 244 (I) and (V), sanctioned by Article 243, paragraph one, all from the Federal Criminal Code, since an offender voluntarily carried out an action and the criminal definition was proven through the generic rule contained in Article 168 of the Code of Procedure in this matter, since the content of such elements showed that such person, on February sixteen two thousand and four, appeared with another person before the Ministry of Foreign Affairs in Naucalpan, State of Mexico, so as to fill out the applications for ordinary passport OP-5 and OP-7, and the offense was externalized by stamping a false signature, as seen in the identification and graphology expert opinions, since it was proven that the signatures stamped in the name of Jose Fernando Castillo Tapia were not made by him; such person filled out the aforementioned documents claiming to be Jose Fernando Castillo by illegally signing and stamping his fingerprints, and such action infringed the legal right set forth in articles 243 and 244 (I) (V) of the Federal Criminal Code, which is the public trust any document issued by the State shall fulfill.



PROCURADURIA GENERAL
DE LA
REPUBLICA

Therefore, we can apply the legal precedent VI.2o.J/174 of the Second Collegiate Court of the Sixth Circuit, published in the Weekly Federal Court Report, Volume IX, February 1992, page 96, Eighth Period, which explains:

*"CIRCUMSTANTIAL EVIDENCE. ASSESSMENT. The circumstantial evidence is based on the incriminatory value of evidence and it takes, as a starting point, proven facts and circumstances which have to be linked to the inquired fact; it can be a missing piece of information or an uncertainty, a hypothesis that needs verification, applied to the materiality of the crime and to the identification of the offender and the circumstances of the offense".*

## PROVING THE CRIME

**SEVENTH.-** Finally, criminal action was also applied against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility in the commission of the crimes **FORGERY OF DOCUMENTS and USE OF A FALSE PUBLIC DOCUMENT**, foreseen in Article 244 (V) (X) and penalized by Article 243, first paragraph, of the Federal Criminal Code (sic), which will now be analyzed.

The elements of the corpus delicti for the first offense are:

*a)    The existence of a false public document (normative element);*

*b).- attributing to the person who issues the document, or by attributing to the person in whose name the perpetrator issues the document a name or office, capacity or condition that they do not have and which is necessary to the validity of the act (section V)or*

**The hypothesis contained in section X of such Article as a sole element:**

*Sole.- Making plates, identification badges, emblems, documents or any other official identification without the authorization of the pertinent authority.*

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

As it has already been mentioned, the **first element** of the corpus delicti of Article 244 (V), idem, has been proven with the passport applications OP-5 and PO-7 [sic] as public documents in compliance with Article 129 of the Federal Code of Civil Procedure, since they are controlled by the Ministry of Foreign Affairs, an office of the Centralized Federal Public Administration.

However, **the other element is not proven** since, in accordance with the analysis made in the previous paragraphs, it was learned that the offender improperly claimed a name other than his so as to fill out the passport applications; therefore, from the aforementioned accusations only one of them was proven and such offense cannot be attributed to two individuals, especially if we consider the nature and special features of the forged public documents; at the back of the applications there is a space for information about the Parent or Guardian, and the corresponding box is marked with an "x", the one that says "as a parent"; moreover, in order to complete the procedure, the offender identified himself with passport number ▆▆▆▆▆▆▆ issued by the Ministry of Foreign Affairs on November six, two thousand and three. In other words, the only person empowered to fill out such document was the parent or guardian, without giving such capacity to another person, so after having Jose Fernando Castillo replaced, it is legally inadmissible to attribute such action to another person.

Finally, in relation to the other hypothesis contained in Article 244 (X) of the Federal Code of Criminal Procedure, with the only element of *making plates, identification badges, emblems, documents or **any other official identification** without the authorization of the pertinent authority,* such actions are not proven.

It is important to link the above to the statements given by **JUAN ARAMONI BURGUETE**, on November twelve, two thousand and four, who stated he was working as a delegate for the Ministry of Foreign Affairs in Naucalpan, State of Mexico; he also said that the necessary documents to



PROCURADURIA GENERAL
DE LA
REPUBLICA

obtain the passports for ██████████████████████████████████ were presented, since they fulfilled the requirements established by such institution in compliance with the Regulations of Passports in force, and he added that his participation in the issuing process was verifying the appropriate creation of the basic file for passport issuance; he did not remember having seen the minors' parents.

The foregoing is also linked to the statement given by **ANA LUISA LOZANO GUTIERREZ** on November twelve, two thousand and four, when she affirmed she worked as a typist for the Ministry of Foreign Affairs in Naucalpan, State of Mexico, and she also stated she ignored the facts under investigation since her job was limited to entering information into the system regarding the files, previously created and checked, so she did not have contact with users.

Finally, in her statement given on that same date, November twelve, two thousand and four, **VIRIDIANA MOLINA OLVERA** said she worked as a file digitalizer for the Ministry of Foreign Affairs in Naucalpan, State of Mexico, and her job was to verify the information in a file, previously created and verified and after it had been entered into the system; she also said that her work did not entail contact with users.

These statements are considered as testimonies in relation to the facts, the issuance of passports, and in this regard they gather the requirements set forth in Article 289 of the aforementioned body of law, since they were given by persons that, according to their age and education, have the necessary capacity to judge the fact and the circumstances surrounding it; they witnessed the facts and were not influenced about them by third parties. Their statements were clear and precise, without doubts or reluctance, they were not given by mistake, deception or bribery; therefore, they are considered as evidence in compliance with Article 285 of the corresponding Code of procedures.

