IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In the Matter of the Extradition of | ) ) | |
| MARIA del ROSARIO MORENO-VAZQUEZ | ) | 3:06-CV-761-MEF-CSC |
| a/k/a MARIA COONLEY | ) ) | |

**United States's Reply Brief**

This extradition **is** a straightforward matter. Although difficult to discern, in her Brief, Moreno-Vazquez apparently claims that she should not be extradited for two reasons. First, she apparently argues that Mexico's two requests for extradition are not for extraditable offenses, and, second, she appears to argue that there is not probable cause to establish extradition. A review of the treaty and of the authority she cites belie her claims.

### I.   The Elements to Determine Extraditability Are Met

An extradition certification is in order when: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. *Fernandez v. Phillips,* 268 U.S. 311, 312 (1925), *cited in Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994); *Hill v. United States*, 737 F.2d 950, 951 n.1 (11th Cir. 1984).

Moreno-Vazquez concedes that the Court is authorized to conduct this proceeding and it has jurisdiction over her.[1] Furthermore, nowhere in her brief does she argue that an extradition

---

[1] *See* Moreno-Vazquez Br. at 3 ("[T]he respondent does not contest the jurisdiction or venue of this Court to hear the case and would agree that it is the proper court.")

treaty is not in force. Moreover, in this case, the government has provided a declaration from Andrew N. Keller, an attorney in the Office of the Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and Mexico. This determination alone is entitled to deference from the Court. *Terlinden v. Ames*, 184 U.S. 270, 288 (1902); *Kastnerova v. United States,* 365 F.3d 980, 985-987 (11th Cir. 2004), *cert. denied,* 541 U.S. 1090 (2004)*; United States ex rel. Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997); *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996).

## II.     The Offenses Are Covered by the Treaty

Moreno-Vazquez's other claims–that the offenses in the requests for extradition are not covered by the Treaty and that there is not probable cause–are entirely without merit. The two offenses for which Moreno-Vazquez's extradition is sought–child trafficking and forgery of a public document–are covered by the Treaty. While more modern treaties merely describe an extraditable offense as being one that exists under both countries' laws (known as dual criminality), Mexico's treaty under Article 2(1) and its Appendix merely requires the offenses to be listed in order to be extraditable (which is known as a list treaty). Contrary to Moreno-Vazquez's assertions, dual criminality is not required per se for extradition; it need be found only if the treaty so requires. *Factor v. Laubenheimer*, 290 U.S. 276 (1933); *In re Assarsson*, 635 F.2d 1237 (7th Cir. 1980), *cert. denied*, 451 U.S. 938 (1981).

Here both child trafficking[2] (from the first request) and forgery of a public document[3]

---

[2] *See Extradition Treaty Between the United States of America and Mexico*, May 4, 1978, 31 U.S.T. 5059, 1978 U.S.T. Lexis 317 (Article 2, paragraphs 1 and 3, and Appendix, paragraph 4).

[3] *See Extradition Treaty Between the United States of America and Mexico*, May 4, 1978,

(from the second request) are both listed under the treaty. When, as here, the treaty contains a list of extraditable offenses, the court should examine the conduct described in the extradition documents and decide whether it constitutes an offense among those listed in the Treaty's Appendix, paragraphs 4 and 10. *Factor v. Laubenheimer,* 290 U.S. 276 (1933). In determining whether an offense for which extradition is requested is among those listed in the relevant treaty:

> a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them. For that reason, if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred.

*Id.* at 293-294. Thus, based upon the list treaty, both of Moreno-Vazquez's offenses are extraditable offenses.

Furthermore, while the offenses are clearly within the list, if a dual criminality test were applied, as per Article 2(3) of the Treaty, Moreno-Vazquez's behavior of removing children from the other parent's access is clearly subject to criminal prosecution in both countries. "Child trafficking" under Articles 366-ter and 366-quater of the Mexican Federal Penal Code is defined as:

> Whoever illegally moves a person under the age of sixteen . . . shall be punished by imprisonment from three to ten years and a fine . . . . The sentences imposed in this article shall be imposed on the father or mother of a person under the age of 16 who, illicitly and without the consent of the parent(s) . . . moves the child outside of national territory with the objective of changing their permanent residence of or preventing the child's mother or father . . . from living with or visiting the minor.

---

31 U.S.T. 5059, 1978 U.S.T. Lexis 317 (Article 2, paragraphs 1 and 3, and Appendix, paragraph 10).

In the United States, the federal "international parental kidnapping" statute provides that "Whoever removes a child from the United States . . . with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both." 18 U.S.C. § 1204. Neither statute requires that a custody order be in place or violated, as Moreno-Vazquez appears to claim.[4] Because her behavior is subject to criminal prosecution in both Mexico and the United States, it meets dual criminality standards.

