IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| In the Matter of the Extradition of ) | |
| MARIA del ROSARIO MORENO-VAZQUEZ ) | 3:06-CV-761-MEF-CSC |
| a/k/a MARIA COONLEY ) | |

**United States's Supplemental Reply Extradition Brief**

In her supplemental brief, Moreno-Vazquez misconstrues the definition of *patria postestas* as that term is defined under Mexican law. Instead of looking to the relevant Mexican law to determine what establishes and what are the natures of *patria potestas*, Moreno-Vazquez relies on two cases – *Whallon v. Lynn*[1] and *Gonzalez v. Gutierrez*.[2] After so doing, Moreno-Vazquez then concludes that based upon this U.S. law, "*patria potestas* may only confer custody rights where there is no Court order or other agreement to the contrary."[3] This is just not so. Moreno-Vazquez misunderstands the actual holdings of these cases, and what significance, if any, they have on this case.

In both *Whallon* and *Gonzalez*, the issue was whether *patria potestas* could "confer . . . rights of custody under the [Hague Convention on the Civil Aspects of International Child Abduction]"[4]("the Hague"). As relevant here, the Hague[5] is a treaty

---

[1] 311 F.3d 942 (9th Cir. 2002).

[2] 230 F.3d 450 (1st Cir. 2000).

[3] Doc. 39 at 3.

[4] *Gonzalez*, 311 F.3d at 954; *Whallon*, 230 F.3d at 456.

[5] T.I.A.S. No. 11,670, 19 I.L.M. 1501 (1980)

that provides a private civil action *only* for the wrongful international removal of a child from a parent that has a specifically Hague-defined "right of custody,"[6] rather than a parent who only has specifically Hague-defined "access rights."

As a result, the *Whallon* case was attempting to determine if *patria postestas* created a "right of custody," rather than just a "right of access"–as those terms are understood under the Hague–if there was no legal written custody agreement between the parties, and the *Gonzalez* case was attempting to determine whether "the principle of *patria potestas* could be invoked to create [the Hague's idea of a] right of custody where a formally executed custody agreement made no mention of it."[7]

*Whallon* concluded that the State of Baja California Sur's *patria potestas* does create a "right of custody," rather than just a "right of access" under the Hague,[8] while *Gonzalez* concluded that if "the parties had executed a custody agreement, without awarding *patria potestas* rights, [then] the legal principle of *patria potestas* does not operate to accord custody rights" as that term is defined under the Hague.[9]

The issue in this case, however, is not whether the *patria potestas* fit under the Hague's definition of "right of custody" versus "right of access." Instead, the issue is simply determining the meaning of *patria potestas* under the applicable Mexican law in

---

[6] *Gonzalez*, 311 F.3d at 945.

[7] *Lalo v. Malca*, 318 F.Supp.2d 1152, 1156 (S.D. Fla. 2004).

[8] *Whallon*, 230 F.3d at 459.

[9] *Malca*, 318 F.Supp.2d at 1556; *see also In re B. del C.S.B.*, 525 F.Supp.2d 1182, 1197 (C.D. Cal. 2007) (distinguishing *Gonzalez* and noting that the specific "custody order therefore extinguished some rights the father would have otherwise been entitled to under patria potestas").

order to determine whether or not there is probable cause to believe that Moreno-Vazquez took her children without the consent of a person who was "lawfully exercising *patria potestas*"[10] or custody rights.

Moreover, even if *Gonzalez* and *Whallen* were somehow applicable to this case, they still would not prevent the Court from determining that Moreno-Vazquez's still has *patria potestas*. Unlike in *Gonzalez*, the custody agreement in this case specifically recognized and incorporated the couple's *patria potestas* over their first child, L.F.C.M.[11] There has been no judicial order to vacate these rights, and they cannot otherwise be extinguished.[12]

Thus, all the elements of child trafficking are met. Moreno-Vazquez should be extradited to face that charge, along with the charge of forgery, in Mexico.

Respectfully submitted this the 2nd of July, 2008.

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/ Christopher Snyder
> CHRISTOPHER A. SNYDER
> Assistant United States Attorney
> 131 Clayton Street
> Montgomery, AL 36104
> Phone: (334)223-7280
> Fax: (334)223-7135
> E-mail: christopher.a.snyder@usdoj.gov

---

[10] *See* Exhibit 6, p. 123 of the extradition materials.

[11] *See* Exhibit 6 of the extradition materials.

[12] C.C.F., art. 417 (Mex.)("The personal relationships between the minor and his or her parents can only be limited if there is a justified cause . . . . Only a judicial order may limit, suspend or lose the right to cohabitate that is referred to in the preceding paragraph, as well as in the cases of suspension or loss of *patria potestas* . . . .")(unofficial translation attached at Exhibit C of Supplemental Extradition Brief).

/s/ Andrea Tisi
Andrea Tisi
Senior Trial Attorney
Office of International Affairs
Criminal Division
U.S. Department of Justice
Phone: (202) 353-4469
Fax: (202) 514-0080
E-mail: Andrea.Tisi@usdoj.gov

**Certificate of Service**

I hereby certify that on July 2, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:  Ben Elton Bruner.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER