IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| In the Matter of the Extradition of ) | |
| ) | |
| ) | |
| MARIA del ROSARIO MORENO-VAZQUEZ ) | CIV. NO. 3:06cv761-CSC |
|    a/k/a MARIA COONLEY ) | |

**MEMORANDUM OPINION AND ORDER**

This is a proceeding pursuant to 18 U.S.C. § 3184[1] on a request for extradition. On August 23, 2006, the United States filed a formal Request for Extradition of Maria del Rosario Moreno-Vazquez ("Moreno") at the behest of the United Mexican States ("Mexico"). (Doc. # 1). Moreno is charged in Mexico with the offense of trafficking in minors in violation of Article 366-*quáter* in relation to Article 366-ter of the Federal Penal Code of Mexico. On September 25, 2006, the United States filed a second Request for Extradition (doc. # 8) which is supported by charges in Mexico against Moreno for the offense of forgery of a public

---

[1] 18 U.S.C. § 3184 provides, in pertinent part:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized to do so by a court of the United States, . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

document.

Moreno was arrested and arraigned on a warrant issued by this court. On June 11, 2008, the court held an evidentiary hearing on the request for extradition in accordance with 18 U.S.C. § 3184. For the reasons that follow, the petition for a certificate of extraditability will be GRANTED with respect to the first request for extradition (doc. # 1) and DENIED with respect to the second request for extradition (doc. # 8).

## FACTS

Mexico has requested that Moreno be extradited to face criminal charges of trafficking in minors and forgery of public documents. The charges were brought against Moreno by her ex-husband, Jose Fernando Castillo-Tapia ("Castillo"). During their marriage, Moreno and Castillo had a son, L.F.C.M.,[2] born on August 31, 1989. On October 1, 1991, as part of their divorce, Moreno and Castillo entered into an agreement awarding physical custody of L.F.C.M. to Moreno. The divorce was final on January 29, 1992. (Gov't Ex. 68). After the divorce, Moreno and Castillo had their second child, a daughter M.F.C.M., born on October 10, 1994. Moreno and Castillo applied their prior custody agreement to this child.

On February 28, 2008, Castillo went to visit his children at their mother's house in Naucalpan, Mexico. When Castillo arrived at the house, Moreno's mother informed Castillo that neither Moreno nor the children were there. Castillo subsequently discovered that Moreno had left the city with the children.

---

[2] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court refers to the minor children only by their initials.

According to the warrants issued for Moreno's arrest, Castillo alleges that Moreno told him in October of 2003 that she wanted to take the children to the United States because she had married a man she met on the Internet. (Gov't Ex. 68). Castillo refused permission for the children to leave the country. Castillo alleges that Moreno then forged his signature and digital fingerprints on passport applications for the children so that she and the children could come to the United States to live with her new husband, Ronald Coonley, in Alabama.

An investigation revealed that passports were issued to L.F.C.M. and M.F.C.M. on February 17, 2004, and that Moreno and the children flew from Mexico to Atlanta, Georgia on February 27, 2004. (Gov't Ex. 60 & 68). Moreno, Coonley and the children presently reside in Salem, Alabama which is within the Middle District of Alabama.

## DISCUSSION

This extradition matter is governed by 18 U.S.C. § 3181.[3] Before issuing a certificate of extraditability, the court must find that the government has met all the necessary elements for extradition of Moreno pursuant to 18 U.S.C. § 3184.[4] The United States bears the burden of establishing: (1) the existence of personal and subject matter jurisdiction; (2) a valid treaty with Mexico; (3) pending criminal charges in Mexico; (4) extraditable offenses; and (5) probable cause. *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994). The court will address each element seriatim.

---

[3] 18 U.S.C. § 3181(a) provides, in pertinent part that "[t]he provisions of this chapter relating to the surrender of persons who have committed crimes in foreign countries shall continue in force only during the existence of any treaty of extradition with such foreign government."

[4] *See* Fn. 1, *supra*.