In this regard we can apply Jurisprudence 376, supported by the First Room of the Supreme Court of Justice of this country, published on page 275 of



PROCURADURIA GENERAL
DE LA
REPUBLICA

the Appendix of the Weekly Federal Court Report, 1917-2000, Volume II, Criminal Matters, with the following heading and text:

*"WITNESSES. APPRECIATION OF THEIR STATEMENTS.- The statements rendered by witnesses during a criminal process shall be assessed by the jurisdictional authenticity having in mind the valuation elements specified in the positive standards of the applicable Law as well as all the objective and subjective circumstances which determine the mendacity or veracity of the testimony subject to litigation".*

Each one of the aforementioned deponents, who participated in some way in the issuance of the requested passports as employees of the Ministry of Foreign Affairs in Naucalpan de Juarez, State of Mexico, in accordance to their statements and identification cards issued by such institution, it is clear that due to the nature of their jobs it would be unconceivable to obtain official identification documents, in this case, *"without the consent of the corresponding authority",* such hypothesis is applicable to third parties not involved in the aforementioned institution; if irregularities were presented during their issuance, they could be considered as administrative infraction.

Going into detail on the above, the powers and functions for the task mentioned in the previous paragraph are supported by Article 1 of the Regulations of Passports, which grants the power to issue Mexican passports to the Ministry of Foreign Affairs.

On the other hand, in Article 10 of such legal body, the requirements for the issuance of such documents are described. One of the requirements is to appear in person, fill out and sign the application, prove the Mexican nationality, etcetera. After covering them, the personnel involved in the passport issuance process confirmed they had been fulfilled, which is proven by the passports issued by such institution as expressed in the official letter made on November nine, two thousand and four, signed by the Director of Internal Rules and Regulations dependent from the Ministry of Foreign Affairs, after the personnel



PROCURADURIA GENERAL
DE LA
REPUBLICA

involved in the process was identified. Therefore, **there was an authorization,** regardless of the original offenses presented during the process.

During his statement, **FRANCISCO JAVIER TOVAR MARTINEZ** said he was an employee for the Ministry of Foreign Affairs in Naucalpan de Juarez and his job was to receive documents for the issuance of passports; he received original documents and copies from the users, and he had to verify that the documents were original and that they matched with the information given by applicants. He also had to verify that the identity documents coincided with the physical features of the persons appearing; once the file was created with photocopies, they were asked to sign the application and to stamp their fingerprints to then be checked by the Delegate or Assistant Delegate of the Ministry of Foreign Affairs. As for the passports of the minors, which are attached to this file, he states he followed the same procedure, since on February sixteen two thousand and four, he received JOSE FERNANDO CASTILLO TAPIA and MARIA DEL ROSARIO MORENO VAZQUEZ, and he said this woman told him they wanted to apply for the minors' passports and he asked for the following documents: birth certificate, identity documents of the minors and their parents. Those documents are checked and the identity documents have to match the physical features of the persons presenting them, as well as the signature, at that time he noticed the children were playing with their father and then he created the corresponding files and **asked the parents to stamp their signatures and fingerprints on the applications, then he asked them to sit down** while he took the documents to be verified by the Delegate and to continue with the different stages of the passport issuance process, carried out by different employees of that office. He gave this information about his job and he talked about the particular case of ███████████

████████████████████████████

that is everything regarding his responsibility within the Ministry of Foreign Affairs. He was asked some questions by the authority: FIRST.- Let the





PROCURADURIA GENERAL
DE LA
REPUBLICA

deponent state if he recognizes the photograph on passport ▮▮▮▮▮▮▮ issued in the name of JOSE FERNANDO CASTILLO TAPIA, attached to the present investigation, and he shall also state if he recognizes the person in the picture as the same one that went with MARIA DEL ROSARIO MORENO VAZQUEZ to request the passports of their children in the office of the Ministry of Foreign Affairs in Naucalpan de Juarez, State of Mexico. ANSWER: Yes, it is the same person that came to me for document reception, FERNANDO CASTILLO TAPIA and MARIA DEL ROSARIO MORENO VAZQUEZ , I clearly identify them. SECOND.- Let the deponent give the physical description of JOSE FERNANDO CASTILLO TAPIA. ANSWER.- He is approximately one meter and sixty centimeters tall, medium built, he was wearing a suit and he is in good shape. THIRD.- Let the deponent give the physical description of MARIA DEL ROSARIO MORENO VAZQUEZ. ANSWER. I don't remember much about her. In this regard, the Federal Public Prosecutor attested that the accuser JOSE FERNANDO CASTILLO TAPIA has different physical features than those given by FRANCISCO JAVIER TOVAR MARTINEZ.

This statement is considered as evidence in compliance with Article 285 of the Federal Code of Criminal Procedure and, as it was said in previous paragraphs, if there were irregularities regarding the rules of this person's job, such act would be considered as an administrative infraction. However, we must highlight that the corresponding authorization was granted by the Ministry of Foreign Affairs.

For these reasons, and due to the failure to prove the crime of **FOREGERY OF PUBLIC DOCUMENT**, foreseen in article 244 (V) (X), and sanctioned by Article 243, paragraph one, of the Federal Criminal Code, the arrest warrant requested against him shall be denied in compliance with the provision of **crime exclusion**, foreseen in Article 15 (II) of the Federal Criminal Code and therefore, **the alleged responsibility of FRANCISCO JAVIER TOVAR MARTINEZ is the commission of such crime is also denied.**

FORMA CG-1A





PROCURADURIA GENERAL
DE LA
REPUBLICA

## PROVING THE CRIME

**EIGHTH.-** The authority applied criminal action against **FRANCISCO JAVIER TOVAR MARTINEZ** for his alleged responsibility in the commission of the crime of **USE OF FALSE PUBLIC DOCUMENT** foreseen in Article 246, section VII, of the Federal Criminal Code, without ignoring the fact that in the paragraphs of the judgment, the legal support of such crime is not specified. After analyzing the preliminary investigation it was seen that at the beginning of the consignment, the investigating authority already defines the alleged commission of the crime, classified in Article 246 (VII), and punished by Article 243 of the Federal Criminal Code.