There is also dual criminality with regard to the second offense for which Moreno-Vazquez faces extradition, "forgery of a public document;"[5] specifically, forging her ex-husband's signature and providing fingerprints purportedly from him on their two children's Mexican passport applications. Her behavior would also be subject to prosecution under U.S. law for making a false statement in application and use of passport. 18 U.S.C. § 1541 ("Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport . . . for his own use or another . . . shall be fined under this title, imprisoned not more than . . . 10 years . . ., or both.")

---

[4] *See* Moreno-Vazquez Br. at 1 ("[T]he order as to custody provided custody exclusively to the respondent."). As it happens, the custody order in this case explicitly allows, among other rights, the father to visit his son every day of the week, to take him to school every day, and to take him on vacation for 15 days every summer. First extradition request, dated March 16, 2005. *See* Ex. 6. of the Extradition Packet.

[5] Forgery of a Public Document is set forth under Article 244, Section I, and is punishable under the first paragraph of Article 244 of the Federal Penal Code of Mexico.

**III.    There Is Probable Cause to Believe Moreno-Vazquez Kidnapped Her Children and Forged Her Ex-Husband's Signature and Fingerprints on Her Children's Passport Applications in Order to Bring Them to the United States**

Any claim that there is not probable cause to believe that Moreno-Vazquez committed these offenses is meritless.  The standard of proof to find the evidence "sufficient to sustain the charge . . . " pursuant to Section 3184 is the familiar domestic requirement of probable cause.  A court must conclude there is probable cause to believe that the crime charged by Mexico was committed and the person before the court committed it.  *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006); *Sindona v. Grant,* 619 F.2d 167 (2d Cir. 1980).  The evidence is sufficient and probable cause is established if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused.  *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); s*ee also Collins v. Loisel*, 259 U.S. 309, 316 (1922) ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("Competent evidence to establish reasonable grounds is not necessarily competent evidence to convict.").  *Accord Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005), *cert. denied*, 546 U.S. 993 (2005); *Barapind v. Enomoto*, 400 F.3d 744, 752 (9th Cir. 2005); *Sidali v. I.N.S.*, 107 F.3d 191, 199 (3d Cir. 1997), *cert. denied*, 522 U.S. 1089 (1998).

The documents in this case speak for themselves.  They show that on October 1, 1991, Moreno-Vazquez and her husband entered into a child custody agreement whereby they each had certain custody rights, referred to as "*patria potestad*," relating to L.F.C.M.  After the birth of M.F.C.M., both parents applied all of the benefits and guarantees of the custody agreement to

M.F.C.M. Moreno-Vazquez then took her children to the United States without her husband's permission in violation of this agreement. In so doing Moreno-Vazquez had her husband's signature and his digital fingerprint forged. The documents presented demonstrate that the required probable cause is present.[6] No further analysis is necessary or required.[7]

---

[6] Furthermore, given Moreno-Vazquez's claims at the status conference of her desire to bring a variety of witnesses, including an expert witness, to this hearing, it bears mentioning that due to the nature and limited purpose of an extradition hearing under Section 3184 and the importance of the international obligations of the United States under an extradition treaty, a fugitive's opportunity to challenge the evidence introduced against him is very circumscribed. A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but may only introduce evidence explaining **away** the submitted evidence. "Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005) (*en banc*) (quoting *Mainero v. Gregg*, 164 F.3d 1199, 1207, n.7 (9th Cir. 1999)); *see also Ordinola v. Hackman,* 478 F.3d 588, 608-09 (4th Cir. 2007), cert. denied, 128 S. Ct. 373 (2007); *Hoxha v. Levi,* 465 F.3d 554, 561 (3d Cir. 2006).

The Supreme Court in *Collins v. Loisel,* 259 U.S. 309 (1922), quoted with approval the district court's reasoning in *In re Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883), elucidating why the scope of an extradition hearing is very limited. In *In re Wadge*, the district court rejected the argument that a fugitive should be given an extensive hearing in the extradition proceedings:

> If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties.

*Collins v. Loisel,* 259 U.S. 309 at 316 (*quoting In re Wadge,* 15 F. at 866); *accord Charleton v. Kelly,* 229 U.S. 447, 461 (1913).