First, the United States must establish that this court has personal and subject matter jurisdiction over Moreno and these proceedings. Moreno resides in Salem, Alabama which is within the Middle District of Alabama. 18 U.S.C. § 3184 confers jurisdiction on the United States Magistrate Judge to hear this matter pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 72.2 under which the United States Magistrate Judge is authorized to conduct all proceedings in this case and order the entry of the certificate of extraditability. Moreno does not contest that the court has both personal and subject matter jurisdiction over this matter. Consequently, the court concludes that the United States has established the requisite jurisdictional element.

Moreno concedes that there is presently in force a valid treaty between the United States and Mexico. *See* Extradition Treaty between the United States and Mexico, May 4, 1978, T.I.A.S. No. 9656, 31 U.S.T. 5059, 1980 WL 309106. Andrew Keller, an Attorney-Advisor in the Legal Office of the Department of State declared that the Treaty between the United States and Mexico is in full force and effect. (Gov't Ex. E). The United States has met its burden of establishing the existence of a valid treaty with Mexico.

The third element the United States must establish is the existence of pending criminal charges against Moreno. The first charge pending against Moreno is trafficking in minors in violation of Article 366-*quáter* in relation to Article 366-ter of the Federal Penal Code of Mexico.

> **Article 366-Ter** – Whoever transports a child under the age of sixteen, or unlawfully hands over the child to a third person out of Mexico, for unduly obtaining a profit, commits the offense of

child trafficking.

The offense mentioned in the foregoing paragraph is committed by:

     I.  Whoever has the *patria potestas* or custody, even though it has not been decided, whenever they physically transported or handed over said child or granted consent for doing so;
     II.  Any relatives in ascending or collateral line, or by affinity until fourth degree and also any third party without relationship to the child;

It shall be understood that the persons referred to in the preceding paragraph are acting unlawfully whenever they know that:
     a).  Express consent has not been granted for transporting or handing over the child by any person that has the *patria potestas* or custody of the child, or

     b).  The person that has the *patria potestas* or custody of the child shall obtain any profit for the said transporting or handing over.

**Article 366-quáter** – The penalties set forth in foregoing article shall be reduced a half, whenever:

     I.  The transporting or the handing over of the child is not made for obtaining an undue profit, or
     II.  The person to whom the child is handed over intents to make the child a part of his/her family unit.

The penalties mentioned in this article shall be imposed on the father or the mother of a child under the age of sixteen that unlawfully or without consent of whoever has the *patria potestas* or custody of the minor, without obtaining an undue profit in exchange, transports the child out of Mexican territory so as to change the habitual residence or prevents the mother or father, as the case may be, from living together with or visiting the child.

(Gov't Ex. 58, Article 366-*quáter* in relation to Article 366-ter of the Federal Penal Code of Mexico). The penalties for violating Article 366-Ter include a term of imprisonment between three and ten years; however, the penalties for violating Article 366-*quáter* include a term of imprisonment which is half of the term of imprisonment for violating Article 366-Ter. (*Id*.). A warrant for Moreno's arrest on this charge was issued on September 27, 2004. (Gov't Ex. 56).

Moreno is also charged with the offense of forgery of a public document under Article 244(I) which prohibits "stamping a false signature, even if the signature is fictitious or if an original signature is modified."[5] (Gov't Ex. 68). The penalties for forgery of a public document include a term of imprisonment between four and eight years. (Gov't Ex. 69). A warrant for Moreno's arrest on this charge was issued on June 8, 2005. (Gov't Ex. 68).

Moreno concedes that there are pending criminal charges against her in Mexico. The United States has met its burden of establishing the existence of pending criminal charges against Moreno in Mexico.

The fourth element the United States must establish is that the Mexican charges against Moreno constitute extraditable offenses under the Treaty. Article 2 of the Treaty defines extraditable offenses.

> (1) Extradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year.

---

[5] Although a warrant was sought for Moreno's arrest on a charge of using a false document, the judge specifically declined to issue an arrest warrant on that charge. *See* Gov't Ex. 68.

>   (2)  Extradition shall also be granted for wilful acts which, although not being included in the Appendix, are punishable, in accordance with the federal laws of both Contracting Parties, by a deprivation of liberty the maximum of which shall not be less than one year.

Extradition Treaty between the United States and Mexico, May 4, 1978, T.I.A.S. No. 9656, 31 U.S.T. 5059, Art.2.

The United States argues that it is sufficient for the offenses to be listed in the Treaty. While it is true that the Appendix to the Treaty specifically lists kidnaping, child stealing, and abduction as well as "[a]n offense against the laws relating to counterfeiting and forgery" as extraditable offenses, Extradition Treaty, App., # 4 and # 10, it is not sufficient to show that the offenses are simply listed in the Treaty. The court must look to the conduct described in the Mexican documents to determine whether the conduct constitutes a "listed" offense. The United States must establish that the charged offenses in Mexico also constitute crimes in this country. This rule is referred to as the "dual criminality" requirement. "'Dual criminality' is the rule that the offense for which the foreign state seeks assistance must also constitute a crime in the requested state." *In re: Commissioner's Subpoena*, 325 F.3d 1287, 1299 (11th Cir. 2003) *abrogated on different grounds by In re Clerici*, 481 F.3d 1324, 1333 n.12 (11th Cir. 2007). In the alternative, the government argues that the statutes that prohibit parents from "stealing" their children in the U.S. meet the dual criminality aspect of this factor. Specifically, the United States contends that "taking a child from a custodial parent, or who has joint custody, without permission, constitutes an extraditable offense." Moreno-Vasquez

is charged with "trafficking in minors" and forgery of a public document.[6] Under Mexican law, it is a federal crime for a parent to abduct her child and leave the country. "International parental abduction became a federal crime under Article 366-*quáter* of the Federal Penal Code. . . . Under this Article, prosecution must be pursued at the petition of those whose parental rights (*patria potestad*), rights of custody, or guardianship have been violated." *Código Penal Federal*, 12 June 2000, Nat'l Ctr. for Missing & Exploited Children, Country Report, Mexico at 11 (2002). Under the laws of the United States, it is illegal for a parent to abduct their child "with intent to obstruct the lawful exercise of parental rights."[7] 18 U.S.C.

---

[6] Moreno makes no argument and does not dispute that the forgery of a public document charge meets the dual criminality requirement and constitutes an extraditable offense under the Treaty.

[7] 18 U.S.C. § 1204 provides, in pertinent part, as follows:

(a) Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both.

(b) As used in this section –

(1) the term "child" means a person who has not attained the age of 16 years; and

(2) the term "parental rights", with respect to a child, means the right to physical custody of the child--

(A) whether joint or sole (and includes visiting rights); and

(B) whether arising by operation of law, court order, or legally binding agreement of the parties.

(c) It shall be an affirmative defense under this section that--

(1) the defendant acted within the provisions of a valid court order granting the defendant legal custody or visitation rights and that order was obtained pursuant to the Uniform Child Custody Jurisdiction Act or the Uniform Child Custody Jurisdiction and Enforcement Act and was in effect at the

§ 1204 (2003). The international parental abduction statutes of Mexico and the United States are strikingly similar in relevant part in that both require that the child be taken to interfere with or deprive a parent of the ability to exercise their parental rights.

> The law does not require that the name by which the crime is described in the countries shall be the same; nor that the scope of liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act is criminal in both jurisdictions.

*Collins v. Loisel*, 259 U.S. 309, 312 (1922). The court concludes that the charged offenses of trafficking in minors and forgery of a public document constitute extraditable offenses under the Treaty.[8]

The court turns to the final remaining element necessary for extradition – that of probable cause. The United States must establish probable cause sufficient to certify Moreno for extradition on each of the two pending charges. An extradition hearing pursuant to § 3184 is "in the nature of a preliminary hearing." *Charlton v. Kelly*, 229 U.S. 447 (1913); *Kastnerova v. United States*, 365 F.3d 980, 987 (11th Cir. 2004). *See also Afanasjev v. Hurlburt*, 418 F.3d 1159, 1164 (11th Cir. 2005); *Escobedo v. United States*, 623 F.2d 1098,

---

time of the offense;

(2) the defendant was fleeing an incidence or pattern of domestic violence; or

(3) the defendant had physical custody of the child pursuant to a court order granting legal custody or visitation rights and failed to return the child as a result of circumstances beyond the defendant's control, and the defendant notified or made reasonable attempts to notify the other parent or lawful custodian of the child of such circumstances within 24 hours after the visitation period had expired and returned the child as soon as possible.

[8] It is undisputed that the punishments for the charged offenses include terms of imprisonment not less than one year. *See* Extradition Treaty, Art.2.

9

1102 n.5 (5th Cir. 1980) (quoting *Gusikoff v. United States*, 620 F.2d 459, 462 (5th Cir. 1980)[9] ("Hearings held pursuant to Section 3184 are in the nature of a preliminary hearing."). Consequently, the court must determine whether there is probable cause to believe that a crime has been committed and that Moreno committed the offense. While the Treaty defines probable cause as "evidence sufficient according to the laws of the requested country," 31 U.S.T. 5059, art. 3, the law is clear that the federal probable cause standard applies at an extradition hearing.

> [T]he Government d[oes] not have to show actual guilt, only probable cause that the fugitive is guilty. The magistrate [judge] does not inquire into the guilt or innocence of the accused; he looks only to see if there is evidence sufficient to show reasonable ground to believe the accused guilty.

*Kastnerova,* 365 F.3d at 987; *Afanasjev*, 418 F.3d at 1164.

Moreover, 18 U.S.C. § 3190 governs the admissibility of evidence offered in support of or in opposition to extradition at the hearing.

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190. Finally, "[h]earsay . . . is permitted in extradition proceedings." *Escobedo*,

---

[9] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

623 F.2d at 1102 n.10. *See also, Afanasjev*, 418 F.3d at 1165. With these principles of law in mind, the court now turns to whether there is probable cause to extradite Moreno on the pending charges.

## Probable Cause Determinations

**A. Trafficking in Minors Charge**. The United States must establish probable cause to believe that Moreno has committed the offense of trafficking in minors.[10] Pursuant to Article 366-*quáter*, the elements of the offense of child trafficking are

> (a) That the offender is the minor under the age of sixteen's father or mother;
> (b) That the said minor is transferred unlawfully or without the consent of the person having the minor's custody or patria potestas, outside the Mexican Territory;
> (c) Without the intention of obtaining an unlawful gain;
> (d) And that the said transfer is for changing his residence or impeding the mother or the father to cohabit with or visit the minor.

(Gov't Ex. 56).

In accordance with 18 U.S.C. § 3190, the United States relied on numerous translated and duly authenticated documents. *See Collins*, 259 U.S. at 313; *Bingham v. Bradley*, 241 U.S. 511 (1916). Although Moreno challenged the accuracy of the translations and legibility of the documents,

> as long as the evidence is authenticated in accordance with § 3190, then [the district court] would not consider challenges to the reliability of the translations. We agree with the district court that we can presume that the translations are correct.

*Ntakirutimana v. Reno*, 184 F.3d 419, 420-30 (5th Cir. 1999) (footnote omitted).

---

[10] Moreno does not contest her identity.

The extradition documents in support of the charge of child trafficking were properly certified on March 1, 2005, by Robyn M. Bishop, the Minister Counselor for Consular Affairs of the United States of America at Mexico. (Gov't Ex. C). The extradition documents in support of the charge of forgery of a public document were properly certified by David T. Donahue, the Minister Counselor for Consular Affairs of the United States of America at Mexico. (Gov't Ex. D). The court's function "is to determine whether there is any competent evidence tending to show probable cause. The weight and sufficiency of the evidence is for the determination of the committing court." *Escobedo*, 623 F.2d at 1102. Consequently, the court concludes that the extradition documents relied upon by the United States are admissible and can be considered when determining whether Moreno should be extradited. *Id.* at 1103. *See also Afanasjev v. Hurlburt*, 418 F.3d 1159, 1164 (11th Cir. 2005).

The documents demonstrate that the two minor children, L.F.C.M. and M.F.C.M., were 14 and 9 years old, respectively when they left Mexico and traveled to the United States. (Gov't Ex. 68). There is no dispute that Moreno did not transfer the children for unlawful gain. However, by bringing the children to the United States, Moreno changed the children's residence and impeded Castillo's ability to visit with his children.

The crux of the probable cause determination thus rests on whether Castillo's *patria potestas* rights are sufficient to establish that the children were "transferred unlawfully or without the consent of the person having the minor's custody or patria potestas, outside the Mexican Territory." (Gov't Ex. 56). The United States argues that Moreno took the children in violation of the custody agreement and against Castillo's *patria potestas* rights. *See* United

States' Supplemental Extradition Br., doc. # 40.

Moreno, on the other hand, argues that Castillo has access rights pursuant to their agreement and that his *patria potestas* rights do not rise to the level of custody rights. *See* Resp. Maria del Rosario Moreno-Vazquez a/k/a/ Maria Coonley's Post-Trial Br., doc. # 39. Specifically, Moreno argues that the United States cannot establish probable cause because Moreno had full custody of the children and Castillo's *patria potestas* are not the equivalent of her custody rights.

Clearly, the documentary evidence demonstrates that there is probable cause to believe that Moreno took the children out of Mexico without Castillo's permission. The question for the court, then, is whether Moreno's actions of removing the children from Mexico impaired Castillo's ability to exercise his *patria potestos* rights by changing the children's residence or impeding his ability to visit the children.

"The concept of *patria potestas* is derived from Roman law and originally meant paternal power over the family and household." *Gonzalez v. Gutierrez*, 311 F.3d 942, 954 (9th Cir. 2002). *See also Whallon v. Lynn*, 230 F.3d 450, 456 n.7 (1st Cir. 2000).

> Care must be taken to avoid imposing American legal concepts onto another legal culture. Differently from many laws in this country, Mexican law appears to embody two concepts of importance here. The first is a preference in divorce cases towards placing what is called "custody" of a child under age seven with the mother. . . .
> The second concept is embodied in the doctrine of patria potestas, and represents a more generalized concept of parental authority. Although historically the doctrine protected the father's rights as to the child, originally absolute rights under Roman law, the Baja California Sur Civil Code refers to it as encompassing the rights of both parents. Article 474 provides generally that patria potestas, or parental authority, "is understand to mean the

13

relationship of rights and obligations that are held reciprocally, on the one hand, by the father and the mother or in some cases the grandparents and, on the other hand, the minor children who are not emancipated." Civil Code, art. 474. The concept of patria potestas is defined broadly:

> Paternal authority is exercised over the person and the property of the children subject to it. The purpose of its exercise is the comprehensive physical, mental, moral and social protection of the minor child, and it includes the obligation for [the child's] guardianship and education.

*Whallon*, 230 F.3d at 456-57 (footnote omitted).

In the request for a warrant to the Third District Judge for Federal Criminal Matters in the Federal District, the prosecuting attorney discusses the element of *patria potestas*.[11]

> With regard to the NORMATIVE ELEMENTS which must be evaluated in the offense of CHILD TRAFFICKING, this is firstly the concept of: a child under sixteen years, that is a person under eighteen years of age; without the authorization of those exercising patria potestas or resolution by a competent authority; that is, to have the permission or authorization of the father or mother or of whomsoever exercises patria potestas in order to be able to leave the country or change domicile, temporarily or permanently, since without this element. If the persons mentioned had provided this authorization, the normative element would not exist; b) patria potestas corresponds to the groups of rights and obligations established by law with respect to parents, governing the attentions, government and care of their children; including the management of their assets, as from conception until they are of legal age or emancipated; now, this gives rise to the normative-descriptive element consisting of a resolution by a competent authority, and refers to that authority possessing faculties to resolve on the residence or guardianship of children under age, such as, for example, the Judges for Family Matters, and in the present case no such resolution by a judicial family authority exists where the mother of the children was authorized to leave the country or change residences, c) not allowing the father or the mother to have habitual access to

---

[11] Although the Third District Judge for Federal Criminal Matters in the Federal District ultimately determined that he did not have jurisdiction over this matter (*see* Gov't Ex. 53), he transferred the case to the appropriate District Judge in Naucalpan, Mexico who accepted the case. *See* Gov't Exs. 53 and 55. On September 27, 2004, the court issued the arrest warrant for Moreno. (Gov't Ex. 56).

>   the child or visit same, representing a condition in order for the behavior described to be typical, given the requirement of the precept that, in addition to then agent engaging in the act or actions, subsequently thereto not giving permission or not permitting the parents of the child to visit to have habitual access to the children, that in the present ase (sic) the one cannot visit them is the father.

(Gov't Ex. 52).

Moreno concedes that she and Castillo entered into an agreement that placed the children under her custody.[12] More importantly, however, the agreement specifically addresses Castillo's *patria potestas* rights.

>   FIRST – The *patria potestad* of our minor son [L.F.C.M.] will be exercised at all times by his parents, the undersigned Jose Fernando Castillo Tapia and Maria del Rosario Moreno Vazquez, and will only be lost in the form and terms established by Law for such purpose.

(Gov't Ex. 6, ¶ 1). The agreement also designated Moreno's home in Mexico as the dwelling for L.F.C.M. and required Moreno to notify Castillo in writing of "[a]ny change in domicile." (*Id.* at ¶ 4). The United States presented evidence, which Moreno did not dispute, that when Moreno requested permission to take the children to the United States, Castillo refused. Thus, the evidence before the court indicates that Moreno did not have Castillo's express permission to leave Mexico and change the children's residences to the United States. Finally, the agreement permits Castillo daily visitation with his son, weekend visitation and vacations during the year. (*Id.* at ¶ 5-6). After they divorced, Moreno and Castillo had their second child, M.F.C.M., and they applied their custody agreement to her.

---

[12] The Agreement in Family Court specifically placed L.F.C.M. "under the custody of his mother, Mrs. Maria del Rosario Moreno Vazquez." (Gov't Ex. 6, ¶ 2).

15

The passport applications also require permission of "the parents or persons exercising patria potestas or guardianship." (Gov't Ex. 28). The passport applications refer to those persons exercising the broader concept of *patria potestas*; permission is not limited to those persons who have the more narrow rights of custody of the minor children.

Article 366-*quáter* and the judicial documents from Mexico all refer to the "person having the *minor's custody or patria potestas*" when discussing the elements of the offense of trafficking in minors. Moreno argues that her superior rights of custody trump Castillo's *patria potestas* rights. This argument is not supported by the statutory language which uses coordinate language in expressing the terms "minor's custody" and "*patria potestas*." Castillo's *patria potestas* rights are equally protected by the plain language of Article 366-quáter in relation to Article 366-ter of the Federal Penal Code of Mexico.

It is clear that the concept of custody in the United States which often applies to physical custody is not necessarily the same concept in foreign states. Because custody in foreign states often entails rights related to the care, education and cultural identity of a child, "we must . . . not allow our somewhat different American concepts of custody to cloud our application. . . Specifically, in this case we must think of "rights of custody" as including "rights relating to the care of the person of the child," and in particular, "the right to determine the child's place of residence." *Furnes v. Reeves*, 362 F.2d 702, 711 (11th Cir. 2004).[13]

The evidence before the court establishes that there is probable cause to believe that

---

[13] Although *Furnes v. Reeves*, 362 F.3d 702 (11th Cir. 2004) involved a petition under the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq., and the Hague Convention, its discussion of custody and access rights are instructive.

Moreno is the mother of the two minor children at issue who were under the age of sixteen at the time they left Mexico for the United States; that Castillo, the children's father, who maintained *patria potestas* rights, did not consent to the children leaving Mexico; that the children were not removed for unlawful financial gain; but that Moreno intended to change the children's residence which would impede Castillo's ability to exercise his *patria potestas* rights. Accordingly, the court concludes that there is probable cause to believe that the offense of trafficking in minors has been committed and that Moreno committed it. The court will grant the first Request for Extradition (doc. # 1) and certify that Maria del Rosario Moreno-Vazquez is extraditable on that request.

    **B. Forgery of a Public Document Charge**. The United States filed a second request for Moreno's extradition based on a charge of forgery of a public document. (Doc. # 8). For Moreno to be extradited to answer this charge, the United States must establish probable cause to believe that Moreno has committed the offense of forgery of a public document. Moreno is charged with violating Article 244(I) of the Federal Criminal Code which is committed "[b]y stamping a false signature, even if the signature is fictitious or if an original signature is modified." (Doc. # 8, Ex. D). Thus, to demonstrate probable cause on the second charge of forgery of a public document, the United States must establish that there is reason to believe that Moreno stamped a false signature on the children's passport applications.[14]

    The United States argues that because the documents are forged and Moreno used the

---

[14] It is important to note that although an arrest warrant against Moreno was sought for the offense of using a false document, a warrant on that charge was not issued. Moreno is not charged with using false documents. (Doc. # 8, Ex. D).

documents to bring her children to the United States, she must have forged them. It is undisputed that Castillo's signatures on the children's passport applications were forged as were his fingerprints. Relying solely on the documentary evidence, the United States contends that "the documents speak for themselves. In doing so, Moreno-Vasquez had her husband's signature and digital fingerprints forged." The United States' reliance is misplaced.

In the supporting documentation, the evidence shows that the signatures and fingerprints purporting to belong to Castillo belonged, in actuality, to Artemio Barrera Hernandez. (Gov't Ex. 68). In addition, witnesses positively identified Barrera as the man who appeared at the local Foreign Affairs Office in Naucalpan to submit passport applications for the two minor children. (Gov't Ex. 66 & 68). Critically, however, none of the witnesses identified Moreno as the woman with him. In fact, the witnesses stated that they did not "remember well [Moreno's] physical shape." (*Id*.). Accordingly, the court concludes that while the United States has established probable cause to believe the offense of forgery of a public document has been committed, the United States has failed to establish probable cause that Moreno committed the offense. Thus, the second Request for Extradition (doc. # 8) will be denied.

## CONCLUSION

Although the court is sympathetic to Moreno's plight, as a matter of law humanitarian considerations fall within the exclusive realm of the executive branch and are outside the purview of this court. *Escobedo*, 623 F.2d at 1107. *See also Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 830, n.10 (11th Cir. 1993) ("[H]umanitarian considerations are matters properly

reviewed by the Department of State.")

Pursuant to 18 U.S.C. § 3184, the court concludes that there is sufficient evidence to sustain the charge of trafficking in minors in violation of Article 366-*quáter* in relation to Article 366-ter of the Federal Penal Code of Mexico. Accordingly, for the reasons as stated, it is

ORDERED that the first Request for Extradition (doc. # 1) be and is hereby GRANTED, and the court CERTIFIES that Maria del Rosario Moreno-Vazquez is extraditable on that request for extradition (doc. # 1) and REFERS this matter to the Secretary of State for the United States of America for its determination of whether to surrender Moreno to authorities in Mexico. It is further

ORDERED that the second Request for Extradition (doc. # 8) be and is hereby DENIED.

A separate certificate of extraditability will issue.

Done this 22nd day of August, 2008.

                                                /s/Charles S. Coody
                                                CHARLES S. COODY
                                                UNITED STATES MAGISTRATE JUDGE