We take the following elements from the aforementioned article:

*a).- The existence of a false public document (actus reus), or*

*b).- The existence of a copy; or*

*c).- The existence of a transcription; or*

*d).- The existence of a testimony, all regarding such document;*

*e).-That the offender uses such document, copy, transcription or testimony (normative element); and*

*f).- The action described above knowing the document is false (specific mens rea).*

The description uses as normative elements the words *"use", "public or private document", "copy", "transcription" and "testimony",* which are understood as follows: regarding the first concept, besides being the essential element of the crime, it requires a cultural assessment and its connotation entails someone using something; the second element requires cultural and legal assessment, since in compliance with Article 133 of the Federal Code of Civil Procedure public documents are those that do not fulfill the conditions foreseen in Article 129 of the aforementioned Code, they are not issued by law within its competence to a government employee; the quality of public is proven



PROCURADURIA GENERAL
DE LA
REPUBLICA

by the presence of seals, signatures or other external signs required by law. Therefore, false *public documents* are those that do not comply with the requirements described above. The word *copy* is conceptualized as the literal reproduction of a document; *transcription* is the representation of phonetic, phonological, lexical or morphological elements of a language or dialect through a writing system. Finally, the word *testimony* refers to an instrument authorized by a notary and it attests a fact, it is partially or totally transferred to a document or it is summarized.

Now, according to the evidentiary context duly valued in the paragraphs above, the present study is related to public documents, so the element under study has to do with the *existence of a false public document,* duly proven because of the legal reasons and considerations which are taken as reproduced in order to avoid useless repetitions.

As for the element regarding the *use of such document by the offender knowing it is false*, the study will be comprehensive, due to its close link and the flexibility of its verification.

In this regard, such elements are not proven. Despite the statement by Francisco Javier Tovar Martinez, considered as evidence in compliance with Article 285 of the Federal Code of Criminal Procedure, which shows that due to the nature of his job, he inevitably had to use the passport applications OP-5 and OP-7, which are considered false, after having stated that as an employee of the Ministry of Foreign Affairs in Naucalpan de Juarez in the area of document reception for passport requests, his job was to receive documents.

Despite the fact that the offender used false documents in his duty, the intention of using them knowing they were false is not proven. Taking as a starting point the difficulty to prove such element, it is important to say that such prove cannot be achieved objectively, because it is not an isolated material element; it is immersed in the conscience and it cannot be seen directly and objectively, it can be analyzed through intellectual operations proven by other

FORMA CG-1A



PROCURADURIA GENERAL
DE LA
REPUBLICA

convictive means in compliance with the rules of circumstantial evidence foreseen in Article 286 of the Federal Code of Criminal Procedure. That is why it is important to prove the objective elements first, in order to reach the sought truth.

In this regard, there are no elements proving the above, since according to the statement by Francisco Javier Tovar, his job was to receive documents for passport requests and verifying the identity of the applicants in relation to the identity documents they presented. The failure to observe the applicable rule shall not take us to the conclusion that the author of such act knew about the falseness of the document, it is possible that he carried out such action by distraction or lack of concentration.

On this subject, there is no evidence that the offender had some kind of relationship, link or friendship with neither of the accused, so as to prove that such person knew about the use of a false document, since it can be considered that, if the persons involved knew each other, no stranger could have replaced one of them without being noticed. Considering the certification made by the investigating authority, when the accused rendered his statement he talked about the physical features of the person that went to the aforementioned office to fill out the passport applications, and they were different from those presented by Jose Fernando Castillo, as indicated above, and it does not inexorably lead to the conclusion that he acted knowing about the falseness, since in that regard there is only subjective evidence, without support.

So, it is important to mention that there is no evidence to prove the elements of the criminal definition of **FORGERY OF PUBLIC DOCUMENT AND USE OF FALSE DOCUMENT** foreseen in Article 244 (V) (X) and 246 (VII) respectively, sanctioned by Article 243, paragraph one, of the Federal Criminal Code; therefore, the cause of **crime exclusion** is actualized, foreseen in Article 15 (II) of the Federal Criminal Code and in consequence, and **the**

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

**responsibility of FRANCISCO JAVIER TOVAR MARTINEZ in the commission of the crime is not proven; so, the warrant requested against him is denied.**

The applicable legal precedent is number 278, page 203, Volume II, Criminal Matters, of the Appendix of the Weekly Federal Court Report, 1917 to 2000, which states:

*"INSUFFICIENT EVIDENCE, CONCEPT.- Insufficient evidence is considered when the recorded information does not fully prove the accusations made; a decision based upon insufficient evidence violates constitutional rights."*

## PROBABLE CRIMINAL RESPOPNSIBILITY

**NINTH.-** The probable criminal responsibility of **MARIA DEL ROSARIO MORENO VAZQUEZ** in the commission of the crime of **FORGERY OF PUBLIC DOCUMENT**, foreseen in Article 244 (I) and penalized by Article 243, paragraph one of the Federal Criminal Code, as well as that of **ARTEMIO BARRERA HERNANDEZ** in the commission of the crime of **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) (V), penalized by 243, paragraph one, of the Federal Criminal Code; it is proven in compliance with Article 13 (IV) of the Federal Criminal Code in relation with the accused, and as for the defendant, in compliance with Article 13 (II), idem, as it will be described, with all the elements specified above.

Indeed, the body of the crime and the responsibility are different concepts; the first one refers to impersonal matters regarding the verification of a fact classified by law and the second one lies in the attribution of the offense to a person. The same forms of proof are used to demonstrate both elements; on one hand, it can reveal the existence of a fact defined as a crime and, on the other hand, it reveals that such fact can be attributed to a certain individual.



PROCURADURIA GENERAL
DE LA
REPUBLICA

Therefore, justifying both postulates with the same evidence does not have as a consequence an infraction to the formalities of the procedure.

The above is supported by the legal precedent number 500, page three hundred and eighty four of the Appendix of the Weekly Federal Court Report, 1917 – 2000, Volume II, Criminal Matters, Second Part, which says:

*"CORPUS DELICTI AND ALLEGED RESPONSIBILITY, PROVE ON THE SAME ELEMENTS.-* *The corpus delicti and the alleged responsibility are different concepts; the first one refers to impersonal matters regarding the verification of a fact classified by law as a crime, regardless of the author; the second one refers to the attribution of the result on a person. It is possible to have one form of proof to evidence both elements, and in that case it can reveal the existence of a fact identified as a crime and at the same time attribute the commission of such crime to a specific person; therefore, using the same evidence to prove both elements does not violate constitutional rights."*

In this regard, it is important to consider the **expert's opinion on Graphology,** dated June fifteen, two thousand and four, signed by the expert L.Aldo Chisanto Molina, assigned to the General Division of Expert Services Coordination, dependant of the Mexican Attorney General's Office, which determined that after analyzing the corresponding documents, which were: two ordinary passport applications (OP-5), numbers ▮▮▮▮ and ▮▮▮▮ in the name of the minors ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ respectively, issued in Naucalpan de Juarez, State of Mexico, dated February sixteen, two thousand and four, which also presented the acronym of the Ministry of Foreign Affairs on its left upper margin and with the form OP-7 at the back, regarding the consent of parents or holders of the patria potestas for the issuance of a passport, the expert in charge concluded that: "FIRST.- THE SIGNATURES ON THE ANALYZED DOCUMENTS **DO NOT MATCH** THOSE GIVEN BY **JOSE FERNANDO CASTILLO TAPIA** FOR



PROCURADURIA GENERAL
DE LA
REPUBLICA

COMPARISON. **SECOND.-** THE HANDWRITING ON THE ANALYZED DOCUMENTS **DOES NOT MATCH** THE HANDWRITING MADE BY **JOSE FERNANDO CASTILLO TAPIA** FOR COMPARISON."

Likewise, the **expert's opinion on Graphology** dated June ten, two thousand and four, signed by experts Praxedis Irma Garcia Guerrero and Rosa Flores Vazquez, assigned to the General Division of Expert Services Coordination, dependant of the Mexican Attorney General's Office, showed the following results:

I).- When the study of the fingerprint file in the name of Castillo Tapia José Fernando was analyzed, it presented the following dactylographic pattern E-3343 I-2222, on the right hand, thumb, forefinger, middle finger and little finger, which belong to the third fundamental type internal loop. Due to its morphology, the right ring finger belongs to the fourth fundamental type WHORL, CONCENTRIC SUBTYPE, and it was the only one analyzed since it corresponds to the same fundamental type of the fingerprints stamped on the forms OP7;

II).- When we made the study of the fingerprints stamped on the forms OP7, from the parent or guardian with the legend "left index finger" we found that it belongs to the fourth fundamental type WHORL, SPIRAL SUBTYPE, RIGHT DIRECTION. The fingerprints with the legend "right index finger" belong to the fourth fundamental type WHORL, SPIRAL SUBTYPE, LEFT DIRECTION. **After comparing the fingerprint of the right ring finger in the fingerprint file of CASTILLO TAPIA JOSE FERNANDO with the fingerprints stamped on the forms OP7, we found that the subtype does not coincide as well as other features. The photographs of the fingerprints and the OP7 forms were entered into the AFIS system in order to compare them to the information in the system and a positive match was found for: "BARRERA HERNANDEZ ARTEMIO, for forgery of official documents.** Preliminary Investigation 9545/D/94, Federal Public Prosecutor, Head of the Desk IX-D, 39



PROCURADURIA GENERAL
DE LA
REPUBLICA

years old, born on ███████████1955, with address on ███████████████

Cruz Xochintepec, Xochimilco, D.F., with a fingerprint file attached to this file.

Then we made a comparative study, taking as a reference the right and left

middle fingers, based on the fundamental type, subtype and characteristic point

location, the fingerprint file was photographed and the pictures were amplified in

order to compare them with the fingerprints stamped on the OP7 formats of the

minors ███████████████████████████████

Conclusions. **First.- The fingerprints stamped on the**
**fingerprint file in the name of CASTILLO TAPIA JOSÉ FERNANDO, DO**
**NOT MATCH the fingerprints stamped on the OP-7 applications, with the**
**legend "right and left index fingers of the minors** █████████████
█████████, **both with the last names** ███████████ **SECOND.-**
**The fingerprints stamped on the OP-7 application with the legend "right**
**and left index fingers of the minors** ███████████████████
**both with the last names** ███████████████ **MATCH the fingerprints**
**stamped of the right and left middle fingers of the fingerprint file in the**
**name of Barrera Hernandez Artemio.**

Expert opinions weighed as evidence in accordance with Articles 285

and 288 of the Federal Code of Criminal Procedure, since they were made by

official experts in compliance with Articles 221 and 223 of the same Code. Such

opinions detail the techniques applied during the analyses, and they were

submitted to the investigating authority without being objected so far.

In this regard, we can apply the legal precedent made by the First Room

of the Supreme Court of Justice of this country, page 20, volume 49, second

part, of the Weekly Federal Court Report, which states:

**"EXPERT'S OPINION, ASSESSMENT..."**



PROCURADURIA GENERAL
DE LA
REPUBLICA

We can also apply the court precedent 254 of the First Room of the Supreme Court of Justice of this country, page 143, volume II, part SCJN, of the Weekly Federal Court Report 1995, criminal matters, which states:

*"EXPERTS. EVIDENTIARY WEIGHT OF THEIR OPINION..."*

Likewise, we can apply the legal precedent XXI. 1o. 27 P, supported by the First Collegiate Court of the Twenty First Circuit, visible on page 384, volume XIV, September 1994, of the Weekly Federal Court Report, eighth period, which refers to:

*"EXPERTS. NOT CHALLENGED OPINION..."*

The foregoing is supported by the statement given by **FERNANDO CASTILLO TAPIA**, on April twenty three, two thousand and four, when he said that, as he had said on his appearance of March twenty two, two thousand and four, he did not consent to the issuance of a passport in favoGr of the minors; after he saw the documents submitted by the Ministry of Foreign Affairs, **which presented the name and initials of the person who requested a passport for the minors ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ both with the last names ▮▮▮▮▮▮▮▮ as well as the copy of the passport with the name of JOSE FERNANDO CASTILLO TAPIA, who supposedly authorized the issuance of the aforementioned document; after revising the documents included in the file, he said he does not know who signed for him and he does not know who the signature and the fingerprint on both applications belongs to; therefore, he was not physically there to present the application or sign the authorization for the issuance of the passport of his children, he only recognizes the copy of the passport of her daughter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ issued on December seventeen, nineteen ninety seven, since he requested it with MARIA DEL ROSARIO MORENO VAZQUEZ. He does not know about any other**



PROCURADURIA GENERAL
DE LA
REPUBLICA

authorization documents signed by his own hand; he also mentioned that the handwriting on the applications belongs to MARIA DEL ROSARIO MORENO VAZQUEZ. He remembered that some days before his children were abducted by their mother, he had his passport in his bedroom and then he found it somewhere else, but he did not pay attention to this fact; his son, ▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ has a copy of the keys to his house, and he thought maybe his daughter, his son or their mother could have taken the passport and then placed it there again, since they had access to his house and he was working that day, but he did not notice someone had taken it and he did not know it was used to request a passport for the minors. Likewise, in relation to the contents of the document by INTERPOL dated April twelve, two thousand and four, he only accepts part of it; he requested help from that institution because he had the feeling that his children had been taken to another country by MARIA DEL ROSARIO MORENO VAZQUEZ, as it was also stated before the Public Prosecutor of the State of Mexico, **the day he learned that his children were no longer living in the house located at** ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉ **Alteña Dos Lomas Verdes, considering that some months before, MARIA DEL ROSARIO MORENO told him she had married a man named RONALD COONLEY, American, and that she was planning to move with her children to the United States; then he said he did not agree with that and he was not going to authorize such thing, first of all because MARIA ROSARIO MORENO told him she had met Mr. COONLEY on the Internet and this was her second marriage, after his own, with someone she met on the Internet.**

Statement valued as evidence in compliance with Article 285 of the Federal Code of Criminal Procedure, determined in accordance to Article 289 of the aforementioned body of law; the deponent is of age, he has the necessary capacity and education to judge the fact, and he witnessed the fact, he did not learn about it through inductions or references given by others, he



PROCURADURIA GENERAL
DE LA
REPUBLICA

was able to appreciate it through his own senses through a clear and precise exposure, without any doubts or reluctances, considering that as an adult, he has the capacity and education to judge the fact that gave rise to his statement.

The legal precedent 1.8o.C.58C of the Weekly Federal Court Report, Ninth Period, Volume VI, September 1996, page 759, with the text:

**"TESTIMONY. EVIDENCE ANALYSIS AND VALUATION..."**

Another applicable legal precedent is number 376, supported by the First Room of the Supreme Court of Justice of the Nation, published on page 275 of the Appendix of the Weekly Federal Court Report, 1917-2000, Volume II, Criminal Matters, with the following title and text:

**"WITNESSES. APPRECIATION OF THEIR STATEMENTS..."**

We can identify the crime and its authors; they forged the ordinary passport applications OP-5 and OP7 numbers ██████ and ██████ Maria del Rosario Moreno Vazquez and Artemio Barrera Hernandez went to the Ministry of Foreign Affairs office in Naucalpan, State of Mexico, and the accused wrote a false signature on the passport applications, he was not the father or guardian as proven by the original certificates of birth ██████ and ██████ issued in the name of ██████████████████████ **both with the last names** ██████████ since those certificates show that their father is Jose Fernando Castillo Tapia. On the other hand, we also link the simple copy of the agreement signed by Jose Fernando Castillo Tapia and Maria del Rosario Moreno Vazquez, attested by the investigating authority, which shows that the signatories agreed to share the patria potestas of the minor ██████ ██████████

In this context, it is evident that Artemio Barrera was an instrument for the accused Maria del Rosario Moreno; when she did not obtain the consent of her ex husband Jose Fernando Castillo Tapia to take her children out of the



PROCURADURIA GENERAL
DE LA
REPUBLICA

country, she used Artemio Barrera to falsely fill out the passport application and illegally replace the consent required for such application process, since the only person entitled to grant so was the accuser Castillo Tapia, since he is the father of the minors, and Artemio Barrera stamped his own fingerprints, as proven by the identification expert's opinion made by experts from the Mexican Attorney General's Office which evidenced that such prints did not belong to the accuser, but to the accused.

Due to the above, the aforementioned pieces of evidence valued in compliance with Articles 280, 285, 288 to 290 of the Federal Code of Criminal Procedure **are effective and suitable to prove the alleged responsibility of the accused MARIA DEL ROSARIO MORENO VAZQUEZ** in the commission of the crime of **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) and penalized by Article 243, paragraph one, in relation to Article 13 (IV) of the Federal Criminal Code, **as well as the alleged responsibility of ARTEMIO BARRERA HERNANDEZ,** for the crime of **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) (V), and penalized by Article 243, paragraph one, in relation to Article 13 (II) of the Federal Criminal Code, since they voluntarily committed the crime and the criminal definition was proven through the generic rule included I Article 168 of the Code of Procedures in this matter; the evidence showed that they went to the Ministry of Foreign Affairs office in Naucalpan, State of Mexico, so as to fill out ordinary passport applications OP-5 and OP-7, and for that purpose Artemio Barrera wrote a false signature and stamped his fingerprints, proven by the identification expert's opinions, in order to illegally fulfill the consent required for such application processes. The only person entitled to do so is the father of the minors, so, since he pretended to be the minors' father, the applications with the signature that was not made by the accuser are considered false; Artemio used a name that was not his in order to fill out the applications, and this was necessary because the consent of both parents was asked. This infringed the legal right of



PROCURADURIA GENERAL
DE LA
REPUBLICA

public trust that all documents issued by the State must have, such element is warded by Articles 243 and 244 of the Federal Criminal Code.

Therefore, we can apply the legal precedent VI.2o.J/174 of the Second Collegiate Court of the Sixth Circuit, published in the Weekly Federal Court Report, Volume IX, February 1992, page 96, Eighth Period, which explains:

*"CIRCUMSTANTIAL EVIDENCE. ASSESSMENT. The circumstantial evidence is based on the incriminatory value of evidence and it takes, as a starting point, proven facts and circumstances which have to be linked to the inquired fact; it can be a missing piece of information or an uncertainty, a hypothesis that needs verification, applied to the materiality of the crime and to the identification of the offender and the circumstances of the offense".*

We can also apply the legal precedent IV.2o.J/29, published in the Gazette of the Weekly Federal Court Report, Volume 72, December 1993, Eight Period, page 77, with the following title and text:

*"CIRCUMSTANTIAL EVIDENCE, IMPORTANCE. Modern laws in criminal matters have pushed into the background the statement rendered by the accused and gives it evidentiary weight only when it is corroborated with other evidence; then, the circumstantial evidence acquires the level of "queen of evidence", since it is more technical and it reduces judicial mistakes. Indeed, such evidence is based on inference or reasoning, and it takes, as a starting point, proven facts and circumstances which have to be linked to the inquired fact; it can be a missing piece of information or an uncertainty, a hypothesis that needs verification or the material elements of the crime, the identification of the offender and the circumstances of the offense".*

The accused acted **intentionally** in accordance with paragraph one, Article 9 of the Federal Criminal Code; the accused acted **making use of another person**, in compliance with Article 13 (IV) of the Federal Criminal Code, since evidence shows that the purpose of the accused was to take her



PROCURADURIA GENERAL
DE LA
REPUBLICA

children to a foreign country to live with her new husband, Ronald Coonley, and she was not allowed to do so because her ex husband clearly said he did not approve that. So, she had to use Artemio Barrera Hernandez, and he pretended to be her husband during the application process, so the applications were falsely filled out; on the other hand, Artemio Barrera carried out an action reproached by himself, in accordance with Article 13 (II), he only used his own person to stamp his fingerprints and signatures and also to claim a name that did not belong to him.

With all this, they committed the offense keeping the functional domain of the fact, knowing the elements of the crime and willing to obtain the illegal results, which is deduced from the way the facts were carried out, but most of all, due to the fact that since the accused interacted with the exterior world, they knew their act was illegal, as well as the result obtained through it and there is no sign that indicates that the offenders were related to the provision foreseen in Article 15, clause a), section VIII, of the Federal Criminal Code, regarding the definition error, which is bearing on the knowledge of elements, and if that had been presented it would have had as a legal consequence the exclusion of intention, and therefore, the criminal definition. However, since there was no error, it subsists.

Likewise, there are no causes of crime exclusion in their favor, as referred in Article 15 of the Federal Criminal Code; in that sense, since there is no cause that makes their behavior legal, it can be considered unlawful, since it was made in a completely attributable state because the accused had and still have the capacity to understand the legal aspect of the fact and to act in accordance with that. There is no evidence that shows that when the facts occurred, they suffered from any permanent or temporary mental disorders affecting such capacity; they acted knowing their action was illegal and they performed such actions showing they knew they were infringing the existing legal regime, and they freely determined to do so.

NAV

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

It is important to highlight that in order to issue an arrest warrant, there is no need of evidence that fully proves the criminal responsibility of the accused; it is only important to fulfill the requirements included in Article 16 of the Political Constitution of the United Mexican States and have information that makes possible the alleged responsibility of the accused.

The foregoing is supported by the legal precedent 619 of the Second Collegiate Court of the Sixth Circuit, published in the Appendix of the Weekly Federal Court Report 1917-2000, Volume II, Criminal Matters, Second Part, visible on page 504 with the following text and title:

*"ARREST WARRANT. ITS ISSUANCE DOES NOT REQUIRE FULL EVIDENCE TO PROVE THE RESPONSIBILITY OF THE ACCUSED. In order to issue an arrest warrant, it is not necessary to have full evidence to prove the responsibility of the accused, it is only important to fulfill the requirements described in Article 16 and have information that makes possible the alleged responsibility of the accused."*

In this regard, the alleged criminal responsibility of **MARIA DEL ROSARIO MORENO VAZQUEZ** is proven for **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) and penalized by Article 243, paragraph one, of the Federal Criminal Code, as well as the alleged responsibility of **ARTEMIO BARRERA HERNANDEZ** for **FORGERY OF DOCUMENTS,** foreseen in Article 244 (I) (V) and penalized by Article 243, paragraph one, of the Federal Criminal Code.

TENTH.- In this regard and in compliance with article 195 of the Federal Code of Criminal Procedure, the present case gathers the requirements described in Article 16 of the Constitution to issue an arrest warrant, since the corresponding complaint is included in the core records. The facts attributed to the accused are foreseen as crimes and punished with imprisonment; the elements of the corpus delicti are also proven as well as the alleged

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

responsibility of the perpetrator and there is no cause to eliminate the criminal action in accordance with Article 195 of the Federal Code of Criminal Procedure. **Consequently, an ARREST WARRANT is issued against MARIA DEL ROSARIO MORENO VAZQUEZ** for **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) and punished by Article 243, paragraph one, of the Federal Criminal Code and also against **ARTEMIO BARRERA HERNANDEZ,** for his alleged responsibility in the commission of the crime of **FORGERY OF DOCUMENTS,** foreseen in Article 244 (I) (V) and penalized by Article 243, paragraph one, of the Federal Criminal Code.

ELEVENTH.- This Third District Court for Federal Criminal Matters in the Federal District, **is not legally empowered to continue with the present case,** because from the documents included in the preliminary investigation PGR/NAU/87/2004, improperly sent to this court by the Head of the Second District Court of the State of Mexico in Naucalpan de Juarez under the argument of a supposed joinder between the present cause and the cause 108/2004, received by this court on July nineteen, two thousand and four. The crime foreseen in Article 138 of the General Immigration Law is considered a felony by Article 194 (V) of the Federal Code of Criminal Procedure and it was even advised by the person in charge of the Reception Desk for those District Courts in the State of Mexico, located in Naucalpan on the paper dated June two, two thousand and five, with a register number 00178/2005, so the provisions set forth in articles 142 and 432 of the Code of Criminal Procedure were ignored. Such articles state:

*"ARTICLE 142.- In regard to serious offenses so defined under Article 194, the ruling declaring jurisdiction shall be made immediately and the presiding judge shall order or deny the arrest or search requested by the Public Prosecutor, within 24 hours as of the moment the ruling declaring jurisdiction was resolved"*

FORMA CG-1A



PROCURADURIA GENERAL
DE LA
REPUBLICA

*"ARTICLE 432.- The competence in the form of a motion for improper venue shall not be resolved until the proceedings that cannot be delayed are fulfilled and when the offender is arrested after the issuance of an arrest warrant or in case of acquittal based on insufficient evidence".*

Reading these transcriptions we can see that when there is a felony, foreseen in Article 194 (as in this case), the case must be filed immediately and the warrant shall be requested within twenty four hours after filing the case. The last article transcribed shows that no competence shall be declined before the corresponding proceedings have been practiced; so, competence issues shall not be reserved since we are dealing with a felony.

Furthermore, after reading the document considered by the head of the Second District Court of the State of Mexico in Naucalpan, when she resolved the supposed joinder (as if dealing with simple crimes) it is clearly seen that the facts occurred in Naucalpan de Juarez, State of Mexico, in the Ministry of Foreign Affairs office in the municipality of Naucalpan de Juarez. That is the place where it is said the document was forged and the false document was used to request the passports of the aforementioned minors, placing some signatures and fingerprints claiming they belonged to such children's father. All the above occurred in the territory of the jurisdiction of the Second District Court in Naucalpan de Juarez, State of Mexico, and therefore, the legal precedent supported by the First Room of the Supreme Court of Justice, which can be consulted in the Weekly Federal Court Report and its Gazette, Volume IX, May 1999, page 267, ninth period, which states:

*"ARREST WARRANT. IT SHALL BE ISSUED BY THE COMPETENT JUDICIAL AUTHORITY. Article 16, paragraph two of the Constitution, establishes about the arrest warrant, among other requirements, that it must be*

FORMA C G - 9 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

*issued by a judicial authority; at the same time, the first paragraph of such Article guarantees protection to individuals as it demands that all acts that could have an impact on them shall come from the competent authority, the one legally empowered to issue such act. Therefore, if the arrest warrant affects an individual, since it provisionally restricts their personal or ambulatory freedom so as to subject it to a criminal process, the judge issuing it shall also be legally competent to know the criminal process that could begin for the crime or crimes it is being issued for, considering the criteria to establish the competence, by territory, matter, amount or connection."*

Even if the Second District Judge of the State of Mexico in Naucalpan was incompetent for the issuance of the arrest warrant, it should have fulfilled the provisions set forth in Articles 142 and 432 of the Federal Code of Criminal Procedure, because they are exceptions to such legal precedent since they safeguard public order and cannot be delayed.

Due to the above, as it has been said, this Third District Court for Federal Criminal Matters in the Federal District is not competent to know the criminal cause 66/2005 of the index in this court, so the Federal Prosecution Office exercised criminal action against MARIA DEL ROSARIO MORENO VAZQUEZ for her alleged responsibility in the commission of the crime of FORGERY OF DOCUMENTS; and against FRANCISCO JAVIER TOVAR MARTINEZ for his alleged responsibility in the commission of the crimes of FORGERY OF DOCUMENTS and USE OF FALSE PUBLIC DOCUMENT; from this proceedings it is learned that the consigned acts are the same ones that gave rise to the criminal cause 108/2004, filed with this court against the aforementioned accused but for the crimes of CHILD TRAFFICKING; about that crime, through a resolution issued on August three, two thousand and four, it was decided to grant competence, for territorial reasons, in favor of a District Judge on duty in the State of Mexico, sitting in Naucalpan de Juarez, since the facts occurred in such municipality; for that reason, on August twenty six, two



PROCURADURIA GENERAL
DE LA
REPUBLICA

thousand and four, the Seventh District Court in the State of Mexico, sitting in Naucalpan, who had knowledge about the case  because he was on duty, informed he had accepted the competence.

In this regard, since it was seen that the latter cause was linked to the cause that is being resolved, this Court cannot preside the aforementioned criminal facts, considering that the General Agreement 23/2002 of the Plenary of the Council of the Judiciary Branch of the Federation regarding criminal matters, establishes that contradictory resolutions shall be avoided.

Therefore, it is evident that the aforementioned Seventh District Judge had previous knowledge of the criminal facts under investigation.

On this matter, it is important to highlight that the General Agreement 23/2002 of the Plenary of the Council of the Judiciary Branch of the Federation, which regulates the functioning of the common correspondence offices of the Circuit Courts and the District Courts of the Federal Judiciary Branch, in Article 6 provides the following:

"*Article 6. About Remitting Related Cases. When a certain case is linked to another one already solved or in process, it is presented before these Common Correspondence Offices, since the same parties will be involved in the natural or constitutional procedure of both matters and since there will be actions derived from the procedure itself, the aforementioned offices will remit such case to the resolving Court or the Court processing the previous case.*

*For that purpose, when a Federal Court has previous knowledge of a case, stating its incompetence due to its procedure, it shall not be considered, or when the corresponding resource is discarded.*

*As for criminal matters, a case will be considered related when it refers to the same facts, so it shall be remitted to the same court so as to avoid contradictory resolutions.*



PROCURADURIA GENERAL
DE LA
REPUBLICA

*Except for the abovementioned cases, in order to determine if a case is related to another one, <u>any resolution pronounced in the previous case shall be used,</u> no matter what its reason is.*

***If related cases are presented in two or more federal courts, in compliance with the aforementioned terms, the Common Correspondence Office shall remit the new related case to the Circuit Court or the District Court that dictated the closest resolution to the date in which it is presented.***

***<u>If related cases are in process, the new case shall be remitted to the requiring court.</u>***

*In order to avoid any delays imparting justice, the heads of the federal courts must express that the knowledge of a certain case does not concern them because of their periods of duty, before the constitutional hearing is carried out by direct writ of amparo, or in a situation similar to the ones described above.*

*So as to balance work loads, the computerized system shall compensate cases."*

In accordance with the foregoing, it is evident that this District Court does not have the legal competence to continue presiding this matter, not only for territorial reasons, but also for the previous knowledge. As it was said before, the facts that gave rise to the exercise of criminal action are identical to the facts that granted competence to the Seventh District Judge in the State of Mexico, sitting in Naucalpan de Juarez, but attributing a different crime.

Consequently, the presumption foreseen in Article 6 of the General Agreement 23/2002, idem, is completely fulfilled, with the main purpose of bringing out justice promptly and efficiently, and avoiding the issuance of resolutions in different senses.

FORMA C G - 1 A



PROCURADURIA GENERAL
DE LA
REPUBLICA

Due to the reasons described above, in compliance with the General Agreement, the present file shall be submitted to the District Courts in the State of Mexico sitting in Naucalpan de Juarez through the Common Correspondence Office, only in original (since that is how it was received), to the Seventh District Judge in the State of Mexico, sitting in Naucalpan de Juarez, asking for the corresponding confirmation.

**Once the accused have been arrested, they shall be imprisoned in the Preventing Detention Center corresponding to the territorial area of the Seventh District Court in the State of Mexico, sitting in Naucalpan de Juarez.**

In compliance with Article 468 (I) and 472 of the Federal Code of Criminal Procedure, the **procedure is suspended** in the present case, until the offenders are arrested and the aforementioned Court carries out the corresponding proceedings.

Therefore, in compliance with Article 41 of the Federal Code of Criminal Procedure, through the assigned Federal Social Representative, an official letter shall be submitted to the Head of the Federal Investigation Agency with the aforementioned information. Likewise, in accordance with Article 17 of the Federal Code of Criminal Procedure, two authorized copies shall be submitted to such Agent for the corresponding legal effects.

In such conditions, this shall be recorded as a precedent and the appropriate notes to the Government Docket of this Court shall be added.

Due to all the information above, and in compliance with the provisions set forth in Articles 1, 14, 16, 20, 21, 104 and 133 of the Political Constitution of the United Mexican States in relation to Articles 1, 4, 6, 94, 95, 104, 142 and 168 of the Federal Code of Criminal Procedure, it is decided and

**R E S O L V E D**



PROCURADURIA GENERAL
DE LA
REPUBLICA

**FIRST.-** Due to the reasons described in section four of this resolution, at **FOURTEEN HOURS OF THIS DATE, THE ARREST WARRANT IS DENIED requested against MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility in the commission of the crime of **USE OF FALSE DOCUMENT,** foreseen in Article 246 (VII) and penalized by Article 243, paragraph one, of the Federal Criminal Code as well as for the crime of **VIOLATION TO THE GENERAL IMMIGRATION LAW,** foreseen and sanctioned by Article 138 of the General Immigration Law. Likewise, the **ARREST WARRANT requested against FRANCISCO JAVIER TOVAR MARTINEZ is denied,** for his alleged responsibility in the commission of the crime of **FORGERY OF DOCUMENT** and **USE OF FALSE PUBLIC DOCUMENT,** foreseen in Article 244 (V) (X) and Article 246 (VII) respectively, and sanctioned by Article 243, paragraph one, of the Federal Criminal Code.

**SECOND.- AN ARREST WARRANT IS ISSUED AGAINST MARIA DEL ROSARIO MORENO VAZQUEZ** for her alleged responsibility in the commission of the crime of **FORGERY OF PUBLIC DOCUMENT,** foreseen in Article 244 (I) and sanctioned by Article 243, paragraph one, all from the Federal Criminal Code; likewise, **AN ARREST WARRANT IS ISSUED AGAINST ARTEMIO BARRERA HERNANDEZ,** for his alleged responsibility in the commission of the crime of **FORGERY OF DOCUMENT,** foreseen in Article 244 (I) (V) and sanctioned by Article 243, paragraph one, of the Federal Criminal Code.

**THIRD.-** Since the proceeding that cannot be delayed was resolved (and since this is the resolution of a felony), the records of the present criminal case **shall be submitted immediately to the Seventh District Court in the State of Mexico, sitting in Naucalpan de Juarez,** through the Common Reception Desk of the District Courts in the State of Mexico, sitting in Naucalpan de Juarez, since the *previous knowledge* hypothesis mentioned in Article 6 was actualized, in the General Agreement 23/2002 of the Plenary of the Judiciary



PROCURADURIA GENERAL
DE LA
REPUBLICA

Branch of the Federation, in compliance with section eleven of the present resolution.

**FOURTH.-** In order to fulfill this proceeding, two certified copies shall be turned in to the assigned Federal Public Prosecutor, so it can then be submitted to the Head of the Federal Investigation Agency so as to locate and arrest the accused; <u>once the above has been fulfilled, they shall be turned over to the **Seventh District Court in the State of Mexico, sitting in Naucalpan de Juarez, inside the corresponding Preventive Detention Center.**</u>

**FIFTH.-** In compliance with Article 468 (I) and 472 of the Federal Code **the procedure of the present case is suspended** until the referred offenders are arrested and they are bound into the custody of the corresponding **Judge.**

**SIXTH.-** The Second District Judge in the State of Mexico, sitting in Naucalpan de Juarez, shall also be informed about the above.

**SEVENTH.-** The appropriate notes to the Government Docket shall be added and the above shall be reported in the Statistics of this Court.

**NOTIFY THE PUBLIC PROSECUTOR ASSIGNED TO THE COURT. SO BE IT FULFILLED.**

This was resolved and signed by **ARTURO CESAR MORALES RAMIREZ,** Third District Judge in Federal Criminal Procedures in the federal District, before the Secretary who authorizes and attests.

[Signed]

The present page corresponds to the final part of the resolution, dated June eight two thousand and five, dictated in the criminal case 66/2005 against MARIA DEL ROSARIO MORENO VAZQUEZ AND OTHERS, for the crime of VIOLATION TO THE GENERAL IMMIGRATION LAW AND OTHERS.- I attest.

[ILLEGIBLE SEAL DATED JUNE 8, 2005 15:30]