[7] *Valenzuela v. United States*, 286 F.3d 1223 (11th Cir. 2002), the case on which

### IV. Pursuant to Statutes and Case Law, the Court Must Consider the Sufficiency of the Evidence and the Secretary of State Addresses All Other Issues

Other than the sufficiency of the evidence, all matters that may be raised by the fugitive as defenses to extradition are to be considered by the Secretary of State. *See* 18 U.S.C. §§ 3184, 3186. In making extradition determinations, "[t]he Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations - factors that may be beyond the scope of the magistrate judge's review." *Sidali v. I.N.S.*, 107 F.3d 191, 195 n.7 (3d Cir. 1997), *cert. denied*, 522 U.S. 1089 (1998). The Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the receiving country. *See Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999), *cert. denied*, 528 U.S. 1135 (2000). This is consistent with the long-held understanding that surrender of a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State," within the Executive's "powers to conduct foreign affairs." *See In re Kaine*, 55 U.S. 103, 110 (1852).

---

Moreno-Vazquez relies without any analysis, is inapposite. In that case, a petition for extradition was filed and the government attempted to supplement the request with a document containing inculpatory statements made by the alleged fugitives to federal law enforcement. The district court dismissed the petition. The United States then filed a second request for extradition that included the previously excluded inculpatory statements. Extradition was then ordered. On appeal, the Court said that the United States could not use the previously excluded document in a new request, noting that using the document was a government breach of a promise of confidentiality which violated due process. This is not the circumstance here. In this case there are two valid requests for extradition. All of the documents are included in the request. Thus, reliance on *Valenzuela* misplaced.

Moreno-Vazquez also appears to claim that there have been irregularities within the Mexican criminal justice system that have resulted in the charges against her. Moreno-Vazquez Br. at 1-2 (claiming that charges are "absurd"). Such claims are appropriately addressed by the Secretary of State in determining whether to surrender Moreno-Vazquez to Mexico. Therefore, under the rule of judicial non-inquiry,[8] with a view to the Secretary's sole and broad discretion under 18 U.S.C. § 3186, any claims by Moreno-Vazquez should be addressed by the Secretary of State.[9]

---

[8] It is not the role of the Court to look behind the extradition request to the motives of the requesting country. *Ordinola v. Hackman*, 478 F.3d 588, 604 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007) (stating that "the motives of the requesting government are irrelevant to our decision" and "must be addressed to the Secretary of State"); *Eain v. Wilkes*, 641 F.2d 504, 513 (7th Cir. 1981) (holding that it is the sole discretion of Secretary of State to determine whether foreign country's request for extradition is a subterfuge), *cert. denied*, 454 U.S. 894 (1981). Likewise, the court should not investigate the fairness of the requesting country's criminal justice system. *United States v. Lui Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) ("It is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed."). *See also Prasoprat v. Benov,* 421 F.3d 1009, 1016 (9th Cir. 2005), *cert. denied,* 546 U.S. 1171 (2006); *Blaxland v. Commonwealth Director*, 323 F.3d 1198, 1208 (9th Cir. 2003).

[9] The Secretary of State has sole discretion under 18 U.S.C. § 3186 and the relevant treaty to determine whether a request for extradition should be denied on humanitarian grounds because of procedures or treatment awaiting the surrendered fugitive. *See Quinn v. Robinson,* 783 F.2d 776, 790-791 (9th Cir. 1986), *cert. denied,* 479 U.S. 882 (1986); *Ahmad v. Wigen,* 910 F.2d 1063, 1066 (2d Cir. 1990) ("[T]he degree of risk to [the accused's] life from extradition is an issue that properly falls within the *exclusive purview* of the executive branch."). Respect for and confidence in the Executive's exercise of discretion is well placed, as stated in *Ahmad*:

> [T]he district court proceeded to take testimony from both expert and fact witnesses and received extensive reports, affidavits, and other documentation concerning Israel's law enforcement procedures and its treatment of prisoners. This, we think, was improper. The interests of international comity are ill-served by requiring a foreign nation . . . to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced. It is the function of the Secretary of State to determine whether extradition should

### V.  **Conclusion**

All of the elements for extradition have been met. Thus, under the terms of the Mexico-United States Treaty, Moreno-Vazquez must be extradited to Mexico as soon as possible.

Respectfully submitted this the 9th of May, 2008.

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/ Christopher Snyder
> CHRISTOPHER A. SNYDER
> Assistant United States Attorney
> 131 Clayton Street
> Montgomery, AL 36104
> Phone: (334)223-7280
> Fax: (334)223-7135
> E-mail: christopher.a.snyder@usdoj.gov

---

be denied on humanitarian grounds. So far as we know, the Secretary never has directed extradition in the face of proof that the extraditee would be subjected to procedures or punishment antipathetic to a federal court's sense of decency. Indeed, it is difficult to conceive of a situation in which a Secretary of State would do so.

*Ahmad,* 910 F.2d at 1067; *accord Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 830 (11th Cir. 1993) ( "[H]umanitarian consideration are matters properly reviewed by the Department of State.").

**Certificate of Service**

I hereby certify that on May 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Ben Elton Bruner.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER